**MEYER LAW GROUP LLP**
 A Limited Liability Partnership
BRENT D. MEYER, Cal. Bar No. 266152
268 Bush Street #3639
San Francisco, California 94104
Telephone:   (415) 765-1588
Facsimile:   (415) 762-5277
Email:        brent@meyerllp.com

Attorneys for Debtor in Possession
66 BARRY LANE, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | BK Case No.: 23-51443-DM |
| 66 BARRY LANE, LLC, | Chapter 11 |
| Debtor in Possession. | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO SELL REAL PROPERTY COMMONLY KNOWN AS 66 BARRY LANE, ATHERTON, CALIFORNIA 94027 FREE AND CLEAR OF LIENS** |
| | **[11 U.S.C. §§ 363(b)(1), (f)(2)-(4), (m); F.R.B.P. 6004(a); and B.L.R. 6004-1]** |
| | **AFFECTED LIENHOLDERS:** |
| | **(1)  Technology Credit Union** |
| | **(2)  Community Bank of the Bay** |
| | **(3)  Dakota Note, LLC** |
| | **(4)  Nariman Seyed Teymourian** |
| | **(5)  Gail Suzanne Marie Teymourian** |
| | **(6)  2700 Middlefield Road, LLC, a Delaware limited liability company** |
| | **(7)  Ferrando Diversified Capital, LLC, a California limited liability company** |
| | **(8)  Alviso Park, LLC, a Delaware limited liability company** |
| | **(9)  Sarah L. Little, Chapter 7 Trustee for the Estate Nariman Seyed Teymourian** |

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO SELL REAL PROPERTY COMMONLY KNOWN AS 66 BARRY LANE, ATHERTON, CALIFORNIA 94027 FREE AND CLEAR OF LIENS

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
w w w . m e y e r l l p . c o m

Pursuant to Federal Rule of Evidence 201, Debtor in Possession 66 Barry Lane, LLC ("Debtor") hereby requests that the Court take judicial notice of the following in support of the *Motion to Sell Real Property Commonly Known as 66 Barry Lane, Atherton, California 94027 Free and Clear of Liens* (the "Motion") filed concurrently herewith in the above-captioned matter:

1.    Publicly filed documents in the Recorder's Office for San Mateo County related to residential real property commonly known as 66 Barry Lane, Atherton, California 94027, including but not limited to:

(a)    *Trustee's Deed Upon Sale* recorded in the Recorder's Office for San Mateo County on or about July 11, 2023 as Document No. 2023-032984, a true and correct copy of which is attached hereto as **Exhibit A**;

(b)    *Deed of Trust* of Technology Credit Union in the original principal amount of $8,000,000.00 recorded in the Recorder's Office for San Mateo County on or about December 15, 2016 as Document No. 2016-133248, a true and correct copy of which is attached hereto as **Exhibit B**;

(c)    *Deed of Trust* of Community Bank of the Bay in the original principal amount of $7,000,000.00 recorded in the Recorder's Office for San Mateo County on or about September 22, 2021 as Document No. 2021-135494, a true and correct copy of which is attached hereto as **Exhibit C**;

(d)    *Deed of Trust* of Dakota Note, LLC, as to an undivided 1,125,000/2,500,000 interest and Tanya Waltimyer, a married woman as her sole and separate property, as to an undivided 650,000/2,500,000 interest and Jason Greenfield, a married man, as his sole and separate property, as to an undivided 425,000/2,500,000 interest and Natural Software Systems, Inc. Money Purchase Pension Plan, as to an undivided 300,000/2,500,000

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
w w w . m e y e r l l p . c o m

BK CASE NO. 23-51443-DM

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO SELL REAL PROPERTY COMMONLY KNOWN AS 66 BARRY LANE, ATHERTON, CALIFORNIA 94027 FREE AND CLEAR OF LIENS

interest in the original principal amount of $2,500,000.00 recorded in the Recorder's Office for San Mateo County on or about January 17, 2017 as Document No. 2017-008300, a true and correct copy of which is attached hereto as **Exhibit D**;

(e)      *Deed of Trust* of Dakota Note, LLC in the original principal amount of $2,200,000.00 recorded in the Recorder's Office for San Mateo County on or about September 29, 2017 as Document No. 2017-085459, a true and correct copy of which is attached hereto as **Exhibit E**;

(f)      *Deed of Trust* of Dakota Note, LLC as to an undivided 1,255,000/1,350,000 interest and Natural Software Systems, Inc. Money Purchase Pension Plan, as to an undivided 95,000/1,350,000 interest recorded in the Recorder's Office for San Mateo County on or about February 13, 2018 as Document No. 2018-009934, a true and correct copy of which is attached hereto as **Exhibit F**;

(g)      *Deed of Trust* of Dakota Note, LLC, as to an undivided 2,250,000/4,550,000 interest and Tanya Waltimyer, a married woman as her sole and separate property, as to an undivided 1,000,000/4,550,000 interest and Jason Greenfield, a married man, as his sole and separate property, as to an undivided 500,000/4,550,000 interest and Natural Software Systems, Inc. Money Purchase Pension Plan, as to an undivided 490,000/4,550,000 interest in the original principal amount of $4,550,000.00 recorded in the Recorder's Office for San Mateo County on or about April 27, 2018 as Document No. 2018-032666, a true and correct copy of which is attached hereto as **Exhibit G**;

(h)      *Deed of Trust* of Dakota Note, LLC as to an undivided 2,450,000/3,000,000 interest and Natural Software Systems, Inc. Money Purchase Pension Plan, as to an undivided 550,000/3,000,000 interest in the original principal amount of $3,000,000.00 recorded in the Recorder's Office for San Mateo County on or about January 7, 2019 as Document No. 2019-001052, a true and correct copy of which is attached hereto as **Exhibit H**;

(i)      *Deed of Trust* of Dakota Note, LLC in the original principal amount of $1,000,000.00 recorded in the Recorder's Office for San Mateo County on or about April 2, 2019 as Document No. 2019-023434, a true and correct copy of which is attached hereto as

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
w w w . m e y e r l l p . c o m

- 3 -

**Exhibit I**;

   (j) *Notice of Pending Action* recorded in the Recorder's Office for San Mateo County on or about February 2, 2023 as Document No. 2023-004942, a true and correct copy of which is attached hereto as **Exhibit J**;

   (k) *Notice of Pending Action* recorded in the Recorder's Office for San Mateo County on or about March 16, 2023 as Document No. 2023-011634, a true and correct copy of which is attached hereto as **Exhibit K**;

   (l) *Notice of Pending Action* recorded in the Recorder's Office for San Mateo County on or about March 29, 2023 as Document No. 2023-014038, a true and correct copy of which is attached hereto as **Exhibit L**; and

  2. The docket and all pleadings in the adversary proceeding entitled <u>Teymourian v. 66 Barry Lane, LLC et al.</u>, AP Case No. 23-3038-DM (the "<u>Teymourian Adversary Proceeding</u>") filed in the United States Bankruptcy Court, Northern District of California, San Francisco Division on October 11, 2023, including but not limited to:

   A. *Complaint* [Dkt. No. 1] filed on October 11, 2023, a true and correct copy of which is attached hereto as **Exhibit M.**

  3. The docket and all pleadings in the adversary proceeding entitled <u>Teymourian v. 66 Barry Lane, LLC et al.</u>, AP Case No. 24-5005-DM (the "<u>Barry Lane Adversary Proceeding</u>") filed in the United States Bankruptcy Court, Northern District of California, San Francisco Division on October 8, 2023, including but not limited to:

   A. *Complaint* [Dkt. No. 1] filed on October 8, 2023, a true and correct copy of which is attached hereto as **Exhibit N.**

  4. The docket and all pleadings in the matter entitled <u>Teymourian *et al.* v. Waltimyer *et al.*</u>, Case No. 22-CIV-04679, San Mateo County Superior Court, including but not limited to,

   A. Complaint filed on November 9, 2022, a true and correct copy of which is attached hereto as **Exhibit O**;

   B. *Notice of Motion and Motion to Expunge Lis Pendens; Request for Attorney's Fees* filed on February 13, 2024, a true and correct copy of which is attached hereto



MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
w w w . m e y e r l l p . c o m

BK CASE NO. 23-51443-DM

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO SELL REAL PROPERTY COMMONLY KNOWN AS 66 BARRY LANE, ATHERTON, CALIFORNIA 94027 FREE AND CLEAR OF LIENS

Case: 23-51443 Doc# 33-4 Filed: 03/08/24 Entered: 03/08/24 15:08:49 Page 4 of 411

as **Exhibit P**;

        C.      *Memorandum of Points and Authorities in Support of Motion to Expunge Lis Pendens* filed on February 13, 2024, a true and correct copy of which is attached hereto as **Exhibit Q**; and

        D.      *Declaration of Ravi D. Sahae in Support of Motion to Expunge Lis Pendens* filed on February 13, 2024, a true and correct copy of which is attached hereto as **Exhibit R**.

        The Court should take judicial notice of **Exhibits A-R** because they are relevant to the Motion, because Debtor gave notice of this request to enable all parties to prepare to meet the request, and because Debtor furnished this Court with sufficient information to enable it to take judicial notice of each of the foregoing records.

Dated: March 8, 2024           **MEYER LAW GROUP, LLP**

                          By: /s/ BRENT D. MEYER
                            Brent D. Meyer
                            Attorneys for Debtor in Possession
                            66 BARRY LANE, LLC

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
w w w . m e y e r l l p . c o m

BK CASE NO. 23-51443-DM

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO SELL REAL PROPERTY COMMONLY KNOWN AS 66 BARRY LANE, ATHERTON, CALIFORNIA 94027 FREE AND CLEAR OF LIENS

# EXHIBIT A

RECORDING REQUESTED BY

5 PALMS LLC

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS OTHERWISE
SHOWN BELOW, MAIL TAX STATEMENT TO:

Name   66 BARRY LANE LLC
Street   c/o David Tillotson
Address   LPSM&M Law LLP
City &   135 Main Street, Suite 1200
State   San Francisco, CA 94105
Zip

Title Order No. _____   Escrow No. _____

**2023-032984**

11:10 am 07/11/2023 TD Fee: $98.00
Count of Pages 3
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder



\* $ R 0 0 0 3 3 7 3 1 8 8 $ \*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# Trustee's Deed Upon Sale

Trustee's Sale Number: SMC001-07 _____   Assessor Parcel Number: 070-201-070-3631

THE UNDERSIGNED GRANTOR DECLARES:

(1) The Grantee named herein [✓] was ☐ was not the foreclosing Beneficiary.
(2) The amount of the unpaid debt together with cost was $ _____
(3) The amount paid by the Grantee at the Trustee's Sale was $ _____
(4) The Document Transfer Tax is $ 0.00 _____
(5) Said property is in ☐ unincorporated area; ☐ City of ATHERTON _____ , and
5 PALMS LLC _____ , (herein called Trustee), as the duly appointed Trustee under the
Deed of Trust hereinafter described or as duly appointed Trustee, does hereby grant and convey, but without covenant or
warranty, express or implied, to

66 Barry Lane LLC, A California limited liability company

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the City of
ATHERTON _____ , County of SAN MATEO _____ , State of California, described as follows:

LEGAL DESCRIPTION ATTACHED AS EXHIBIT 'A'

TRUSTEE STATES THAT:

This conveyance is made pursuant to the powers conferred upon Trustee by the certain Deed of Trust dated
12/17/2019 _____ , and executed by NARIMAN S TEYMOURIAN AND GAIL SUZANNE MARIE TEYMOURIAN as
Trustor, and recorded as Instrument No. 2019-109853 _____ , Book _____ Page (s) _____
of Official Records of SAN MATEO _____ County, State of California, or as the duly appointed Trustee, and
after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance. Default occurred as set
forth in a Notice of Default and Election to Sell which was recorded in the office of the Recorder of said County. All
requirements of law regarding the mailing of copies of notices and the posting and publication of copies of the Notice of
Sale which was recorded and has been complied with. Said property was sold by said Trustee at public auction on
7/10/2023 _____ at the place named in the Notice of Sale, in the County of SAN MATEO _____ ,
California, in which the property is situated. Grantee being the highest bidder at such sale, became the purchaser of said
property and paid therefore to said Trustee the amount Bid $ 3,000,000.00 (w) _____ , in lawful money of the United
States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE
66 BARRY LANE LLC   135 MAIN STREET, SUITE 1200   SAN FRANCISCO, CA 94105
Name   Street Address   City, State & Zip

# Trustee's Deed Upon Sale

Trustee' Sale No. SMC001-07

Order No. _____

In Witness Whereof, said _____ 5 PALMS LLC _____, as Trustee, has this day caused
its name to be hereunto affixed.

Dated: 07/10/2023

5 PALMS LLC
as Trustee aforesaid

MICHAEL OHAYON, FORECLOSURE OFFICER

> A notary public or other officer completing this certificate
> verifies only the identity of the individual who signed the
> document to which this certificate is attached, and not
> the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _San mateo_

On _07/11/2023_ before me,
_Jesus Eladio Bustos JR, notary public_
(here insert name and title of the officer)
,notary public, personally appeared _Michael_
_Ohayon_
who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the state of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____

JESUS ELADIO BUSTOS JR.
COMM. # 2433161
NOTARY PUBLIC • CALIFORNIA
SAN MATEO COUNTY
Comm. Exp. JAN. 2, 2027

(This area for official notarial seal)

**Exhibit "A"**

**Legal Description**

A.P.N.: 070-201-070-3631

Real property in the Town of Atherton, County of San Mateo, State of California, described as follows:

LOT 13, AS DESIGNATED ON THE MAP ENTITLED "ATHERTON WOODS UNIT NO. 2 ATHERTON SAN MATEO COUNTY, CALIFORNIA", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON JUNE 2, 1955 IN BOOK 42 OF MAPS AT PAGE 37.
JPN: 070-020-201-07A

# EXHIBIT B

*A*

Recording Requested By:
TECHNOLOGY CREDIT UNION

And After Recording Return To:
TECHNOLOGY CREDIT UNION
2010 N 1ST ST SUITE 200
SAN JOSE, CALIFORNIA 95131
Loan Number: 1608000067

**2016-133248**
OLD REPUBLIC TITLE COMPANY
8:00 am 12/15/16 DT Fee: 69.00
Count of Pages 19
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder



\* R 0 0 0 2 3 2 3 7 9 7 \*

0224039510-NS
66 Barry Lane
Atherton, CA 94027

——— [Space Above This Line For Recording Data] ———

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated    DECEMBER 9, 2016    , together with all Riders to this document.
**(B)** **"Borrower"** is Nariman S. Teymourian and Gail Suzanne Marie Teymourian, husband and wife, as community property with right of survivorship
BORROWER'S ADDRESS IS 66 BARRY LANE, ATHERTON, CALIFORNIA 94027.

Borrower is the trustor under this Security Instrument.
**(C)** **"Lender"** is    TECHNOLOGY CREDIT UNION

Lender is a            CALIFORNIA CORPORATION            organized
and existing under the laws of            CALIFORNIA            .
Lender's address is    2010 N 1ST ST SUITE 200, SAN JOSE, CALIFORNIA 95131

Lender is the beneficiary under this Security Instrument.
**(D)** **"Trustee"** is    Technology Credit Union. A California Corporation
2010 N. First Street #200, San Jose, California 95131

**(E)** **"Note"** means the promissory note signed by Borrower and dated    DECEMBER 9, 2016    .
The Note states that Borrower owes Lender    EIGHT MILLION AND 00/100
Dollars (U.S. $ 8,000,000.00    )

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 11
of 411

plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   JANUARY 1, 2047   .

**(F)   "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)   "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)   "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider      ☐ Planned Unit Development Rider
☐ Balloon Rider      ☐ Biweekly Payment Rider
☐ 1-4 Family Rider      ☐ Second Home Rider
☐ Condominium Rider      ☐ Other(s) [specify]

**(I)   "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)   "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)   "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)   "Escrow Items"** means those items that are described in Section 3.

**(M)   "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)   "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)   "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)   "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)   "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 12 of 411

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY          of          San Mateo        :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF.
SEE PRELIM
A.P.N.: 070-201-070

which currently has the address of   66 BARRY LANE

                                                         [Street]
      ATHERTON             , California   94027     ("Property Address"):
        [City]                               [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                     Page 3 of 14                      *DocMagic eForms*
                                                             *www.docmagic.com*

Case: 23-51443     Doc# 33-4     Filed: 03/08/24     Entered: 03/08/24 15:08:49     Page 13 of 411

its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 14 of 411

the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 15 of 411

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 16 of 411

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 17 of 411

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 18 of 411

or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 19
of 411

otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                                  Page 10 of 14                                  *DocMagic eForms*
                                                                                               *www.docmagic.com*

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 20 of 411

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 21
of 411

required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 22 of 411

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

_____ (Seal)
Nariman S. Teymourian        -Borrower

_____ (Seal)
Gail Suzanne Marie        -Borrower
Teymourian

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Witness:                          Witness:

_____     _____

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 23 of 411

———————————— [Space Below This Line For Acknowledgment] ————————————

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ___CALIFORNIA___ )

County of ___San Mateo___ )

On ___12/9/16___ before me, ___Laurie Ann Valencia, Notary Public___
       Date                                 Here Insert Name and Title of the Notarizing Officer

personally appeared ___Nariman S. Teymourian AND Gail Suzanne Marie___

___Teymourian___

_____ ,
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



LAURIE ANN VALENCIA
Commission # 2081157
Notary Public - California
San Mateo County
My Comm. Expires Oct 7, 2018

_____
Signature of Notary Public

Notary Seal

Loan Originator: Hermelinda Negrete, NMLSR ID 665625
Loan Originator Organization: Technology Credit Union, NMLSR ID 551926

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01            Page 14 of 14             DocMagic *eForms*
www.docmagic.com

# EXHIBIT A

The land referred to is situated in the County of San Mateo, City of Atherton, State of California, and is described as follows:

Parcel 1:

Lot 13, as designated on the Map entitled "Atherton Woods Unit No. 2 Atherton San Mateo County, California," which Map was filed in the Office of the Recorder of the County of San Mateo, State of California on June 2, 1955 in Book 42 of Maps at Page 37.

APN: 070-201-070
JPN: 070-020-201-07A

# FIXED/ADJUSTABLE RATE RIDER
## (LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this 9th day of DECEMBER , 2016 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to TECHNOLOGY CREDIT UNION, A CALIFORNIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

66 BARRY LANE, ATHERTON, CALIFORNIA 94027
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MINIMUM AND MAXIMUM RATES BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of 3.250 %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the 1st day of JANUARY, 2022 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index value available as of the date 45 days before each Change Date is called the "Current Index," provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating my interest rate.

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

---

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One - Year LIBOR
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3187 6/01 (rev. 6/16)        Page 1 of 4

*DocMagic eForms*
*www.docmagic.com*



Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 26 of 411

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 500/1000 percentage points ( 2.500 %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 5.250 % or less than 2.500 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 9.250 % or less than the Margin. My interest rate will never be less than 2.500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One - Year LIBOR
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3187 6/01 (rev. 6/16)     Page 2 of 4

*DocMagic eForms*
*www.docmagic.com*

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 27 of 411

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A·above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One - Year LIBOR
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3187  6/01 (rev. 6/16)                    Page 3 of 4

*DocMagic eForms*
*www.docmagic.com*

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 28 of 411

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
Nariman S. Teymourian  -Borrower

_____ (Seal)
Gail Suzanne Marie  -Borrower
Teymourian

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One - Year LIBOR
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3187  6/01 (rev. 6/16)              Page 4 of 4

DocMagic eForms
www.docmagic.com

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 29 of 411

# EXHIBIT C

**2021-135494**

8:37 am 09/22/21 DT Fee: 53.00
Count of Pages 13
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

**RECORDING REQUESTED BY:**
**First American Title Company**

**WHEN RECORDED MAIL DOCUMENT TO:**

Community Bank of the Bay
180 Grand Avenue, Suite 1550
Oakland, CA 94612



\* $ R 0 0 0 3 1 4 4 4 2 4 $ \*

Space Above This Line for Recorder's Use Only

A.P.N.:   070-201-070
66 Barry Ln, Atherton, CA 94027

File No.:   3809-6662501

Deed of Trust
(Please fill in document title(s) on this line)

( ) Exempt from fee under GC 27388.1 (a) (2) due to being recorded in connection with a concurrent transfer that is subject to the imposition of documentary transfer tax, or

( X ) Exempt from fee under GC Sec 27388.1 (a) (1); fee cap of $225 reached on concurrent documents in this transaction, or

( ) Exempt from fee under GC 27388.1 (a) (2) due to being recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier, or

( ) Exempt from fee under GC 27388.1 (a) (1); Not related to real property, or,

( ) Exempt from fee under GC 27388.1 (a) (1) for the following reasons:

NOTE: The following exemptions **may not be acceptable for use in all counties:**

( ) Exempt from fee under GC 27388.1 due to being recorded in connection with a transaction that was subject to documentary transfer tax which was paid on document recorded _____ as Document No. _____ of Official Records, or

( ) Exempt from fee under GC 27388.1 due to the maximum fees having been paid on document(s) recorded _____ as Document No. _____ of Official Records, or

( ) Exempt from fee under GC 27388.1 due to it being recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier. The recorded document transferring the dwelling to the owner-occupier was recorded _____ as Document No. _____ of Official Records.

THIS PAGE ADDED TO PROVIDE EXEMPTION INFORMATION FOR THE BUILDING HOMES AND JOBS ACT FEE
(SB-2; AFFORDABLE HOUSING FEE)
(Additional recording fee applies)

**RECORDATION REQUESTED BY:**
    Community Bank of the Bay
    Main Office
    180 Grand Avenue, Suite 1550
    Oakland, CA 94612

**WHEN RECORDED MAIL TO:**
    Community Bank of the Bay
    Main Office
    180 Grand Avenue, Suite 1550
    Oakland, CA 94612

**SEND TAX NOTICES TO:**
    NARIMAN S. TEYMOURIAN
    GAIL SUZANNE MARIE TEYMOURIAN
    66 BARRY LANE
    ATHERTON , CA 94027

FOR RECORDER'S USE ONLY

# DEED OF TRUST

### Variable Interest Rate
### Revolving Line of Credit

**THIS DEED OF TRUST is dated September 14, 2021, among NARIMAN S. TEYMOURIAN and GAIL SUZANNE MARIE TEYMOURIAN, husband and wife, as community property with right of survivorship ("Trustor"); Community Bank of the Bay, whose address is Main Office, 180 Grand Avenue, Suite 1550, Oakland, CA 94612 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Community Bank of the Bay, whose address is 180 Grand Ave, Suite 1550, Oakland, CA 94612 (referred to below as "Trustee").**

**CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary,** all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in SAN MATEO County, State of California:**

    **See EXHIBIT "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.**

**The Real Property or its address is commonly known as 66 BARRY LANE, ATHERTON, CA 94027. The Assessor's Parcel Number for the Real Property is 070-201-070.**

**REVOLVING LINE OF CREDIT. This Deed of Trust secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Borrower so long as Borrower complies with all the terms of the Note. Notwithstanding the amount outstanding at any particular time, this Deed of Trust secures the total amount of the Note. The unpaid balance of the revolving line of credit under the Note may at certain times be Zero Dollars ($0.00). A zero balance does not affect Lender's agreement to make advances to Borrower under the Note. Therefore, Lender's interest under this Deed of Trust will remain in full force and effect notwithstanding a zero balance on the Note.**

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**TRUSTOR'S REPRESENTATIONS AND WARRANTIES.** Trustor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Trustor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Trustor and do not result in a violation of any law, regulation, court decree or order applicable to Trustor; (d) Trustor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Trustor about Borrower (including without limitation the creditworthiness of Borrower).

**TRUSTOR'S WAIVERS.** Except as prohibited by applicable law, Trustor waives any right to require Lender to (a) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness; (b) proceed against any person, including Borrower, before proceeding against Trustor; (c) proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Trustor; (d) apply any

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 32 of 411

payments or proceeds received against the Indebtedness in any order; (e) give notice of the terms, time, and place of any sale of any collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (f) disclose any information about the Indebtedness, Borrower, any collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (g) pursue any remedy or course of action in Lender's power whatsoever.

Trustor also waives any and all rights or defenses arising by reason of (h) any disability or other defense of Borrower, any other guarantor or surety or any other person; (i) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (j) the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Trustor and Lender; (k) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (l) any statute of limitations in any action under this Deed of Trust or on the Indebtedness; or (m) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

Trustor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure, or otherwise.

Trustor waives all rights and defenses that Trustor may have because Borrower's obligation is secured by real property. This means among other things: (1) Lender may collect from Trustor without first foreclosing on any real or personal property collateral pledged by Borrower. (2) If Lender forecloses on any real property collateral pledged by Borrower: (A) The amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. (B) Lender may collect from Trustor even if Lender, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Trustor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Trustor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Trustor acknowledges that Trustor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Trustor further understands and agrees that this Deed of Trust is a separate and independent contract between Trustor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until all Indebtedness is paid in full, Trustor waives any right to enforce any remedy Trustor may have against Borrower's or any other guarantor, surety, or other person, and further, Trustor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Trustor shall perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Trustor agree that Borrower's and Trustor's possession and use of the Property shall be governed by the following provisions:

  **Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

  **Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

  **Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, . (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

  **Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products

without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $10,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain flood insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 34 of 411

in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to an existing lien. Trustor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Trustor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Trustor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 35 of 411

---

award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Trustor pay all the Indebtedness when due, and Trustor otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 36 of 411

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Borrower or any Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Trustor's property or Borrower's ability to repay the Indebtedness or Borrower's or Trustor's ability to perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Trustor or on Borrower's or Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Trustor, the insolvency of Borrower or Trustor, the appointment of a receiver for any part of Borrower's or Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Trustor under the terms of any other agreement between Borrower or Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Right to Cure.** If any default, other than a default in payment, is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 37 of 411

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of SAN MATEO County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for

substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Alameda County, State of California.

**Joint and Several Liability.** All obligations of Borrower and Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor, and all references to Borrower shall mean each and every Borrower. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Community Bank of the Bay, and its successors and assigns.

**Borrower.** The word "Borrower" means NARIMAN S. TEYMOURIAN and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 39 of 411

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Community Bank of the Bay, its successors and assigns.

**Note.** The word "Note" means the promissory note dated September 14, 2021, **in the original principal amount of $7,000,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Community Bank of the Bay, whose address is 180 Grand Ave, Suite 1550, Oakland, CA 94612 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means NARIMAN S. TEYMOURIAN and GAIL SUZANNE MARIE TEYMOURIAN.

**EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.**

**TRUSTOR:**

X _____
**NARIMAN S. TEYMOURIAN**

X _____
**GAIL SUZANNE MARIE TEYMOURIAN**

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 40 of 411

**DEED OF TRUST**
**(Continued)**

## CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF _____ _CA_ _____ )
) SS
COUNTY OF ___ _San mateo_ _____ )

On _____ _9/15/_ _____, 20 _21_ before me, _Samer H. Bagleh, Notary public_ ,
(here insert name and title of the officer)

personally appeared **NARIMAN S. TEYMOURIAN** , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

**WITNESS my hand and official seal.**

SAMER H. BAQLEH
Notary Public - California
San Mateo County
Commission # 2336967
My Comm. Expires Nov 9, 2024

**Signature** _____ **(Seal)**

## CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF _____CA_____ )
                                                    ) SS
COUNTY OF _____San mateo_____ )

On _____9/15/_____, 20 _21_ before me, _Samer H. Bagleh, Notary public_,
(here insert name and title of the officer)

personally appeared **GAIL SUZANNE MARIE TEYMOURIAN**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

> SAMER H. BAQLEH
> Notary Public - California
> San Mateo County
> Commission# 2336967
> My Comm. Expires Nov 9, 2024

(Seal)

---

**(DO NOT RECORD)**
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____

Date: _____        Beneficiary: _____

                                                          By: _____

                                                          Its: _____

LaserPro, Ver. 21.3.0.041 Copr. Finastra USA Corporation 1997, 2021.  All Rights Reserved.  - CA  C:\CFI\LPL\G01.FC  TR-2223
PR-31

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 42
of 411

**Exhibit "A"**

**Legal Description**

A.P.N.: 070-201-070

Real property in the Town of Atherton, County of San Mateo, State of California, described as follows:

LOT 13, AS DESIGNATED ON THE MAP ENTITLED "ATHERTON WOODS UNIT NO. 2 ATHERTON SAN MATEO COUNTY, CALIFORNIA", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON JUNE 2, 1955 IN BOOK 42 OF MAPS AT PAGE 37.

JPN: 070-020-201-07A

# EXHIBIT D



**2017-008300**
OLD REPUBLIC TITLE COMPANY
8:00 am 01/27/17 DT Fee: 39.00
Count of Pages 9
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

\* R 0 0 0 2 3 4 5 3 1 5 \*

Recording Requested By
California Home Loans

**When Recorded Mail To**
California Home Loans
1346 The Alameda, Suite 7-119
San Jose, CA 95126

Title Order No. O724041619-NS

Space above this line for recorder's use

# DEED OF TRUST

RECORDER: INDEX FOR SPECIAL NOTICE

Loan No. 9617

    This Deed of Trust, made this **24th** day of **January 2017**, among the Trustor, Nariman S. Teymourian and Gail Suzanne Marie Teymourian, husband and wife as community property with right of survivorship (herein "Borrower"), Old Republic Title Company (herein "Trustee"), and the Beneficiary, Dakota Note, LLC, as to an Undivided 1,125,000/2,500,000 Interest and Tanya Waltimyer, a Married Woman as her Sole and Separate Property, as to an Undivided 650,000/2,500,000 Interest and Jason Greenfield, a Married Man as his Sole and Separate Property, as to an Undivided 425,000/2,500,000 Interest and Natural Software Systems, Inc. Money Purchase Pension Plan, as to an Undivided 300,000/2,500,000 Interest (herein "Lender").
    The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

## GRANT IN TRUST

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the county of **San Mateo**, State of California: **See Attached Legal Description Exhibit "A" for APN: 070-201-070,** which has the address of **66 Barry Lane, Atherton, CA 94027** (herein "Property Address"); See addendum attached

    TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

**THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:**
(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **01/24/2017**, in the principal sum of U.S. **$2,500,000.00**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

    Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the **Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend** generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:
    **1. Payments of Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and/or interest on any Future Advances secured by the Deed of Trust.

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

9617/Teymourian9617
Page 1 of 6

**2. Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine, or at option of Lender the entire amount so collected or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the

condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust . Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security hereof or the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), **c/o Paul Greenfield, 2597 Flagstone Drive San Jose, CA 95132** or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State of California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not effect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require The Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

**17. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**18. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

**19. Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

**20. Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed or Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender of a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 48 of 411

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

Borrower _Nariman S Teymourian_    Date _1/26/17_    Borrower _Gail Suzanne Marie Teymourian_    Date _01-26-17_

## REQUEST FOR SPECIAL NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

In accordance with Section 2924b of the Civil Code, Request is hereby made by the undersigned Trustor that a copy of any default and a copy of any notice of sale under deed of trust recorded in Book _____, Page(s) _____, Instrument No._____, Official Records of County Recorder of _____ County, California. The original Trustor _____ and the original Trustee _____ and the original Beneficiary _____ Mail to: _____

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _San Mateo_
On _4 26 17_ before _Laurie Ann Valencia, Notary Public_
personally appeared _Nariman S Teymourian_
_Gail Suzanne Marie Teymourian_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____    (Seal)

LAURIE ANN VALENCIA
Commission # 2081157
Notary Public - California
San Mateo County
My Comm. Expires Oct 7, 2018

## REQUEST FOR FULL RECONVEYANCE

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all **other indebtedness** secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Signature of Beneficiary (the "LENDER")    Date    Signature of Beneficiary (the "LENDER")    Date

When recorded, mail to

Att: _____

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

9617/Teymourian9617
Page 5 of 6

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of California
County of San Mateo

On 1/26/17 before me, _____ Laurie Ann Valencia, Notary Public, personally
appeared Nariman S Teymourian, Gail Suzanne Marie Teymourian, who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct

WITNESS my hand and official seal.

Signature _____          (Seal)

Name: Laurie Ann Valencia
        (Type or Print)

**Property Information for Loan Number: 9617**

**Property #1**
Address: 66 Barry Lane, Atherton, CA 94027
County: San Mateo, State of California
Legal Description: Lot 13, as designated on the Map entitled "Atherton Woods Unit No. 2 Atherton San Mateo County, California," which Map was filed in the office of the Recorder of the County of San Mateo, State of California on June 2, 1955 in Book 42 of Maps at Page 37.
APN: 070-201-070

**Property #2**
Address: 2710 Middlefield Road Redwood City CA 9614
County: San Mateo. State of California
Legal Description: See Exhibit A (APN: 054-113-130) Attached

# EXHIBIT A

The land referred to is situated in the County of San Mateo, City of Atherton, State of California, and is described as follows:

Lot 13, as designated on the Map entitled "Atherton Woods Unit No. 2 Atherton San Mateo County, California," which Map was filed in the Office of the Recorder of the County of San Mateo, State of California on June 2, 1955 in Book 42 of Maps at Page 37.

APN: 070-201-070

# HAZARDOUS SUBSTANCE RIDER TO DEED OF TRUST

That certain Deed Of Trust dated **01/24/2017** between **Nariman S. Teymourian and Gail Suzanne Marie Teymourian, husband and wife as community property with right of survivorship** therein and herein called "Trustor", **Old Republic Title Company**, therein called "Trustee" **Dakota Note, LLC, as to an Undivided 1,125,000/2,500,000 Interest and Tanya Waltimyer, a Married Woman as her Sole and Separate Property, as to an Undivided 650,000/2,500,000 Interest and Jason Greenfield, a Married Man as his Sole and Separate Property, as to an Undivided 425,000/2,500,000 Interest and Natural Software Systems, Inc. Money Purchase Pension Plan, as to an Undivided 300,000/2,500,000 Interest** therein and herein called "Beneficiary" is supplemented in the following particulars only:

1. Trustor represents to Beneficiary that, to the best of Trustor's knowledge after due and diligent inquiry, no hazardous or toxic waste substances are being stored on the property or any adjacent property nor have such substances been stored or used on the property or any adjacent property prior to Trustor's ownership, possession or control of the property. Trustor agrees to provide written notice to Beneficiary immediately upon Trustor's becoming aware that the property or any adjacent property is being or has been contaminated with hazardous or toxic waste or substances. Trustor will not cause or permit any activities on the property that directly or indirectly could result in the property or any other property's being contaminated with hazardous or toxic waste or substances. For the purpose of this Deed of Trust, "hazardous" or "toxic waste" or "substances" means any substance or material defined or designated as hazardous or toxic wastes, hazardous or toxic material, a hazardous, toxic, or radioactive substance, or other similar term by any applicable federal, state, or local statute, regulation, or ordinance now or hereafter in effect.

2. Trustor shall promptly comply with all statutes, regulations, and ordinances, and with all orders, decrees, or judgments of governmental authorities or courts having jurisdiction, relating to the use, collection, storage, treatment, control, removal, or cleanup of hazardous toxic waste or substances in, on, or under the property or in, on, or under any adjacent property that becomes contaminated with hazardous or toxic waste or substances as a result of construction, operations, or other activities on, or the contamination of, the property, or incorporated in any improvements thereon, at Trustor's expense. Beneficiary may, but is not obliged to, enter upon the property and take such actions and incur such costs and expenses to effect such compliance as it deems advisable to protect its interest as Beneficiary; and whether or not Trustor has actual knowledge of the existence of hazardous or toxic waste or substances in, on, or under the property or any adjacent property as of the date hereof, Trustor shall reimburse Beneficiary on demand for the full amount of all costs and expenses incurred by Beneficiary prior to Beneficiary's acquiring title to the property through foreclosure or deed in lieu of foreclosure, in connection with such compliance activities.

| Borrower | Nariman S.Teymourian | 1/26/17 Date | Borrower | Gail Suzanne Marie Teymourian | 01-26-17 Date |
|---|---|---|---|---|---|

**2700 Middlefield Road, LLC, a Delaware limited liability company**

| Borrower | Nariman Teymourian, Manager | 1/26/17 Date | Borrower | | Date |
|---|---|---|---|---|---|

Applied Business Software, Inc. (800) 833-3343
Hazardous Substance Rider to DOT

# EXHIBIT E

**Recording Requested By**
California Home Loans

**When Recorded Mail To**
California Home Loans
1346 The Alameda, #7-119
San Jose  CA  95126

Title Order No.

**2017-085459**
OLD REPUBLIC TITLE COMPANY
8:00 am 09/29/17 DT Fee: 36.00
Count of Pages 7
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

*\$ R 0 0 0 2 4 5 9 2 3 2 \$ *

Space above this line for recorder's use

# DEED OF TRUST

RECORDER: INDEX FOR SPECIAL NOTICE

Loan No. **9623**

This Deed of Trust, made this **19th** day of **September 2017**, among the Trustor, **Nariman S. Teymourian and Gail Suzanne Marie Teymourian, husband and wife as community property with right of survivorship** (herein "Borrower"), Old Republic Title Company (herein "Trustee"), and the Beneficiary, **Dakota Note, LLC, as to an undivided 100% interest** (herein "Lender").

The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

## GRANT IN TRUST

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property: **See attached Exhibit "A" Legal Description for APN: 070-201-070; 66 Barry Lane, Atherton, CA 94027. See addendum attached** ("Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

## THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:

(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **09/19/2017**, in the principal sum of U.S. **$2,200,000.00**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the **Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend** generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

  **1. Payments of Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and/or interest on any Future Advances secured by the Deed of Trust.

  **2. Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all

as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine, or at option of Lender the entire amount so collected or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the

Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust . Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security hereof or the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), **Dakota Note, LLC, c/o Paul Greenfield, 2597 Flagstone Dr., San Jose, CA 95132** or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State of California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not effect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require The Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

**17. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 57 of 411

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**18. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

**19. Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

**20. Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed or Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender of a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 58 of 411

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

| | | |
|---|---|---|
| _[signature]_ | | 9/27/17 |
| Borrower   Nariman S. Teymourian | | Date |
| _[signature]_ | | 09·27·17 |
| Borrower   Gail Suzanne Marie Teymourian | | Date |

## REQUEST FOR SPECIAL NOTICE OF DEFAULT AND FORECLOSURE
## UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

In accordance with Section 2924b of the Civil Code, Request is hereby made by the undersigned Trustor that a copy of any default and a copy of any notice of sale under deed of trust recorded in Book _____ , Page(s) _____ , Instrument No._____ , Official Records of County Recorder of _____ County, California. The original Trustor _____ and the original Trustee _____ and the original Beneficiary _____ Mail to: _____

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of   _San Mateo_ _____

On _Sept., 26, 2017_ _____ before me, _H. Lopez, Notary public_ _____
personally appeared _Nariman S Teymourian and Gail Suzanne Marie Teymourian_ _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _[signature]_ _____

H. LOPEZ
COMMISSION #2086216
NOTARY PUBLIC · CALIFORNIA
CONTRA COSTA COUNTY
MY COMMISSION EXPIRES
OCTOBER 18, 2018

(Seal)

## REQUEST FOR FULL RECONVEYANCE

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with **all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.**

| | | |
|---|---|---|
| _____ | _____ | _____ _____ |
| Signature of Beneficiary (the "LENDER") | Date | Signature of Beneficiary (the "LENDER")      Date |

When recorded, mail to

Att: _____

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

9623/2710 Middlefield 4th
Page 5 of 6

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 59 of 411

**Property Information for Loan Number: 9623**

**Property #1**
Address: 2710 Middlefield Road, Redwood City, CA 94064
County: San Mateo, State of California
Legal Description: See Attached Exhibit "A" Legal Description for APN: 054-113-130

**Property #2**
Address: 66 Barry Lane, Atherton, CA 94027
County: San Mateo, State of California
Legal Description: See Attached Exhibit "A" Legal Description for APN: 070-201-070

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 60
of 411

# EXHIBIT A

The land referred to is situated in the County of San Mateo, City of Atherton, State of California, and is described as follows:

Lot 13, as designated on the Map entitled "Atherton Woods Unit No. 2 Atherton San Mateo County, California," which Map was filed in the Office of the Recorder of the County of San Mateo, State of California on June 2, 1955 in Book 42 of Maps at Page 37.

APN: 070-201-070

# EXHIBIT F

Recording Requested By
First American Title
Recording Requested By
California Home Loans

3801-5626829

When Recorded Mail To
,California Home Loans
1346 The Alameda, Suite 7-119
San Jose, CA 95126

Title Order No.



**2018-009934**

2:37 pm 02/13/18 DT Fee: 110.00
Count of Pages 7
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

* $ R 0 0 0 2 5 1 8 2 7 5 $ *

Space above this line for recorder's use

# DEED OF TRUST

RECORDER: INDEX FOR SPECIAL NOTICE

Loan No. 9630

This Deed of Trust, made this **1st** day of **February 2018**, among the Trustor, **Nariman S. Teymourian and Gail Suzanne Marie Teymourian, husband and wife as community property with right of survivorship** (herein "Borrower"), Old Republic Title Company (herein "Trustee"), and the Beneficiary, Dakota Note, LLC, as to an Undivided 1,255,000/1,350,000 Interest and Natural Software Systems, Inc. Money Purchase Pension Plan, as to an Undivided 95,000/1,350,000 Interest (herein "Lender").
   The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

## GRANT IN TRUST

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property: **APN: 070-201-070, Legal Description: Lot 13, as designated on the Map entitled "Atherton Woods Unit No. 2 Atherton San Mateo County, California," which Map was filed in the office of the Recorder of the County of San Mateo, State of California on June 2, 1955 in Book 42 of Maps at Page 37,** which has the address of 66 Barry Lane, Atherton, CA 94027, (herein "Property Address"); **See attached addendum.**

   TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

## THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:

(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **02/01/2018**, in the principal sum of U.S. **$1,350,000.00**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

   Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the **Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend** generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:
   **1. Payments of Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and/or interest on any Future Advances secured by the Deed of Trust.
   **2. Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 63 of 411

yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine, or at option of Lender the entire amount so collected or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 64 of 411

Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust. Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security hereof or the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"). **c/o Paul Greenfield, 2597 Flagstone Drive San Jose, CA 95132** or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State of California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not effect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require The Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

**17. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 65 of 411

including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**18. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

**19. Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

**20. Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed or Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender of a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

| Borrower | Nariman S. Teymourian | Date 2/8/18 | Borrower | Gail Suzanne Marie Teymourian | Date 02-8-18 |

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 66 of 411

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _San Mateo_
On _Feb. 8, 2018_ before me, _Debra Lee Parker, Notary Public_,
personally appeared _Nariman S. Teymourian & Gail Suzanne_
_Marie Teymourian_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Debra Lee Parker_

DEBRA LEE PARKER
COMM. #2208587
Notary Public - California
Alameda County
My Comm. Expires Aug. 30, 2021

Signature _____                    (Seal)

---

## REQUEST FOR SPECIAL NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

In accordance with Section 2924b of the Civil Code. Request is hereby made by the undersigned Trustor that a copy of any default and a copy of any notice of sale under deed of trust recorded in Book _____, Page(s) _____, Instrument No._____, Official Records of County Recorder of _____ County, California. The original

Trustor _____ and the original
Trustee _____ and the original
Beneficiary _____
Mail to:

---

## REQUEST FOR FULL RECONVEYANCE

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all **other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust**, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____     _____        _____     _____
Signature of Beneficiary (the "LENDER")     Date        Signature of Beneficiary (the "LENDER")     Date

When recorded, mail to:

Att: _____

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

9630/Teymounan 5th
Page 5 of 6

**Property Information for Loan Number: 9630**

**Property #1**
Address: 2710 Middlefield Road, Redwood City, CA 94063
County: San Mateo, State of California
Legal Description: See Exhibit A (APN: 054-113-130) Legal Description Attached

**Property #2**
Address: 66 Barry Lane Atherton CA 94027
County: San Mateo, State of California
Legal Description: Lot 13, as designated on the Map entitled "Atherton Woods Unit No. 2 Atherton San Mateo County, California," which Map was filed in the office of the Recorder of the County of San Mateo, State of California on June 2, 1955 in Book 42 of Maps at Page 37.
APN: 070-201-070

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 68 of 411

**LEGAL DESCRIPTION**

Real property in the Town of Atherton, County of San Mateo, State of California, described as follows:

LOT 13, AS DESIGNATED ON THE MAP ENTITLED "ATHERTON WOODS UNIT NO. 2 ATHERTON SAN MATEO COUNTY, CALIFORNIA", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON JUNE 2, 1955 IN BOOK 42 OF MAPS AT PAGE 37.

JPN: 070-020-201-07A

APN: 070-201-070-3

# EXHIBIT G

**Recording Requested By**
California Home Loans

**When Recorded Mail To**
California Home Loans
1346 The Alameda, Suite 7-119
San Jose, CA 95126

Title Order No.



**2018-032666**

1:32 pm 04/27/18 DT Fee: 119.00
Count of Pages 10
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

*$R0002550380$*



Space above this line for recorder's use

# DEED OF TRUST

RECORDER: INDEX FOR SPECIAL NOTICE

Loan No. 9637

This Deed of Trust, made this **20th** day of **April 2018**, among the Trustor, **Nariman S. Teymourian and Gail Suzanne Marie Teymourian, husband and wife as community property with right of survivorship** (herein "Borrower"), **Old Republic Title Company** (herein "Trustee"), and the Beneficiary, **Dakota Note, LLC, as to an Undivided 2,560,000/4,550,000 Interest and Tanya Waltimyer, a married woman as her Sole and Separate property, as to an undivided 1,000,000/4,550,000 Interest and Jason Greenfield, a Married Man as his Sole and Separate Property, as to an Undivided 500,000/4,550,000 Interest and Natural Software Systems, Inc. Money Purchase Pension Plan, as to an Undivided 490,000/4,550,000 Interest** (herein "Lender").

The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

## GRANT IN TRUST

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property: **Lot 13, as designated on the Map entitled "Atherton Woods Unit No. 2 Atherton San Mateo County, California," which Map was filed in the office of the Recorder of the County of San Mateo, State of California on June 2, 1955 in Book 42 of Maps at Page 37: APN: 070-201-070-3, which has the property address 66 Barry Lane, Atherton, CA 94027 (herein "Property Address");**

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

## THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:

(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **04/20/2018**, in the principal sum of U.S. **$4,550,000.00**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the **Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend** generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

**1. Payments of Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and/or interest on any Future Advances secured by the Deed of Trust.

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

9637/Teymourian6
Page 1 of 7

**2. Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine, or at option of Lender the entire amount so collected or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property, and such insurance is not specifically required by Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the

condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust . Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security hereof or the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), c/o **Paul Greenfield, 2597 Flagstone Drive San Jose, CA 95132** or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State of California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not effect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require The Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 73 of 411

BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

**17. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**18. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

**19. Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

**20. Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed or Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender of a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust or provided by law shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 74 of 411

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

Borrower   Nariman S. Teymourian          Date          Borrower   Gail Suzanne Marie Teymourian          04-23-18
                                                                                                                 Date

## REQUEST FOR SPECIAL NOTICE OF DEFAULT AND FORECLOSURE
## UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

In accordance with Section 2924b of the Civil Code, Request is hereby made by the undersigned Trustor that a copy of any default and a copy of any notice of sale under deed of trust recorded in Book _____, Page(s) _____, Instrument No._____, Official Records of County Recorder of _____ County, California. The original Trustor _____ and the original Trustee _____ and the original Beneficiary _____ and the original Mail to: _____

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Dated:   4 | 23 | 18

State of California
County of San Mateo

On 4/23/18 before me, Laurie Ann Valencia, Notary Public,
personally appeared Nariman S Teymourian
Gail Suzanne Marie Teymourian
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

(Seal)

LAURIE ANN VALENCIA
Notary Public - California
San Mateo County
Commission # 2081157
My Comm. Expires Oct 7, 2018

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 75 of 411

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of California
County of San Mateo

On ___4/23/18___ before me, __Laurie Ann Valencia, notary public__, personally
appeared Nariman S Teymourian, Gail Suzanne Mims Teymourian who proved to me on
the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct

WITNESS my hand and official seal.

Signature _____                    (Seal)

LAURIE ANN VALENCIA
Notary Public – California
San Mateo County
Commission # 2081157
My Comm. Expires Oct 7, 2018

## REQUEST FOR FULL RECONVEYANCE

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all **other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and** this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____    _____    _____    _____
Signature of Beneficiary (the "LENDER")              Date         Signature of Beneficiary (the "LENDER")              Date

When recorded, mail to

Att: _____

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

**Property Information for Loan Number: 9637**

**Property #1**
Address: 2710 Middlefield Road, Redwood City, CA 94063
County: San Mateo, State of California
Legal Description: See Exhibit A (APN: 054-113-130-6) Legal Description Attached

**Property #2**
Address: 66 Barry Lane Atherton CA 94027
County: San Mateo, State of California
Legal Description: Lot 13, as designated on the Map entitled "Atherton Woods Unit No. 2 Atherton San Mateo County, California," which Map was filed in the office of the Recorder of the County of San Mateo, State of California on June 2, 1955 in Book 42 of Maps at Page 37.
APN: 070-201-070-3

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

# HAZARDOUS SUBSTANCE RIDER TO DEED OF TRUST

That certain Deed Of Trust dated **04/20/2018** between **2700 Middlefield Road, LLC, A Delaware Limited Liability Company and Nariman S. Teymourian and Gail Suzanne Marie Teymourian, husband and wife as community property with right of survivorship** therein and herein called "Trustor", **Old Republic Title Company**, therein called "Trustee" and **Dakota Note, LLC, as to an Undivided 2,560,000/4,550,000 Interest and Tanya Waltimyer, a married woman as her sole and separate property, as to an undivided 1,000,000/4,550,000 interest. and Jason Greenfield, a Married Man as his Sole and Separate Property, as to an Undivided 500,000/4,550,000 Interest and Natural Software Systems, Inc. Money Purchase Pension Plan, as to an Undivided 490,000/4,550,000 Interest** therein and herein called "Beneficiary" is supplemented in the following particulars only:

1. Trustor represents to Beneficiary that, to the best of Trustor's knowledge after due and diligent inquiry, no hazardous or toxic waste substances are being stored on the property or any adjacent property nor have such substances been stored or used on the property or any adjacent property prior to Trustor's ownership, possession or control of the property. Trustor agrees to provide written notice to Beneficiary immediately upon Trustor's becoming aware that the property or any adjacent property is being or has been contaminated with hazardous or toxic waste or substances. Trustor will not cause or permit any activities on the property that directly or indirectly could result in the property or any other property's being contaminated with hazardous or toxic waste or substances. For the purpose of this Deed of Trust, "hazardous" or "toxic waste" or "substances" means any substance or material defined or designated as hazardous or toxic wastes, hazardous or toxic material, a hazardous, toxic, or radioactive substance, or other similar term by any applicable federal, state, or local statute, regulation, or ordinance now or hereafter in effect.

2. Trustor shall promptly comply with all statutes, regulations, and ordinances, and with all orders, decrees, or judgments of governmental authorities or courts having jurisdiction, relating to the use, collection, storage, treatment, control, removal, or cleanup of hazardous toxic waste or substances in, on, or under the property or in, on, or under any adjacent property that becomes contaminated with hazardous or toxic waste or substances as a result of construction, operations, or other activities on, or the contamination of, the property, or incorporated in any improvements thereon, at Trustor's expense. Beneficiary may, but is not obliged to, enter upon the property and take such actions and incur such costs and expenses to effect such compliance as it deems advisable to protect its interest as Beneficiary; and whether or not Trustor has actual knowledge of the existence of hazardous or toxic waste or substances in, on, or under the property or any adjacent property as of the date hereof, Trustor shall reimburse Beneficiary on demand for the full amount of all costs and expenses incurred by Beneficiary prior to Beneficiary's acquiring title to the property through foreclosure or deed in lieu of foreclosure, in connection with such compliance activities.

**2700 Middlefield Road, LLC, a Delaware limited liability company**

| | | |
|---|---|---|
| Borrower _____ Nariman Teymourian, Manager | Date 4/23/18 | Borrower _____ Date |
| Borrower _____ Nariman S. Teymourian | Date 4/23/18 | Borrower _____ Gail Suzanne Marie Teymourian Date 04.23.18 |

Applied Business Software, Inc. (800) 833-3343
Hazardous Substance Rider to DOT

9637/Teymourian6
Page 1 of 1

## LEGAL DESCRIPTION

Real property in the Town of Atherton, County of San Mateo, State of California, described as follows:

LOT 13, AS DESIGNATED ON THE MAP ENTITLED "ATHERTON WOODS UNIT NO. 2 ATHERTON SAN MATEO COUNTY, CALIFORNIA", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON JUNE 2, 1955 IN BOOK 42 OF MAPS AT PAGE 37.

JPN: 070-013-132-01A

APN: 070-201-070-3

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 80
of 411

# EXHIBIT H

Recording Requested By
California Home Loans

When Recorded Mail To
California Home Loans
1346 The Alameda, Suite 7-119
San Jose, CA 95126

Title Order No.

**2019-001052**

9:59 am 01/07/19 DT Fee: 116.00
Count of Pages 9
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

\* $ R 0 0 0 2 6 4 9 9 6 1 $ \*

~~space above this line for recorder's use~~

# DEED OF TRUST

RECORDER: INDEX FOR SPECIAL NOTICE

Loan No. **9646**

   This Deed of Trust, made this **28th** day of **December, 2018**, among the Trustor, **Nariman S. Teymourian and Gail Suzanne Marie Teymourian, Husband and Wife, as Community Property with Right of Suvivorship** (herein "Borrower"), **Last Chance Finance, Inc.** (herein "Trustee"), and the Beneficiary, of of **Dakota Note, LLC, as to an Undivided 2,450,000/3,000,000 Interest and Natural Software Systems, Inc. Money Purchase Pension Plan, as to an Undivided 550,000/3,000,000 Interest** (herein "Lender").

   The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

## GRANT IN TRUST

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the county of **Santa Clara**, State of California:

**Legal Description: Lot 13, as designated on the Map entitled "Atherton Woods Unit No. 2 Atherton San Mateo County, California," which Map was filed in the office of the Recorder of the County of San Mateo, State of California on June 2, 1955 in Book 42 of Maps at Page 37. APN: 070-201-070; JPN: 070-020-201-07A; which has the address of 66 Barry Lane,Atherton, CA 94027. See Attached Addendum.**

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

## THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:

(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **12/28/2018**, in the principal sum of U.S. **$3,000,000** with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

   Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the **Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend** generally the title to the Property against all claims and demands, subject to encumbrances of record.

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 82 of 411

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

**1. Payments of Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and/or interest on any Future Advances secured by the Deed of Trust.

**2. Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine, or at option of Lender the entire amount so collected or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 83 of 411

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust . Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby. Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security hereof or the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently. independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), **c/o Paul Greenfield, 2597 Flagstone Drive San Jose, CA 95132** or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State of California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not effect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require The Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 84 of 411

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

**17. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**18. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

**19. Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

**20. Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed or Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender of a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, the Lender does not waive its right either to

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 85 of 411

require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

Borrower    Narimen S. Teymourian     Date     1-3-19

Borrower    Gail Suzanne Marie Teymourian     Date     01-03-19

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____

On _____ before me, _____,

personally appeared _____

_____

_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*SEE ATTACHED*

Signature _____

(Seal)

## REQUEST FOR SPECIAL NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

In accordance with Section 2924b of the Civil Code, Request is hereby made by the undersigned Trustor that a copy of any default and a copy of any notice of sale under deed of trust recorded in Book _____, Page(s) _____, Instrument No. _____, Official Records of County Recorder of _____ County, California. The original

Trustor _____ and the original

Trustee _____ and the original

Beneficiary _____

Mail to: _____

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ San Mateo _____ )

On __1/3/2019__ before me, __Rawan Habash, Notary Public__
(insert name and title of the officer)

personally appeared __Nariman Teymourian and Gail Suzanne Marie Teymourian__,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

RAWAN HABASH
Commission # 2114125
Notary Public - California
San Francisco County
My Comm. Expires Jun 5, 2019

Signature _Rawan Habash_ **(Seal)**

## REQUEST FOR FULL RECONVEYANCE

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all **other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and** this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____     _____          _____     _____
Signature of Beneficiary (the "LENDER")       Date            Signature of Beneficiary (the "LENDER")       Date

When recorded, mail to

Att: _____

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

9648/Baytech Drive
Page 6 of 6

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 88 of 411

**Exhibit "A"**

**Legal Description**

A.P.N.: 070-201-070-3

Real property in the Town of Atherton, County of San Mateo, State of California, described as follows:

LOT 13, AS DESIGNATED ON THE MAP ENTITLED "ATHERTON WOODS UNIT NO. 2 ATHERTON SAN MATEO COUNTY, CALIFORNIA", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON JUNE 2, 1955 IN BOOK 42 OF MAPS AT PAGE 37.

JPN: 070-020-201-07A

**Property Information for Loan Number: 9646**

**Property #1**
Address: 110 Baytech Drive San Jose CA 95134
County: Santa Clara, State of California
Legal Description: PARCEL ONE:

PARCEL A, AS SHOWN ON THAT PARCEL MAP FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF
SANTA CLARA, STATE OF CALIFORNIA ON OCTOBER 16, 2018, IN BOOK 918 OF MAPS PAGE(S) 25-26.

PARCEL TWO:

AN EASMENT FOR PRIVATE INGRESS, EGRESS ("PIEE") FOR THE BENEFIT OF PARCEL A ABOVE THROUGH PARCEL
B AND SAID PURPOSES AS SHOWN ON THAT CERTAIN PARCEL MAP FILED IN THE OFFICE OF THE RECORDER OF
THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA ON OCTOBER 16, 2018, IN BOOK 918 OF MAPS PAGE(S) 25-
26.

APN: 015-30-107 formerly known as APN: 015-30-093 (PORTION)

**Property #2**
Address: 2710 Middlefield Road, Redwood City CA 94063
County: San Mateo, State of California
Legal Description: See Attached Legal Description

JPN: 054-011-111-21.01A
APN: 054-113-130-6

**Property #3**
Address: 66 Barry Lane, Atherton CA 94027
County: San Mateo, State of California
Legal Description: Lot 13, as designated on the Map entitled "Atherton Woods Unit No. 2 Atherton San Mateo County, California,"
which Map was filed in the office of the Recorder of the County of San Mateo, State of California on June 2, 1955 in Book 42 of
Maps at Page 37.
APN: 070-201-070-3

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 90
of 411

# EXHIBIT I

**2019-023434**

1:27 pm 04/02/19 DT AS FF AG Fee: 359.00
Count of Pages 23
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder



\* $ R 0 0 0 2 6 8 1 9 7 6 5 $ \*

When Recorded Mail To
Dakota Note, LLC
3916 N. Potsdam Avenue, Suite 8047
Sioux Falls, SD 57104

APN: 070-201-070
Escrow Number: 3809-5892041
Loan Number: 2019-0304

*- See Cap Reviewed -*

# DEED OF TRUST

ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH CALIFORNIA COMMERCIAL CODE SECTION 9502

THIS IS THE THIRD OF THREE DEEDS OF TRUST ALL OF THE SAME DATE SECURED BY ONE PROMISSORY NOTE ALSO OF THE SAME DATE

    **THIS DEED OF TRUST** (herein "Instrument") is made this date, **March 21, 2019**, among the Trustor/Grantor, **Nariman S. Teymourian and Gail Suzanne Marie Teymourian, husband and wife, as Community Property with Right of Survivorship**, whose address is **66 Barry Lane, Atherton, California 94027** (herein "Borrower"), **First American Title Company** (herein "Trustee"), and the Beneficiary **Dakota Note, LLC** whose address is **3916 N. Potsdam Avenue, Suite 8047, Sioux Falls, SD 57104** (herein "Lender").

    **BORROWER**, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in **San Mateo County**, State of California, which has the address of **66 Barry Lane, Atherton, California 94027**("Property Address"), described as follows:

        **See Exhibit "A" attached hereto and incorporated herein by reference.**

    **TOGETHER** with all buildings, improvements and tenements now or hereafter erected on the property, and all heretofore or hereafter vacated alleys and streets abutting the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water and water rights, and water stock appurtenant to the property, and all fixtures now or hereinafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Instrument; all contract rights pursuant to any purchase and sale agreements or any other agreement, development and use rights, governmental permits and licenses, applications, architectural and engineering plans, specifications and drawings, as built drawings, chattel paper, instruments, documents, notes, drafts and letters of credit (other than letters of credit in favor of Lender), which arise from or relate to construction on the property or to any business now or later to be conducted on it, or to the real property generally; together with and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

    **TO SECURE TO LENDER** (a) the repayment of the indebtedness evidenced by Borrower's note dated **March 21, 2019** (herein "Note") in the principal sum of **U.S. One Million and 00/100 Dollars ($1,000,000.00)**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower

by Lender when evidenced by promissory notes stating that said notes are secured hereby (herein "Future Advances"); (c) performance of each and every agreement, obligation, covenant and condition made by or imposed upon Borrower under this Deed of Trust(including, without limitation, those contained in any document incorporated by reference herein), and all supplements, amendments, modifications, extensions and renewals thereof; and in addition this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions (including but not limited to renewal fees for each extension granted), modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

## UNIFORM COVENANTS.

### Borrower and Lender covenant and agree as follows:

**1. PAYMENT OF PRINCIPAL AND INTEREST**. Borrower shall promptly pay when due the principal and/or interest on the indebtedness evidenced by the Promissory Note, payable by Borrower to the order of Lender in the principal amount of **One Million and 00/100 Dollars ($1,000,000.00)**, evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Promissory Note and any Future Advances secured by this Deed of Trust.

**2. FUNDS FOR TAXES, INSURANCE AND OTHER CHARGES.** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or Deed of Trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

**IF A HOLDBACK AGREEMENT IS USED** Lender may, in its sole discretion, apply any amounts held by Lender in the Holdback Account (as defined in the Construction Holdback Agreement) to payment of taxes, assessments, insurance premiums and ground rents as they fall due.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. APPLICATION OF PAYMENTS.** Unless applicable law provides otherwise, all payments received by Lender from Borrower under the Note and as stated herein shall be applied by Lender in the following order of priority: (i) any late charges (ii) amounts payable to Lender by Borrower, if applicable; (iii) interest payable on the Note; (iv) principal of the Note; (v) interest payable on advances made pursuant hereof; (vi) principal of advances made pursuant hereof; (vii) interest payable on any Future Advance, provided that if more than one Future Advance is outstanding, Lender may apply payments received among the amounts of interest payable on the Future Advances in such order as Lender, in Lender's sole discretion, may determine; (viii) principal of any Future Advance, provided that if more than one Future Advance is outstanding, Lender may apply payments received among the principal balances of the Future Advances in such order as Lender, in Lender's sole discretion, may determine; and (ix) any other sums secured by this Deed of Trust in such order as Lender, at Lender's option, may determine; provided, however, that Lender may, at Lender's option, apply any sums payable pursuant hereof prior to interest on and principal of the Note, but such application shall not otherwise affect the order of priority or application specified in this paragraph 3.

**4. CHARGES; LIENS.** Borrower shall perform all of Borrower's obligations under any mortgage, Deed of Trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due Borrower shall promptly discharge any lien which has, or may have, priority over or equality with, the lien of this Instrument, and Borrower shall pay, when due, the claims of all persons supplying labor or materials to or in connection with the Property. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any. Without Lender's prior written permission, Borrower shall not allow any lien inferior to this Deed of Trust to be perfected against the Property.

**5. INSURANCE. 5.1 Casualty Insurance.** Borrower shall at all times keep the Mortgaged Property insured for the benefit of Trustee and Lender as follows, despite Governmental Requirements that may detrimentally affect Borrower's ability to obtain or may materially increase the cost of such insurance coverage:

5.1.1. Against damage or loss by fire and such other hazards (including lightning, windstorm, hail, explosion, riot, acts of striking employees, civil commotion, vandalism, malicious mischief, aircraft, vehicle, and smoke) as are covered by the broadest form of extended coverage endorsement available from time to time, in an amount not less than the full insurable value (as defined in paragraph 5.9) of the Mortgaged Property, with a deductible amount not to exceed an amount satisfactory to Lender;

5.1.2. Rent loss or business interruption or use and occupancy insurance on such basis and in such amounts and with such deductibles as are satisfactory to Lender;

5.1.3. Against damage or loss by flood if the Land is located in an area identified by the Secretary of Housing and Urban Development or any successor or other appropriate authority (governmental or private) as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Act of 1968 or the Flood Disaster Protection Act of 1973, as amended, modified, supplemented, or replaced from time to time, on such basis and in such amounts as Lender may require;

5.1.4. Against damage or loss from (a) sprinkler system leakage and (b) boilers, boiler tanks, heating and air conditioning equipment, pressure vessels, auxiliary piping, and similar apparatus, on such basis and in such amounts as Lender may require;

5.1.5. During any alteration, construction, or replacement of the Improvements, or any substantial portion of it, a Builder's All Risk policy with extended coverage with course of construction and completed value endorsements, for an amount at least equal to the full insurable value of the Improvements, and workers'

compensation, in statutory amounts, with provision for replacement with the coverage described in paragraph 5.1, without gaps or lapsed coverage, for any completed portion of the Improvements; and

5.1.6. Against damage or loss by earthquake, in an amount and with a deductible satisfactory to Lender, if such insurance is required by Lender in the exercise of its business judgment in light of the commercial real estate practices existing at the time the insurance is issued and in the County where the Land is located.

**5.2    Liability Insurance**. Borrower shall procure and maintain workers' compensation insurance for Borrower's employees and comprehensive general liability insurance covering Borrower, Trustee, and Lender against claims for bodily injury or death or for damage occurring in, on, about, or resulting from the Mortgaged Property, or any street, drive, sidewalk, curb, or passageway adjacent to it, in standard form and with such insurance company or companies and in an amount of at least $1,000,000.00 combined single limit, or such greater amount as Lender may require, which insurance shall include completed operations, product liability, and blanket contractual liability coverage that insures contractual liability under the indemnifications set forth in this Deed of Trust and the Loan Documents (but such coverage or its amount shall in no way limit such indemnification).

**5.3. Other Insurance**. Borrower shall procure and maintain such other insurance or such additional amounts of insurance, covering Borrower or the Mortgaged Property, as (a) may be required by the terms of any construction contract for the Improvements or by any Governmental Authority, (b) may be specified in any other Loan Documents, or (c) may be required by Lender from time to time.

**5.4. Form of Policies**. All insurance required under this paragraph 5 shall be fully paid for and nonassessable. The policies shall contain such provisions, endorsements, and expiration dates as Lender from time to time reasonably requests and shall be in such form and amounts, and be issued by such insurance companies doing business in the State of California, as Lender shall approve in Lender's sole and absolute discretion. Unless otherwise expressly approved in writing by Lender, each insurer shall have a Best Rating of Class A, Category VIII, or better. All policies shall (a) contain a waiver of subrogation endorsement; (b) provide that the policy will not lapse or be canceled, amended, or materially altered (including by reduction in the scope or limits of coverage) without at least 30 days prior written notice to Lender; (c) with the exception of the comprehensive general liability policy, contain a mortgagee's endorsement (438 BFU Endorsement or equivalent), and name Lender and Trustee as insureds; and (d) include such deductibles as Lender may approve. If a policy required under this paragraph contains a co-insurance or overage clause, the policy shall include a stipulated value or agreed amount endorsement acceptable to Lender.

**5.5. Duplicate Originals or Certificates**. Duplicate original policies evidencing the insurance required under this paragraph 5 and any additional insurance that may be purchased on the Mortgaged Property by or on behalf of Borrower shall be deposited with and held by Lender and, in addition, Borrower shall deliver to Lender (a) receipts evidencing payment of all premiums on the policies and (b) duplicate original renewal policies or a binder with evidence satisfactory to Lender of payment of all premiums at least 30 days before the policy expires. In lieu of the duplicate original policies to be delivered to Lender under this paragraph 5.5, Borrower may deliver an underlier of any blanket policy, and Borrower may also deliver original certificates from the issuing insurance company, evidencing that such policies are in full force and effect and containing information that, in Lender's reasonable judgment, is sufficient to allow Lender to ascertain whether such policies comply with the requirements of this paragraph.

**5.6. Increased Coverage**. If Lender determines that the limits of any insurance carried by Borrower are inadequate or that additional coverage is required, Borrower shall, within 10 days after written notice from Lender, procure such additional coverage as Lender may require in Lender's sole and absolute discretion.

**5.7. No Separate Insurance**. Borrower shall not carry separate or additional insurance concurrent in form or contributing in the event of loss with that required under this paragraph 5 unless endorsed in favor of Trustee and Lender as required by this paragraph and otherwise approved by Lender in all respects.

**5.8. Transfer of Title**. In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Mortgaged Property in extinguishment, in whole or in part, of the Obligations and the Indebtedness, all right, title, and interest of Borrower in and to all insurance policies required under this paragraph

5 or otherwise then in force with respect to the Mortgaged Property and all proceeds payable under, and unearned premiums on, such policies shall immediately vest in the purchaser or other transferee of the Mortgaged Property.

**5.9**. **Replacement Cost**. For purposes of this paragraph 5, the term "full insurable value" means the actual cost of replacing the Mortgaged Property in question, without allowance for depreciation, as calculated from time to time (but not more often than once every calendar year) by the insurance company or companies holding such insurance or, at Lender's request, by appraisal made by an appraiser, engineer, architect, or contractor proposed by Borrower and approved by said insurance company or companies and Lender. Borrower shall pay the cost of such appraisal.

**5.10**. **Approval Not Warranty**. No approval by Lender of any insurer may be construed to be a representation, certification, or warranty of its solvency and no approval by Lender as to the amount, type, or form of any insurance may be construed to be a representation, certification, or warranty of its sufficiency.

**5.11**. **Lender's Right to Obtain**. Borrower shall deliver to Lender original policies or certificates evidencing such insurance at least 30 days before the existing policies expire. If any such policy is not so delivered to Lender or if any such policy is canceled, whether or not Lender has the policy in its possession, and no reinstatement or replacement policy is received before termination of insurance, Lender, without notice to or demand on Borrower, may (but is not obligated to) obtain such insurance insuring only Lender and Trustee with such company as Lender may deem satisfactory, and pay the premium for such policies, and the amount of any premium so paid shall be charged to and promptly paid by Borrower or, at Lender's option, may be added to the Indebtedness. Borrower acknowledges that, if Lender obtains insurance, it is for the sole benefit of Lender and Trustee, and Borrower shall not rely on any insurance obtained by Lender to protect Borrower in any way.

**5.12**. **Duty to Restore After Casualty**. If any act or occurrence of any kind or nature (including any casualty for which insurance was not obtained or obtainable) results in damage to or loss or destruction of the Mortgaged Property, Borrower shall immediately give notice of such loss or damage to Lender and, if Lender so instructs, shall promptly, at Borrower's sole cost and expense, regardless of whether any insurance proceeds will be sufficient for the purpose, commence and continue diligently to completion to restore, repair, replace, and rebuild the Mortgaged Property as nearly as possible to its value, condition, and character immediately before the damage, loss, or destruction.

**6. PRESERVATION AND MAINTENANCE OF PROPERTY; LEASEHOLDS.** Borrower (i) shall not commit waste or permit impairment or deterioration of the Property, (ii) shall not abandon the Property, (iii) shall restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, in the event of any damage, injury or loss thereto, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair, (iv) shall keep the Property, including improvements, fixtures, equipment, machinery and appliances thereon, in good repair and shall replace fixtures, equipment, machinery and appliances on the Property when necessary to keep such items in good repair, (v) shall comply with all laws, ordinances, regulations and requirements of any governmental body which are applicable to the Property, (vi) shall provide, if it is a multifamily dwelling, for professional management of the Property by a residential rental property manager satisfactory to Lender pursuant to a contract approved by Lender in writing, unless such requirement shall be waived by Lender in writing, (vii) shall generally operate and maintain the Property in a manner to ensure maximum rentals, if it is a multifamily dwelling, and (viii) shall give notice in writing to Lender of and, unless otherwise directed in writing by Lender, appear in and defend any action or proceeding purporting to affect the Property, the security of this Deed of Trust or the rights or powers of Lender. Neither Borrower nor any tenant or other person shall remove, demolish or alter any improvement now existing or hereafter erected on the Property or any fixture, equipment, machinery or appliance in or on the Property except when incident to the replacement of fixtures, equipment, machinery and appliances with items of like kind.

If this Deed of Trust is on a leasehold, Borrower (i) shall comply with the provisions of the ground lease, (ii) shall give immediate written notice to Lender of any default by lessor under the ground lease or of any notice received by Borrower from such lessor of any default under the ground lease by Borrower, (iii) shall exercise any option to renew or extend the ground lease and give written confirmation thereof to Lender within thirty days after such option becomes exercisable, (iv) shall give immediate written notice to Lender of the commencement of any remedial proceedings under the ground lease by any party thereto and, if required by Lender, shall permit Lender

as Borrower's attorney-in-fact to control and act for Borrower in any such remedial proceedings and (v) shall within thirty days after request by Lender obtain from the lessor under the ground lease and deliver to Lender the lessor's estoppel certificate required thereunder, if any. Borrower hereby expressly transfers and assigns to Lender the benefit of all covenants contained in the ground lease, whether or not such covenants run with the land, but Lender shall have no liability with respect to such covenants nor with respect to any other covenants contained in the ground lease.

Borrower shall not surrender the leasehold estate and interests herein conveyed nor terminate or cancel the ground lease creating said estate and interests, and Borrower shall not, without the express written consent of Lender, alter or amend said ground lease. Borrower covenants and agrees that there shall not be a merger of the ground lease, or of the leasehold estate created thereby, with the fee estate covered by the ground lease by reason of said leasehold estate or said fee estate, or any part of either, coming into common ownership, unless Lender shall consent in writing to such merger; if Borrower shall acquire such fee estate, then this Deed of Trust shall simultaneously and without further action be spread so as to become a lien on such fee estate.

**7. USE OF PROPERTY.** Unless required by applicable law or unless Lender has otherwise agreed in writing, Borrower shall not allow changes in the use for which all or any part of the Property was intended at the time this Deed of Trust was executed. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Property without Lender's prior written consent.

**8. PROTECTION OF LENDER'S SECURITY.** If Borrower fails to perform any of the covenants and agreements contained in this Instrument, or if any action or proceeding is commenced which affects Lender's interest in the Property or title hereto or the interest of Lender therein, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such action as Lender deems necessary, in its sole discretion, to protect Lender's interest, including, but not limited to, (i) disbursement of attorney's fees, (ii) entry upon the Property to make repairs, (iii) procurement of satisfactory insurance as provided hereof, and (iv) if this Deed of Trust is on a leasehold, exercise of any option to renew or extend the ground lease on behalf of Borrower and the curing of any default of Borrower in the terms and conditions of the ground lease.

Any amounts disbursed by Lender pursuant to this paragraph 8, with interest thereon, shall become additional indebtedness of Borrower secured by this Instrument. Unless Borrower and Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from Borrower of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law. Borrower hereby covenants and agrees that Lender shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the indebtedness secured hereby. Nothing contained in this paragraph 8 shall require Lender to incur any expense or take any action hereunder.

**9. INSPECTION.** Lender may make or cause to be made reasonable entries upon and inspections of the Property. In addition to any rights Lender may have under California Civil Code §2929.5, Lender may make, or authorize other persons, including, but not limited to, appraisers and prospective purchasers at any foreclosure sale commenced by Lender, to enter on or inspect the Mortgaged Property at reasonable times and for reasonable durations.

**10. BOOKS AND RECORDS.** Borrower shall keep and maintain at all times at Borrower's address stated below, or at such other place as Lender may approve in writing, complete and accurate books of account and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases and other instruments which affect the Property. Such books, records, contracts, leases and other instruments shall be subject to examination and inspection at any reasonable time by Lender. Upon Lender's request, Borrower shall furnish to Lender, within one hundred twenty days after the end of each fiscal year of Borrower, a balance sheet, a statement of income and expenses of the Property and a statement of changes in financial position, each in reasonable detail and certified by Borrower and, if Lender shall require, by an independent certified public accountant. Borrower shall furnish, together with the foregoing financial statements and at any other time upon Lender's request, a rent schedule for the Property, certified by Borrower, showing the name of each tenant, and for

each tenant, the space occupied, the lease expiration date, the rent payable and the rent paid.

## 11. CONDEMNATION AND INSURANCE PROCEEDS.

**11.1. Assignment to Lender.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of or damage or injury to the Mortgaged Property, or any part of it, or for conveyance in lieu of condemnation, are assigned to and shall be paid to Lender, regardless of whether Lender's security is impaired. All causes of action, whether accrued before or after the date of this Deed of Trust, of all types for damages or injury to the Mortgaged Property or any part of it, or in connection with any transaction financed by funds lent to Borrower by Lender and secured by this Deed of Trust, or in connection with or affecting the Mortgaged Property or any part of it, including, without limitation, causes of action arising in tort or contract or in equity, are assigned to Lender as additional security, and the proceeds shall be paid to Lender. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of such action. Borrower shall notify Lender in writing immediately on obtaining knowledge of any casualty damage to the Mortgaged Property or damage in any other manner in excess of $2,000.00 or knowledge of the institution of any proceeding relating to condemnation or other taking of or damage or injury to all or any portion of the Mortgaged Property. Lender, in its sole and absolute discretion, may participate in any such proceedings and may join Borrower in adjusting any loss covered by insurance. Borrower covenants and agrees with Lender, at Lender's request, to make, execute, and deliver, at Borrower's expense, any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award or awards, causes of action, or claims of damages or proceeds to Lender free, clear, and discharged of any and all encumbrances of any kind or nature.

**11.2. Insurance Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Lender may become entitled with respect to the Mortgaged Property if any damage or injury occurs to the Mortgaged Property, other than by a partial condemnation or other partial taking of the Mortgaged Property, shall be paid over to Lender and shall be applied first toward reimbursement of all costs and expenses of Lender in connection with their recovery and disbursement, and shall then be applied as follows:

**11.2.1.** Lender shall consent to the application of such payments to the restoration of the Mortgaged Property so damaged only if Borrower has met all the following conditions (a breach of one of which shall constitute a default under this Deed of Trust, the Note, and any Loan Documents): (a) Borrower existing Leases affected in any way by such damage will continue in full force and effect; (c) Lender is satisfied that the insurance or award proceeds, plus any sums added by Borrower, shall be sufficient to fully restore and rebuild the Mortgaged Property under then current Governmental Requirements; (d) within 60 days after the damage to the Mortgaged Property, Borrower presents to Lender a restoration plan satisfactory to Lender and any local planning department, which includes cost estimates and schedules; (e) construction and completion of restoration and rebuilding of the Mortgaged Property shall be completed in accordance with plans and specifications and drawings submitted to Lender within 30 days after receipt by Lender of the restoration plan and thereafter approved by Lender, which plans, specifications, and drawings shall not be substantially modified, changed, or revised without Lender's prior written consent; (f) within 3 months after such damage, Borrower and a licensed contractor satisfactory to Lender enter into a fixed price or guaranteed maximum price contract satisfactory to Lender, providing for complete restoration in accordance with such restoration plan for an amount not to exceed the amount of funds held or to be held by Lender; (g) all restoration of the Improvements so damaged or destroyed shall be made with reasonable promptness and shall be of a value at least equal to the value of the Improvements so damaged or destroyed before such damage or destruction; (h) Lender reasonably determines that there is an identified source (whether from income from the Mortgaged Property, rental loss insurance, or another source) sufficient to pay all debt service and operating expenses of the Mortgaged Property during its restoration as required above; and (i) any and all funds that are made available for restoration and rebuilding under this paragraph 11 shall be disbursed, at Lender's sole and absolute discretion to Lender, through Lender, the Trustee, or a title insurance or trust company satisfactory to Lender, in accordance with standard construction lending practices, including a reasonable fee payable to Lender from such funds and, if Lender requests, mechanics' lien waivers and title insurance date-downs, and the provision

of payment and performance bonds by Borrower, or in any other manner approved by Lender in Lender's sole and absolute discretion; or

**11.2.2.** If fewer than all conditions (a) through (i) in paragraph 11.2.1 are satisfied, then such payments shall be applied in the sole and absolute discretion of Lender (a) to the payment or prepayment, with any applicable prepayment premium, of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, or (b) to the reimbursement of Borrower's expenses incurred in the rebuilding and restoration of the Mortgaged Property. If Lender elects under this paragraph 11.2.2 to make any funds available to restore the Mortgaged Property, then all of conditions (a) through (i) in paragraph 11.2.1 shall apply, except for such conditions that Lender, in its sole and absolute discretion, may waive.

**11.3 Material Loss Not Covered**. If any material part of the Mortgaged Property is damaged or destroyed and the loss, measured by the replacement cost of the Improvements according to then current Governmental Requirements, is not adequately covered by insurance proceeds collected or in the process of collection, Borrower shall deposit with Lender, within 30 days after Lender's request, the amount of the loss not so covered.

**11.4. Total Condemnation Payments**. All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a total condemnation or other total taking of the Mortgaged Property shall be paid over to Lender and shall be applied first to reimbursement of all Lender's costs and expenses in connection with their recovery, and shall then be applied to the payment of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, until the Indebtedness secured by this Deed of Trust has been paid and satisfied in full. Any surplus remaining after payment and satisfaction of the Indebtedness secured by this Deed of Trust shall be paid to Borrower as its interest may then appear.

**11.5. Partial Condemnation Payments**. All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments ("funds") that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a partial condemnation or other partial taking of the Mortgaged Property, unless Borrower and Lender otherwise agree in writing, shall be divided into two portions, one equal to the principal balance of the Note at the time of receipt of such funds and the other equal to the amount by which such funds exceed the principal balance of the Note at the time of receipt of such funds. The first such portion shall be applied to the sums secured by this Deed of Trust, whether or not then due, including but not limited to principal, accrued interest, and advances, and in such order or combination as Lender may determine, with the balance of the funds paid to Borrower.

**11.6. No Cure or Waiver of Default**. Any application of such amounts or any portion of it to any Indebtedness secured by this Deed of Trust shall not be construed to cure or waive any default or notice of default under this Deed of Trust or invalidate any act done under any such default or notice.

**12. BORROWER AND LIEN NOT RELEASED.** From time to time, Lender may, at Lender's option, without giving notice to or obtaining the consent of Borrower, Borrower's successors or assigns or of any junior lienholder or guarantors, without liability on Lender's part and notwithstanding Borrower's breach of any covenant or agreement of Borrower in this Instrument, extend the time for payment of said indebtedness or any part thereof, reduce the payments thereon, release anyone liable on any of said indebtedness, accept a renewal note or notes therefor, modify the terms and time of payment of said indebtedness, release from the lien of this Deed of Trust any part of the Property, take or release other or additional security, reconvey any part of the Property, consent to any map or plan of the Property, consent to the granting of any easement, join in any extension or subordination agreement, and agree in writing with Borrower to modify the rate of interest or period of amortization of the Note or change the amount of the monthly installments payable thereunder. Any actions taken by Lender pursuant to the terms of this paragraph 12 shall not affect the obligation of Borrower or Borrower's successors or assigns to pay the sums secured by this Deed of Trust and to observe the covenants of Borrower contained herein, shall not affect the guaranty of any person, corporation, partnership or other entity for payment of the indebtedness secured hereby, and shall not affect the lien or priority of lien hereof on the Property. Borrower shall pay Lender a reasonable service charge, together with such title insurance premiums and attorney's fees as may be incurred at Lender's option, for any such action if taken at Borrower's request.

**13. FORBEARANCE BY LENDER NOT A WAIVER.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise

of any right or remedy. The acceptance by Lender of payment of any sum secured by this Deed of Trust after the due date of such payment shall not be a waiver of Lender's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Instrument, nor shall Lender's receipt of any awards, proceeds or damages under paragraphs hereof operate to cure or waive Borrower's default in payment of sums secured by this Instrument.

## 14. FINANCIAL STATEMENTS; ESTOPPEL CERTIFICATES.

**14.1. Borrower's Financial Statements.** On receipt of Lender's written request and without expense to Lender, Borrower shall furnish to Lender (a) an annual statement of the operation of the Mortgaged Property prepared and certified by Borrower, showing in reasonable detail satisfactory to Lender total Rents received and total expenses together with an annual balance sheet and profit and loss statement, within 90 days after the close of each fiscal year of Borrower, beginning with the fiscal year first ending after the date of recordation of this Deed of Trust; (b) within 30 days after the end of each calendar quarter (March 31, June 30, September 30, December 31) interim statements of the operation of the Mortgaged Property showing in reasonable detail satisfactory to Lender total Rents and other income and receipts received and total expenses for the previous quarter, certified by Borrower; and (c) copies of Borrower's annual state and federal income tax returns within 30 days after filing them. Borrower shall keep accurate books and records, and allow Lender, its representatives and agents, on notice, at any time during normal business hours, access to such books and records regarding acquisition, construction, development, an operations of the Mortgaged Property, including any supporting or related vouchers or papers, shall allow Lender to make extracts or copies of any such papers, and shall furnish to Lender and its agents convenient facilities for the audit of any such statements, books, and records.

**14.2. Recordkeeping.** Borrower shall keep adequate records and books of account in accordance with generally accepted accounting principles and practices and shall permit Lender, by its agents, accountants, and attorneys, to examine Borrower's records and books of account and to discuss the affairs, finances, and accounts of Borrower with the officers of Borrower, at such reasonable times as Lender may request.

**14.3. Guarantors' Financial Statements.** Except to the extent already required by paragraph 14.1, Borrower, its controlling shareholders, and all guarantors of the Indebtedness, if any, shall deliver to Lender with reasonable promptness after the close of their respective fiscal years a balance sheet and profit and loss statement, prepared by the principal of the Borrower or an independent certified public accountant satisfactory to Lender, setting forth in each case, in comparative form, figures for the preceding year, which statements shall be accompanied by the unqualified opinion of the principal of the Borrower or such accountant as to their accuracy. Throughout the term of this Deed of Trust, Borrower and any guarantor shall deliver, with reasonable promptness, to Lender such other information with respect to Borrower or guarantor as Lender may from time to time request. All financial statements of Borrower or guarantor shall be prepared using reasonably accepted accounting practices applied on a consistent basis and shall be delivered in duplicate. Documents and information submitted by Borrower to Lender are submitted confidentially, and Lender shall not disclose them to third parties and shall limit access to them to what is necessary to service the loan, accomplish the normal administrative, accounting, tax-reporting, and other necessary functions, to sell all or any part of the loan and to report such information as required to the Comptroller of the Currency, the Federal Deposit Insurance Corporation, the Internal Revenue Service, and similar entities.

**14.4 Estoppel Certificates.** Within 10 days after Lender's request for such information, Borrower shall execute and deliver to Lender, and to any third party designated by Lender, in recordable form, a certificate of the principal financial or accounting officer of Borrower, dated within 3 days after delivery of such statements, or the date of such request, as the case may be, reciting that the Loan Documents are unmodified and in full force and effect, or that the Loan Documents are in full force and effect as modified and specifying all modifications asserted by Borrower. Such certificate shall also recite the amount of the Indebtedness and cover other matters with respect to the Indebtedness or Obligations as Lender may reasonably require, the date(s) through which payments due on the Indebtedness have been paid and the amount(s) of any payments previously made on the Indebtedness. The certificate shall include a detailed statement of any right of setoff, counterclaim, or other defense that Borrower contends exists against the Indebtedness or the Obligations; a statement that such person knows of no Event of

Default or prospective Event of Default that has occurred and is continuing, or, if any Event of Default or prospective Event of Default has occurred and is continuing, a statement specifying the nature and period of its existence and what action Borrower has taken or proposes to take with respect to such matter; and, except as otherwise specified, a statement that Borrower has fulfilled all Obligations that are required to be fulfilled on or before the date of such certificate.

**14.5. Failure to Deliver Estoppel Certificate**. If Borrower fails to execute and deliver the certificate required by paragraph 14.4 within such 10-day period, (a) the Loan Documents shall, as to Borrower, conclusively be deemed to be either in full force and effect, without modification, or in full force and effect, modified in the manner and to the extent specified by Lender, whichever Lender reasonably and in good faith may represent; (b) the Indebtedness shall, as to Borrower, conclusively be deemed to be in the amount specified by Lender and no setoffs, counterclaims, or other defenses exist against the Indebtedness; and (c) Borrower shall conclusively be deemed to have irrevocably constituted and appointed Lender as Borrower's special attorney-in-fact to execute and deliver such certificate to any third party.

**14.6. Reliance on Estoppel Certificate**. Borrower and Lender expressly agree that any certificate executed and delivered by Borrower, or any representation in lieu of a certificate made by Lender under paragraph 14.5, may be relied on by any prospective purchaser or any prospective assignee of any interest of Lender in the Note and other Indebtedness secured by this Deed of Trust or in the Mortgaged Property, and by any other person, without independent investigation or examination, to verify the accuracy, reasonableness, or good faith of the recitals in the certificate or representation.

**14.7. No Waiver of Default or Rights**. Lender's exercise of any right or remedy provided by this paragraph 14 shall not constitute a waiver of, or operate to cure, any default by Borrower under this Deed of Trust, or preclude any other right or remedy that is otherwise available to Lender under this Deed of Trust or Governmental Requirements.

**15. UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.** This Deed of Trust is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and Borrower hereby grants Lender a security interest in said items. Borrower agrees that Lender may file this Instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Deed of Trust or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, upon Lender's request, any financing statements, as well as extensions, renewals and amendments thereof, and reproductions of this Deed of Trust in such form as Lender may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto.

Upon Borrower's breach of any covenant or agreement of Borrower contained in this Instrument, including the covenants to pay when due all sums secured by this Instrument, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in this Deed of Trust as to such items. In exercising any of said remedies, Lender may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided herein.

**16. FIXTURE FILING.** This Deed of Trust constitutes a financing statement filed as a fixture filing under California Commercial Code §9502(c), as amended or recodified from time to time, covering any portion of the Mortgaged Property that now is or later may become a fixture attached to the Mortgaged Property or to any Improvement.

**17. LEASES OF THE PROPERTY.** As used in this paragraph 17, the word "lease" shall mean "sublease" if this Deed of Trust is on a leasehold. Borrower shall comply with and observe Borrower's obligations as landlord under all leases of the Property or any part thereof. Borrower will not lease any portion of the Property

for non-residential use except with the prior written approval of Lender. Borrower, at Lender's request, shall furnish Lender with executed copies of all leases now existing or hereafter made of all or any part of the Property, and all leases now or hereafter entered into will be in form and substance subject to the approval of Lender. All leases of the Property shall specifically provide that such leases are subordinate to this Instrument; that the tenant attorns to Lender, such attornment to be effective upon Lender's acquisition of title to the Property; that the tenant agrees to execute such further evidences of attornment as Lender may from time to time request; that the attornment of the tenant shall not be terminated by foreclosure; and that Lender may, at Lender's option, accept or reject such attornments. Borrower shall not, without Lender's written consent, execute, modify, surrender or terminate, either orally or in writing, any lease now existing or hereafter made of all or any part of the Property providing for a term of three years or more, permit an assignment or sublease of such a lease without Lender's written consent, or request or consent to the subordination of any lease of all or any part of the Property to any lien subordinate to this Instrument. If Borrower becomes aware that any tenant proposes to do, or is doing, any act or thing which may give rise to any right of set-off against rent, Borrower shall (i) take such steps as shall be reasonably calculated to prevent the accrual of any right to a set-off against rent, (ii) notify Lender thereof and of the amount of said set-off, and (iii) within ten days after such accrual, reimburse the tenant who shall have acquired such right to set-off or take such other steps as shall effectively discharge such set-off and as shall assure that rents thereafter due shall continue to be payable without set-off or deduction.

Upon Lender's request, Borrower shall assign to Lender, by written Deed of Trust satisfactory to Lender, all leases now existing or hereafter made of all or any part of the Property and all security deposits made by tenants in connection with such leases of the Property. Upon assignment by Borrower to Lender of any leases of the Property, Lender shall have all of the rights and powers possessed by Borrower prior to such assignment and Lender shall have the right to modify, extend or terminate such existing lease and to execute new leases, in Lender's sole discretion.

**18. REMEDIES CUMULATIVE.** Each remedy provided in this Deed of Trust is distinct and cumulative to all other rights or remedies under this Deed of Trustor afforded by law or equity, and may be exercised concurrently, independently, or successively, in any order whatsoever.

**19. ACCELERATION IN CASE OF BORROWER'S INSOLVENCY.** If Borrower shall voluntarily file a petition under the Federal Bankruptcy Act, as such Act may from time to time be amended, or under any similar or successor Federal statute relating to bankruptcy, insolvency, arrangements or reorganizations, or under any state bankruptcy or insolvency act, or file an answer in an involuntary proceeding admitting insolvency or inability to pay debts, or if Borrower shall fail to obtain a vacation or stay of involuntary proceedings brought for the reorganization, dissolution or liquidation of Borrower, or if Borrower shall be adjudged a bankrupt, or if a trustee or receiver shall be appointed for Borrower or Borrower's property, or if the Property shall become subject to the jurisdiction of a Federal bankruptcy court or similar state court, or if Borrower shall make an assignment for the benefit of Borrower's creditors, or if there is an attachment, execution or other judicial seizure of any portion of Borrower's assets and such seizure is not discharged within ten days, then Lender may, at Lender's option, declare all of the sums secured by this Deed of Trust to be immediately due and payable without prior notice to Borrower, and Lender may invoke any remedies permitted by herein. Any attorney's fees and other expenses incurred by Lender in connection with Borrower's bankruptcy or any of the other aforesaid events shall be additional indebtedness of Borrower secured by this Deed of Trust pursuant herein.

**20. TRANSFERS OF THE PROPERTY OR INTERESTS IN BORROWER; ASSUMPTION; FURTHER ENCUMBRANCES.** In the event that the Property, or any part thereof or interest therein, shall be sold (including any installment sales agreement), transferred, conveyed, disposed of, alienated, hypothecated, leased (except to tenants of space in the Improvements in accordance with the provisions of herein), assigned, pledged, mortgaged, further encumbered or otherwise transferred or any ownership or beneficial interest in Borrower or any guarantor (directly or indirectly through constituent parties) shall be sold, transferred, conveyed, disposed of, alienated, hypothecated, assigned, pledged, or encumbered without the prior written consent of Lender being first obtained, which consent may be withheld in Lender's sole discretion, then the same shall constitute an Event of Default hereunder and Lender may, at Lender's option, declare all of the sums secured by this Deed of Trust to be immediately due and payable, and Lender may invoke any remedies permitted by herein. Notwithstanding the foregoing, Lender's prior written consent shall not be required in the event of the following:

(a) transfers by devise or descent or by operation of law upon the death of a joint tenant or a partner;

(b) sales or transfers when the transferee's creditworthiness and management ability are satisfactory to Lender and the transferee has executed, prior to the sale or transfer, a written assumption agreement containing such terms as Lender may require, including, if required by Lender, an increase in the rate of interest payable under the Note or an assumption fee to be determined by Lender;

(c) the grant of a leasehold interest in a part of the Property of three years or less (or such longer lease term as Lender may permit by prior written approval) not containing an option to purchase (except any interest in the ground lease, if this Deed of Trust is on a leasehold);

(d) sales or transfers of beneficial interests in Borrower, provided that such sales or transfers, together with any prior sales or transfers of beneficial interests in Borrower, but excluding sales or transfers under paragraphs (a) and (b) above, do not result in more than 49% of the beneficial interests in Borrower having been sold or transferred since commencement of interest payments under the Note; and

(e) sales or transfers of fixtures or any personal property pursuant herein.

**21. NOTICE.** Except for any notice required under applicable law to be given in another manner, any notice to Borrower provided for in this Deed of Trustor in the Note shall be given by mailing such notice by certified mail addressed to Borrower at Borrower's address stated above or at such other address as Borrower may designate by notice to Lender as provided herein, and any notice to Lender shall be given by certified mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trustor in the Note shall he deemed to have been given to Borrower or Lender when given in the manner designated herein.

**22. SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITIES; AGENTS; CAPTIONS.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraphs hereof. All covenants and agreements of Borrower shall be joint and several. In exercising any rights hereunder or taking any actions provided for herein, Lender may act through its employees, agents or independent contractors, as authorized by Lender. The captions and headings of the paragraphs of this Deed of Trust are for convenience only and are not to be used to interpret or define the provisions hereof.

**23. DEED OF TRUST; GOVERNING LAW; SEVERABILITY.** This form of Deed of Trust combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security Deed of Trust covering real property and related fixtures and personal property. This Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision of this Deed of Trustor the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trustor the Note which can be given effect without the conflicting provisions, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. In the event that any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any charge provided for in this Deed of Trustor in the Note, whether considered separately or together with other charges levied in connection with this Deed of Trust and the Note, violates such law, and Borrower is entitled to the benefit of such law, such charge is hereby reduced to the extent necessary to eliminate such violation. The amounts, if any, previously paid to Lender in excess of the amounts payable to Lender pursuant to such charges as reduced shall be applied by Lender to reduce the principal of the indebtedness evidenced by the Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all indebtedness which is secured by this Deed of Trustor evidenced by the Note and which constitutes interest, as well as all other charges levied in connection with such indebtedness which constitute interest, shall be deemed to be allocated and spread over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest computed thereby is uniform throughout the stated term of the Note.

**24. WAIVER OF STATUTE OF LIMITATIONS.** Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Deed of Trust or to any action brought to enforce the Note or any other obligation secured by this Instrument.

**25. ORDER OF REMEDIES AND SATISFACTION OF INDEBTEDNESS; WAIVER OF**

**MARSHALING.** Notwithstanding the existence of any other security interests in the Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. Lender shall have the right to determine the order in which any or all portions of the indebtedness secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein. Borrower, any party who consents to this Instrument, and any party who now or hereafter acquires a security interest in the Property and who has actual or constructive notice hereof hereby waive any and all right to require the marshaling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

    **26. NO WAIVER OF DEFAULT OR RIGHTS.** Lender's exercise of any right or remedy provided by this paragraph herein shall not constitute a waiver of, or operate to cure, any default by Borrower under this Deed of Trust, or preclude any other right or remedy that is otherwise available to Lender under this Deed of Trust or Governmental Requirements.

    **27. CONSTRUCTION LOAN PROVISIONS.** Borrower agrees to comply with the covenants and conditions of the Construction Loan Agreement, if any, which is hereby incorporated by reference in and made a part of this Instrument. All advances made by the Lender pursuant to the Construction Loan Agreement shall be indebtedness of Borrower secured by this Instrument, and such advance may be obligatory as provided in the Construction Loan Agreement. All sums disbursed by Lender prior to completion of the improvements to protect the security of this Deed of Trust up to the principal amount of the Note shall be treated as such disbursements pursuant to the Construction Loan Agreement. All such sums shall bear interest from the date of disbursement at the rate stated in the Note, unless collection from Borrower of interest at such rate would be contrary to applicable law in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law and shall be payable upon notice from Lender to Borrower requesting payment therefor.

    From time to time as Lender deems necessary to protect Lender's interests, Borrower shall, upon request of Lender, execute and deliver to Lender, in such form as Lender shall direct, assignments of any and all rights or claims which relate to the construction of the Property and which Borrower may have against any party supplying or who has supplied labor, materials or services in connection with construction of the Property. In case of breach by Borrower of the covenants and conditions of the Construction Loan Agreement, Lender, at Lender's option, with or without entry upon the Property, (i) may invoke any of the rights or remedies provided in the Construction Loan Agreement, (ii) may accelerate the sums secured by this Deed of Trust and invoke those remedies provided herein, or (iii) may do both. If, after the commencement of interest payments due under the Note, the Note and this Deed of Trust are sold by Lender, from and after such sale the Construction Loan Agreement shall cease to be a part of this Deed of Trust and Borrower shall not assign any right of set-off, counterclaim or other claim or defense arising out of or in connection with the Construction Loan Agreement against the obligations of the Note and this Instrument.

    **28. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.**
    As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues of the Property, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Property, regardless of to whom the rents and revenues of the Property are payable. Borrower hereby authorizes Lender or Lender's agents to collect the aforesaid rents and revenues and hereby agrees to direct each tenant of the Property to pay such rents to Lender or Lender's agents; provided, however, that prior to written notice given by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower, to apply the rents and revenues so collected to the sums secured by this Deed of Trust in the order provided herein with the balance, so long as no such breach has occurred, to the account of Borrower, it being intended by Borrower and Lender that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

    Upon delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, and without the necessity of Lender entering upon and taking and maintaining full control of the Property in person, by agent or by a court appointed receiver, Lender shall immediately be entitled to possession of all rents and revenues of the Property as specified in this paragraph 28 as

the same become due and payable, including but not limited to rents then due and unpaid, and all such rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Lender only; provided, however, that the written notice by Lender to Borrower of the breach by Borrower shall contain a statement that Lender exercises its rights to such rents. Borrower agrees that commencing upon delivery of such written notice of Borrower's breach by Lender to Borrower, each tenant of the Property shall make such rents payable to and pay such rents to Lender or Lender's agents on Borrower's or Lender's written demand to each tenant therefor, delivered to each tenant personally, by mail or by delivering such demand to each rental unit, without any liability on the part of said tenant to inquire further as to the existence of a default by Borrower.

Borrower hereby covenants that Borrower has not executed any prior assignment of said rents, that Borrower has not performed, and will not perform, any act or has not executed, and will not execute, any Deed of Trust which would prevent Lender from exercising its rights under this paragraph 28, and that at the time of execution of this Deed of Trust there has been no anticipation or prepayment of any of the rents of the Property for more than two months prior to the due dates of such rents. Borrower covenants that Borrower will not hereafter collect or accept payment of any rents of the Property more than two months prior to the due dates of such rents. Borrower further covenants that Borrower will execute and deliver to Lender such further assignments of rents and revenues of the Property as Lender may from time to time request.

Upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Lender may in person, by agent or by a court appointed receiver, regardless of the adequacy of Lender's security, enter upon and take and maintain full control of the Property in order to perform all acts necessary and appropriate for the operation and maintenance thereof including, but not limited to, the execution, cancellation or modification of leases, the collection of all rents and revenues of the Property, the making of repairs to the Property and the execution or termination of contracts providing for the management or maintenance of the Property, all on such terms as are deemed best to protect the security of this Instrument. In the event Lender elects to seek the appointment of a receiver for the Property upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Borrower hereby expressly consents to the appointment of such receiver. Lender or the receiver shall be entitled to receive a reasonable fee for so managing the Property.

All rents and revenues collected subsequent to delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Deed of Trust shall be applied first to the costs, if any, of taking control of and managing the Property and collecting the rents, including, but not limited to, attorneys' fees, receivers' fees, premiums on receivers' bonds, costs of repairs to the Property, premiums on insurance policies, taxes, assessments and other charges on the Property, and the costs of discharging any obligation or liability of Borrower as lessor or landlord of the Property, and then to the sums secured by this Instrument. Lender or the receiver shall have access to the books and records used in the operation and maintenance of the Property and shall be liable to account only for those rents actually received. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Property, by reason of anything done or left undone by Lender under this paragraph 28.

If the rents of the Property are not sufficient to meet the costs, if any, of taking control of and managing the Property and collecting the rents, any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by this Deed of Trust pursuant herein. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law.

Any entering upon and taking and maintaining of control of the Property by Lender or the receiver and any application of rents as provided herein shall not cure or waive any default hereunder or invalidate any other right or remedy of Lender under applicable law or provided herein. This assignment of rents of the Property shall terminate at such time as this Deed of Trust ceases to secure indebtedness held by Lender.

**29. ASSIGNMENT OF CAUSES OF ACTION, AWARDS, AND DAMAGES.** All causes of action, and all sums due or payable to Borrower for injury or damage to the Mortgaged Property, or as damages incurred in connection with the transactions in which the Loan secured by this Deed of Trust was made, including, without limitation, causes of action and damages for breach of contract, fraud, concealment, construction defects, or other

torts, or compensation for any conveyance in lieu of condemnation, are assigned to Lender, and all proceeds from such causes of action and all such sums shall be paid to Lender for credit against the Indebtedness secured by this Deed of Trust. Borrower shall notify Lender immediately on receipt by Borrower of notice that any such sums have become due or payable and, immediately on receipt of any such sums, shall promptly remit such sums to Lender.

After deducting all expenses, including Attorney Fees, incurred by Lender in recovering or collecting any sums under this paragraph 29, Lender may apply or release the balance of any funds received by it under this paragraph, or any part of such balance, as it elects. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any cause of action assigned to it under this paragraph and may make any compromise or settlement in such action whatsoever. Borrower covenants that it shall execute and deliver to Lender such further assignments of condemnation awards, damages, or causes of action as Lender may request from time to time. If Lender fails or does not elect to prosecute any such action or proceeding and Borrower elects to do so, Borrower may conduct the action or proceeding at its own expense and risk.

**30. LENDER'S RIGHT TO REQUIRE THE LOAN TO BE PAID OFF IMMEDIATELY**.

If without Lender's prior written consent the Property encumbered by this Deed of Trustor any portion thereof or any interest therein is sold, conveyed, mortgaged, transferred, encumbered (including, but not limited to, land sale leaseback, installment sale contract, lease-option leaseback, contract for deed or conditional sales contract financing), hypothecated, assigned, leased in its entirety for a term of greater than two (2) years or transferred, if the borrower shall be voluntarily or involuntarily divested of title to the Property, or any portion thereof or any interest therein, in any manner, or if more than 25% of the stock, limited partnership interests, managing or non-managing membership interests or any other direct or indirect legal or beneficial ownership interests (as the case may be) of Borrower or any partner, member, shareholder or any other direct or indirect legal or beneficial owner of Borrower shall be sold, conveyed, mortgaged, transferred, hypothecated, assigned or encumbered (each of such foregoing events shall be referred to herein as a "Transfer"), the whole sum of outstanding principal and all accrued and unpaid interest under the Note secured hereby shall, at the option of Lender and without notice, become immediately due and payable. Lender's option hereunder may be exercised at any time after any such Transfer event, and the acceptance by Lender of one or more installments of principal or interest under the Note from any person thereafter shall not constitute a waiver of Lender's option. Consent to one such Transfer shall not be deemed to be waiver of the right to require such consent to future successive Transfers. Notwithstanding the foregoing, if this Deed of Trust is a lien on residential property containing one to four units, then, the term "Transfer" shall not include a further encumbrance of the Property by a lien that is junior to this Deed of Trust upon the death of a joint tenant.

**NON-UNIFORM COVENANTS**.

**Borrower and Lender further covenant and agree as follows:**

**31. DEFAULT; RIGHTS AND REMEDIES; TRUSTEE**

**A. DEFAULT.** Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Deed of Trust:

**(1) Default on Indebtedness.** Borrower fails to pay any installment of interest and/or principal under the Note or any other Indebtedness when due and such failure continues for more than 10 days after the date such payment was due and payable whether on maturity, the date stipulated in any Loan Document, by acceleration, or otherwise.

**(2) Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**(3) Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Instrument, the Note or in any of the other agreements between Trustor and Lender relating to this Deed of Trust and the indebtedness secured hereunder, including without limitation, any applicable Construction Loan Agreement ("Related Documents").

**(4) Breaches.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Trustor under this Instrument, the Note or the Related Documents is, or at the time made or furnished was, false in any material respect.

**(5) Insolvency.** The insolvency of Trustor, appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor, or the dissolution or termination of Trustor's existence as a going business (if Trustor is a business). Except to the extent prohibited by federal law or California law, the death of Trustor (if Trustor is an individual) also shall constitute an Event of Default under this Instrument.

**(6) Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**(7) Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or such Guarantor dies or becomes incompetent or any Guarantor revokes any guaranty of the Indebtedness.

**(8)** Performance of Obligations. The failure, refusal, or neglect to perform and discharge fully and timely any of the Obligations as and when required.

**(9) Judgment**. If any final judgment, order, or decree is rendered against Borrower or a guarantor and is not paid or executed on, or is not stayed by perfection of an appeal or other appropriate action, such as being bonded, or is not otherwise satisfied or disposed of to Lender's satisfaction within 30 days after entry of the judgment, order, or decree.

**(10) Voluntary Bankruptcy**. If Borrower or any guarantor (a) seeks entry of an order for relief as a debtor in a proceeding under the Bankruptcy Code; (b) seeks, consents to, or does not contest the appointment of a receiver or trustee for itself or for all or any part of its property; (c) files a petition seeking relief under the bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or any other competent jurisdiction; (d) makes a general assignment for the benefit of its creditors; or (e) states in writing its inability to pay its debts as they mature.

**(11) Involuntary Bankruptcy**. If (a) a petition is filed against Borrower or any guarantor seeking relief under any bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or other competent jurisdiction; or (b) a court of competent jurisdiction enters an order, judgment, or decree appointing, without the consent of Borrower or any guarantor, a receiver or trustee for it, or for all or any part of its property; and (c) such petition, order, judgment, or decree is not discharged or stayed within 30 days after its entry.

**(12) Foreclosure of Other Liens**. If the holder of any lien or security interest on the Mortgaged Property (without implying Lender's consent to the existence, placing, creating, or permitting of any lien or security interest) institutes foreclosure or other proceedings to enforce its remedies thereunder and any such proceedings are not stayed or discharged within 30 days after institution of such foreclosure proceedings.

**(13) Sale, Lease, Encumbrance, or Other Transfer**. Any sale, lease, exchange, assignment, conveyance, encumbrance (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of this Deed of Trust) (other than a Permitted Encumbrance), transfer of possession, or other disposition of all or any portion of the Land or Improvements or any of Borrower's interest in the Land or Improvement without Lender's prior written consent, or any sale, lease, exchange, assignment, conveyance, encumbrance (other than a Permitted Encumbrance), or other disposition of any portion of the Personalty, without Lender's prior written consent.,

**(14) Title and Lien Priority**. If Borrower's title to any or all of the Mortgaged Property or the status of this Deed of Trust as a first position lien and security interest on the Mortgaged Property is endangered in any manner, and Borrower fails to cure the same on Lender's demand; provided, however, that Borrower shall not be in default under this paragraph if Borrower is diligently pursuing a contest or cure of such title or lien issue and Borrower has posted adequate security to protect Lender's rights, interest, and priority under this Deed of Trust, as determined by Lender.

**(15) Other Defaults**. The occurrence of an Event of Default or any default, as defined or described in the other Loan Documents, or the occurrence of a default on any Indebtedness or Obligations.

**(16) Levy on Assets**. A levy on any of the assets of Borrower or any guarantor, and

such levy is not stayed or abated within 30 days after such levy.

(17) **Breach of Representations**. The breach of any representation, warranty, or covenant in this Deed of Trust or other Loan Documents.

(18) **Default Under Prior Deed of Trust, Security Instrument, or Lien**. The failure to pay on a timely basis, or the occurrence of any other default under any note, deed of trust, contract of sale, lien, charge, encumbrance, or security interest encumbering or affecting the Mortgaged Property and having priority over the lien of this Deed of Trust.

(19) **Violation of Governmental Requirements**. The failure of Borrower, any tenant, or any other occupant of the Mortgaged Property to comply with any Governmental Requirement. In accordance with section 7 above, any potential violation by a tenant or other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Note and this Deed of Trust, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust.

**B. RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Trustee or Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

(1) **Foreclosure by Sale.** Upon an Event of Default under this Instrument, Beneficiary (Lender) may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Deed of Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all unpaid sums secured by this Deed of Trust in such order as Beneficiary, in Beneficiary's sole discretion, directs, with accrued interest at the amount established under the Note or, if less, such amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(2) **Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclosure by judicial foreclosure in accordance with and to the full extent provided by California Law.

(3) **Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (a) pay a reasonable rental for the use of the Property, or (b) vacate the Property immediately upon the demand of the Lender.

(4) **Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or by law.

(5) **Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Instrument, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Lender which in Lender's opinion are necessary at any time for the protection of its interest or the

enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records obtaining title reports (including foreclosure reports), surveyors' reports, appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

      **(6) Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

      **C. POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust.

      **(1) Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

      **(2) Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

      **(3) Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

      **32. RECONVEYANCE.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed or Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

      **33. SUBSTITUTE TRUSTEE.** Lender, at Lender's option, may from time to time, by a Deed of Trust in writing, appoint a successor trustee to any Trustee appointed hereunder, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. Said Deed of Trust shall contain the name of the original Lender, Trustee and Borrower hereunder, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee. If notice of default has been recorded, this power of substitution cannot be exercised until after the costs, fees and expenses of the then acting Trustee have been paid to such Trustee who shall endorse receipt thereof upon such Deed of Trust of substitution. The procedure herein provided for substitution of trustee shall govern to the exclusion of all other provisions for substitution, statutory or otherwise.

      **34. REQUEST FOR NOTICES.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower at Borrower's address stated above.

      **35. STATEMENT OF OBLIGATION.** Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California.

      **36. SPOUSE'S SEPARATE PROPERTY.** Any Borrower who is a married person expressly agrees that

recourse may be had against his or her separate property.

**37.RIDERS TO THIS SECURITY INSTRUMENT.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Deed of Trust as if the rider(s) were a part of this Security Instrument.

**38.MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**A. Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**B. Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**C. Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**D. Applicable Law.** This Deed of Trust has been delivered to Lender and accepted by Lender in the State of California. This Deed of Trust shall be governed by and construed in accordance with the laws of the State of California.

**E. Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Instrument.

**F. Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**G. Multiple Parties; Corporate Authority.** All obligations of Trust or under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor. This means that each of the persons signing below is responsible for **all** obligations in this Deed of Trust.

**H. Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of the Deed of Trust in all other respects shall remain valid and enforceable.

**I. Successors and Assigns.** Subject to the limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the indebtedness by way of forbearance or extension without releasing Trustor from the obligations of the Deed of Trustor liability under the indebtedness.

**J. Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**K. Waivers and Consents.** Lender shall not be deemed to have waived any rights under this Deed of Trust (or under the Related Documents) unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Deed of Trust shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or any of Trustor's obligations as to any future transactions. Whenever consent by Lender is required in this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

39. REQUEST OF NOTICE OF DEFAULT OF SENIOR LIEN. In accordance with Section 2924b of the Civil Code of California, request is hereby made by the Trustor that a copy of any Notice of Default and a copy of any Notice of Sale under a deed of trust recorded December 15, 2016 in the official records of San Mateo County, California, as instrument number 2016-133248, affecting the property located at 66 Barry Lane, Atherton, California 94027, executed by Nariman S. Teymourian and Gail Suzanne Marie Teymourian, husband and wife, as Community Property with Right of Survivorship Trustor in which Technology Credit Union is named as Beneficiary, and TECHNOLOGY Credit Union, a California Corporation as Trustee, be mailed to the address below.

In accordance with Section 2924b of the Civil Code of California, request is hereby made by the Trustor that a copy of any Notice of Default and a copy of any Notice of Sale under a deed of trust recorded December 28, 2018 in the official records of San Mateo County, California, as instrument number 2018-101123, affecting the property located at 66 Barry Lane, Atherton, California 94027, executed by Nariman S. Teymourian and Gail Suzanne Marie Teymourian, husband and wife, as Community Property with Right of Survivorship Trustor in which Dakota Note, LLC, as to an undivided 9,588,000/15,400,000 interest and Tanya Waltimyer, a married woman as her sole and separate property, as to an undivided 2,370,000/15,400,000 interest and Natural Software Systems, Inc. Money Purchase Pension Plan, as to an undivided 2,133,000/15,400,000 interest and Jason Greenfield, a married man as his sole and separate property, as to an undivided ,309,000/15,400,000 Interest is named as Beneficiary, and Last Chance Finance Inc. as Trustee, be mailed to the address listed below.

In accordance with Section 2924b of the Civil Code of California, request is hereby made by the Trustor that a copy of any Notice of Default and a copy of any Notice of Sale under a deed of trust recorded January 7, 2019 in the official records of San Mateo County, California, as instrument number 2019-001052, affecting the property located at 66 Barry Lane, Atherton, California 94027, executed by Nariman S. Teymourian and Gail Suzanne Marie Teymourian, husband and wife, as Community Property with Right of Survivorship Trustor in which Dakota Note, LLC, as to an undivided 2,450,000/3,000,000 interest and Natural Software Systems, Inc, Money Purchase Pension Plan, as to an undivided 550,000/3,000,000 interest is named as Beneficiary, and Last Chance Finance Inc. as Trustee, be mailed to the address below.

Paul Greenfield
2597 Flagstone Drive, San Jose, California 95132

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants by contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.**

**IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST**

Nariman S. Teymourian Gail Suzanne Marie Teymourian, husband and wife, as Community Property with Right of Survivorship

By: _____       Dated: 03/27/19
    Nariman S. Teymourian

By: _____       Dated: 03.29.19
    Suzanne Marie Teymourian

GAIL

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of California**

County of _San Mateo_ }

On _03/27/2019_ before me, _James Kahn,_ _____ ,
Notary Public, personally appeared
_Nasiman S Teymourian and Gail Suzanne Marie Teymourian_
_____ , who proved to me on the basis of satisfactory evidence to be the

person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed

the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),

or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

**WITNESS my hand and official seal.**

Signature _____

JAMES KAHN
COMM. #2114768
Notary Public-California
SAN MATEO COUNTY
My Comm. Exp. JUNE 9, 2019

My Commission Expires: _06/09/2019_

*This are for official notarial seal*

Notary Name: _James Kahn_

Notary Phone: _650-868-9185_

Notary Registration Number: _2114768_

County of Principal Place of Business: _San Mateo_

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of California**

County of _____ }

On _____ before me, _____,

Notary Public, personally appeared

_____

_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

**WITNESS my hand and official seal.**

Signature

_____

My Commission Expires: _____        *This are for official notarial seal*

Notary Name: _____        Notary Phone: _____

Notary Registration Number: _____        County of Principal Place of Business: _____

**Exhibit "A"**

**Legal Description**

A.P.N.: 070-201-070

Real property in the Town of Atherton, County of San Mateo, State of California, described as follows:

LOT 13, AS DESIGNATED ON THE MAP ENTITLED "ATHERTON WOODS UNIT NO. 2 ATHERTON SAN MATEO COUNTY, CALIFORNIA", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON JUNE 2, 1955 IN BOOK 42 OF MAPS AT PAGE 37.

JPN: 070-020-201-07A

# EXHIBIT J

2023-004942
10:06 am 02/02/2023 NP Fee: $95.00
Count of Pages 2
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

* $ R 0 0 0 3 3 2 8 9 5 9 $ *

1  Kousha Berokim
   BEROKIM LAW
2  State Bar Number 242763
   270 North Cañon Drive, Third Floor
3  Beverly Hills, California 90210
   berokim@berokim.com
4  T (310) 846-8553 | F (310)300-1233

5  ATTORNEY FOR PLAINTIFFS NARIMAN TEYMOURIAN, GAIL SUZANNE MARIE
   TEYMOURIAN, AND 2700 MIDDLEFIELD ROAD, LLC
6

7              IN THE SUPERIOR COURT OF CALIFORNIA
                  COUNTY OF SAN MATEO
8

9
10  NARIMAN TEYMOURIAN; GAIL           CASE NUMBER  22-CIV-04679
    SUZANNE MARIE TEYMOURIAN; AND
11  2700 MIDDLEFIELD ROAD, LLC

12              PLAINTIFFS,             NOTICE OF PENDING ACTION
    V.
13

14  DAKOTA NOTE, LLC; TANYA
    WALTIMYER; NATURAL SOFTWARE
15  SYSTEMS, INC. MONEY PURCHASE
    PENSION PLAN; JASON GREENFIELD; 5
16  PALMS, LLC; & DOES 1-20, INCLUSIVE,   Assessor's Parcel Number
                                          070-2010070-3631
17              DEFENDANTS.
                                          054  113  12006  ℟.B
18                                        070-201-070  K.B
19

20

21  ///

22

23  ///
24

25  ///
26

27

28

926098.1 5839.050
                                    1
                           NOTICE OF PENDING ACTION

1        NOTICE IS HEREBY GIVEN that on November 9, 2022 NARIMAN

2   TEYMOURIAN; GAIL SUZANNE MARIE TEYMOURIAN; AND 2700 MIDDLEFIELD

3   ROAD, LLC commenced this legal action, and on December 30, 2022, filed a First

4   Amended Complaint, in the Superior Court of the State of California for the County of San

5   Mateo against Defendants DAKOTA NOTE, LLC; TANYA WALTIMYER; NATURAL

6   SOFTWARE SYSTEMS, INC. MONEY PURCHASE PENSION PLAN; JASON

7   GREENFIELD; 5 PALMS, LLC, and DOES 1 to 20, which concerns and affects the title to

8   the real property commonly known as 66 Barry Lane, Atherton, California 94027, ("Barry

9   Property"), Assessor's Parcel Number 070-2010070-3631, and legal description of

10  *070-201-070 KB*

11  LOT 13, AS DESIGNATED ON THE MAP ENTITLED "ATHERTON WOODS UNIT NO. 2 ATHERTON SAN
    MATEO COUNTY, CALIFORNIA", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE
    COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON JUNE 2, 1955 IN BOOK 42 OF MAPS AT PAGE 37.
12  JPN: 070-020-201-07A

13

14  February 1, 2023

15

16                  _____

17                  Kousha Berokim
                    BEROKIM LAW

18                  Attorney for Nariman Teymourian, Gail Suzanne
                    Marie Teymourian, and 2700 Middlefield Road,

19                  LLC

20

21

22

23

24

25

26

27

28

926098.1 5839.097

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 117 of 411

# EXHIBIT K

**2023-011634**
1:00 pm 03/16/2023 NP Fee: $101.00
Count of Pages 4
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder



RECORDING REQUESTED BY:

Kousha Berokim
State Bar Number 242763.

WHEN RECORDED MAIL TO:

270 North Canon Drive
Third floor
Beverly Hills, Ca 90210
Berokim@ Berokim.Com

4

THIS SPACE FOR RECORDER'S USE ONLY

## TITLE OF DOCUMENT

*Notice of Pending Action*

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Additional Recording Fee Applies)
(Govt. Code 27361.6)

cover sheet recorders.doc

Kousha Berokim
BEROKIM LAW
State Bar Number 242763
270 North Cañon Drive, Third Floor
Beverly Hills, California 90210
berokim@berokim.com
T (310) 846-8553| F (310)300-1233

ATTORNEY FOR NARIMAN TEYMOURIAN, GAIL SUZANNE MARIE TEYMOURIAN, 2700 MIDDLEFIELD ROAD, LLC, AND FERRANDO DIVERSIFIED CAPITAL, LLC

**IN THE SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SAN MATEO**

| | |
|---|---|
| NARIMAN TEYMOURIAN; GAIL SUZANNE MARIE TEYMOURIAN; AND 2700 MIDDLEFIELD ROAD, LLC<br>            PLAINTIFFS,<br>V.<br>DAKOTA NOTE, LLC; TANYA WALTIMYER; NATURAL SOFTWARE SYSTEMS, INC. MONEY PURCHASE PENSION PLAN; JASON GREENFIELD; 5 PALMS, LLC; & DOES 1-20, INCLUSIVE,<br>            DEFENDANTS. | **Case Number: 22-CIV-04679**<br><br>**NOTICE OF PENDING ACTION**<br><br><br><br>**Assessor's Parcel Number**<br>**070-201-070** |
| DAKOTA NOTE, LLC and NATURAL SOFTWARE SYSTEMS, INC. MONEY PURCHASE PENSION PLAN,<br>            Cross-Complainants,<br>vs.<br>NARIMAN TEYMOURIAN, an individual, GAIL SUZANNE MARIE TEYMOURIAN, an individual, 2700 MIDDLEFIELD ROAD, LLC, a Delaware limited liability company, ALVISO PARK, LLC, a Delaware limited liability company, FERRANDO DIVERSIFIED CAPITAL, LLC, a California limited liability company, and ROES 1-150, inclusive,<br>            Cross-Defendants | |

926098.1 5839.050

1

1
2          NOTICE IS HEREBY GIVEN that on November 9, 2022 NARIMAN
3  TEYMOURIAN and GAIL SUZANNE MARIE TEYMOURIAN commenced this legal
4  action, and on March 16, 2023, filed a Cross Complaint, in the Superior Court of the State of
5  California for the County of San Mateo against Cross Defendants DAKOTA NOTE, LLC;
6  NATURAL SOFTWARE SYSTEMS, INC. MONEY PURCHASE PENSION PLAN; 5
7  PALMS, LLC; TECHNOLOGY CREDIT UNION; COMMUNITY BANK OF THE BAY,
8  and ROES 50 to 70, which concerns and affects the title to the real property commonly
9  known as 66 Barry Lane, Atherton, California 94027, ("Barry Property"), Assessor's Parcel
10  Number 070-201070-3631, and legal description of
11
12  LOT 13, AS DESIGNATED ON THE MAP ENTITLED "ATHERTON WOODS UNIT NO. 2 ATHERTON SAN
    MATEO COUNTY, CALIFORNIA", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE
13  COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON JUNE 2, 1955 IN BOOK 42 OF MAPS AT PAGE 37.
    JPN: 070-020-201-07A
14
15
16
17
18       March 16, 2023
19                                          _____
20                                          Kousha Berokim
21                                          BEROKIM LAW
                                            ATTORNEY FOR FERRANDO DIVERSIFIED
22                                          CAPITAL, LLC
23
24
25
26
27
28

926098.1 5839.097
                                          2
                              **NOTICE OF PENDING ACTION**

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 270 North Cañon Drive, Third Floor, Beverly Hills, California, 90210. On **March 16, 2023**, I served the herein described document(s) through the means indicated below.

**NOTICE OF PENDING ACTION**

☒ E-MAIL - by transmitting via electronic mail the document(s) listed above to the e-mail addresses set forth below.

David B. Tillotson
Leland, Parachini, Steinberg, Matzger & Melnick, LLP
Email: DTillotson@lpslaw.com

RAVI D. SAHAE
Leland, Parachini, Steinberg, Matzger & Melnick LLP
E-mail: RSahae@lpslaw.com

KOUSHA BEROKIM
BEROKIM LAW
Email: berokim@berokim.com

I am readily familiar with the firm's practice of collection and processing correspondence for faxing, mailing and e-mailing. With regard to mailing, under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on **March 16, 2023** at Beverly Hills, California.



----------------------------------------------------------
Kousha Berokim

3
**NOTICE OF PENDING ACTION**

926098.1 5839.097

# EXHIBIT L

**2023-014038**

11:15 am 03/29/2023 NP Fee: $98.00

Count of Pages 3

Recorded in Official Records

County of San Mateo

Mark Church

Assessor-County Clerk-Recorder



`* $ R 0 0 0 3 3 4 3 6 8 1 $ *`

1 | Kousha Berokim
    BEROKIM LAW
2 | State Bar Number 242763
    270 North Cañon Drive, Third Floor
3 | Beverly Hills, California 90210
    berokim@berokim.com
4 | T (310) 846-8553| F (310)300-1233

5 | ATTORNEY FOR NARIMAN TEYMOURIAN, GAIL SUZANNE MARIE TEYMOURIAN, 2700
6 | MIDDLEFIELD ROAD, LLC, AND FERRANDO DIVERSIFIED CAPITAL, LLC

7 |                **IN THE SUPERIOR COURT OF CALIFORNIA**
8 |                      **COUNTY OF SAN MATEO**

9 | NARIMAN TEYMOURIAN; GAIL SUZANNE          **Case Number: 22-CIV-04679**
     MARIE TEYMOURIAN; AND 2700
10 | MIDDLEFIELD ROAD, LLC
                                  PLAINTIFFS,
11 | V.                                                    **NOTICE OF PENDING ACTION**
    DAKOTA NOTE, LLC; TANYA WALTIMYER;
12 | NATURAL SOFTWARE SYSTEMS, INC.
    MONEY PURCHASE PENSION PLAN; JASON
13 | GREENFIELD; 5 PALMS, LLC; & DOES 1-20,
    INCLUSIVE,
14 |                                 DEFENDANTS.
15 | DAKOTA NOTE, LLC and NATURAL
    SOFTWARE SYSTEMS, INC. MONEY          **Assessor's Parcel Number**
16 | PURCHASE PENSION PLAN,                       **070-201-070**
                          Cross-Complainants,
17 |    vs.
    NARIMAN TEYMOURIAN, an individual, GAIL
18 | SUZANNE MARIE TEYMOURIAN, an individual,
    2700 MIDDLEFIELD ROAD, LLC, a Delaware
19 | limited liability company, ALVISO PARK, LLC, a
    Delaware limited liability company, FERRANDO
20 | DIVERSIFIED CAPITAL, LLC, a California
    limited liability company, and ROES 1-150,
21 | inclusive,
                        Cross-Defendants
22 | --------------------------------------------------------
    NARIMAN TEYMOURIAN; GAIL SUZANNE
    MARIE TEYMOURIAN;
23 |                    CROSS COMPLAINANTS,
    V.
24 | DAKOTA NOTE, LLC; NATURAL
    SOFTWARE SYSTEMS, INC. MONEY
25 | PURCHASE PENSION PLAN; 5 PALMS, LLC;
    TECHNOLOGY CREDIT UNION;
26 | COMMUNITY BANK OF THE BAY; & MOES
    1-20, INCLUSIVE,
27 |                         CROSS DEFENDANTS.
28 |

926098.1 5839.050

1

1  NOTICE IS HEREBY GIVEN that on November 9, 2022 NARIMAN

2  TEYMOURIAN and GAIL SUZANNE MARIE TEYMOURIAN commenced this legal

3  action, and on March 23, 2023, filed a Cross Complaint, in the Superior Court of the State of

4  California for the County of San Mateo against Cross Defendants DAKOTA NOTE, LLC;

5  NATURAL SOFTWARE SYSTEMS, INC. MONEY PURCHASE PENSION PLAN; 5

6  PALMS, LLC; TECHNOLOGY CREDIT UNION; COMMUNITY BANK OF THE BAY,

7  and ROES 50 to 70, which concerns and affects the title to the real property commonly

8  known as 66 Barry Lane, Atherton, California 94027, ("Barry Property"), Assessor's Parcel

9  Number 070-201070-3631, and legal description of

10

11  LOT 13, AS DESIGNATED ON THE MAP ENTITLED "ATHERTON WOODS UNIT NO. 2 ATHERTON SAN
    MATEO COUNTY, CALIFORNIA", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE
    COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON JUNE 2, 1955 IN BOOK 42 OF MAPS AT PAGE 37.
12  JPN: 070-020-201-07A

13       March 28, 2023

14

15

16                          Kousha Berokim
                            BEROKIM LAW
17                          ATTORNEY FOR FERRANDO DIVERSIFIED
                            CAPITAL, LLC
18

19

20

21

22

23

24

25

26

27

28

926098.1 5839.097

2
**NOTICE OF PENDING ACTION**

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 270 North Cañon Drive, Third Floor, Beverly Hills, California, 90210. On **March 28, 2023**, I served the herein described document(s) through the means indicated below.

**NOTICE OF PENDING ACTION**

☒      E-MAIL - by transmitting via electronic mail the document(s) listed above to the e-mail addresses set forth below.

David B. Tillotson
Leland, Parachini, Steinberg, Matzger & Melnick, LLP
Email: DTillotson@lpslaw.com

RAVI D. SAHAE
Leland, Parachini, Steinberg, Matzger & Melnick LLP
E-mail: RSahae@lpslaw.com

KOUSHA BEROKIM
BEROKIM LAW
Email: berokim@berokim.com

I am readily familiar with the firm's practice of collection and processing correspondence for faxing, mailing and e-mailing. With regard to mailing, under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on **March 28, 2023** at Beverly Hills, California.



----------------------------------------------------------
Kousha Berokim

926098.1 5839.097

3
**NOTICE OF PENDING ACTION**

# EXHIBIT M

1   Barzin Barry Sabahat (SBN 164248)
    940 Saratoga Ave., #112
2   San Jose, CA 95129
    Telephone: (408) 500-5280
3   Email: barry@anchorlawgroup.com

4
    Attorney for Debtor,
5   Nariman Seyed Teymourian

6                UNITED STATES BANKRUPTCY COURT FOR

7       THE NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

8
    In re NARIMAN SEYED TEYMOURIAN,          Chapter 11
9
                        Debtor.              Bk. No. 23-30668-DM
10
                                             [Jointly Administered]
11

12
    NARIMAN    SEYED    TEYMOURIAN,    an    Adv. Pro. No.
13  individual
                                             **COMPLAINT FOR:**
14                      Plaintiff,              1. OBJECTION TO THE VALIDITY
                                                  OF THE FORECLOSURE OF THE
15  v.                                            66 BARRY LANE PROPERTY
                                               2. USURY
16  66 BARRY LANE, LLC, a California limited    3. QUIET TITLE
    liability company; DAKOTA NOTE, LLC, a      4. WRONGFUL FORECLOSURE
17  South Dakota limited liability company; PAUL 5. FRAUDULENT
    GREENFIELD, an individual; DARRYL               MISREPRESENTATION AND
18  KENOYER, an individual; KEITH CHARLES          CONCEALMENT
    KNAPP, an individual; NATURAL               6. VIOLATION OF *CAL BUS & PROF*
19  SOFTWARE SYSTEMS, INC. MONEY                    *CODE* §17200
    PURCHASE PENSION PLAN; business form
20  unknown; 5 PALMS, LLC, a California limited *[Filed concurrently with Debtor Nariman*
    liability company; TECHNOLOGY CREDIT      *Seyed Teymourian's Opposition to Movant*
21  UNION, a California nonprofit corporation; *66 Barry Lane LLC's Motion for Relief from*
    COMMUNITY BANK OF THE BAY, a              *Automatic Stay and Debtor Nariman Seyed*
22  California corporation; FERRANDO          *Teymourian's Declaration in Support of his*
    DIVERSIFIED CAPITAL LLC, a California     *Opposition to Movant 66 Barry Lane LLC's*
23  limited liability company; and DOES 1-20, *Motion for Relief from Automatic Stay]*
    INCLUSIVE
24                                            **DEMAND FOR JURY TRIAL**
                        Defendants.
25

26

27        **COMPLAINT TO DETERMINE THE EXTENT AND VALIDITY OF  CLAIMS**

28              **AND INTERESTS IN PROPERTY OF THE DEBTOR**

Plaintiff Nariman Teymourian ("**Plaintiff**"), Debtor, in the above-captioned bankruptcy case and as plaintiff in the above captioned adversary proceeding hereby alleges, upon his own knowledge or upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is an adversary proceeding by Plaintiff objecting to and seeking a determination of the extent and validity of claims and interests in the property of the Debtor asserted by Defendant 66 BARRY LANE, LLC and the predatory lending scheme created by Defendants DAKOTA NOTE, LLC, PAUL GREENFIELD, DARRYL KENOYER, KEITHER CHARLES KNAPP, NATURAL SOFTWARE SYSTEMS, INC. MONEY PURCHASE PENSION PLAN, 5 PALMS, LLC, TECHNOLOGY CREDIT UNION, COMMUNITY BANK OF THE BAY, and FERRANDO DIVERSIFIED CAPITAL LLC which lead to the illegal foreclosure of 66 Barry Lane, Atherton, San Mateo, CA 94027 ("**the Barry Lane Property**").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and Plaintiff consents to entry of a final order or judgment by the Bankruptcy Court in this matter.

3. Venue is proper in this district under 28 U.S.C. § 1409(a). This adversary proceeding is related to In re NARIMAN SEYED TEYMOURIAN, Bk. No. 23-30668-DM under Chapter 11, pending in this district.

4. This adversary proceeding is commenced pursuant to Bankruptcy Rule 7001(2).

## PARTIES

5. Plaintiff Nariman is the Debtor in the above bankruptcy case.

6. Defendant 66 Barry Lane, LLC is a California limited liability company having a principal place of business in San Jose, California.

7. Defendant Dakota Note, LLC, is a South Dakota Limited Liability Company, which is not registered to do business in California. Defendant Dakota Note, LLC has been doing business in California, including bringing and defending litigation, since at least 2013.

8. On information and belief, Defendant Paul Greenfield is an individual who resides in San Jose, California.

9. On information and belief, Defendant Darryl Kenoyer is an individual who resides in San Jose, California.

10. On information and belief, Defendant Keith Charles Knapp is an individual who resides in San Jose, California.

11. On information and belief, Defendant Natural Software Systems, Inc. Money Purchase Pension Plan is an entity, business form unknown, and does interstate business in the State of California.

12. Defendant 5 Palms, LLC is a California limited liability having a principal place of business in Sonoma, California.

13. Defendant Technology Credit Union is a California corporation.

14. Defendant Community Bank of The Bay is a California corporation.

15. Plaintiff Nariman is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 20, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of said Defendants when ascertained. Plaintiff is informed, believes, and thereon alleges that each of said fictitiously named Defendants are responsible in some manner for the occurrences herein alleged and are indebted to Plaintiff as hereinafter alleged, and that Plaintiff's damages as hereinafter alleged were proximately caused by such Defendants.

16. Plaintiff Nariman informed, believes, and thereon alleges that at all times mentioned herein, each of the Defendants were the agent, servants and/or employee of each of the remaining Defendants, and in doing the things hereinafter alleged, were acting both on their own behalf and within the course and scope of such agency.

17. Plaintiff Nariman is informed, believes, and upon such information and belief alleges, that each of the named Defendants is responsible in some manner for the occurrences herein alleged, and Plaintiff's damages as herein asserted were proximately caused by such Defendants. Plaintiff is informed, believes, and upon such information and belief alleges, that at

1 all times herein mentioned each of the Defendants were the agent, employee, servant, partner,

2 guarantor, or successor of each of the named  Defendants and in doing the things herein

3 asserted, were acting within such course and scope. Plaintiff is also informed and believes and

4 upon such information and belief allege that at all relevant times mentioned herein, Defendants,

5 and each of them, were joint ventures with each, every, and said Defendants were acting in

6 furtherance of said joint venture.

7 **FACTUAL BACKGROUND**

8 18.     On October 3, 2023 ("**Petition Date**"), the Debtor filed a voluntary petition for

9 relief under Chapter 11 of the Bankruptcy Code. No trustee or examiner has been appointed in

10 this Chapter 11 case. The Debtor continues to be in possession of his property and manages his

11 business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

12 19.     One of the assets listed in Plaintiff Nariman's Petition is the Barry Lane

13 Property. The Parcel Number is 070-2010070-3631, and legal description of the property is:

14 Lot 13, AS DESIGNATED ON THE MAP ENTITLED "ATHERTON WOODS
UNIT NO. 2 ATHERTON SAN MATEO COUNTY, CALIFORNIA" WHICH

15 MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY
OF SAN MATEO, STATE OF CALIFORNIA ON JUNE 2, 1955 IN BOOK 42

16 OF MAPS AT PAGE 37. JPN: 070-020-201-07A. (Exhibit "**1**," Barry Lane
Property Deed of Trust".)

17

18 20.      Plaintiff Nariman owns this property with his wife Gail Suzanne Marie

19 Teymourian and the Barry Lane Property serves as their residence.

20 21.     In or about 2016, Plaintiff Nariman sought to renovate his residence, the Barry

21 Lane Property, and began looking for lenders to help him finance the venture.

22 22.     In or about 2016, Plaintiff Nariman was approached by Defendant Darryl

23 Kenoyer who claimed he worked for California Home Loans.

24 23.     Defendant Kenoyer represented that Defendant Keith Charles Knapp was a

25 licensed broker who served as the principal of California Home Loans. Defendant Kenoyer

26 further stated that Defendant Knapp would contact multiple lenders and negotiate the rate,

27 terms, and fees of the loan. (Exhibit "**2**," Declaration of Nariman Teymourian ¶ 14.)

28

24. Shortly after the meeting, in or about 2016, Defendant Knapp introduced Plaintiff Nariman to Defendant Paul Greenfield, the principal of Defendant Dakota Note, LLC. Plaintiff Nariman was informed by Defendant Knapp that Defendant Dakota Note, LLC had approved the loan for the construction of the Barry Lane Property, but the loans would need to be characterized as commercial loans and secured to Plaintiff Nariman's other personal residences. (Exhibit "**2**" ¶ 17.)

25. At no point during his financing relationship with Defendant Dokota Note, LLC did Defendant Knapp negotiate with Defendant Dakota Note, LLC. Plaintiff Nariman negotiated directly with Defendant Dakota Note, LLC. (Exhibit "**2**" ¶ 19.)

26. Further, when Plaintiff Nariman requested copies of communication between Defendants Knapp, Kenoyer, and Dakota Note, LLC to evidence that a licensed broker was negotiating the loan terms, he did not receive any documentation. (Exhibit "**2**" ¶ 23.)

27. On information and belief, Defendant Knapp was not a licensed broker throughout Plaintiff Nariman's lending process because his license was revoked due to action taken by the California Department of Real Estate for fraud in or about 2016. (Exhibit "**2**" ¶ 31.)

28. On December 17, 2019, Plaintiff Nariman Teymourian and his wife Gail Suzanne Marie Teymourian entered into a contract in which Plaintiffs executed a "Note" for $6,000,000 from Lender Defendants Dakota Note, LLC, and Natural Software Systems Inc., Money Purchase Pension Plan ("Lender Defendants"); (Exhibit "**3**," December 2019 Note.)

29. Lender Defendants charged various usurious fees, interest, and credit backs which exceed the 10 percent interest allowed under Cal. Const, Art. XV § 1. This caused the actual disbursement amount to Plaintiff Nariman Teymourian and his wife Gail Suzanne Marie Teymourian to be $5,786,461. As such, the effective interest rate was significantly above 10 percent per annum, and as such, usurious. (Exhibit "**2**" ¶ 11 and Exhibit "**4**," Analysis of Dakota Note, LLC Loans.)

30. The December 2019 Note was secured against the Barry Property. (Exhibit **"1".**)

31. On September 22, 2021, Plaintiff Nariman and his wife Gail Suzanne Marie Teymourian, paid Lender Defendants Dakota Note, LLC, and Natural Software Systems Inc.,

Money Purchase Pension Plan the amount of $6,000,000, to pay off the principle for December

2019 Note. Usurious interest for the 21 months term of the loan remained outstanding.

3          32.     On September 8, 2021, prior to paying the $6,000,000, Plaintiff Nariman emailed

4    Lender Defendants Dakota Note, LLC, and Natural Software Systems Inc., Money Purchase

5    Pension Plan's principal, Paul Greenfield, stating in pertinent part: "**CBB will pay $6M to**

6    **Dakota in exchange for Reconveyance and payoff of the Barry Lien.**" (emphasis not added;

7    the original text was in bold and underlined). (Exhibit **"5,"** September 2021 Emails.)

8          33.     On March 14, 2022, Lender Defendants submitted an accounting of the

9    outstanding notes between Lender Defendants and Plaintiff Nariman, wherein Lender

10   Defendants' accounting statement stated "paid off" for the December 2019 Note, and indicated

11   a balance of $1,065,000, which was the interest for the 21 months that the $6,000,000 loan was

12   outstanding, at 10 percent, plus accumulated interest from September 2021 through March 2022.

13   (Exhibit **"6,"** Defendants' First Accounting.)

14         34.     In June 2022, Plaintiff Nariman paid $70,000 to pay down the outstanding

15   interest.

16         35.     In July 2022, Plaintiff Nariman paid $50,000 to pay down the outstanding

17   interest.

18         36.     In September 2022, Plaintiff Nariman paid $70,000 to pay down the outstanding

19   interest.

20         37.     On November 21, 2022, Lender Defendants Dakota Note, LLC, and Natural

21   Software Systems Inc., Money Purchase Pension Plan, caused for a Notice of Default to be

22   recorded against the Barry Property (December 2019 Note), with San Mateo County Recorder's

23   Office, instrument number 2022-080122, for the stated default amount of $7,169,557.02.

24   (Exhibit **"7,"** November 2022 Notice of Default). Essentially, Lender Defendants had

25   completely discredited Borrower Plaintiff's September 21, 2021, pay down of Six Million

26   Dollars against the December 2019 Note, to make sure that Borrower Plaintiff would not be able

27   to cure default.

28

38.     On December 16, 2022, Lender Defendants' principal, Defendant Paul Greenfield, at his deposition, under oath, acknowledged that Lender Defendants, in recording of the November 21, 2022 Notice of Default for $7,169,557.02, had not credited Borrower Plaintiffs for the September 21, 2021 Six Million Dollar payment. Defendant Greenfield was not able to state what had happened to the September 21, 2021 Six Million Dollar payment. (Exhibit **"8,"** Relevant Portions of Declaration of Paul Greenfield ¶ 19[1].)

39.     Then, on December 21, 2022, a month after the November 21, 2022 Notice of Default, and five days after the December 16, 2022 deposition, Lender Defendants Dakota Note, LLC, and Natural Software Systems Inc., Money Purchase Pension Plan provided a Payoff Statement for $7,368,000.91. The default amount had increased by $198,443 in a matter of 30 days. (Exhibit **"9,"** December 2022 Pay Off Statement).

40.     Along with December 21, 2022 Pay Off Demand, Lender Defendants provided a new accounting in their attempt to explain the inconsistent and incorrect balance they had claimed. The December 21, 2022 accountings indicated yet a new amount, $3,500,000 for the September 22, 2022 payment of $6,000,000 against the December 2019 Note. There was no indication as what Lender Defendants have done with the remaining $2,5000,000. (Exhibit **"10,"** Defendants' New Accounting).

41.     Furthermore, the two accountings provided on December 21, 2022, indicate that starting August 2022, Lender Defendants have charged a monthly "default interest" charge of $150,649. There is no explanation as to why the loan was deemed 'in default' as of August 2022.

42.     On February 28, 2023, Defendants caused for a Notice of Sale to be recorded with the County Recorder's Office, instrument number 2023-008980, indicating a default amount of $6,857,126.69, and noticing a sale date of May 24, 2023. (Exhibit **"11,"** February 2023 Notice of Sale.)

---

[1] The Exhibits attached to the Declaration have been removed to reduce file size. The Exhibits will be provided upon request.

Case: 23-53048   Doc# 33-4   Filed: 10/03/23   Entered: 10/03/23 12:15:49   Page 7 of 134
of 411     - 7 -

43.     On March 6, 2023, Defendants caused for a second Notice of Sale to be recorded with the County Recorder's Office, instrument number 2023-009951, indicating a default amount of $6,857,126.69, and noticing an earlier sale date of March 29, 2023. (Exhibit **"12,"** March 2023 Notice of Sale.)

44.     Prior to filing the Chapter 11 Petition and this adversary complaint, Plaintiff Nariman, in writing, tendered to Lender Defendants to pay off the correct outstanding amount, plus all applicable fees, and interest amounts. Lender Defendants, did not accept Plaintiff Nariman's tender.

45.     Plaintiff Nariman  asserts in this action that the effective interest rate for the Note was significantly above 10 percent per annum, and as such, the Note is usurious.

46.     To illustrate the predatory or Usurious nature of Lender Dakota Note LLC's lending practices, let us meticulously dissect a specific loan transaction from December 2019. Plaintiff Nariman sought to borrow $6,000,000 USD. However, he received only $5,786,462.00, even though the contract stipulated an interest rate of 10% APR, thereby necessitating an annual payment of $600,000.00. Moreover, Lender Dakota Note LLC imposed various fees and, considering the shortfall between the requested loan amount and the actual cash disbursed, effectively charged Nariman an actual interest rate of 13.55%. (Exhibit **"4"**.)

47.     California's usury law provides that the maximum rate of interest for a loan other than a personal loan and not otherwise exempt is 10% or 5% over the then prevailing interest rate charged by the Federal Reserve Bank of San Francisco. Cal. Const, Art. XV § 1. The interest Defendants charged on all ten notes exceed the usury limit set by the California Constitution. There are no exceptions to the usury limit that apply here.

48.     Further, the *Wishnev* court notes that, "the second paragraph of article XV prohibits a lender from receiving "more than the interest authorized by this section" as a result of "charging any fee, bonus, commission, discount or other compensation … ." Because article XV distinguishes interest from the enumerated types of compensation, the court reasoned, those types of compensation must be distinct from interest, compound or otherwise. (Wishnev I, at p. 945.)" (*Wishnev v. The Northwestern Mutual Life Ins. Co.* (2019) 8 Cal. 5th 199, 212.)

49. The consequences of a violation of the usury limit are well settled. When the interest rate in an obligation exceeds the allowed usury limit, the interest provisions are void as a matter of law and public policy. *Westman v. Dye* (1931) 214 Cal. 28, 31; *Gibbo v. Berger* (2004) 123 Cal. App. 4th 396,403-404. The attempt to exact the usurious rate of interest renders the interest provisions of a note void. *Moore v. Russell* ( 1931) 114 Cal. App. 634; *Simmons v. Patrick* (1962) 211 Cal. App.2d 383 . The inclusion of a usurious interest provision, therefore, results, in effect, in a note payable without interest. *Epstein v. Frank* (1981) 125 Cal. App. 3d 111 , 122-123 .

50. Because a note with a usurious interest rate results in a note without interest, "The instant a payment is made of usurious interest it is applied to the principal , and the principal indebtedness at the time of such payment is reduced to the extent thereof." *Westman* , at 39, *Gibbo*, at 404. This rule applies not only to the present notes but also to the related previous notes. "Where the lender brings an action to recover an indebtedness, none of the usurious payments, nor payments on renewal notes, are barred by limitation so as to preclude their use in the reduction of the principal debt." *Shirley v. Britt* (1957) 152 Cal. App. 2d 666, 670.

51. Plaintiff Nariman suspects that Lender Defendants, will argue and may present evidence that the subject series of Notes are exempt from usury because of the "broker" exemption to usury. California Constitution Section 1916.1 provides that Constitutional restrictions on interest rates do not apply "to any loan or forbearance made or arranged by any person licensed as a real estate broker by the State of California…". A licensed broker must "arrange" the loan within the meaning of the statute. An untrue or erroneous recital in the loan agreement as to who arranged the loan will not preclude the borrower from establishing the true identity and conduct of the arranging licensee, or whether the loan was arranged by a broker at all. *In Stoneridge Parkway Partners v. MW Housing Partners III* (2007), 153 Cal. App. 4th 1373; 8 Cal. Real Est. § 21:34 (3d ed.). The court in *Gibbo v. Berger*, 123 Cal. App. 4th 396, 402 (2004) explains that for a broker to "arrange" a loan (and thus trigger the exemption), the broker must do substantive work:

When viewed in the context of "arranging a loan," the phrase "arranged by" must refer to **some conduct** by a real estate broker . . . that causes a loan to be obtained or procured. Such conduct by a broker includes structuring the loan as the agent for the lender . . . setting the interest rate and points to be paid, setting the terms of the forbearance agreement, reviewing the loan and forbearance documents, conducting title searches, or drafting the terms of the loan . . . A broader definition would result in absurd results—a licensed real estate broker who photocopies and collates the pages of a loan document and then charges a fee for that service will be held to have "arranged" a loan, which is exempt from the constitutional usury provision.
(Emphasis added)

52.      In *Gibbo v. Berger*, the court found that the broker did not "arrange" the loan when the broker's involvement was limited to preparing loan documents, ordering title insurance, and dispersing funds, all in accordance with the parties' instructions and on the terms provided by the parties.

53.      In *Del Mar v. Caspe*, 222 Cal. App. 3d 1316 (1990), the court found that a broker "arranged" a loan because he "was **essential** to preparation, execution, and completion of the loan documents and transaction." The court held that for the exemption to apply, whether the broker performed title searches, reviewed loan documents, consulted with the lender and advised the lender of his rights and obligations, calculated the principal amount of a prior loan and the principal amount of future advances, calculated interest on a prior principal amount and calculated interest on future advances, prepared loan documents, discussed the loan documents and terms with the lender and borrower, and obtained borrower's signature on new notes and deeds of trust, are factors that may considered.

54.      In *Jones v. Kallman*, 199 Cal. App. 3d 131 (1988), the court held that for the exemption to apply, whether the broker 'determines the interest rate and points to be charged on the loan' is a factor that may be considered. In *Chapman v. Farr*, 132 Cal. App. 3d 1021 (1982), the court held that for the exemption to apply, whether the broker "structured" the transaction is a factor that may be considered.

55.      Here, a broker was never involved, whatsoever. As indicated above, Defendant Kenoyer represented to Plaintiff Nariman that Defendant Knapp, a licensed broker, would be

involved in the lending process and would negotiate the terms and rates of the loans on behalf of

Plaintiff Nariman. (Exhibit "**2**" ¶ 14.) Instead, negotiations were handled directly by Plaintiff

Nariman. (*Id*. ¶ 17.) Further, when asked to provide proof that such communications occurred,

Defendants did not provide Plaintiff Nariman with any documentation that Defendant Knapp

ever engaged in such negotiations. (*Id*. ¶ 23.)

56.     As the Note is usurious, all interest provisions are deemed void, and all interest

payments made by Plaintiffs are credited against the principal amount disbursed to them. As

indicated above, Lender Defendants had disbursed $5,786,461 to Borrower Plaintiff Nariman.

(Exhibit "**3**".) Borrower Plaintiff Nariman has paid back $6,210,000. As such, the Note is paid

in full. A balance of $423,539, plus treble damages, and interest, is owed back to Borrower

Plaintiff Nariman.

57.     However, on July 10, 2023, Defendants held an improper non-judicial

foreclosure sale for the 66 Barry Lane Property.

58.     At that sale, Defendant 66 Barry Lane, LLC allegedly bought the property for $3

million. The Trustee's Deed Upon Sale states that the transfer of property occurred on July 11,

2023. (Exhibit **"13,"** 66 Barry Lane, LLC Trustee's Deed Upon Sale.)

59.     Significantly, Defendant 66 Barry Lane, LLC's Articles of Organization were not

filed with the California Secretary of State until August 1, 2023. (Exhibit **"14,"** 66 Barry Lane

Articles of Incorporation.)This means that Defendant 66 Barry Lane did not exist as a legal

entity at the time the Trustee's Deed Upon Sale was executed.

60.     Further, Defendant Greenfield is listed as the organizer of 66 Barry Lane, LLC.

Defendant Greenfield is also the principal of Defendant Dakota Note, LLC. (Exhibit **"14"**.)

61.     The San Mateo Tax Collector indicates that the Barry Lane Property's assessed

values are $5,151,059 for the land and $6,161,343 for the improvements making the total

taxable value is $11,312,402. (Exhibit **"15"**, San Mateo Tax Collector's Parcel Details for the

Barry Lane Property.) Yet, the Barry Lane Property was only sold for $3 million at the non-

judicial foreclosure sale. (Exhibit **"13"**.) This means that the Barry Lane Property was sold for

less than the assessed value of the land itself.

62.     On information and belief, it would seem as though Defendant Greenfield knew that his predatory lending scheme would result in Plaintiff Nariman defaulting on his Note and as such, Defendant Greenfield created a legal entity to hold his ill gained spoils.

63.     The foreclosure and transfer of the Barry Lane Property is defective because the property was foreclosed through a fraudulent and predatory lending scheme and Defendant 66 Barry Lane, LLC did not exist as a legal entity at the time of the transfer.

64.     As such, Defendant 66 Barry Lane's security interest in the 66 Barry Lane property is defective.

65.     As indicated above, this foreclosure is based on a predatory lending scheme created by Defendant Lenders to force Plaintiff Nariman into an alleged default on his Note by refusing to honor his explicit instructions to apply the $6 million credit to the Note attached to the Barry Lane Property.

66.     Further, this type of behavior is not atypical of Defendants. Defendants have been engaged in several bouts of litigation surrounding their predatory lending schemes both in civil court and bankruptcy court where Defendants obtain promissory notes from borrowers attaching their personal property as collateral in a scheme to force the borrowers to default through unfair lending practices to foreclose the personal property and buy the property at a discounted rate.

67.     These cases include, but are not limited to, Belcher v. Dakota Note, LLC, et. al., San Mateo County Superior Court Case No. 18CV336806 and Brugnara v. Greenfield, et. al., Northern District of California Bankruptcy Court, Adversary Case No. 21-03065-DM.

## COUNT ONE

## OBJECTION TO THE VALIDITY OF THE FORECLOSURE OF THE 66 BARRY LANE PROPERTY

### (Plaintiff Nariman Against All Defendants and DOES 1-20)

68.     Plaintiff Nariman incorporates by reference Paragraphs 1 through 67 of this Complaint, as though fully set forth herein.

69.     Defendant 66 Barry Lane, LLC alleges that it has a valid claim in the 66 Barry Lane Property. Further, Defendant 66 Barry Lane alleges that because it bought the Property at a foreclosure sale that Plaintiff Nariman holds no property interest in the Property.

70.     Plaintiff Nariman denies this claim because the foreclosure of the 66 Barry Lane Property was based on a predatory lending scheme created by Defendant Lenders to force Plaintiff Nariman into an alleged default on his Note by refusing to honor his explicit instructions to apply the $6 million credit to the Note attached to the Barry Lane Property. Further, Plaintiff alleges that the non-judicial foreclosure was pursuant to recorded notice of default that was in error.

71.     Further, on July 10, 2023, Defendants allegedly held an improper foreclosure sale for the 66 Barry Lane Property.

72.     At that sale, Defendant 66 Barry Lane, LLC allegedly bought the property for $3 million. The Trustee's Deed Upon Sale states that the transfer of property occurred on July 11, 2023. (Exhibit "**13**".)

73.     However, Defendant 66 Barry Lane, LLC's Articles of Organization were not filed with the California Secretary of State until August 1, 2023. (Exhibit "**14**".)

74.     The foreclosure and transfer of the 66 Barry Lane Property is defective because the property was foreclosed through a fraudulent and predatory lending scheme created by the Defendant Lenders and Defendant 66 Barry Lane, LLC did not exist as a legal entity at the time of the transfer.

75.     As such, Defendant 66 Barry Lane, LLC's security interest in the 66 Barry Lane property is defective.

**COUNT TWO**

**USURY**

**(Plaintiff Nariman Against All Defendants and DOES 1-20)**

76.     Plaintiff Nariman incorporates by reference Paragraphs 1 through 75 of this Complaint, as though fully set forth herein.

77. The annual interest rate, the late fee clause, and the default interest rate on the loan are usurious, and in violation of section 1(2) of Article XV of the California Constitution, which provides that the interest rate on a loan other than one primarily for personal, family, or household purposes may not exceed the greater of 10% per annum or 5% per annum plus the rate established by the Federal Reserve Bank of San Francisco on advances to member banks on the 25th day of the month proceeding the earlier of the date of execution of the contract to make the loan or forbearance, or the date of making the loan or forbearance. (Exhibit "**3**".)

78. Further, a broker did not make or arrange the subject loan; therefore, the "broker" exception to the usury laws under *Cal Civ Code* § 1916.1, and otherwise, does not apply to the subject transaction. (Exhibit "**2**" ¶ 19.)

79. The amounts sought by Lender Defendants are usurious.

80. Plaintiff Nariman hereby seeks a judgment that the Note is usurious, that Lender Defendants are barred from collecting fees and interest for the term of the notes, and that all fees and interests paid by Plaintiff, be credited against the principal amount of the note and the balance refunded to Plaintiff.

81. Plaintiff Nariman is further entitled to double and treble damages.

82. Plaintiff Nariman is entitled to recover attorney's fees against Defendants, in this action under the Notes, and pursuant to *Cal Civ Code* § 1717.

## COUNT THREE
## QUIET TITLE
### (Plaintiff Nariman Against All Defendants and DOES 1-20)

83. Plaintiff Nariman incorporates by reference Paragraphs 1 through 82 of this Complaint, as though fully set forth herein.

84. The December 2019 Deed of Trust and the Notice of Default indicate incorrect, unlawful, unenforceable, and usurious terms and balances. (Exhibits "**1**" and "**7**".)

85. As noted above, Plaintiff Nariman properly advanced $6 million to Lender Defendants to pay off the December 2019 Note.

86.     However, Lender Defendants ignored Plaintiff Nariman's explicit instructions to use the $6 million to pay off the December 2019 Note and produced false and inconsistent accountings to perpetuate their false narrative that Plaintiff Nariman defaulted on his loan. (Exhibits "**5**", "**6**", and "**10**".)

87.     As such, the July 10, 2023 foreclosure sale of the Barry Lane Property was improper because it was based on a an unlawful default.

88.     Further, at that sale, Defendant 66 Barry Lane, LLC allegedly bought the property for $3 million. The Trustee's Deed Upon Sale states that the transfer of property occurred on July 11, 2023. (Exhibit **"13"**.)

89.     However, Defendant 66 Barry Lane, LLC's Articles of Organization were not filed with the California Secretary of State until August 1, 2023. (Exhibit **"14"**.)

90.     This means that Defendant 66 Barry Lane did not exist as a legal entity at the time the Trustee's Deed Upon Sale was executed.

91.     As such, the transfer of the Barry Lane Property to Defendant 66 Barry Lane was improper because the entity did not exist at the time of the transfer.

92.     Therefore, Plaintiff Nariman seeks an order of the Court quieting title as to the Barry Lane Property, and expunging the deed of trust, the notice of default, notice of sale, and the Trustee's Deed Upon Sale (Exhibits "**1**", "**7**", and "**13**".).

**COUNT FOUR**

**WRONGFUL FORECLOSURE**

**(Plaintiff Nariman Against All Defendants and DOES 1-20)**

93.     Plaintiff Nariman incorporates by reference Paragraphs 1 through 92 of this Complaint, as though fully set forth herein.

94.     The December 2019 Deed of Trust and the Notice of Default indicate incorrect, unlawful, unenforceable, and usurious terms and balances. (Exhibits "**1**" and "**7**".)

95.     Due to the inclusion of usurious interest in the Notices of Default and Sale, the foreclosure against the Property was improper.

96.     Defendants failed to comply with *Cal Civ Code* § 2966 which mandates a minimum of 90 days written notice for balloon payment. According to *Marbry v The Superior Court of Orange County* (2010) 185 Cal. App. 4th 208, "if section 2923.5 is not complied with, then there is no valid notice of default, and without a notice of default, a foreclosure cannot proceed."

97.     Further, the foreclosure proceedings are in serious violation of *Cal Civ Code* § 1479.

98.     Further, at the July 10, 2023 non-judicial sale, Defendant 66 Barry Lane, LLC allegedly bought the property for $3 million. The Trustee's Deed Upon Sale states that the transfer of property occurred on July 11, 2023. (Exhibit "**13**".)

99.     However, Defendant 66 Barry Lane, LLC's Articles of Organization were not filed with the California Secretary of State until August 1, 2023. (Exhibit "**14**".)

100.    As such, Defendant 66 Barry Lane did not exist as a legal entity at the time the Trustee's Deed Upon Sale was executed which means that the transfer of the Barry Lane Property to Defendant 66 Barry Lane was improper because the entity did not exist at the time of the transfer.

101.    Defendants have unlawfully invoked *Cal Civ Code* § 2924 for non-judicial foreclosure on the Barry Lane Property. Accordingly, the subject foreclosure proceedings against the Barry Lane Property are unlawful.

102.    Defendants are guilty of fraud, oppression, and malice, and in pursuing this foreclosure acted in conscious and callous disregard of Plaintiff's rights in that they knew that there were improper and unlawful procedures and irregularities attending the foreclosures procedures. Accordingly, Plaintiff is entitled to an award of punitive damages in an amount to be determined by the trier of the fact.

103.    Furthermore, the conduct of Defendants in attempting to in effect steal Plaintiff's home, where he and his family live and the possibility of such a loss without expenditure of significant funds and effort to counter such theft has caused Plaintiff significant and severe emotional distress.

**COUNT FIVE**

**FRAUDULENT MISREPRESENTATION AND CONCEALMENT**

**(Plaintiff Nariman Against All Defendants and DOES 1-20)**

104. Plaintiff Nariman incorporates by reference Paragraphs 1 through 103 of this Complaint, as though fully set forth herein.

105. In or about 2013, Defendants intentionally misrepresented to Plaintiff Nariman the following facts:

    a. Defendant Kenoyer misrepresented that Defendant Knapp, a licensed broker, would be involved in Plaintiff Nariman's lending process with California Home Loan by negotiating the rates, terms, and fees. (Exhibit "**2**" ¶ 14.)

    b. Defendant Kenoyer misrepresented that Defendant Knapp was taking an active role in negotiating the rates, terms, and fees of Plaintiff Nariman's loans with Defendant Dakota Note, LLC. (*Id*.)

    c. Defendant Knapp was not a licensed broker throughout Plaintiff Nariman's lending process because his license was revoked due to action taken by the California Department of Real Estate for fraud in or about 2016. (*Id*. ¶ 31.)

106. On or about September 2021, Defendants intentionally concealed from Plaintiff the following facts:

    a. Lender Defendants did not apply the $6 million that Plaintiff Nariman explicitly directed to be applied to the December 2019 Note which had the Barry Lane Property as collateral. (Exhibit "**5**".)

    b. Lender Defendants would apply the $6 million to Plaintiff Nariman's other loans at their own discretion and change their accountings several times to account for the discrepancy in the application of the $6 million to the other loans. (Exhibits "**6**" and "**10**".)

    c. Plaintiff Nariman's loan with the Lender Defendants was still outstanding and accruing interest.

107.     Lender Defendants represented to Plaintiff Nariman that the $6 million would be applied to the December 2019 Note and that his loan would be fully paid off.

108.     Lender Defendants failed to disclose, and intentionally concealed from Plaintiff, and misrepresented these important facts, in order to induce Plaintiff Nariman into believing that his loan was fully paid off and that he did not need to make any additional payments in order to have Plaintiff default on his loan and obtain the Barry Lane Property as collateral.[2]

109.     Lender Defendants acted intentionally in concealing this material fact and have demonstrated a practice of defrauding consumers with the litany of other cases pursued by other borrowers.[3]

110.     Lender Defendants had a duty to disclose those facts because the affirmative representations they made about the loan payoff were misleading half-truths in the absence of disclosure of these facts.

111.     Lender Defendants additionally had a duty to disclose those facts because they had exclusive knowledge of the facts and knowledge that Plaintiff Nariman had no ability to learn those facts due to their failure to provide Plaintiff Nariman with accurate copies of the accountings. (Exhibits "**6**" and "**10**".)

112.     Lender Defendants intended that Plaintiff rely on and act upon the absence of those facts in determining whether to make additional payments on the December 2019 Note, and Plaintiff Nariman did in fact rely on the absence of those facts, and on Defendants' representations, in failing to make any additional payments on the December 2019 Note because he believed that the December 2019 Note was fully paid off based on his instructions to Lender Defendants and Lender Defendants' March 14, 2022 loan accounting reflecting payoff of the December 2019 Note. (Exhibits "**5**" and "**6**".)

---

[2] Defendant Greenfield is the principal of Dakota Note, LLC and the organizer of 66 Barry Lane, LLC. This means that Plaintiff Nariman's default on his loan to Defendant Dakota Note, LLC led to Defendant 66 Barry Lane, LLC aka Defendant Greenfield obtaining the Barry Lane Property.

[3] These cases include, but are not limited to, Belcher v. Dakota Note, LLC, et. al., San Mateo County Superior Court Case No. 18CV336806 and Brugnara v. Greenfield, et. al., Northern District of California Bankruptcy Court, Adversary Case No. 21-03065-DM.

113. Each of Defendants' misrepresentations and the undisclosed facts set forth above were material to Plaintiff Nariman's decision on whether to make additional payments on the December 2019 Note. Had Plaintiff Nariman known any of those facts, or any combination of those facts, Plaintiff Nariman would not have ceased making payments on the December 2019 Note which led to the improper default.

114. Due to Defendants' misrepresentations and omissions, Plaintiff Nariman's loan defaulted, and the Barry Lane Property was sold in an improper non-judicial foreclosure sale which benefited the Lender Defendants. The Barry Lane Property is now subjected to an improper unlawful detainer action and has been sold in a premature foreclosure sale due to the predatory and fraudulent practices employed by Defendants.

115. As a direct and proximate result of Defendants' fraudulent misrepresentations and concealments, and the aiding and abetting and conspiring in the fraudulent scheme to deprive Plaintiff Nariman of his ability to properly pay off the December 2019 Note, Plaintiff Nariman's home is now subject to an unlawful detainer action, he has been forced to file for Chapter 11 Bankruptcy and has to defend against Defendants' claims.

116. Defendants, and each of them, committed the acts, omissions, and conduct described above with malice, oppression, fraud and ill will toward Plaintiff Nariman, and with a conscious disregard of the rights of Plaintiff Nariman, all of which warrants imposition of punitive and exemplary damages in an amount to be proven at the time of trial.

**COUNT SIX**

**VIOLATION OF *CAL BUS & PROF CODE* § 17200**

**(Plaintiff Nariman Against All Defendants and DOES 1-20)**

117. Plaintiff Nariman incorporates by reference Paragraphs 1 through 116 of this Complaint, as though fully set forth herein.

118. The conduct of Defendants as described above are in violation of *Cal Bus & Prof Code* § 17200 in that the conduct is predatory in nature and constitutes an unfair business practice as defined by the *Code*.

119. As a direct and proximate result of the Defendants' violation of *Cal Bus & Prof Code* § 17200 Defendants held an illegal non-judicial foreclosure of the Plaintiff's residence, the Barry Lane Property. Defendants benefitted from the non-judicial foreclosure because Defendant Dakota Note, LLC, operated by Defendant Greenfield, sold the Barry Lane Property for $3 million dollars to Defendant 66 Barry Lane, LLC which is organized by Defendant Greenfield. (Exhibits "**13**" and "**14**".)

120. Defendants' conduct as described above was fraudulent and deceptive. Among other fraudulent and deceptive conduct as described above, Defendants ignored Plaintiff Nariman's explicit instructions to apply the $6 million payment to the December 2019 Note, issued a March 2022 accounting reflecting that the December 2019 Note was "paid off", and then sent out a December 2022 accounting which stated that the December 2019 Note was not paid off. (Exhibits "**5**", "**6**", and "**10**".)

121. Defendants used this fraudulent lending scheme to issue Default Notices against Plaintiff Nariman and hold the illegal non-judicial foreclosure sale.

122. Further, the San Mateo Tax Collector indicates that the Barry Lane Property's assessed values are $5,151,059 for the land and $6,161,343 for the improvements making the total taxable value is $11,312,402. (Exhibit "**15**", San Mateo's Parcel Details for the Barry Lane Property.) Yet, the Barry Lane Property was only sold for $3 million at the non-judicial foreclosure sale. (Exhibit "13".) This means that the Barry Lane Property was sold for less than the assessed value of the land itself.

123. Defendants' predatory and fraudulent lending scheme resulted in Plaintiff Nariman defaulting on his loan which allowed them to buy the Barry Lane Property at a severely discounted rate.

124. Defendants' acts, conduct and practices as alleged above represent and constitute a pattern and practice on the part of Defendants in the treatment of their borrowers. Plaintiff Nariman is informed and believes and thereon alleges Defendants have similarly engaged in prohibited acts, conduct and practices as alleged above as to other borrowers.

125.   As a direct and proximate result of Defendants' conduct, Plaintiff Nariman has suffered further damages in having to bring several legal disputes against the illegal foreclosure.

126.   The conduct of Defendants described above were predatory, fraudulent, intentional and with reckless disregard of Plaintiff Nariman's rights and Plaintiff Nariman is entitled to punitive damages.

**WHEREFORE**, Plaintiff prays for judgment against Defendant for:

1.   A determination of the extent, validity, and priority of Defendant's security interest and the amount of Defendants' claim;

2.   Avoidance of Defendant's lien or interest to the extent not properly secured by the Collateral pursuant to 11 U.S.C. § 506(d);

3.   A declaration that the underlying Note is usurious, that Defendants are barred to collect fees and interest for the term of the Note, and that all fees and interests paid by Plaintiff Nariman, should be returned or credited back.

4.   For a Judgment quieting title by way of reconveyance and correction of the Deed of Trust, Notice of Default, and Notice of Sale, encumbering the Property, and holding that the said instruments are void, null, and unenforceable.

5.   For an order, enjoining the unlawful foreclosures;

6.   General damages in an amount to be determined at trial;

7.   Special damages in an amount to be determined at trial;

8.   Punitive damages in an amount to be proven at trial;

9.   Attorney's fees and costs as provided by applicable law; and such other and further relief as the Court deems just and proper.

Dated: October 10, 2023                    By: _____

                                                      Barzin Barry Sabahat, Esq.
                                                      Attorney for Plaintiff,
                                                      Nariman Teymourian

# EXHIBIT N

1  Barzin Barry Sabahat (SBN 164248)
   P.O. Box 9691
2  San Jose, CA 95157
   Telephone: (408) 500-5280
3  Email: barry@anchorlawgroup.com

4
   Attorney for Plaintiff,
5  Nariman Seyed Teymourian

6           UNITED STATES BANKRUPTCY COURT FOR

7  THE NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

8

9  In re 66 BARRY LANE, LLC,              Chapter 11

10          Debtor.                        Bk. No. 23-51443-DM

11

12 NARIMAN SEYED TEYMOURIAN, an           Adv. Pro. No.
   individual
13                                         **COMPLAINT FOR:**
                   Plaintiff,
14                                            1. OBJECTION TO THE
   v.                                            VALIDITY OF THE
15                                               FORECLOSURE OF THE 66
   66 BARRY LANE, LLC, a California               BARRY LANE PROPERTY
16 limited liability company; DAKOTA         2. USURY
   NOTE, LLC, a South Dakota limited        3. QUIET TITLE
17 liability company; PAUL GREENFIELD,      4. WRONGFUL FORECLOSURE
   an individual; DARRYL KENOYER, an        5. FRAUDULENT
18 individual; KEITH CHARLES KNAPP, an          MISREPRESENTATION AND
   individual; NATURAL SOFTWARE                 CONCEALMENT
19 SYSTEMS, INC. MONEY PURCHASE            6. VIOLATION OF *CAL BUS &*
   PENSION PLAN; business form                 *PROF CODE* §17200
20 unknown; 5 PALMS, LLC, a California      7. AVOIDANCE AND RECOVERY
   limited liability company; and DOES 1-       OF CONSTRUCTIVE
21 20, INCLUSIVE                                 FRAUDULENT TRANSFERS
                                                 PURSUANT TO 11 U.S.C. §§
22                 Defendants.                    548(a)(1)(B) and 550(a))
                                             8. FOR AVOIDANCE AND
23                                               RECOVERY OF
                                                 CONSTRUCTIVE
24                                               FRAUDULENT TRANSFERS
                                                 PURSUANT TO CALIFORNIA
25                                               CIVIL CODE §§ 3439.04(a)(2)
                                                 and 3439.07(a)(1))
26
                                             9. NONDISCHARGEABILITY
27

28

---

COMPLAINT
- 1 -



**DEMAND FOR JURY TRIAL**

**COMPLAINT TO DETERMINE THE EXTENT AND VALIDITY OF CLAIMS AND INTERESTS IN PROPERTY OF THE DEBTOR**

Plaintiff Nariman Teymourian ("**Plaintiff Nariman**"), as plaintiff in the above captioned adversary proceeding hereby alleges, upon his own knowledge or upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1.      This is an adversary proceeding by Plaintiff objecting to and seeking a determination of the extent and validity of claims and interests in the property of the Debtor asserted by Defendant 66 BARRY LANE, LLC and the predatory lending scheme created by Defendants DAKOTA NOTE, LLC, PAUL GREENFIELD, DARRYL KENOYER, KEITHER CHARLES KNAPP, NATURAL SOFTWARE SYSTEMS, INC. MONEY PURCHASE PENSION PLAN, 5 PALMS, LLC, which lead to the illegal foreclosure of 66 Barry Lane, Atherton, San Mateo, CA 94027 ("**the Barry Lane Property**").

**JURISDICTION AND VENUE**

COMPLAINT
- 2 -

1      2.     This Court has jurisdiction over this adversary proceeding
2 pursuant to 28 U.S.C. §§ 157 and 1334 and Plaintiff consents to entry of a
3 final order or judgment by the Bankruptcy Court in this matter.
4      3.     Venue is proper in this district under 28 U.S.C. § 1409(a). This
5 adversary proceeding is related to In re NARIMAN SEYED TEYMOURIAN, Bk.
6 No. 23-30668-DM under Chapter 11, pending in this district and
7 TEYMOURIAN v. 66 BARRY LANE, LLC et al., AP Case No. 23-3038-DM.
8      4.     This adversary proceeding is commenced pursuant to Bankruptcy
9 Rule 7001(2).

**PARTIES**

11      5.     Plaintiff Nariman is an individual who is also a debtor before this
12 Court under the case number 23-30668 and has initiated an adversarial
13 proceeding in that case titled *Teymourian v. 66 Barry Lane, LLC, et al.* bearing
14 the adversarial case number 23-03038. The allegations of this case and the
15 other case are substantially similar with the exception that this case also
16 seeks non-dischargeability against Defendants based on the nature of
17 Defendants' liability on the other causes of action.
18      6.     Defendant 66 Barry Lane, LLC is a California limited liability
19 company having a principal place of business in San Jose, California.
20      7.     Defendant Dakota Note, LLC, is a South Dakota Limited Liability
21 Company, which is not registered to do business in California. Defendant
22 Dakota Note, LLC has been doing business in California, including bringing
23 and defending litigation, since at least 2013.
24      8.     On information and belief, Defendant Paul Greenfield is an
25 individual who resides in San Jose, California.
26      9.     On information and belief, Defendant Darryl Kenoyer is an
27 individual who resides in San Jose, California.
28

COMPLAINT<br>- 3 -

1    10.    On information and belief, Defendant Keith Charles Knapp is an
2    individual who resides in San Jose, California.
3    11.    On information and belief, Defendant Natural Software Systems,
4    Inc. Money Purchase Pension Plan is an entity, business form unknown, and
5    does interstate business in the State of California.
6    12.    Defendant 5 Palms, LLC is a California limited liability having a
7    principal place of business in Sonoma, California.
8    13.    Plaintiff Nariman is ignorant of the true names and capacities of
9    Defendants sued herein as DOES 1 through 20, inclusive, and therefore sues
10   these Defendants by such fictitious names. Plaintiff will amend this Complaint
11   to allege the true names and capacities of said Defendants when ascertained.
12   Plaintiff is informed, believes, and thereon alleges that each of said fictitiously
13   named Defendants are responsible in some manner for the occurrences herein
14   alleged and are indebted to Plaintiff as hereinafter alleged, and that Plaintiff's
15   damages as hereinafter alleged were proximately caused by such Defendants.
16   14.    Plaintiff Nariman informed, believes, and thereon alleges that at
17   all times mentioned herein, each of the Defendants were the agent, servants
18   and/or employee of each of the remaining Defendants, and in doing the things
19   hereinafter alleged, were acting both on their own behalf and within the course
20   and scope of such agency.
21   15.    Plaintiff Nariman is informed, believes, and upon such information
22   and belief alleges, that each of the named Defendants is responsible in some
23   manner for the occurrences herein alleged, and Plaintiff's damages as herein
24   asserted were proximately caused by such Defendants. Plaintiff is informed,
25   believes, and upon such information and belief alleges, that at all times herein
26   mentioned each of the Defendants were the agent, employee, servant, partner,
27   guarantor, or successor of each of the named Defendants and in doing the
28   things herein asserted, were acting within such course and scope. Plaintiff is

COMPLAINT
- 4 -

1    also informed and believes and upon such information and belief allege that at

2    all relevant times mentioned herein, Defendants, and each of them, were joint

3    ventures with each, every, and said Defendants were acting in furtherance of

4    said joint venture.

5                              **FACTUAL BACKGROUND**

6          16.    On October 3, 2023 ("**Petition Date**"), Plaintiff Nariman filed a

7    voluntary petition for relief under Chapter 11 of the Bankruptcy Code, Case

8    No. 23-30668-DM. On October 11, 2023 , Plaintiff Nariman filed an Adversary

9    Proceeding against Defendant 66 Barry Lane, LLC, AP Case No. 23-3038-DM.

10         17.    One of the assets listed in Plaintiff Nariman's Petition is the Barry

11   Lane Property. The Parcel Number is 070-2010070-3631, and legal description

12   of the property is:

13         Lot 13, AS DESIGNATED ON THE MAP ENTITLED "ATHERTON
           WOODS UNIT NO. 2 ATHERTON SAN MATEO COUNTY,
14         CALIFORNIA" WHICH MAP WAS FILED IN THE OFFICE OF THE
           RECORDER OF THE COUNTY OF SAN MATEO, STATE OF
15         CALIFORNIA ON JUNE 2, 1955 IN BOOK 42 OF MAPS AT PAGE
           37. JPN: 070-020-201-07A. (Exhibit "**1**," Barry Lane Property
16         Deed of Trust".)

17

18         18.    In or about 2016, Plaintiff Nariman sought to renovate his

19   residence, the Barry Lane Property, and began looking for lenders to help him

20   finance the venture.

21         19.    In or about 2016, Plaintiff Nariman was approached by Defendant

22   Darryl Kenoyer who claimed he worked for California Home Loans.

23         20.    Defendant Kenoyer represented that Defendant Keith Charles

24   Knapp was a licensed broker who served as the principal of California Home

25   Loans. Defendant Kenoyer further stated that Defendant Knapp would contact

26   multiple lenders and negotiate the rate, terms, and fees of the loan. (Exhibit

27   "**2,**" Declaration of Nariman Teymourian ¶ 14.)

28

                                    COMPLAINT
                                       - 5 -

21.     Shortly after the meeting, in or about 2016, Defendant Knapp introduced Plaintiff Nariman to Defendant Paul Greenfield, the principal of Defendant Dakota Note, LLC. Plaintiff Nariman was informed by Defendant Knapp that Defendant Dakota Note, LLC had approved the loan for the construction of the Barry Lane Property, but the loans would need to be characterized as commercial loans and secured to Plaintiff Nariman's other personal residences. (Exhibit "**2**" ¶ 17.)

22.     At no point during his financing relationship with Defendant Dakota Note, LLC did Defendant Knapp negotiate with Defendant Dakota Note, LLC. Plaintiff Nariman negotiated directly with Defendant Dakota Note, LLC. (Exhibit "**2**" ¶ 19.)

23.     Further, when Plaintiff Nariman requested copies of communication between Defendants Knapp, Kenoyer, and Dakota Note, LLC to evidence that a licensed broker was negotiating the loan terms, he did not receive any documentation. (Exhibit "**2**" ¶ 23.)

24.     On information and belief, Defendant Knapp was not a licensed broker throughout Plaintiff Nariman's lending process because his license was revoked due to action taken by the California Department of Real Estate for fraud in or about 2016. (Exhibit "**2**" ¶ 31.)

25.     On December 17, 2019, Plaintiff Nariman and his wife Gail Suzanne Marie Teymourian entered into a contract in which Plaintiffs executed a "Note" for $6,000,000 from Lender Defendants Dakota Note, LLC, and Natural Software Systems Inc., Money Purchase Pension Plan ("Lender Defendants"); (Exhibit "**3**," December 2019 Note.)

26.     Lender Defendants charged various usurious fees, interest, and credit backs which exceed the 10 percent interest allowed under Cal. Const, Art. XV § 1. This caused the actual disbursement amount to Plaintiff Nariman and his wife Gail Suzanne Marie Teymourian to be $5,786,461. As such, the

1  effective interest rate was significantly above 10 percent per annum, and as
2  such, usurious. (Exhibit "**2**" ¶ 11 and Exhibit "**4**," Analysis of Dakota Note,
3  LLC Loans.)
4      27.   The December 2019 Note was secured against the Barry Property.
5  (Exhibit **"1"**.)
6      28.   On September 22, 2021, Plaintiff Nariman and his wife, Gail
7  Suzanne Marie Teymourian, paid Lender Defendants Dakota Note, LLC, and
8  Natural Software Systems Inc., Money Purchase Pension Plan the amount of
9  $6,000,000, to pay off the principal for December 2019 Note. Usurious interest
10  for the 21 months term of the loan remained outstanding.
11      29.   On September 8, 2021, prior to paying the $6,000,000, Plaintiff
12  Nariman emailed Lender Defendants Dakota Note, LLC, and Natural Software
13  Systems Inc., Money Purchase Pension Plan's principal, Paul Greenfield,
14  stating in pertinent part: "**CBB will pay $6M to Dakota in exchange for**
15  **Reconveyance and payoff of the Barry Lien.**" (emphasis not added; the
16  original text was in bold and underlined). (Exhibit **"5**," September 2021
17  Emails.)
18      30.   On March 14, 2022, Lender Defendants submitted an accounting
19  of the outstanding notes between Lender Defendants and Plaintiff Nariman,
20  wherein Lender Defendants' accounting statement stated "paid off" for the
21  December 2019 Note, and indicated a balance of $1,065,000, which was the
22  interest for the 21 months that the $6,000,000 loan was outstanding, at 10
23  percent, plus accumulated interest from September 2021 through March
24  2022. (Exhibit **"6**," Defendants' First Accounting.)
25      31.   In June 2022, Plaintiff Nariman paid $70,000 to pay down the
26  outstanding interest.
27      32.   In July 2022, Plaintiff Nariman paid $50,000 to pay down the
28  outstanding interest.

1    33.    In September 2022, Plaintiff Nariman paid $70,000 to pay down
2    the outstanding interest.
3    34.    On November 21, 2022, Lender Defendants Dakota Note, LLC, and
4    Natural Software Systems Inc., Money Purchase Pension Plan, caused for a
5    Notice of Default to be recorded against the Barry Property (December 2019
6    Note), with San Mateo County Recorder's Office, instrument number 2022-
7    080122, for the stated default amount of $7,169,557.02. (Exhibit **"7,"**
8    November 2022 Notice of Default). Essentially, Lender Defendants had
9    completely discredited Borrower Plaintiff's September 21, 2021, pay down of
10   Six Million Dollars against the December 2019 Note, to make sure that
11   Borrower Plaintiff would not be able to cure default.
12   35.    On December 16, 2022, Lender Defendants' principal, Defendant
13   Paul Greenfield, at his deposition, under oath, acknowledged that Lender
14   Defendants, in recording of the November 21, 2022 Notice of Default for
15   $7,169,557.02, had not credited Borrower Plaintiffs for the September 21,
16   2021 Six Million Dollar payment. Defendant Greenfield was not able to state
17   what had happened to the September 21, 2021 Six Million Dollar payment.
18   (Exhibit **"8,"** Relevant Portions of Declaration of Paul Greenfield ¶ 19[1].)
19   36.    Then, on December 21, 2022, a month after the November 21,
20   2022 Notice of Default, and five days after the December 16, 2022 deposition,
21   Lender Defendants Dakota Note, LLC, and Natural Software Systems Inc.,
22   Money Purchase Pension Plan provided a Payoff Statement for $7,368,000.91.
23   The default amount had increased by $198,443 in a matter of 30 days.
24   (Exhibit **"9,"** December 2022 Pay Off Statement).
25   37.    Along with December 21, 2022 Pay Off Demand, Lender
26   Defendants provided a new accounting in their attempt to explain the
27   
28   _____

[1] The Exhibits attached to the Declaration have been removed to reduce file size. The Exhibits will be provided upon request.

COMPLAINT
- 8 -

1  inconsistent and incorrect balance they had claimed. The December 21, 2022
2  accountings indicated yet a new amount, $3,500,000 for the September 22,
3  2022 payment of $6,000,000 against the December 2019 Note. There was no
4  indication as what Lender Defendants have done with the remaining
5  $2,5000,000. (Exhibit **"10,"** Defendants' New Accounting).
6       38.    Furthermore, the two accountings provided on December 21,
7  2022, indicate that starting August 2022, Lender Defendants have charged a
8  monthly "default interest" charge of $150,649. There is no explanation as to
9  why the loan was deemed 'in default' as of August 2022.
10      39.    On February 28, 2023, Defendants caused for a Notice of Sale to
11  be recorded with the County Recorder's Office, instrument number 2023-
12  008980, indicating a default amount of $6,857,126.69, and noticing a sale
13  date of May 24, 2023. (Exhibit **"11,"** February 2023 Notice of Sale.)
14      40.    On March 6, 2023, Defendants caused for a second Notice of Sale
15  to be recorded with the County Recorder's Office, instrument number 2023-
16  009951, indicating a default amount of $6,857,126.69, and noticing an earlier
17  sale date of March 29, 2023. (Exhibit **"12,"** March 2023 Notice of Sale.)
18      41.    Prior to filing the Chapter 11 Petition and adversary complaint,
19  Plaintiff Nariman, in writing, tendered to Lender Defendants to pay off the
20  correct outstanding amount, plus all applicable fees, and interest amounts.
21  Lender Defendants, did not accept Plaintiff Nariman's tender.
22      42.    Plaintiff Nariman asserts in this action that the effective interest
23  rate for the Note was significantly above 10 percent per annum, and as such,
24  the Note is usurious.
25      43.    To illustrate the predatory or Usurious nature of Lender Dakota
26  Note LLC's lending practices, let us meticulously dissect a specific loan
27  transaction from December 2019. Plaintiff Nariman sought to borrow
28  $6,000,000 USD. However, he received only $5,786,462.00, even though the

COMPLAINT

- 9 -

1     contract stipulated an interest rate of 10% APR, thereby necessitating an
2     annual payment of $600,000.00. Moreover, Lender Dakota Note LLC imposed
3     various fees and, considering the shortfall between the requested loan amount
4     and the actual cash disbursed, effectively charged Nariman an actual interest
5     rate of 13.55%. (Exhibit "**4**".)

6         44.    California's usury law provides that the maximum rate of interest
7     for a loan other than a personal loan and not otherwise exempt is 10% or 5%
8     over the then prevailing interest rate charged by the Federal Reserve Bank of
9     San Francisco. Cal. Const, Art. XV § 1. The interest Defendants charged on all
10    ten notes exceed the usury limit set by the California Constitution. There are
11    no exceptions to the usury limit that apply here.

12        45.    Further, the *Wishnev* court notes that, "the second paragraph of
13    article XV prohibits a lender from receiving "more than the interest authorized
14    by this section" as a result of "charging any fee, bonus, commission, discount
15    or other compensation … ." Because article XV distinguishes interest from the
16    enumerated types of compensation, the court reasoned, those types of
17    compensation must be distinct from interest, compound or otherwise.
18    (Wishnev I, at p. 945.)" (*Wishnev v. The Northwestern Mutual Life Ins. Co.*
19    (2019) 8 Cal. 5th 199, 212.)

20        46.    The consequences of a violation of the usury limit are well settled.
21    When the interest rate in an obligation exceeds the allowed usury limit, the
22    interest provisions are void as a matter of law and public policy. *Westman v.*
23    *Dye* (1931) 214 Cal. 28, 31; *Gibbo v. Berger* (2004) 123 Cal. App. 4th 396,403-
24    404. The attempt to exact the usurious rate of interest renders the interest
25    provisions of a note void. *Moore v. Russell* ( 1931) 114 Cal. App. 634; *Simmons*
26    *v. Patrick* (1962) 211 Cal. App.2d 383 . The inclusion of a usurious interest
27    provision, therefore, results, in effect, in a note payable without interest.
28    *Epstein v. Frank* (1981) 125 Cal. App. 3d 111 , 122-123 .

1       47.    Because a note with a usurious interest rate results in a note

2  without interest, "The instant a payment is made of usurious interest it is

3  applied to the principal , and the principal indebtedness at the time of such

4  payment is reduced to the extent thereof." *Westman* , at 39, *Gibbo*, at 404.

5  This rule applies not only to the present notes but also to the related previous

6  notes. "Where the lender brings an action to recover an indebtedness, none of

7  the usurious payments, nor payments on renewal notes, are barred by

8  limitation so as to preclude their use in the reduction of the principal debt."

9  *Shirley v. Britt* (1957) 152 Cal. App. 2d 666, 670.

10      48.    Plaintiff Nariman suspects that Lender Defendants, will argue and

11  may present evidence that the subject series of Notes are exempt from usury

12  because of the "broker" exemption to usury. California Constitution Section

13  1916.1 provides that Constitutional restrictions on interest rates do not apply

14  "to any loan or forbearance made or arranged by any person licensed as a real

15  estate broker by the State of California…". A licensed broker must "arrange"

16  the loan within the meaning of the statute. An untrue or erroneous recital in

17  the loan agreement as to who arranged the loan will not preclude the borrower

18  from establishing the true identity and conduct of the arranging licensee, or

19  whether the loan was arranged by a broker at all. *In Stoneridge Parkway*

20  *Partners v. MW Housing Partners III* (2007), 153 Cal. App. 4th 1373; 8 Cal. Real

21  Est. § 21:34 (3d ed.). The court in *Gibbo v. Berger*, 123 Cal. App. 4th 396, 402

22  (2004) explains that for a broker to "arrange" a loan (and thus trigger the

23  exemption), the broker must do substantive work:

24

25           When viewed in the context of "arranging a loan," the phrase
            "arranged by" must refer to **some conduct** by a real estate broker

26           . . . that causes a loan to be obtained or procured. Such conduct
            by a broker includes structuring the loan as the agent for the

27           lender . . . setting the interest rate and points to be paid, setting
            the terms of the forbearance agreement, reviewing the loan and

28

forbearance documents, conducting title searches, or drafting the
terms of the loan . . . A broader definition would result in absurd
results—a licensed real estate broker who photocopies and
collates the pages of a loan document and then charges a fee for
that service will be held to have "arranged" a loan, which is
exempt from the constitutional usury provision.
(Emphasis added)

49.    In *Gibbo v. Berger*, the court found that the broker did not

"arrange" the loan when the broker's involvement was limited to preparing

loan documents, ordering title insurance, and dispersing funds, all in

accordance with the parties' instructions and on the terms provided by the

parties.

50.    In *Del Mar v. Caspe*, 222 Cal. App. 3d 1316 (1990), the court

found that a broker "arranged" a loan because he "was **essential** to

preparation, execution, and completion of the loan documents and

transaction." The court held that for the exemption to apply, whether the

broker performed title searches, reviewed loan documents, consulted with the

lender and advised the lender of his rights and obligations, calculated the

principal amount of a prior loan and the principal amount of future advances,

calculated interest on a prior principal amount and calculated interest on

future advances, prepared loan documents, discussed the loan documents and

terms with the lender and borrower, and obtained borrower's signature on new

notes and deeds of trust, are factors that may considered.

51.    In *Jones v. Kallman*, 199 Cal. App. 3d 131 (1988), the court held

that for the exemption to apply, whether the broker 'determines the interest

rate and points to be charged on the loan' is a factor that may be considered.

In *Chapman v. Farr*, 132 Cal. App. 3d 1021 (1982), the court held that for the

exemption to apply, whether the broker "structured" the transaction is a factor

that may be considered.

1       52.    Here, a broker was never involved, whatsoever. As indicated

above, Defendant Kenoyer represented to Plaintiff Nariman that Defendant

Knapp, a licensed broker, would be involved in the lending process and would

negotiate the terms and rates of the loans on behalf of Plaintiff Nariman.

(Exhibit "**2**" ¶ 14.) Instead, negotiations were handled directly by Plaintiff

Nariman. (*Id.* ¶ 17.) Further, when asked to provide proof that such

communications occurred, Defendants did not provide Plaintiff Nariman with

any documentation that Defendant Knapp ever engaged in such negotiations.

(*Id.* ¶ 23.)

       53.    As the Note is usurious, all interest provisions are deemed void,

and all interest payments made by Plaintiffs are credited against the principal

amount disbursed to them. As indicated above, Lender Defendants had

disbursed $5,786,461 to Borrower Plaintiff Nariman. (Exhibit "**3**".) Borrower

Plaintiff Nariman has paid back $6,210,000. As such, the Note is paid in full.

A balance of $423,539, plus treble damages, and interest, is owed back to

Borrower Plaintiff Nariman.

       54.    However, on July 10, 2023, Defendants held an improper non-

judicial foreclosure sale for the 66 Barry Lane Property.

       55.    At that sale, Defendant 66 Barry Lane, LLC allegedly bought the

property for $3 million. The Trustee's Deed Upon Sale states that the transfer

of property occurred on July 11, 2023. (Exhibit **"13",** 66 Barry Lane, LLC

Trustee's Deed Upon Sale.)

       56.    Significantly, Defendant 66 Barry Lane, LLC's Articles of

Organization were not filed with the California Secretary of State until August

1, 2023. (Exhibit **"14,"** 66 Barry Lane Articles of Incorporation.)This means

that Defendant 66 Barry Lane did not exist as a legal entity at the time the

Trustee's Deed Upon Sale was executed.

1    57.    Further, Defendant Greenfield is listed as the organizer of 66

2    Barry Lane, LLC. Defendant Greenfield is also the principal of Defendant

3    Dakota Note, LLC. (Exhibit **"14"**.)

4    58.    The San Mateo Tax Collector indicates that the Barry Lane

5    Property's assessed values are $5,151,059 for the land and $6,161,343 for the

6    improvements making the total taxable value is $11,312,402. (Exhibit **"15"**,

7    San Mateo Tax Collector's Parcel Details for the Barry Lane Property.) Yet, the

8    Barry Lane Property was only sold for $3 million at the non-judicial foreclosure

9    sale. (Exhibit **"13"**.) This means that the Barry Lane Property was sold for less

10   than the assessed value of the land itself.

> Commented [AT1]: We could probably go with the other valuation that Nariman provided us?

11   59.    On information and belief, it would seem as though Defendant

12   Greenfield knew that his predatory lending scheme would result in Plaintiff

13   Nariman defaulting on his Note and as such, Defendant Greenfield created a

14   legal entity to hold his ill gained spoils.

15   60.    The foreclosure and transfer of the Barry Lane Property is

16   defective because the property was foreclosed through a fraudulent and

17   predatory lending scheme and Defendant 66 Barry Lane, LLC did not exist as

18   a legal entity at the time of the transfer.

19   61.    As such, Defendant 66 Barry Lane's security interest in the 66

20   Barry Lane property is defective.

21   62.    As indicated above, this foreclosure is based on a predatory

22   lending scheme created by Defendant Lenders to force Plaintiff Nariman into

23   an alleged default on his Note by refusing to honor his explicit instructions to

24   apply the $6 million credit to the Note attached to the Barry Lane Property.

25   63.    Further, this type of behavior is not atypical of Defendants.

26   Defendants have been engaged in several bouts of litigation surrounding their

27   predatory lending schemes both in civil court and bankruptcy court where

28   Defendants obtain promissory notes from borrowers attaching their personal

COMPLAINT
- 14 -

1   property as collateral in a scheme to force the borrowers to default through

2   unfair lending practices to foreclose the personal property and buy the

3   property at a discounted rate.

4       64.     These cases include, but are not limited to, Belcher v. Dakota

5   Note, LLC, et. al., San Mateo County Superior Court Case No. 18CV336806

6   and Brugnara v. Greenfield, et. al., Northern District of California Bankruptcy

7   Court, Adversary Case No. 21-03065-DM.

8       65.     On or about October 5, 2023, Defendant 66 Barry Lane filed a

9   Motion for Relief From Automatic Stay in Plaintiff Nariman's bankruptcy case,

10  Bk. No. 23-30668-DM.

11      66.     Defendant 66 Barry Lane's Motion for Relief contended that they

12  sought relief to take all necessary steps under State or Federal law to complete

13  its eviction and sell the 66 Barry Lane Property.

14      67.      On information and belief, Defendant 66 Barry Lane, LLC sought

15  relief to prevent foreclosure by senior deedholders Tech CU and CBB.

16  Furthermore, Defendant 66 Barry Lane, LLC failed to disclose that there is a

17  *lis pendens* state court action that prevents the sale of the 66 Barry Lane

18  Property. On information and belief, Defendant 66 Barry Lane, LLC has not

19  taken any action to expunge the *lis pendens.*

20      68.     On or about December 11, 2023, Defendant 66 Barry Lane filed

21  for bankruptcy under Chapter 11 of the Bankruptcy Code.

22                          **COUNT ONE**

23  **OBJECTION TO THE VALIDITY OF THE FORECLOSURE OF THE 66**

24                      **BARRY LANE PROPERTY**

25          **(Plaintiff Nariman Against All Defendants and DOES 1-20)**

26      69.     Plaintiff Nariman incorporates by reference Paragraphs 1 through

27  67 of this Complaint, as though fully set forth herein.

28

COMPLAINT
- 15 -

1      70.    Defendant 66 Barry Lane, LLC alleges that it has a valid claim in

2 the 66 Barry Lane Property. Further, Defendant 66 Barry Lane alleges that

3 because it bought the Property at a foreclosure sale that Plaintiff Nariman

4 holds no property interest in the Property.

5      71.    Plaintiff Nariman denies this claim because the foreclosure of the

6 66 Barry Lane Property was based on a predatory lending scheme created by

7 Defendant Lenders to force Plaintiff Nariman into an alleged default on his

8 Note by refusing to honor his explicit instructions to apply the $6 million

9 credit to the Note attached to the Barry Lane Property.  Further, Plaintiff

10 alleges that the non-judicial foreclosure was pursuant to recorded notice of

11 default that was in error.

12      72.    Further, on July 10, 2023, Defendants allegedly held an improper

13 foreclosure sale for the 66 Barry Lane Property.

14      73.    At that sale, Defendant 66 Barry Lane, LLC allegedly bought the

15 property for $3 million. The Trustee's Deed Upon Sale states that the transfer

16 of property occurred on July 11, 2023. (Exhibit "**13**".)

17      74.    However, Defendant 66 Barry Lane, LLC's Articles of Organization

18 were not filed with the California Secretary of State until August 1, 2023.

19 (Exhibit "**14**".)

20      75.    The foreclosure and transfer of the 66 Barry Lane Property is

21 defective because the property was foreclosed through a fraudulent and

22 predatory lending scheme created by the Defendant Lenders and Defendant 66

23 Barry Lane, LLC did not exist as a legal entity at the time of the transfer.

24      76.    As such, Defendant 66 Barry Lane, LLC's security interest in the

25 66 Barry Lane property is defective.

26                             **COUNT TWO**

27                                 **USURY**

28     **(Plaintiff Nariman Against All Defendants and DOES 1-20)**

1      77.    Plaintiff Nariman incorporates by reference Paragraphs 1 through

2 75 of this Complaint, as though fully set forth herein.

3      78.    The annual interest rate, the late fee clause, and the default

4 interest rate on the loan are usurious, and in violation of section 1(2) of Article

5 XV of the California Constitution, which provides that the interest rate on a

6 loan other than one primarily for personal, family, or household purposes may

7 not exceed the greater of 10% per annum or 5% per annum plus the rate

8 established by the Federal Reserve Bank of San Francisco on advances to

9 member banks on the 25th day of the month proceeding the earlier of the date

10 of execution of the contract to make the loan or forbearance, or the date of

11 making the loan or forbearance. (Exhibit "**3**".)

12      79.    Further, a broker did not make or arrange the subject loan;

13 therefore, the "broker" exception to the usury laws under *Cal Civ Code* §

14 1916.1, and otherwise, does not apply to the subject transaction. (Exhibit "**2**"

15 ¶ 19.)

16      80.    The amounts sought by Lender Defendants are usurious.

17      81.    Plaintiff Nariman hereby seeks a judgment that the Note is

18 usurious, that Lender Defendants are barred from collecting fees and interest

19 for the term of the notes, and that all fees and interests paid by Plaintiff, be

20 credited against the principal amount of the note and the balance refunded to

21 Plaintiff.

22      82.    Plaintiff Nariman is further entitled to double and treble damages.

23      83.    Plaintiff Nariman is entitled to recover attorney's fees against

24 Defendants, in this action under the Notes, and pursuant to *Cal Civ Code* §

25 1717.

26                             **COUNT THREE**

27                             **QUIET TITLE**

28     **(Plaintiff Nariman Against All Defendants and DOES 1-20)**

1   84.    Plaintiff Nariman incorporates by reference Paragraphs 1 through
2   82 of this Complaint, as though fully set forth herein.

3   85.    The December 2019 Deed of Trust and the Notice of Default
4   indicate incorrect, unlawful, unenforceable, and usurious terms and balances.
5   (Exhibits "**1**" and "**7**".)

6   86.    As noted above, Plaintiff Nariman properly advanced $6 million to
7   Lender Defendants to pay off the December 2019 Note.

8   87.    However, Lender Defendants ignored Plaintiff Nariman's explicit
9   instructions to use the $6 million to pay off the December 2019 Note and
10  produced false and inconsistent accountings to perpetuate their false narrative
11  that Plaintiff Nariman defaulted on his loan. (Exhibits "**5**", "**6**", and "**10**".)

12  88.    As such, the July 10, 2023 foreclosure sale of the Barry Lane
13  Property was improper because it was based on a an unlawful default.

14  89.    Further, at that sale, Defendant 66 Barry Lane, LLC allegedly
15  bought the property for $3 million. The Trustee's Deed Upon Sale states that
16  the transfer of property occurred on July 11, 2023. (Exhibit **"13"**.)

17  90.    However, Defendant 66 Barry Lane, LLC's Articles of Organization
18  were not filed with the California Secretary of State until August 1, 2023.
19  (Exhibit **"14"**.)

20  91.    This means that Defendant 66 Barry Lane did not exist as a legal
21  entity at the time the Trustee's Deed Upon Sale was executed.

22  92.    As such, the transfer of the Barry Lane Property to Defendant 66
23  Barry Lane was improper because the entity did not exist at the time of the
24  transfer.

25  93.    Therefore, Plaintiff Nariman seeks an order of the Court quieting
26  title as to the Barry Lane Property, and expunging the deed of trust, the notice
27  of default, notice of sale, and the Trustee's Deed Upon Sale (Exhibits "**1**", "**7**",
28  and "**13**".).

Case: 24-05043   Doc# 33-4   Filed: 02/08/24   Entered: 02/08/24 17:08:49   Page 168
of 411

**COUNT FOUR**

**WRONGFUL FORECLOSURE**

**(Plaintiff Nariman Against All Defendants and DOES 1-20)**

94.     Plaintiff Nariman incorporates by reference Paragraphs 1 through 92 of this Complaint, as though fully set forth herein.

95.     The December 2019 Deed of Trust and the Notice of Default indicate incorrect, unlawful, unenforceable, and usurious terms and balances. (Exhibits "**1**" and "**7**".)

96.     Due to the inclusion of usurious interest in the Notices of Default and Sale, the foreclosure against the Property was improper.

97.     Defendants failed to comply with *Cal Civ Code* § 2966 which mandates a minimum of 90 days written notice for balloon payment. According to *Marbry v The Superior Court of Orange County* (2010) 185 Cal. App. 4th 208, "if section 2923.5 is not complied with, then there is no valid notice of default, and without a notice of default, a foreclosure cannot proceed."

98.     Further, the foreclosure proceedings are in serious violation of *Cal Civ Code* § 1479.

99.     Further, at the July 10, 2023 non-judicial sale, Defendant 66 Barry Lane, LLC allegedly bought the property for $3 million. The Trustee's Deed Upon Sale states that the transfer of property occurred on July 11, 2023. (Exhibit "**13**".)

100.    However, Defendant 66 Barry Lane, LLC's Articles of Organization were not filed with the California Secretary of State until August 1, 2023. (Exhibit "**14**".)

101.    As such, Defendant 66 Barry Lane did not exist as a legal entity at the time the Trustee's Deed Upon Sale was executed which means that the

1 transfer of the Barry Lane Property to Defendant 66 Barry Lane was improper
2 because the entity did not exist at the time of the transfer.

3     102.   Defendants have unlawfully invoked *Cal Civ Code* § 2924 for non-
4 judicial foreclosure on the Barry Lane Property. Accordingly, the subject
5 foreclosure proceedings against the Barry Lane Property are unlawful.

6     103.   Defendants are guilty of fraud, oppression, and malice, and in
7 pursuing this foreclosure acted in conscious and callous disregard of Plaintiff's
8 rights in that they knew that there were improper and unlawful procedures
9 and irregularities attending the foreclosures procedures. Accordingly, Plaintiff
10 is entitled to an award of punitive damages in an amount to be determined by
11 the trier of the fact.

12     104.   Furthermore, the conduct of Defendants in attempting to in effect
13 steal Plaintiff's home, where he and his family live and the possibility of such a
14 loss without expenditure of significant funds and effort to counter such theft
15 has caused Plaintiff significant and severe emotional distress.

16 **COUNT FIVE**

17 **FRAUDULENT MISREPRESENTATION AND CONCEALMENT**

18 **(Plaintiff Nariman Against All Defendants and DOES 1-20)**

19     105.   Plaintiff Nariman incorporates by reference Paragraphs 1 through
20 103 of this Complaint, as though fully set forth herein.

21     106.   In or about 2013, Defendants intentionally misrepresented to
22 Plaintiff Nariman the following facts:

23         a.   Defendant Kenoyer misrepresented that Defendant Knapp, a
24             licensed broker, would be involved in Plaintiff Nariman's
25             lending process with California Home Loan by negotiating the
26             rates, terms, and fees. (Exhibit "**2**" ¶ 14.)

27         b.   Defendant Kenoyer misrepresented that Defendant Knapp was
28             taking an active role in negotiating the rates, terms, and fees of

COMPLAINT
- 20 -

1          Plaintiff Nariman's loans with Defendant Dakota Note, LLC.

2          (*Id.*)

3          c.  Defendant Knapp was not a licensed broker throughout

4             Plaintiff Nariman's lending process because his license was

5             revoked due to action taken by the California Department of

6             Real Estate for fraud in or about 2016. (*Id.* ¶ 31.)

7     107.  On or about September 2021, Defendants intentionally concealed

8 from Plaintiff the following facts:

9          a.  Lender Defendants did not apply the $6 million that Plaintiff

10             Nariman explicitly directed to be applied to the December 2019

11             Note which had the Barry Lane Property as collateral. (Exhibit

12             "**5**".)

13          b.  Lender Defendants would apply the $6 million to Plaintiff

14             Nariman's other loans at their own discretion and change their

15             accountings several times to account for the discrepancy in the

16             application of the $6 million to the other loans. (Exhibits "**6**"

17             and "**10**".)

18          c.  Plaintiff Nariman's loan with the Lender Defendants was still

19             outstanding and accruing interest.

20     108.  Lender Defendants represented to Plaintiff Nariman that the $6

21 million would be applied to the December 2019 Note and that his loan would

22 be fully paid off.

23     109.  Lender Defendants failed to disclose, and intentionally concealed

24 from Plaintiff, and misrepresented these important facts, in order to induce

25 Plaintiff Nariman into believing that his loan was fully paid off and that he did

26

27

28

1  not need to make any additional payments in order to have Plaintiff default on

2  his loan and obtain the Barry Lane Property as collateral.[2]

3      110.  Lender Defendants acted intentionally in concealing this material

4  fact and have demonstrated a practice of defrauding consumers with the litany

5  of other cases pursued by other borrowers.[3]

6      111.  Lender Defendants had a duty to disclose those facts because the

7  affirmative representations they made about the loan payoff were misleading

8  half-truths in the absence of disclosure of these facts.

9      112.  Lender Defendants additionally had a duty to disclose those facts

10  because they had exclusive knowledge of the facts and knowledge that Plaintiff

11  Nariman had no ability to learn those facts due to their failure to provide

12  Plaintiff Nariman with accurate copies of the accountings. (Exhibits "**6**" and

13  "**10**".)

14      113.  Lender Defendants intended that Plaintiff rely on and act upon the

15  absence of those facts in determining whether to make additional payments on

16  the December 2019 Note, and Plaintiff Nariman did in fact rely on the absence

17  of those facts, and on Defendants' representations, in failing to make any

18  additional payments on the December 2019 Note because he believed that the

19  December 2019 Note was fully paid off based on his instructions to Lender

20  Defendants and Lender Defendants' March 14, 2022 loan accounting reflecting

21  payoff of the December 2019 Note. (Exhibits "**5**" and "**6**".)

22      114.  Each of Defendants' misrepresentations and the undisclosed facts

23  set forth above were material to Plaintiff Nariman's decision on whether to

24

25  _____

[2] Defendant Greenfield is the principal of Dakota Note, LLC and the organizer of 66 Barry Lane, LLC. This means that Plaintiff Nariman's default on his loan to Defendant Dakota Note, LLC led to Defendant 66 Barry Lane, LLC aka Defendant Greenfield obtaining the Barry Lane Property.

26

27  [3] These cases include, but are not limited to, Belcher v. Dakota Note, LLC, et. al., San Mateo County Superior Court Case No. 18CV336806 and Brugnara v. Greenfield, et. al., Northern District of California Bankruptcy Court, Adversary Case No. 21-03065-DM.

28

COMPLAINT
- 22 -

1    make additional payments on the December 2019 Note. Had Plaintiff Nariman
2    known any of those facts, or any combination of those facts, Plaintiff Nariman
3    would not have ceased making payments on the December 2019 Note which
4    led to the improper default.
5           115.   Due to Defendants' misrepresentations and omissions, Plaintiff
6    Nariman's loan defaulted, and the Barry Lane Property was sold in an
7    improper non-judicial foreclosure sale which benefited the Lender Defendants.
8    The Barry Lane Property is now subjected to an improper unlawful detainer
9    action and has been sold in a premature foreclosure sale due to the predatory
10   and fraudulent practices employed by Defendants.
11          116.   As a direct and proximate result of Defendants' fraudulent
12   misrepresentations and concealments, and the aiding and abetting and
13   conspiring in the fraudulent scheme to deprive Plaintiff Nariman of his ability
14   to properly pay off the December 2019 Note, Plaintiff Nariman's home is now
15   subject to an unlawful detainer action, he has been forced to file for Chapter
16   11 Bankruptcy and has to defend against Defendants' claims.
17          117.   Defendants, and each of them, committed the acts, omissions,
18   and conduct described above with malice, oppression, fraud and ill will toward
19   Plaintiff Nariman, and with a conscious disregard of the rights of Plaintiff
20   Nariman, all of which warrants imposition of punitive and exemplary damages
21   in an amount to be proven at the time of trial.

22                                   **COUNT SIX**
23                **VIOLATION OF *CAL BUS & PROF CODE* § 17200**
24            **(Plaintiff Nariman Against All Defendants and DOES 1-20)**
25          118.   Plaintiff Nariman incorporates by reference Paragraphs 1 through
26   116 of this Complaint, as though fully set forth herein.
27
28

1   119.  The conduct of Defendants as described above are in violation of
2   *Cal Bus & Prof Code* § 17200 in that the conduct is predatory in nature and
3   constitutes an unfair business practice as defined by the *Code*.

4   120.  As a direct and proximate result of the Defendants' violation of *Cal*
5   *Bus & Prof Code* § 17200 Defendants held an illegal non-judicial foreclosure of
6   the Plaintiff's residence, the Barry Lane Property. Defendants benefitted from
7   the non-judicial foreclosure because Defendant Dakota Note, LLC, operated by
8   Defendant Greenfield, sold the Barry Lane Property for $3 million dollars to
9   Defendant 66 Barry Lane, LLC which is organized by Defendant Greenfield.
10  (Exhibits "**13**" and "**14**".)

11  121.  Defendants' conduct as described above was fraudulent and
12  deceptive. Among other fraudulent and deceptive conduct as described above,
13  Defendants ignored Plaintiff Nariman's explicit instructions to apply the $6
14  million payment to the December 2019 Note, issued a March 2022 accounting
15  reflecting that the December 2019 Note was "paid off", and then sent out a
16  December 2022 accounting which stated that the December 2019 Note was
17  not paid off. (Exhibits "**5**", "**6**", and "**10**".)

18  122.  Defendants used this fraudulent lending scheme to issue Default
19  Notices against Plaintiff Nariman and hold the illegal non-judicial foreclosure
20  sale.

21  123.  Further, the San Mateo Tax Collector indicates that the Barry
22  Lane Property's assessed values are $5,151,059 for the land and $6,161,343
23  for the improvements making the total taxable value is $11,312,402. (Exhibit
24  **"15"**, San Mateo's Parcel Details for the Barry Lane Property.) Yet, the Barry
25  Lane Property was only sold for $3 million at the non-judicial foreclosure sale.
26  (Exhibit "**13**".) This means that the Barry Lane Property was sold for less than
27  the assessed value of the land itself.

28

1     124.   Defendants' predatory and fraudulent lending scheme resulted in

2   Plaintiff Nariman defaulting on his loan which allowed them to buy the Barry

3   Lane Property at a severely discounted rate.

4     125.   Defendants' acts, conduct and practices as alleged above

5   represent and constitute a pattern and practice on the part of Defendants in

6   the treatment of their borrowers. Plaintiff Nariman is informed and believes

7   and thereon alleges Defendants have similarly engaged in prohibited acts,

8   conduct and practices as alleged above as to other borrowers.

9     126.   As a direct and proximate result of Defendants' conduct, Plaintiff

10   Nariman has suffered further damages in having to bring several legal

11   disputes against the illegal foreclosure.

12     127.   The conduct of Defendants described above were predatory,

13   fraudulent, intentional and with reckless disregard of Plaintiff Nariman's rights

14   and Plaintiff Nariman is entitled to punitive damages.

15                       **COUNT SEVEN**

16   **AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT**

17   **TRANSFERS PURSUANT TO 11 U.S.C. §§ 548(a)(1)(B) and 550(a))**

18   **(Plaintiff Nariman Against All Defendants and DOES 1-20)**

19     128.   Plaintiff Nariman incorporates by reference Paragraphs 1 through

20   126 of this Complaint, as though fully set forth herein.

21     129.   Transfers made to Defendant 66 Barry Lane, LLC and

22   subsequent unnamed transferees within two years of the Petition Date are

23   avoidable by Plaintiff Nariman under Section 548(a)(1)(B) of the Bankruptcy

24   Code to the extent that they were made during that period and the Debtors

25   received no value or less than reasonably equivalent value in exchange for

26   them.

27     130.   Beginning on or about April 25, 2019, Defendant received the

28   Transfers from Debtors totaling $287,600.00. At the time the Transfers

1  were made to Defendant, Debtors received no value or less than reasonably
2  equivalent value in exchange.
3     131.  At the time the transfers were made to Defendant 66 Barry Lane,
4  LLC, Plaintiff Nariman was insolvent and/or was engaged or about to engage
5  in a business or a transaction for which the remaining assets of Plaintiff
6  Nariman were unreasonably small in relation to the business or transaction.
7     132.  At the time the Transfers were made to Defendant 66 Barry
8  Lane, LLC, Plaintiff Nariman intended to incur, or believed or reasonably
9  should have believed it would incur, debts beyond its ability to pay them as
10 they became due.
11    133.  The transfers to Defendant 66 Barry Lane, LLC and subsequent
12 unnamed transferees are avoidable by the Trustee.
13    134.  Each of the transfers that occurred within two years of the Petition
14 Date was of an interest of Plaintiff Nariman in property.
15    135.  As a result of the foregoing, Plaintiff is entitled to judgment
16 pursuant to Bankruptcy Code sections 548(a), 550(a) and 551 avoiding the
17 Transfers and recovering their value for the benefit of the estate.
18                        **COUNT EIGHT**
19   **FOR AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT**
20   **TRANSFERS PURSUANT TO CALIFORNIA CIVIL CODE §§ 3439.04(a)(2)**
21                     **and 3439.07(a)(1))**
22   **Plaintiff Nariman Against Defendant 66 Barry Lane, LLC and DOES 1-20)**
23    136.  Plaintiff Nariman incorporates by reference Paragraphs 1 through
24 134 of this Complaint, as though fully set forth herein.
25    137.  On or after April 25, 2019, Defendant 66 Barry Lane, LLC received
26 transfers from Plaintiff Nariman totaling $287,600.00.
27
28

1   138.  The transfer was made to Defendant 66 Barry Lane, LLC without
2   Defendant 66 Barry Lane, LLC giving equivalent value to Plaintiff Nariman in
3   exchange.
4   139.  At the time the transfer was made to Defendant 66 Barry Lane,
5   LLC, Plaintiff Nariman was engaged in or was about to engage in business or
6   transactions for which Plaintiff Nariman's remaining assets were unreasonably
7   small in relation to the business or transaction.
8   140.  At the time the transfer was made to Defendant 66 Barry Lane,
9   LLC, Plaintiff Nariman intended to incur, or believed or reasonably should
10  have believed he would incur debts beyond his ability to pay them as they
11  became due.
12  141.  The transfers are avoidable. Pursuant to California Civil Code §
13  3439.07(a)(1), the Trustee is entitled to recover the value of transfers avoided.
14  The Trustee is entitled to damages from Defendant 66 Barry Lane, LLC and
15  subsequent unnamed transferees in a sum of not less than XXXX with interest
16  as provided by law from the date of each payment.

**COUNT NINE**

**FOR NON-DISCHARGABILITY**

19  142.  Plaintiff incorporates by reference all above paragraphs in this
20  count 9.
21  143.  The damaged alleged above were the result of willful and malicious
22  acts by the Defendant.
23  144.  As a result, the damages alleged herein are not dischargable.
24  **WHEREFORE**, Plaintiff prays for judgment against Defendant for:
25  1.  A determination of the extent, validity, and priority of Defendant's
26      security interest and the amount of Defendants' claim;
27  2.  Avoidance of Defendant's lien or interest to the extent not properly
28      secured by the Collateral pursuant to 11 U.S.C. § 506(d);

COMPLAINT
- 27 -

3. A declaration that the underlying Note is usurious, that Defendants are barred to collect fees and interest for the term of the Note, and that all fees and interests paid by Plaintiff Nariman, should be returned or credited back.

4. For a Judgment quieting title by way of reconveyance and correction of the Deed of Trust, Notice of Default, and Notice of Sale, encumbering the Property, and holding that the said instruments are void, null, and unenforceable.

5. For an order, enjoining the unlawful foreclosures;

6. General damages in an amount to be determined at trial;

7. Special damages in an amount to be determined at trial;

8. Punitive damages in an amount to be proven at trial;

9. For declaratory judgment declaring damages suffered by Plaintiff are not dischargeable.

10. Attorney's fees and costs as provided by applicable law; and such other and further relief as the Court deems just and proper.

Dated: February 8, 2024        By:

_____

                        Barzin Barry Sabahat, Esq.
                        Attorney for Plaintiff,
                        Nariman Teymourian

# EXHIBIT O

1  Kousha Berokim
   BEROKIM LAW
2  State Bar Number 242763
   270 North Cañon Drive, Third Floor
3  Beverly Hills, California 90210
   berokim@berokim.com
4  T (310) 846-8553 | F (310)300-1233

Electronically
FILED
by Superior Court of California, County of San Mateo
ON      11/9/2022
By      /s/ Maria Coronel
        Deputy Clerk

5  ATTORNEY FOR PLAINTIFFS NARIMAN TEYMOURIAN, GAIL SUZANNE MARIE
   TEYMOURIAN, AND 2700 MIDDLEFIELD ROAD, LLC
6

7              IN THE SUPERIOR COURT OF CALIFORNIA
                    COUNTY OF SAN MATEO
8

9                                           Case Number:   22-CIV-04679

10 NARIMAN TEYMOURIAN; GAIL
   SUZANNE MARIE TEYMOURIAN; AND
11 2700 MIDDLEFIELD ROAD, LLC
                                            VERIFIED COMPLAINT FOR:
12         PLAINTIFFS,

13 V.
                                            1.  USURY
14 DAKOTA NOTE, LLC; TANYA             2.  QUIET TITLE
   WALTIMYER; NATURAL SOFTWARE         3.  INJUNCTION
15 SYSTEMS, INC. MONEY PURCHASE        4.  WRONGFUL
   PENSION PLAN; JASON GREENFIELD; 5       FORECLOSURE
16 PALMS, LLC; & DOES 1-20, INCLUSIVE,

17         DEFENDANTS.                      DEMAND FOR JURY TRIAL

18

19

20

21 ///

22

23 ///

24

25

26 ///

27

28

1
VERIFIED COMPLAINT

1. Plaintiff Nariman Teymourian is an individual who resides in San Mateo County.

2. Plaintiff Gail Suzanne Marie Teymourian is an individual who resides in San Mateo County.

3. Plaintiff 2700 Middlefield Road, LLC, is a Delaware Limited Liability Company, registered in California, and doing business in California.

4. Defendant Dakota Note, LLC, is a South Dakota Limited Liability Company, which is not registered to do business in California. Defendant Dakota Note, LLC has been doing business in California, including bringing and defending litigation, since at least 2013.

5. Defendant Tanya Waltimyer, individual, resides in California.

6. Defendant Natural Software Systems, Inc. Money Purchase Pension Plan, is an entity, business form unknown, and does business in San Mateo County.

7. Defendant Jason Greenfield, individual, resides in California.

8. Defendant 5 Palms, LLC, is a California Limited Liability Company.

9. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 20, inclusive, and therefore sues these Defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege the true names and capacities of said Defendants when ascertained.  Plaintiffs are informed, believe and thereon allege that each of said fictitiously named Defendants are responsible in some manner for the occurrences herein alleged and are indebted to Plaintiffs as hereinafter alleged, and that Plaintiffs' damages as hereinafter alleged were proximately caused by such Defendants.

10. Plaintiffs are informed, believe and thereon allege that at all times mentioned herein, each of the Defendants were the agent, servant and/or employee of each of the remaining Defendants, and in doing the things hereinafter alleged, were acting both on their own behalf and within the course and scope of such agency.

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:00:49   Page 180 of 411

11. Plaintiffs are informed, believe, and upon such information and belief allege, that each of the named Defendants are responsible in some manner for the occurrences herein alleged, and Plaintiffs' damages as herein asserted were proximately caused by such Defendants. Plaintiffs are informed, believe, and upon such information and belief allege, that at all times herein mentioned each of the Defendants were the agent, employee, servant, partner, guarantor, or successor of each of the named Defendants and in doing the things herein asserted, were acting within such course and scope. Plaintiffs are also informed and believe and upon such information and belief allege that at all relevant times mentioned herein, Plaintiffs, and each of them, were joint ventures with each, every, and said Defendants were acting in furtherance of said joint venture.

12. Plaintiffs Nariman Teymourian and Gail Suzanne Marie Teymourian are husband and wife. Nariman Teyourian is the managing member for Plaintiff 2700 Midlefield Road, LLC, which owns property commonly known as 2700 Middlefield Road, Redwood City, CA, ("Property"), Assessor's Parcel Number 054-113-13006, and legal description of

PARCEL 1, AS SHOWN ON THE CERTAIN MAP ENTITLED "PARCEL MAP NO. 1096, LANDS OF 2700 MIDDLEFIELD ROAD" FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN MATEO COUNTY, CALIFORNIA ON AUGUST 14, 2012 IN VOLUME 80 OF PARCEL MAPS AT PAGES 38-39.

EXCEPTING THEREFROM THAT PORTION LYING BELOW A DEPTH OF 500 FEET, MEASURED VERTICALLY, FROM THE CONTOUR OF THE SURFACE OF SAID PROPERTY, AS EXCEPTED BY SOUTHERN PACIFIC TRANSPORTATION COMPANY BY THAT CERTAIN DEED RECORDED ON JULY 30, 1980 IN REEL 7975 AT IMAGE 1306 (70731-AP), RECORDS OF SAN MATEO COUNTY.

PARCEL II:

A NON-EXCLUSIVE EASEMENT FOR ROADWAY PURPOSES UPON, OVER, ACROSS AND ALONG THAT CERTAIN STRIP OF LAND 45 FEET WIDE, LYING NORTHERLY OF AND CONTIGUOUS TO THE FOLLOWING THREE COURSES OF PARCEL A, ACCORDING TO MAP THEREON RECORDED APRIL 21, 1980 IN VOLUME 49 OF PARCEL MAPS, PAGE 51, RECORDS OF SAN MATEO COUNTY.

1. SOUTH 74° 30' 00" EAST, 100.37 FEET;
2. NORTH 60° 20' 00" EAST, 98.70 FEET;
3. NORTH 30° 00' 00" EAST, 30.73 FEET.

SAID EASEMENT IS APPURTENANT TO PARCEL I ABOVE AND WAS CREATED BY THAT CERTAIN DEED RECORDED ON JULY 30, 1980 IN REEL 7975 AT IMAGE 1306 (70731-AP) RECORDS OF SAN MATEO COUNTY.

PARCEL III:

(A) A NON-EXCLUSIVE EASEMENT FOR PRIVATE UTILITIES (P.U.E) WITHIN THE NORTHEASTERLY 5 FEET OF SAID PARCEL 3.

(B) A NON-EXCLUSIVE EASEMENT FOR PRIVATE UTILITIES WITHIN THE SOUTHWESTERLY 5 FEET AND THE NORTHEASTERLY 10 FEET OF SAID PARCEL 4.

SAID EASEMENTS ARE APPURTENANT TO AND FOR THE BENEFIT OF PARCEL I ABOVE AS CREATED BY THAT CERTAIN DEED WHICH RECORDED SEPTEMBER 18, 1987 AS DOCUMENT NO. 87144820 OF OFFICIAL RECORDS OF SAN MATEO COUNTY, CALIFORNIA.

13. This six acre Property has been owned by the individual Plaintiffs' families since the late 1960s. Plaintiff Gail Suzanne Marie Teymourian's father previously owned the Property and operated his business in the Property for over 30 years. In 1985 the County of San Mateo rented a portion of this property to establish a medical clinic to deliver medical services to low income families. In 2011, Plaintiff Nariman Teymourian, through 2700 Midlefield Road, LLC purchased the Property from Plaintiff Gail Suzanne Marie Teymourian's family trust, and was able to come to terms with County of San Mateo to build a much larger clinic to service low income families. At around the same time, 2700 Midlefield Road, LLC sold three acres of the Property to the County of San Mateo as part of a plan to build housing for first responders. Around the same time, in 2011, 2700 Midlefield Road, LLC, began construction of a 36,000 square foot medical facility. Plaintiffs Nariman Teymourian and Gail Suzanne Marie Teymourian used millions of their monies, as well as a construction loan, to complete construction of the building. The medical facility now serves the very urgent needs of the local community in North Fair Oaks neighborhood of Redwood City.

14. Starting in 2013, Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC, entered into a series of ten notes with Defendants Dakota Note, LLC, Tanya Waltimyer; Natural Software Systems, Inc. Money Purchase Pension Plan; Jason Greenfield (collectively "Lender Defendants". Lender Defendants are led by Paul Greenfield, the managing member for Dakota Note, LLC. In 2018, the prior 8 Notes were rolled into a consolidated loan, Note 9, with the face amount of $15,400,000, secured by a deed of trust against the Property. In 2021, Lender Defendants lent another $2,500,000 to Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian,

and 2700 Middlefield Road, LLC, secured by the same 2018 deed of trust. (Note 10).

15. In total, through the ten Notes, Dakota Note LLC disbursed $21,747,852 to Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC. In return, Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC have paid back Lender Defendants the total of $13,753,077, in usurious interest payments and pay downs, leaving a balance of $7,994,774. Yet, now, Lender Defendants, in their foreclosure proceedings, declare a default amount of about nineteen million dollars.

16. Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC claim in this action that the effective interest rate for the series of the ten notes, and each of them, was significantly above 10 percent per annum, and as such, each and every note at issue is usurious.

17. California's usury law provides that the maximum rate of interest for a loan other than a personal loan and not otherwise exempt is 10% or 5% over the then prevailing interest rate charged by the Federal Reserve Bank of San Francisco. Cal. Const, Art. XV § 1. The interest Defendant Lender Defendants charged on all ten notes exceed the usury limit in the California Constitution. There are no exceptions to the usury limit that apply here.

18. The consequences of a violation of the usury limit are well settled. When the interest rate in an obligation exceeds the allowed usury limit, the interest provisions are void as a matter of law and public policy. *Westman v. Dye* (1931) 214 Cal. 28, 31; *Gibbo v. Berger* (2004) 123 Cal. App. 4th 396,403-404. The attempt to exact the usurious rate of interest renders the interest provisions of a note void. *Moore v. Russell* ( 1931) 114 Cal. App. 634; *Simmons v. Patrick* (1962) 211 Cal. App.2d 383 . The inclusion of a usurious interest provision,

therefore, results, in effect, in a note payable without interest. *Epstein v. Frank* (1981) 125 Cal. App. 3d 111 , 122-123 .

19. Because a note with a usurious interest rate results in a note without interest, "The instant a payment is made of usurious interest it is applied to the principal , and the principal indebtedness at the time of such payment is reduced to the extent thereof." *Westman* , at 39, *Gibbo*, at 404. This rule applies not only to the present notes but also to the related previous notes. "Where the lender brings an action to recover an indebtedness, none of the usurious payments, nor payments on renewal notes, are barred by limitation so as to preclude their use in the reduction of the principal debt." *Shirley v. Britt* (1957) 152 Cal. App. 2d 666, 670.

20. On November 11, 2013, Plaintiffs Nariman Teymourian and Gail Suzanne Marie Teymourian entered into a contract in which Plaintiff Borrowers executed a Note for $5,100,000, at the usurious rate of 12 percent interest per annum, in favor of Lender Defendants. (Note 1).   After deduction of usurious fees and usurious credit backs to Lender Defendants, the actual disbursement amount to Plaintiffs Nariman Teymourian and Gail Suzanne Marie Teymourian was $3,939,593.  As such, the effective interest rate was significantly higher than the stated interest rate, and remained usurious. Plaintiffs Nariman Teymourian and Gail Suzanne Marie Teymourian paid back Lender Defendants the total of $306,000 in usurious interest.

21. On July 8, 2015, Plaintiffs Nariman Teymourian and Gail Suzanne Marie Teymourian entered into a contract in which Plaintiff Borrowers executed a Note for $4,000,000, at the usurious rate of 13 percent interest per annum, in favor of Lender Defendants. (Note 2).   After deduction of usurious fees and usurious credit backs to Lender Defendants, the actual disbursement amount to Plaintiffs Nariman Teymourian and Gail Suzanne Marie Teymourian was $3,681,216.  As

such, the effective interest rate was signifincatnly higher than the stated interest rate, and remained usurious. Plaintiffs Nariman Teymourian and Gail Suzanne Marie Teymourian paid back Lender Defendants the total of $129,999 in usurious interest.

22. On December 22, 2015, Plaintiffs Nariman Teymourian and Gail Suzanne Marie Teymourian entered into a contract in which Plaintiff Borrowers executed a Note for $10,500,000, at the usurious rate of 12 percent interest per annum, in favor of Lender Defendants. (Note 3). The balance of Notes 1 and 2 were rolled into Note 3. After transfer of balances of Notes 1 and 2, and deduction of usurious fees and usurious credit backs to Lender Defendants, the actual disbursement amount to Plaintiffs Nariman Teymourian and Gail Suzanne Marie Teymourian was $814,051. As such, the effective interest rate was significantly higher than the stated interest rate, and remained usurious. Plaintiffs Nariman Teymourian and Gail Suzanne Marie Teymourian paid back Lender Defendants the total of $945,000 in usurious interest.

23. On December 8, 2016, Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC entered into a contract in which Plaintiff Borrowers executed a Note for $4,800,000, at the rate of 9 percent interest per annum, in favor of Lender Defendants. (Note 4). A partial balance from Note 3 was rolled into Note 4. After transfer of partial balance of Note 3, and deduction of usurious fees and usurious credit backs to Lender Defendants, the actual disbursement amount to Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC was $809,681. As such, the effective interest rate was significantly above 10 percent per annum, and as such, usurious. Plaintiffs Nariman Teymourian and Gail Suzanne Marie Teymourian paid back Lender Defendants the total of 864,000 in usurious interest.

24. On May 19, 2016, Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC paid down Notes 3 and 4 by $2,000,000.

25. On December 8, 2016, Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC paid down Notes 3 and 4 by $4,900,000.

26. On January 25, 2017, Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC entered into a contract in which Plaintiff Borrowers executed a Note for $2,500,000, at the rate of 10 percent interest per annum, in favor of Lender Defendants. (Note 5).   After deduction of usurious fees and usurious credit backs to Lender Defendants, the actual disbursement amount to Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC was $2,375,508.  As such, the effective interest rate was significantly above 10 percent per annum, and as such, usurious. Plaintiffs Nariman Teymourian and Gail Suzanne Marie Teymourian paid back Lender Defendants the total of $528,000 in usurious interest.

27. On September 26, 2017, Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC entered into a contract in which Plaintiff Borrowers executed a Note for $2,200,000, at the rate of usurious rate of 12 percent interest per annum, in favor of Lender Defendants. (Note 6).   After deduction of usurious fees and usurious credit backs to Lender Defendants, the actual disbursement amount to Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC was $1,979,559.  As such, the effective interest rate was significantly above 10 percent per annum, and as such, usurious. Plaintiffs Nariman Teymourian and Gail Suzanne Marie Teymourian paid back Lender Defendants the total of $540,000 in usurious interest.

VERIFIED COMPLAINT

28. On February 9, 2018, Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC entered into a contract in which Plaintiff Borrowers executed a Note for $1,350,000, at the rate usurious rate of 15 percent interest per annum, in favor of Lender Defendants. (Note 7).   After deduction of usurious fees and usurious credit backs to Lender Defendants, the actual disbursement amount to Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC was $1,279,578.  As such, the effective interest rate was significantly above 10 % per annum, and remained usurious. Plaintiffs Nariman Teymourian and Gail Suzanne Marie Teymourian paid back Lender Defendants the total of $220,000 in usurious interest.

29. On February 9, 2018, Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC entered into a contract in which Plaintiff Borrowers executed a Note for $4,550,000, at the rate usurious rate of 16 %  interest per annum, in favor of Lender Defendants. (Note 8).   After deduction of usurious fees and usurious credit backs to Lender Defendants, the actual disbursement amount to Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC was $4,304,168.  As such, the effective interest rate was significantly above 10 % per annum, and remained usurious. Plaintiffs Nariman Teymourian and Gail Suzanne Marie Teymourian paid back Lender Defendants the total of 485,336 in usurious interest.

30.  On December 20, 2018, Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC entered into a contract in which Plaintiff Borrowers executed a Note for $15,400,000, at the usurious rate of 11 percent interest per annum, in favor of Lender Defendants. (Note 9, attached as Exhibit 1).   The balance of Notes 3, 4, 5, 6, 7 and 8 were rolled into Note 9. After transfer of balances of Notes 3, 4, 5, 6, 7 and 8, and deduction of usurious fees and usurious credit backs to Lender Defendants, the actual disbursement

amount to Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC was $64,498. As such, the effective interest rate was significantly higher than the stated interest rate, and remained usurious. Plaintiffs Nariman Teymourian and Gail Suzanne Marie Teymourian paid back Lender Defendants the total of $2,834,742 in usurious interest.

31. Note 9 was secured by a December 28, 2018 deed of trust recorded against the Property, recorded with San Mateo County Recorder's Office, Instrument Number 2018-101122. (Exhibit 2).

32. On November 11, 2021, Plaintiffs Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC entered into a contract in which Plaintiff Borrowers agreed to a Note for $2,500,000, at the usurious rate of 11 percent interest per annum, in favor of Lender Defendants (Note 10).

33. Note 10 was secured by the same 12/28/2018 deed of trust recorded against the Property, Instrument Number 2018-101122, which is being foreclosed on.

34. The below chart summarizes Notes 1-10:

| Date | Note | Face Amount | Actual Disbursement | Usurious Int. Paid | Pay Down | Balance | |
|---|---|---|---|---|---|---|---|
| 11/11/2013 | 1 | $5,100,000.00 | $3,939,593.00 | $306,000.00 | | $3,633,593.00 | |
| 7/8/2015 | 2 | $4,000,000.00 | $3,681,216.00 | $129,999.00 | | $3,551,217.00 | |
| 12/22/2015 | 3 | $10,500,000.00 | $814,051.00 | $945,000.00 | | ($130,949.00) | Notes 1 and 2 rolled into Note 3 |
| 12/8/2016 | 4 | $4,800,000.00 | $809,681.00 | $864,000.00 | | ($54,319.00) | Part of Note 3 rolled into Note 4 |
| 5/19/2016 | Pay Down | | | | $2,000,000.00 | ($2,000,000.00) | |
| 12/8/2016 | Pay Down | | | | $4,900,000.00 | ($4,900,000.00) | |
| 1/25/2017 | 5 | $2,500,000.00 | $2,375,508.00 | $528,000.00 | | $1,847,508.00 | |
| 9/26/2017 | 6 | $2,200,000.00 | $1,979,559.00 | $540,000.00 | | $1,439,559.00 | |
| 2/9/2018 | 7 | $1,350,000.00 | $1,279,578.00 | $220,000.00 | | $1,059,578.00 | |
| 4/23/2018 | 8 | $4,550,000.00 | $4,304,168.00 | $485,336.00 | | $3,818,832.00 | |
| 12/20/2018 | 9 | $15,400,000.00 | $64,498.10 | $2,834,742.48 | | ($2,770,244.38) | Notes 3, 4, 5, 6, 7, & 8 rolled into Note 9 |
| 11/11/2021 | 10 | $2,500,000.00 | $2,500,000.00 | | | $2,500,000.00 | Added to Note 9 |
| | | | $21,747,852.10 | $6,853,077.48 | $6,900,000.00 | $7,994,774.62 | |

35. Plaintiffs suspect that Lender Defendants will argue and may try to present evidence that Plaintiffs are sophisticated in real estate transactions. Such evidence is irrelevant to a determination of a violation of the usury laws. There is no exception to the usury law based in the party's relative sophistication. The Courts have uniformly held that the doctrine of in pari delicto does not apply to the parties to a usurious transaction. *Stock v. Meek* (1950) 35 Cal. 2d 809,818. In other words, "the borrower is not to be treated as equally culpable with the lender." *Id*. The relative sophistication of the parties is not a defense to borrowers' claim to recover usurious interest.

36. Plaintiffs suspect that Defendant Dakota Note LLC will argue and may to present evidence that consolidation of the Notes 1-8 and 10 into Note 9 purges usury. Here, the original principals of Notes 1-8 and 10 are part of the Note 9, that its being foreclosed on . It is well settled in this State that all transactions connected to a usurious lending scheme are tainted by the usury:

> If a transaction is usurious in its inception , it remains usurious until purged by a new contract; and all future transactions connected with or growing out of the original are usurious and without valid consideration. An original taint of usury attaches to the whole family of consecutive obligations and securities growing out of the original vicious transaction; and none of the descendant obligations, however remote, can be free of the taint if the descent can be fairly traced. Where the original transaction is usurious, it can never become validated by subsequent dealings unless the usury is purged.

*Aspieta v. California Trust Company* (1958) 158 Cal. App. 2d 150, 155; see also, *Westman v. Dye* ( 1931) 214 Cal. 28, 38; *Whittemore Homes, Inc. v. Fleishman*, (1961) 190 Cal. App. 2d 554, 560. To purge the usury, the parties must the abandon the usurious agreement and execute a new obligation for the amount of

926098.1 5839.097

the actual debt free from the usury and bear only legal interest. Whittemore Homes, Inc. at 560. As such, there was no purging of the usury in this case.

37. Plaintiffs suspect that Lender Defendants, will argue and may to present evidence that the subject series of Notes are exempt from usury because of the "broker" exemption to usury. California Constitution Section 1916.1 provides that Constitutional restrictions on interest rates do not apply "to any loan or forbearance made or arranged by any person licensed as a real estate broker by the State of California…". A licensed broker must "arrange" the loan within the meaning of the statute. An untrue or erroneous recital in the loan agreement as to who arranged the loan will not preclude the borrower from establishing the true identity and conduct of the arranging licensee, or whether the loan was arranged by a broker at all. *In Stoneridge Parkway Partners v. MW Housing Partners III* (2007), 153 Cal. App. 4th 1373; 8 Cal. Real Est. § 21:34 (3d ed.). The court in *Gibbo v. Berger*, 123 Cal. App. 4th 396, 402 (2004) explains that for a broker to "arrange" a loan (and thus trigger the exemption), the broker must do substantive work:

> When viewed in the context of "arranging a loan," the phrase "arranged by" must refer to **some conduct** by a real estate broker . . . that causes a loan to be obtained or procured. Such conduct by a broker includes structuring the loan as the agent for the lender . . . setting the interest rate and points to be paid, setting the terms of the forbearance agreement, reviewing the loan and forbearance documents, conducting title searches, or drafting the terms of the loan . . . A broader definition would result in absurd results—a licensed real estate broker who photocopies and collates the pages of a loan document and then charges a fee for that service will be held to have "arranged" a loan, which is exempt from the constitutional usury provision.
> (Emphasis added)

38. In *Gibbo v. Berger*, the court found that the broker did not "arrange" the loan when the broker's involvement was limited to preparing loan documents, ordering title insurance, and dispersing funds, all in accordance with the parties' instructions and on the terms provided by the parties.

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:00:49    Page 190 of 411

39. In *Del Mar v. Caspe*, 222 Cal. App. 3d 1316 (1990) found that a broker "arranged" a loan because he "was **essential** to preparation, execution, and completion of the loan documents and transaction." The court held that for the exemption to apply, whether the broker performed title searches, reviewed loan documents, consulted with the lender and advised the lender of his rights and obligations, calculated the principal amount of a prior loan and the principal amount of future advances, calculated interest on a prior principal amount and calculated interest on future advances, prepared loan documents, discussed the loan documents and terms with the lender and borrower, and obtained borrower's signature on new notes and deeds of trust, are factors that may considered.

40. In *Jones v. Kallman*, 199 Cal. App. 3d 131 (1988), the court held that for the exemption to apply, whether the broker 'determines the interest rate and points to be charged on the loan' is a factor that may be considered. In *Chapman v. Farr*, 132 Cal. App. 3d 1021 (1982), the court held that for the exemption to apply, whether the broker "structured" the transaction is a factor that may be considered.

41. Here, as to Notes 1-10, a broker was never involved, whatsoever. In fact, Plaintiffs have never spoken to, or otherwise communicated, directly or indirectly, with any brokers, concerning Notes 1-10. At the same time, every task relevant to Notes 1-10 was completed by a non-broker, which further establishes a broker could not have been involved:

-No broker negotiated the terms of the Notes. In fact, Plaintiffs have never spoken to, or otherwise communicated, directly or indirectly, with any brokers, concerning Notes 1-10. Plaintiff Nariman Teymourian personally negotiated the terms of Notes.

-In 2013, prior to execution of Note 1, Plaintiff Nariman Teymourian met with Lender Defendants' principle, Paul Greenfield, in person, without the presence of any brokers.

-No broker structured Notes 1-10. Plaintiff Nariman Teymourian personally structured the Notes.

-No broker drafted the Notes and Deeds of Trust. The Notes and Deeds of trust

were drafted by the lender directly, and/or by the escrow companies.

-No broker obtained property value appraisals. Plaintiff Nariman Teymourian directly obtained property value appraisals.

-No broker obtained property tax information. The lender directly obtained property tax information.

-No broker selected any of the escrow companies for Notes 1-10. The lender directly selected the escrow companies.

-No broker selected title insurance companies. The lender directly the title insurance companies.

-No broker provided a loan application. The lender directly provided loan applications to the borrowers.

-No broker helped borrowers fill out loan applications. Plaintiffs themselves filled out loan applications.

42. As to Notes 1-9, Dakota Note, LLC, used the services of a salesperson as intermediary between the Dakota Note, LLC, and the Plaintiffs. However, no other person, and no broker, was involved in arranging, structuring, and executing Notes 1-9. Of course there is no 'salesperson exception to usury'.

43. Some of the fees for the services that the salesperson had provided were paid through his listing brokers. However, the salesperson's listing brokers were not involved in negotiations, arrangement, structure, or execution of these notes otherwise, whatsoever. These listing brokers never spoke to, communicated, texted, emailed, or had any contact, whatsoever, with the Plaintiffs; they were not involved, and did not do anything, whatsoever, concerning Notes 1-9.

44. As to Note 10, all negotiations, arrangements, and structuring was done directly between Plaintiff Nariman Teymourian and Dakota Note, LLC's principle, Paul Greenfield.

45. As Notes 1-10 are usurious, all interest provisions are cancelled, and all interest payments made by Plaintiffs are credited against principle amounts disbursed to them. As such, as indicated in the above chart, the principle balance due to Dakota Note LLC is $7,994,774.62.

46. Defendant Dakota Note LLC, has made inconsistent and incorrect demands throughout the foreclosure proceedings.

47. The June 30, 2022 Notice of Default indicates a default balance of $18,700,000. (Instrument Number 2022-053641; Exhibit 3).

48. Yet, the October 25, 2021 Notice of Sale indicates a lower default balance of $17,290,000. (Instrument Number 2022-075248; Exhibit 4). Plaintiffs did not make any payments between the Notice of Default and Notice of Sale.

49. And then, on October 31, 2022, in response to a break down request, just six days after Notice of Sale was recorded, Dakota Note, LLC indicated a default balance of $19,050,000.

50. The default balances indicated on June 30, 2022 for $18,700,000, October 25, 2021 for $17,290,000, and on October 31, 2022 for $19,050,000, are inconsistent, incorrect, inexplainable, and significantly overstated, as the correct principle balance due to Dakota Note LLC is $7,994,774.62.

51. Prior to filing this complaint, Plaintiffs tendered to Lender Defendants to pay off the correct outstanding amount, plus all applicable fees, and interest amounts. Lender Defendants, did not accept Plaintiffs' tender.

## FIRST CAUSE OF ACTION FOR USURY AGAINST ALL DEFENDANTS EXCEPT 5 PALMS, LLC

52. Plaintiffs reallege and incorporate by reference each allegation contained in Paragraphs 1 through 48 above, as though the same were fully set forth herein.

53. The annual interest rate, the late fee clause, and the default interest rate on the loan are usurious, and in violation of section 1(2) of Article XV of the California Constitution, which provides that the interest rate on a loan other than one primarily for personal, family, or household purposes may not exceed the greater of 10% per annum or 5% per annum plus the rate established by the Federal Reserve Bank of San Francisco on advances to member banks on the 25th day of the month proceeding the earlier of the date of execution of the contract to make the loan or forbearance, or the date of making the loan or forbearance.

54. Further, a broker did not make or arrange the subject loan; therefore, the "broker" exception to the usury laws under California Civil Code § 1916.1, and otherwise, does not apply to the subject transaction.

55. The amounts sought by Lender Defendants are usurious.

926098.1 5839.097
Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:00:49   Page 193 of 411

56. Plaintiffs are entitled to a Judgment that the underlying Notes1-10 are usurious, that Lender Defendants are barred from collecting fees and interest for the term o the notes, and that all fees and interests paid by Plaintiffs, should be returned or credited back.

57. Plaintiff are further entitled to double and treble damages.

58. Plaintiffs are entitled to recover attorney's fees against Dakota Note, LLC, in this action under the Notes, and pursuant to California Civil Code § 1717.

## SECOND CAUSE OF ACTION FOR QUIET TITLE AGAINST ALL DEFENDANTS

59. Plaintiffs reallege and incorporate by reference each allegation contained in Paragraphs 1 through 55 above, as though the same were fully set forth herein.

60. The Deed of Trust, Exhibit 2, The Notice of Default (Exhibit 3), and Notice of Sale (Exhibit 4) indicate incorrect, unlawful, unenforceable, and usurious terms and balances.

61. Therefore, Plaintiffs seeks an order of the Court quieting title to the Subject Property and expunging the Notice of Default and Notice of Sale.

## THIRD CAUSE OF ACTION FOR INJUNCTION AGAINST ALL DEFENDANTS

62. Plaintiffs reallege and incorporate by reference each allegation contained in Paragraphs 1 through 58 above, as though the same were fully set forth herein.

63. Plaintiffs believe, are informed, and allege that the allegations above, that the Notice of Default and Notice of Sale, Exhibits 3 and 4, and the underlying deed of trust, Exhibit 2, are illegal, void, invalid, and unenforceable, because they were procured in violation of California's Usury Laws.

64. If Defendants foreclose on the Property, Plaintiffs will suffer irreparable harm for which there is no adequate remedy at law.

65. In addition to and without limiting all other rights and remedies to which plaintiffs are entitled in this action, Plaintiffs seek temporary, preliminary, and permanent injunctions necessary to prevent Defendants and their agents and employees from foreclosing upon Property or otherwise enforcing the illegal deed of trust.

926098.1 5839.097

VERIFIED COMPLAINT

## FOURTH CAUSE OF ACTION FOR WRONGFUL FORECLOSURE AGAINST ALL DEFENDANTS

66. Plaintiffs reallege and incorporate by reference each allegation contained in Paragraphs 1 through 62 above, as though the same were fully set forth herein.

67. The Deed of Trust, Exhibit 2, The Notice of Default (Exhibit 3), and Notice of Sale (Exhibit 4) indicate incorrect, unlawful, unenforceable, and usurious terms and balances.

68. Due to the inclusion of usurious interest in the Notices of Default and Sale, the foreclosure could not lawfully proceed.

69. Defendants failed to comply with Cal. Civ. Code. Section 2966 which mandates a minimum of 90 days written notice for balloon payment. According to *Marbry v The Superior Court of Orange County* (2010) 185 Ca. App. 4th 208, "if section 2923.5 is not complied with, then there is no valid notice of default, and without a notice of default, a foreclosure cannot proceed."

70. Consequently, Defendants have unlawfully invoked Cal. Civ. Code Section 2924 for non judicial foreclosure on the Property. Accordingly the subject foreclosure proceedings are unlawful.

71. The Defendants are guilty of fraud, oppression, and malice, and in pursuing this foreclosure acted in conscious and callous disregard of Plaintiffs' rights in that they knew that there were improper and unlawful procedures and irregularities attending the foreclosures procedures. Accordingly, Plaintiffs are entitled to an ward of punitive damages in an amount to be determined by the trier of the fact.

**WHEREFORE**, Plaintiffs pray as follows:

### First Cause of Action for Usury

Plaintiffs are entitled to a declaration that the underlying Notes1-10 are usurious, that Defendants are barred to collect fees and interest for the term of the notes, and that all fees and interests paid by Plaintiffs, should be returned or credited back.

Plaintiffs are further entitled to double and treble damages.

Plaintiffs are entitled to recover attorney's fees under the Note, and pursuant to California Civil Code § 1717.

For costs of suit herein.

For other such relief the Court may deem proper.

**Second Cause of Action for Quiet Title**

For a Judgment quieting title by way of reconveyance and correction of the Deed of Trust, Notice of Default, and Notice of Sale, encumbering the Property, and holding that the said instruments are void, null, and unenforceable.

**Third Cause of Action for Injunction**

For an order, restraining and enjoining Defendants and their agents, officers, employees, partners, successors, representatives and all persons acting in concert or participating with them, and each of them from selling, attempting to sell, or causing to be sold the trust property described in the Complaint on file in this action either under the power of sale in the deed of trust or by foreclosure action, including a restraining order and preliminary injunction, pending the litigation of this matter.

**Fourth Cause of Action for Wrongful Foreclosure**

For an order, enjoining the unlawful foreclosure;

For general damages, according to proof;

For special damages, according to proof;

For consequential damages, according to proof;

For punitive damages, according to proof;

**All Causes of Action**

For costs of suit and attorney's fees incurred herein; and

For such other and further relief as the Court may deem just and proper.


Plaintiffs demand a trial by Jury.

November 7, 2022

--------------------------------------------------------
Kousha Berokim
BEROKIM LAW
Attorney for Nariman Teymourian, Gail Suzanne Marie Teymourian, and 2700 Middlefield Road, LLC

**VERIFICATION**

Nariman Teymourian, for himself, and as managing member for 2700 Middlefield Road, LLC, and Gail Suzanne Marie Teymourian, Plaintiffs in the above entitled action, certify and declare that we have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as those matters, I believe it to be true.

We declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: November 7, 2022      ------------------------------------------
                             Nariman Teymourian

Dated: November 7, 2022      ------------------------------------------
                             Gail Suzanne Marie Teymourian

# EXHIBIT 1

# NOTE SECURED BY A DEED OF TRUST

Loan Number: 9645            Date: 11/08/2018            San Jose, California

**2710 Middlefield Road, Redwood City, CA 94063; 66 Barry Lane Atherton CA 94027**
Property Address

## THIS NOTE IS SECURED BY TWO DEEDS OF TRUST

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$15,400,000.00** (this amount will be called "principal"), plus interest, to the order of Dakota Note, LLC, **as to an Undivided 9,588,000/15,400,000 interest and Tanya Waltimyer, a married woman as her sole and separate property, as to an undivided 2,370,000/15,400,000 interest and Natural Software Systems, Inc. Money Purchase Pension Plan, as to an Undivided 2,133,000/15,400,000 interest and Jason Greenfield, a Married Man as his Sole and Separate Property, as to an Undivided 1,309,000/15,400,000 interest** (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

### 2. INTEREST

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on **11/28/2018**, and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

### 3. PAYMENTS

My payments are  ☑ Interest Only  ☐ Fully Amortized  ☐ Other

I will make my payments each month as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 23 | Monthly beginning January 1, 2019 | 11.00% | $141,166.67 |
| 1 | December 1, 2020 | 11.00% | $15,541,166.67 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on **12/01/2020** (the Due Date) I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.

I will make my payments payable to **c/o Paul Greenfield, 2597 Flagstone Drive San Jose, CA 95132**, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

### 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge For Overdue Payments.** If I do not pay the full amount of each monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.000%** of my overdue payment or U.S. **$25.00**, whichever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than **60** days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

**(B) Default.** If I do not pay the full amount of each monthly payment due under this Note by the date stated in paragraph 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

**(D) Default Interest:** In the event of a default under the terms of this Note, including but not limited to: (a) non-payment of any installment of principal or interest within **Ten (10)** days of its designated due date; (b) failure to pay insurance premiums or property taxes when they become due; (c) transfer of title; or (d) that this Note is not paid in full on or before the due date, then any unpaid principal balance of the loan at the time of default shall bear interest at the rate of **ten (10)** percent (the "Default Rate") above

Case: 23-51443     Doc# 33-4     Filed: 03/08/24     Entered: 03/08/24 15:08:49     Page 199 of 411

the herein stated note rate, automatically and without notice, from the time of default, until this Note has been paid in full, or until the specific default has been cured. If payment of the full amount of the outstanding balance of the loan at maturity (the "balloon balance" referenced in Paragraph 3 above) is not paid, the Default Rate will automatically apply to all interest accrued thereafter without demand by the Note Lender.

( E) If this Note, or any amounts under this Note, is not paid when due, or there is any other breach under the loan documents, the Borrower(s) promise to pay, in addition to the principal, interest, advances, interest on advances, default interest and any other amounts due under this Note, all costs of collection <u>and any reasonable attorneys' fees incurred by the Beneficiary thereof on account of such collections, whether or not suit is filed hereon.</u> Each Borrower consents to renewals, replacements, and extensions of time for payment hereof before, at, or after maturity; consents to the acceptance of security for this Note and waives demand, protest and any applicable statute of limitations. Advances shall bear interest at the interest rate stated in the note or the "Default" interest, whichever is higher, from date of advance until date paid in full.

## 5.  BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows: **The lender is entitled to earn a minimum 3 monthly payments. There is no pre-pay after 3 monthly payments have been paid.**

## 6.  BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 7.  RESPONSIBILITIES OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

## 8.  THIS NOTE IS SECURED BY A DEED OF TRUST

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

## 9.  ADDITIONAL PROVISION

**Advancing Fee charged to borrower when lender much cure delinquent senior loans, taxes, insurance & homeowner dues:** In the event the Lender, or Agent of the Lender, makes any advances for reinstating delinquent prior encumbrances, taxes, insurance, homeowner association dues (if applicable) or for the preservation of this security, to protect the Beneficiary's interest in this Note, there will be an advancing fee equal to three percent (3%) of the amount so advances, subject to a minimum fee of fifty dollars ($50.00). Further, such advances are to be secured by this Deed of Trust and bear interest at the same rate that is charged on the Principal of this Note, from the date of advancement to such date when all monies are paid in the form of certified funds, cashier's check or money order.

**2700 Middlefield Road, LLC, a Delaware limited liability company**

Applied Business Software, Inc (800) 833-3343
Note Secured by Deed of Trust

| | | | |
|---|---|---|---|
| Borrower | Nariman Teymourian, Manager | | Date | Borrower | | Date |

| | | | |
|---|---|---|---|
| Borrower | Nariman S. Teymourian | | Date | Borrower | Gail Suzanne Marie Teymourian | Date |

## ASSIGNMENT OF NOTE
## SECURED BY A DEED OF TRUST

Date: _____

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:

all beneficial interest under the within Note, without recourse, and Deed of Trust securing same

_____     _____

_____     _____

**DO NOT DESTROY THIS NOTE:** When paid it must be surrendered to the Trustee, together with the Deed of Trust securing same for cancellation, before reconveyance will be made.

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 201
of 411

# EXHIBIT 2

First American Title
Escrow 5686812-NS

**Recording Requested By**
California Home Loans

**When Recorded Mail To**
California Home Loans
1346 The Alameda, Suite 7-119
San Jose, CA 95126

Title Order No. 5686812-NS

# 2018-101122



FIRST AMERICAN TITLE COMPANY
8:00 am 12/28/18 DT Fee: 119.00
Count of Pages 10
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

\* $ R 0 0 0 2 6 4 7 1 2 1 $ \*

Space above this line for recorder's use

# DEED OF TRUST

RECORDER: INDEX FOR SPECIAL NOTICE

Loan No. **9645**

   This Deed of Trust, made this **8th** day of **November 2018**, among the Trustor, **2700 Middlefield Road, LLC, A Delaware Limited Liability Company** (herein "Borrower"), **Last Chance Finance Inc.** (herein "Trustee"), and the Beneficiaries, **Dakota Note, LLC, as to an Undivided 9,588,000/15,400,000 interest and Tanya Waltimyer, a married woman as her sole and separate property, as to an undivided 2,370,000/15,400,000 interest and Natural Software Systems, Inc. Money Purchase Pension Plan, as to an Undivided 2,133,000/15,400,000 interest and Jason Greenfield, a Married Man as his Sole and Separate Property, as to an Undivided 1,309,000/15,400,000 interest** (herein "Lender").

   The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

## GRANT IN TRUST

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property: **See attached legal description** (herein "Property Address"); which has the address of **2710 Middlefield Road, Redwood City, CA JPN: 054-011-111-21.01A; APN: 054-113-130-6**

   TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

**THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:**
(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **11/08/2018**, in the principal sum of U.S. **$15,400,000.00**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

   Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the **Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend** generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:



Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 203 of 411

**1. Payments of Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and/or interest on any Future Advances secured by the Deed of Trust.

**2. Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine, or at option of Lender the entire amount so collected or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 204
of 411

with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust . Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security hereof or the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), c/o Paul Greenfield, 2597 Flagstone Drive San Jose, CA 95132 or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State of California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not effect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require The Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

**17. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**18. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

**19. Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

**20. Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed or Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender of a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 206
of 411

perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

2700 Middlefield Road, LLC, a Delaware limited liability company

_____  12/29/18     _____
Borrower   Nariman Teymourian, Manager  Date     Borrower                              Date


_____  _____     _____  _____
Borrower                          Date         Borrower                              Date

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

State of California
County of _____

On _____ before me, _____,
personally appeared _____
_____
_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*SEE ATTACHED*

_____                    (Seal)
Signature

## REQUEST FOR SPECIAL NOTICE OF DEFAULT AND FORECLOSURE
## UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

In accordance with Section 2924b of the Civil Code, Request is hereby made by the undersigned Trustor that a copy of any default and a copy of any notice of sale under deed of trust recorded in Book _____, Page(s) _____, Instrument No. _____, Official Records of County Recorder of _____ County, California. The original Trustor _____ and the original Trustee _____ and the original Beneficiary _____
Mail to:

Applied Business Software, Inc. (800) 833-3343                          9845/Teymourian 2-3
Deed of Trust                                                            Page 5 of 7

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ San Mateo _____ )

On ___ 12/20/2018 _____ before me, __ Rawan Habash, Notary Public _____
(insert name and title of the officer)

personally appeared _ Nariman Teymourian _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

RAWAN HABASH
Commission # 2114125
Notary Public - California
San Francisco County
My Comm. Expires Jun 5, 2019

Signature _Rawan Habash_ **(Seal)**

## REQUEST FOR FULL RECONVEYANCE

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all **other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and** this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____ _____    _____ _____
Signature of Beneficiary (the "LENDER")        Date     Signature of Beneficiary (the "LENDER")        Date

When recorded, mail to

Att: _____ .

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 209 of 411

**Exhibit "A"**

**Legal Description**

A.P.N.: 054-113-130-6

Real property in the unincorporated area of the County of San Mateo, State of California, described as follows:


PARCEL I:

PARCEL 1, AS SHOWN ON THE CERTAIN MAP ENTITLED "PARCEL MAP NO. 1096, LANDS OF 2700 MIDDLEFIELD ROAD" FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN MATEO COUNTY, CALIFORNIA ON AUGUST 14, 2012 IN VOLUME 80 OF PARCEL MAPS AT PAGES 38-39.

EXCEPTING THEREFROM THAT PORTION LYING BELOW A DEPTH OF 500 FEET, MEASURED VERTICALLY, FROM THE CONTOUR OF THE SURFACE OF SAID PROPERTY, AS EXCEPTED BY SOUTHERN PACIFIC TRANSPORTATION COMPANY BY THAT CERTAIN DEED RECORDED ON JULY 30, 1980 IN REEL 7975 AT IMAGE 1306 (70731-AP), RECORDS OF SAN MATEO COUNTY.

PARCEL II:

A NON-EXCLUSIVE EASEMENT FOR ROADWAY PURPOSES UPON, OVER, ACROSS AND ALONG THAT CERTAIN STRIP OF LAND 45 FEET WIDE, LYING NORTHERLY OF AND CONTIGUOUS TO THE FOLLOWING THREE COURSES OF PARCEL A, ACCORDING TO MAP THEREON RECORDED APRIL 21, 1980 IN VOLUME 49 OF PARCEL MAPS, PAGE 51, RECORDS OF SAN MATEO COUNTY.

1. SOUTH 74° 30' 00" EAST, 100.37 FEET;
2. NORTH 60° 20' 00" EAST, 98.70 FEET;
3. NORTH 30° 00' 00" EAST, 30.73 FEET.

SAID EASEMENT IS APPURTENANT TO PARCEL I ABOVE AND WAS CREATED BY THAT CERTAIN DEED RECORDED ON JULY 30, 1980 IN REEL 7975 AT IMAGE 1306 (70731-AP) RECORDS OF SAN MATEO COUNTY.

PARCEL III:

(A) A NON-EXCLUSIVE EASEMENT FOR PRIVATE UTILITIES (P.U.E) WITHIN THE NORTHEASTERLY 5 FEET OF SAID PARCEL 3.

(B) A NON-EXCLUSIVE EASEMENT FOR PRIVATE UTILITIES WITHIN THE SOUTHWESTERLY 5 FEET AND THE NORTHEASTERLY 10 FEET OF SAID PARCEL 4.

SAID EASEMENTS ARE APPURTENANT TO AND FOR THE BENEFIT OF PARCEL I ABOVE AS CREATED BY THAT CERTAIN DEED WHICH RECORDED SEPTEMBER 18, 1987 AS DOCUMENT NO. 87144820 OF OFFICIAL RECORDS OF SAN MATEO COUNTY, CALIFORNIA.

# HAZARDOUS SUBSTANCE RIDER TO DEED OF TRUST

That certain Deed Of Trust dated **11/08/18** between **2700 Middlefield Road, LLC, A Delaware Limited Liability Companyn** therein and herein called "Trustor", **Last Chance Finance Inc**, therein called "Trustee" and **Dakota Note, LLC, as to an Undivided 9,588,000/15,400,000 interest and Tanya Waltimyer, a married woman as her sole and separate property, as to an undivided 2,370,000/15,400,000 interest and Natural Software Systems, Inc. Money Purchase Pension Plan, as to an Undivided 2,133,000/15,400,000 interest and Jason Greenfield, a Married Man as his Sole and Separate Property, as to an Undivided 1,309,000/15,400,000 interest** therein and herein called "Beneficiary" is supplemented in the following particulars only:

1. Trustor represents to Beneficiary that, to the best of Trustor's knowledge after due and diligent inquiry, no hazardous or toxic waste substances are being stored on the property or any adjacent property nor have such substances been stored or used on the property or any adjacent property prior to Trustor's ownership, possession or control of the property. Trustor agrees to provide written notice to Beneficiary immediately upon Trustor's becoming aware that the property or any adjacent property is being or has been contaminated with hazardous or toxic waste or substances. Trustor will not cause or permit any activities on the property that directly or indirectly could result in the property or any other property's being contaminated with hazardous or toxic waste or substances. For the purpose of this Deed of Trust, "hazardous" or "toxic waste" or "substances" means any substance or material defined or designated as hazardous or toxic wastes, hazardous or toxic material, a hazardous, toxic, or radioactive substance, or other similar term by any applicable federal, state, or local statute, regulation, or ordinance now or hereafter in effect.

2. Trustor shall promptly comply with all statutes, regulations, and ordinances, and with all orders, decrees, or judgments of governmental authorities or courts having jurisdiction, relating to the use, collection, storage, treatment, control, removal, or cleanup of hazardous toxic waste or substances in, on, or under the property or in, on, or under any adjacent property that becomes contaminated with hazardous or toxic waste or substances as a result of construction, operations, or other activities on, or the contamination of, the property, or incorporated in any improvements thereon, at Trustor's expense. Beneficiary may, but is not obliged to, enter upon the property and take such actions and incur such costs and expenses to effect such compliance as it deems advisable to protect its interest as Beneficiary; and whether or not Trustor has actual knowledge of the existence of hazardous or toxic waste or substances in, on, or under the property or any adjacent property as of the date hereof, Trustor shall reimburse Beneficiary on demand for the full amount of all costs and expenses incurred by Beneficiary prior to Beneficiary's acquiring title to the property through foreclosure or deed in lieu of foreclosure, in connection with such compliance activities.

2700 Middlefield Road, LLC, a Delaware limited liability company

| | | |
|---|---|---|
| Borrower   Nariman Teymourian, Manager | Date  12/20/18 | Borrower                     Date |

| | | |
|---|---|---|
| Borrower                     Date | Borrower                     Date |

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 211
of 411

**Property Information for Loan Number: 9645**

**Property #1**
Address: 2710 Middlefield Road, Redwood City, CA 94063
County:  San Mateo, State of California
Legal Description: See Exhibit A (APN:  054-113-130 - 6) Legal Description Attached

**Property #2**
Address: 66 Barry Lane Atherton CA 94027
County:  San Mateo, State of California
Legal Description: Lot 13, as designated on the Map entitled "Atherton Woods Unit No. 2 Atherton San Mateo County, California," which Map was filed in the office of the Recorder of the County of San Mateo, State of California on June 2, 1955 in Book 42 of Maps at Page 37.
APN: 070-201-070-3

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 212 of 411

# EXHIBIT 3

**RECORDING REQUESTED BY**

Dakota Note LLC

**WHEN RECORDED MAIL TO**

Name    Dakota Note LLC

Street
Address   3916 North Pottsdam Ave, #8047

City &
State    Sioux City, SD 57104

**2022-053641**

County
12:36 pm 07/11/22 ND Fee: 101.00
Count of Pages 4
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

\* $ R 0 0 0 3 2 6 8 2 9 9 $ \*



---

| TITLE ORDER NO. | T.S. NO. 22-1001 | SPACE ABOVE THIS LINE FOR RECORDER'S USE |
|---|---|---|
| LOAN NO. | OTHER REF. | APN 054-113-130-6 |

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
## IMPORTANT NOTICE
## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $ 18,788,000.00      as of 06/30/2022      and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

> **Name of Beneficiary or Mortgagee:**
> Dakota Note/NSSMPPP/TWaltimyer/JGreenfield
> **Phone:**
> 408-691-0016

**If you have any questions, you should contact a lawyer or the Governmental agency which may have insured your loan.**

**Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.**

**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: **5 Palms LLC**
is duly appointed Trustee under a Deed of Trust dated  November 8, 2018                     executed by

**2700 Middlefield Road LLC**                          as Trustor, to secure certain obligations
in favor of  **Dakota Note LLC, Tanya Waltimyer, NSSMPPP, Jason Greenfield**     ,as beneficiary,

recorded **12/28/2018**   as instrument no. **2018-101122**   in book                    page

of Official Records in the Office of the Recorder of  **San Mateo**            County, California, describing the land therein as:
JPN 054-011-111-21.01A; APN 054-113-130-6

See Legal Description attached as Exhibit "A"

said obligations including    Note Secured by Deed of Trust    note(s) for the    **original**    sum of $ **15,400,000.00**

that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:   Interest when due nor balloon payment upon maturity, as required.

that by reason thereof, the undersigned, present beneficiary under such Deed of Trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Please see attached sheet
for CA Acknowledgement/Jurat
As per CA civil codes:
8202, 8205, 8207, 1189

Dated **07/11/2022**

Michael Ohayon, Foreclosure Officer

**Exhibit "A"**

**Legal Description**

A.P.N.: 054-113-130-6

Real property in the unincorporated area of the County of San Mateo, State of California, described as follows:

PARCEL I:

PARCEL 1, AS SHOWN ON THE CERTAIN MAP ENTITLED "PARCEL MAP NO. 1096, LANDS OF 2700 MIDDLEFIELD ROAD" FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN MATEO COUNTY, CALIFORNIA ON AUGUST 14, 2012 IN VOLUME 80 OF PARCEL MAPS AT PAGES 38-39.

EXCEPTING THEREFROM THAT PORTION LYING BELOW A DEPTH OF 500 FEET, MEASURED VERTICALLY, FROM THE CONTOUR OF THE SURFACE OF SAID PROPERTY, AS EXCEPTED BY SOUTHERN PACIFIC TRANSPORTATION COMPANY BY THAT CERTAIN DEED RECORDED ON JULY 30, 1980 IN REEL 7975 AT IMAGE 1306 (70731-AP), RECORDS OF SAN MATEO COUNTY.

PARCEL II:

A NON-EXCLUSIVE EASEMENT FOR ROADWAY PURPOSES UPON, OVER, ACROSS AND ALONG THAT CERTAIN STRIP OF LAND 45 FEET WIDE, LYING NORTHERLY OF AND CONTIGUOUS TO THE FOLLOWING THREE COURSES OF PARCEL A, ACCORDING TO MAP THEREON RECORDED APRIL 21, 1980 IN VOLUME 49 OF PARCEL MAPS, PAGE 51, RECORDS OF SAN MATEO COUNTY.

1. SOUTH 74° 30' 00" EAST, 100.37 FEET;
2. NORTH 60° 20' 00" EAST, 98.70 FEET;
3. NORTH 30° 00' 00" EAST, 30.73 FEET.

SAID EASEMENT IS APPURTENANT TO PARCEL I ABOVE AND WAS CREATED BY THAT CERTAIN DEED RECORDED ON JULY 30, 1980 IN REEL 7975 AT IMAGE 1306 (70731-AP) RECORDS OF SAN MATEO COUNTY.

PARCEL III:

(A) A NON-EXCLUSIVE EASEMENT FOR PRIVATE UTILITIES (P.U.E) WITHIN THE NORTHEASTERLY 5 FEET OF SAID PARCEL 3.

(B) A NON-EXCLUSIVE EASEMENT FOR PRIVATE UTILITIES WITHIN THE SOUTHWESTERLY 5 FEET AND THE NORTHEASTERLY 10 FEET OF SAID PARCEL 4.

SAID EASEMENTS ARE APPURTENANT TO AND FOR THE BENEFIT OF PARCEL I ABOVE AS CREATED BY THAT CERTAIN DEED WHICH RECORDED SEPTEMBER 18, 1987 AS DOCUMENT NO. 87144820 OF OFFICIAL RECORDS OF SAN MATEO COUNTY, CALIFORNIA.

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____ Contra Costa _____ )

On _07|11|2022_ before me, _Dev Patel_ ,Notary Public _____

(insert name and title of the officer)

personally appeared _Michael Oharon_ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

DEV PATEL
COMM. #2377026
NOTARY PUBLIC • CALIFORNIA
CONTRA COSTA COUNTY
Comm. Exp. SEP. 30, 2025

Signature _____ (Seal)

# EXHIBIT 4

RECORDING REQUESTED BY
DAKOTA NOTE LLC
AND WHEN RECORDED MAIL TO:

Name   DAKOTA NOTE LLC
Street
Address  3916 NORTH POTTSDAM AVE #8047
City &
State   SIOUX CITY, SD 57104
Zip

Trustee's Sale No.: 22-1001

**2022-075248**
1:22 pm 10/25/2022 NT Fee: $98.00
Count of Pages 3
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder



* $ R 0 0 0 3 3 0 1 3 5 5 $ *

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 12/28/2018** UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY; IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANTION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On 11/21/2022 , at 1:00 PM , 5 PALMS LLC                                          as
duly appointed Trustee under and pursuant to Deed of Trust or Mortgage recorded as Instrument No. 2018-101122 ,
Book _____ , Page _____ , of Official Records of the County Recorder of SAN MATEO County, State
of California executed by 2700 MIDDLEFIELD ROAD LLC

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH OR CASHIER'S CHECK OR OTHER INSTITUTIONAL CHECK ACCEPTABLE TO THE TRUSTEE, (payable at time of sale in lawful money of the United States) at At the Marshall Street entrance to the Hall of Justice at 400 County Center, Redwood City, CA 94063 all right title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as:

SEE LEGAL DESCRIPTION ATTACHED AS EXHIBIT "A"

*TRUSTEE CONTACT INFO*
*5 PALMS LLC*
*3354 CASA GRANDE DR*
*SAN RAMON CA 94583*
*(650) 425.3455*

Assessor Parcel Number: 054-113-130-6
The Street Address or other common designation, if any, of the real property described above is purported to be:
2710 MIDDLEFIELD ROAD, REDWOOD CITY, CA                                         . The undersigned
Trustee disclaims any liability for incorrectness of the street address or other common designation if any, shown herein.

Trustor: 2700 MIDDLEFIELD ROAD LLC

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the unpaid balance of the note(s) secured by said Deed of Trust, to-wit: $ 17,292,272.23 , including as provided in said note(s) advances, if any, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. Accrued interest and additional advances, if any, will increase this figure prior to sale.

The Beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the County where the real property is located on 07/11/2022 Inst. No. 2022-053641 CONF
Book _____ Page _____ of Official Records.
Trustee or party conducting sale
5 PALMS LLC

5 PALMS LLC

Date: 10/21/2022    See Attached
Notary Certificate

MICHAEL OHAYON, FORECLOSURE OFFICER

Case: 23-51443   Doc# 93-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 219 of 411

Legal Description

A.P.N.: 054-113-130-6

Real property in the unincorporated area of the County of San Mateo, State of California, described as follows:

PARCEL I:

PARCEL 1, AS SHOWN ON THE CERTAIN MAP ENTITLED "PARCEL MAP NO. 1096, LANDS OF 2700 MIDDLEFIELD ROAD" FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN MATEO COUNTY, CALIFORNIA ON AUGUST 14, 2012 IN VOLUME 80 OF PARCEL MAPS AT PAGES 38-39.

EXCEPTING THEREFROM THAT PORTION LYING BELOW A DEPTH OF 500 FEET, MEASURED VERTICALLY, FROM THE CONTOUR OF THE SURFACE OF SAID PROPERTY, AS EXCEPTED BY SOUTHERN PACIFIC TRANSPORTATION COMPANY BY THAT CERTAIN DEED RECORDED ON JULY 30, 1980 IN REEL 7975 AT IMAGE 1306 (70731-AP), RECORDS OF SAN MATEO COUNTY.

PARCEL II:

A NON-EXCLUSIVE EASEMENT FOR ROADWAY PURPOSES UPON, OVER, ACROSS AND ALONG THAT CERTAIN STRIP OF LAND 45 FEET WIDE, LYING NORTHERLY OF AND CONTIGUOUS TO THE FOLLOWING THREE COURSES OF PARCEL A, ACCORDING TO MAP THEREON RECORDED APRIL 21, 1980 IN VOLUME 49 OF PARCEL MAPS, PAGE 51, RECORDS OF SAN MATEO COUNTY.

1. SOUTH 74° 30' 00" EAST, 100.37 FEET;
2. NORTH 60° 20' 00" EAST, 98.70 FEET;
3. NORTH 30° 00' 00" EAST, 30.73 FEET.

SAID EASEMENT IS APPURTENANT TO PARCEL I ABOVE AND WAS CREATED BY THAT CERTAIN DEED RECORDED ON JULY 30, 1980 IN REEL 7975 AT IMAGE 1306 (70731-AP) RECORDS OF SAN MATEO COUNTY.

PARCEL III:

(A) A NON-EXCLUSIVE EASEMENT FOR PRIVATE UTILITIES (P.U.E) WITHIN THE NORTHEASTERLY 5 FEET OF SAID PARCEL 3.

(B) A NON-EXCLUSIVE EASEMENT FOR PRIVATE UTILITIES WITHIN THE SOUTHWESTERLY 5 FEET AND THE NORTHEASTERLY 10 FEET OF SAID PARCEL 4.

SAID EASEMENTS ARE APPURTENANT TO AND FOR THE BENEFIT OF PARCEL I ABOVE AS CREATED BY THAT CERTAIN DEED WHICH RECORDED SEPTEMBER 18, 1987 AS DOCUMENT NO. 87144820 OF OFFICIAL RECORDS OF SAN MATEO COUNTY, CALIFORNIA.

# CALIFORNIA ACKNOWLEDGMENT

CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Contra Costa_

On _October 25th, 2022_ before me, _Fidel Ontiveros, Notary Public_,
      Date                             Here Insert Name and Title of the Officer

personally appeared _Michael Ohayon_
                                 Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> **FIDEL ONTIVEROS**
> COMM. # 2380105
> NOTARY PUBLIC • CALIFORNIA
> CONTRA COSTA COUNTY
> My Comm. Expires October 26, 2025
> ENC1

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                        Signature of Notary Public

_Place Notary Seal and/or Stamp Above_

―――――――――――――――― OPTIONAL ――――――――――――――――

Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual       ☐ Attorney in Fact
☐ Trustee         ☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual       ☐ Attorney in Fact
☐ Trustee         ☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____

©2019 National Notary Association

# EXHIBIT P

DAVID B. TILLOTSON (State Bar # 148162)
Dtillotson@lpslaw.com
RAVI D. SAHAE (State Bar # 276113)
Rsahae@lpslaw.com
LELAND, PARACHINI, STEINBERG,
   MATZGER & MELNICK, LLP
135 Main Street, Suite 1200
San Francisco, California 94105
Telephone: (415) 957-1800
Facsimile: (415) 974-1520

Attorneys for Defendants, Cross-Complainants,
and Cross-Defendants DAKOTA NOTE, LLC,
JASON GREENFIELD, TANYA
WALTIMYER, 5 PALMS, LLC, and NATURAL
SOFTWARE SYSTEMS, INC. MONEY
PURCHASE PENSION PLAN

**Electronically FILED**
by Superior Court of California, County of San Mateo
ON 2/13/2024
By /s/ Priscilla Tovar
Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN MATEO

| | |
|---|---|
| NARIMAN TEYMOURIAN, et al.,, | Case No. 22-CIV-04679 |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION TO EXPUNGE *LIS PENDENS*; REQUEST FOR ATTORNEY FEES** |
| vs. | |
| TANYA WALTIMYER, et al.,, | Date: March 21, 2024 |
| Defendants. | Time: 2:00 p.m. |
| | Dept.: 3 |
| AND RELATED CROSS-ACTIONS | *Assigned for All Purposes to: The Hon. Susan L. Greenberg, Dept. 3* |
| | Action Filed: November 9, 2022 |

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on **March 21, 2024, at 2:00 p.m.**, in Department 3 of the

San Mateo County Superior Court, Defendants, Cross-Complainants, and Cross-Defendants

DAKOTA NOTE, LLC, JASON GREENFIELD, TANYA WALTIMYER, 5 PALMS, LLC, and

NATURAL SOFTWARE SYSTEMS, INC. MONEY PURCHASE PENSION PLAN

(collectively "Dakota Parties") will and hereby do move for an order pursuant to CCP Sections

405.30, 405.31, and 405.32, expunging the following *lis pendens* recorded by Plaintiffs, Cross-

Complainants, and Cross-Defendants NARIMAN TEYMOURIAN, GAIL SUZANNE MARIE

{GREENP/0002/PLD/02094617.DOCX}

NOTICE OF MOTION AND MOTION TO
EXPUNGE *LIS PENDENS*

TEYMOURIAN, and 27090 MIDDLEFIELD ROAD, LLC (collectively, "Teymourian Parties"):

1.    The Notice of Pending Action recorded February 2, 2023 in the office of the San Mateo County Assessor-Recorder as Doc. No. 2023-004942 (the "2/2 *Lis Pendens*");

2.    The Notice of Pending Action recorded March 16, 2023 in the office of the San Mateo County Assessor-Recorder as Doc. No. 2023-011634 (the "3/16 *Lis Pendens*"); and

3.    The Notice of Pending Action recorded March 29, 2023 in the office of the San Mateo County Assessor-Recorder as Doc. No. 2023-014038 (the "3/29 *Lis Pendens*").

Collectively, the 2/2 *Lis Pendens*, 3/16 *Lis Pendens*, and 3/29 *Lis Pendens* are referred to as the "Teymourian *Lis Pendens*."

PLEASE TAKE FURTHER NOTICE that Dakota Parties request an award of attorney fees in their favor, and against Teymourian Parties and Teymourian Parties' counsel Kousha Berokim / BEROKIM LAW, under CCP Section 405.38, in the amount of $10,815.

The grounds for the motion are that judgment has been entered in this action in favor of Dakota Parties and against Teymourian Parties; therefore, the Teymourian *Lis Pendens* are required to be expunged as it is not probable that this Court's judgment will be reversed on appeal. Moreover, the pleadings do not contain a ripe real property claim, or any such claim would lack probable validity, and Teymourian Parties failed to comply with CCP Sec. 405.22.

Furthermore, Teymourian Parties and their counsel have acted without substantial justification both in recording the multiple Teymourian *Lis Pendens* and in refusing to withdraw them after demand. Therefore, attorney fees are warranted.

Notwithstanding the pending bankruptcy proceeding of NARIMAN TEYMOURIAN, Dakota Parties have obtained relief from the automatic stay for the purpose of bringing this motion.

The motion will be based on this notice of motion and motion, the accompanying memorandum of points and authorities, the accompanying declaration of Ravi D. Sahae, all papers and files of record in this action, and such other and further matters as the Court may properly receive.

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

DATED: February 13, 2024

LELAND, PARACHINI, STEINBERG,
MATZGER & MELNICK, LLP

By: _____

David B. Tillotson
Ravi D. Sahae
Attorneys for Defendants, Cross-Complainants,
and Cross-Defendants DAKOTA NOTE, LLC,
JASON GREENFIELD, TANYA WALTIMYER,
5 PALMS, LLC, and NATURAL SOFTWARE
SYSTEMS, INC. MONEY PURCHASE
PENSION PLAN

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

**PROOF OF SERVICE**

***Nariman Teymourian, et al. v. Dakota Note, LLC, et al.***
**San Mateo County Superior Court Case No. 22-CIV-04679**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Francisco, State of California. My business address is 135 Main Street, 12th Floor, San Francisco, CA 94105.

On **February 13, 2024**, I served true copies of the following document(s) described as

1. **Notice of Motion and Motion to Expunge *Lis Pendens*: Request for Attorney Fees;**

2. **Memorandum of Points and Authorities in Support of Motion to Expunge *Lis Pendens*; and**

3. **Declaration of Ravi D. Sahae in Support of Motion to Expunge *Lis Pendens***

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY FEDEX:** I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed in the Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized by FedEx to receive documents.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **February 13, 2024**, at Palo Alto, California.

_Kelly O'Brien_
_____
Kelly O'Brien

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1

## SERVICE LIST

2

### *Nariman Teymourian, et al. v. Dakota Note, LLC, et al.*
**San Mateo County Superior Court Case No. 22-CIV-04679**

3

4

5

**Attorney for Plaintiffs**
Kousha Berokim
240 North Canon Drive, Third Floor
Beverly Hills, CA 90210
Tel: (310) 846-8553|Fax: (310) 300-1233
berokim@berokim.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT Q

Electronically
**FILED**
by Superior Court of California, County of San Mateo
ON    2/13/2024
By    /s/ Priscilla Tovar
Deputy Clerk

1   DAVID B. TILLOTSON (State Bar # 148162)
    Dtillotson@lpslaw.com
2   RAVI D. SAHAE (State Bar # 276113)
    Rsahae@lpslaw.com
3   LELAND, PARACHINI, STEINBERG,
      MATZGER & MELNICK, LLP
4   135 Main Street, Suite 1200
    San Francisco, California 94105
5   Telephone: (415) 957-1800
    Facsimile: (415) 974-1520
6

7   Attorneys for Defendants, Cross-Complainants,
    and Cross-Defendants DAKOTA NOTE, LLC,
    JASON GREENFIELD, TANYA
8   WALTIMYER, 5 PALMS, LLC, and NATURAL
    SOFTWARE SYSTEMS, INC. MONEY
9   PURCHASE PENSION PLAN

10        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11               **COUNTY OF SAN MATEO**

12

13   NARIMAN TEYMOURIAN, et al.,,        Case No. 22-CIV-04679

14        Plaintiffs,            **MEMORANDUM OF POINTS AND**
                                   **AUTHORITIES IN SUPPORT OF**
15       vs.                   **MOTION TO EXPUNGE *LIS PENDENS***

16   TANYA WALTIMYER, et al.,,        Date:     March 21, 2024
                                     Time:     2:00 p.m.
17        Defendants.           Dept.:     3

18   _____   *Assigned for All Purposes to:*
    AND RELATED CROSS-ACTIONS     *The Hon. Susan L. Greenberg, Dept. 3*
19

20                                 Action Filed:       November 9, 2022

21

22

23

24

25

26

27

28

Case: {GRE-JSP-002-PLD...2024-...-...X}   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 229
of 411
                                           MPA ISO MOTION TO EXPUNGE *LIS PENDENS*

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

I. **INTRODUCTION**

Judgment has been entered against Plaintiffs, Cross-Complainants, and Cross-Defendants NARIMAN TEYMOURIAN, GAIL SUZANNE MARIE TEYMOURIAN, and 2700 MIDDLEFIELD ROAD, LLC (collectively, "Teymourian Parties"). Accordingly, the following three *lis pendens* recorded by Teymourian Parties against the real property at 66 Barry Lane, Atherton CA (the "Barry Property") must be expunged:

1. The Notice of Pending Action recorded February 2, 2023 in the office of the San Mateo County Assessor-Recorder as Doc. No. 2023-004942 (the "2/2 *Lis Pendens*");

2. The Notice of Pending Action recorded March 16, 2023 in the office of the San Mateo County Assessor-Recorder as Doc. No. 2023-011634 (the "3/16 *Lis Pendens*"); and

3. The Notice of Pending Action recorded March 29, 2023 in the office of the San Mateo County Assessor-Recorder as Doc. No. 2023-014038 (the "3/29 *Lis Pendens*").

Collectively, the 2/2 *Lis Pendens*, 3/16 *Lis Pendens*, and 3/29 *Lis Pendens* are referred to herein as the "Teymourian *Lis Pendens*."

California law mandates that once judgment is entered against a *lis pendens* claimant, their *lis pendens* must be expunged unless the trial court determines that its judgment will probably be reversed on appeal. **"Ninety-nine-point-ninety-nine percent of the time expungement will be required;"** the remaining 0.01% circumstances apply if, for example, the trial court was following precedent it believes is likely to be overturned. (*Mix v. Superior Court* (2004) 124 Cal.App.4th 987, 989, 996 [bold added].)

That 0.01% exception does not apply here because judgement was properly entered against the Teymourian Parties pursuant to their settlement agreement with Defendants, Cross-Complainants, and Cross-Defendants DAKOTA NOTE, LLC, JASON GREENFIELD, TANYA WALTIMYER, 5 PALMS, LLC, and NATURAL SOFTWARE SYSTEMS, INC. MONEY PURCHASE PENSION PLAN (collectively "Dakota Parties"). The judgment did not involve any sort of questionable or dubious precedent.

Furthermore, Teymourian Parties had no valid real property claim that survived the July

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1  10, 2023 foreclosure of the Barry Property.[1] Dakota Parties would have been entitled to

2  expungement anyway.

3  The complex procedural history of Teymourian Parties' machinations is outlined below,

4  but the legal issues are quite simple. Teymourian Parties' lost the Barry Property, and judgment

5  has been entered against them. The Teymourian *Lis Pendens* must be expunged and fees awarded.

6  ## II.  FACTS AND PROCEDURAL HISTORY

7  The history between Teymourian Parties and Dakota Parties has been extensively briefed

8  and need not be repeated. Those pleadings are incorporated by reference.[2] In short, between 2013

9  and 2020, Teymourian Parties borrowed tens of millions of dollars in broker-arranged loans

10  secured by the Middlefield Property and the Barry Property, and did not pay it back.

11  As of 2021, the outstanding loans had all matured. The full $28,400,000.00 principal

12  balance plus millions in interest remained unpaid. Dakota Parties tried to work with Teymourian

13  Parties to try to salvage the situation, including advancing another $325,000.00 the Teymourian

14  Parties represented would enable them to refinance their debt (it didn't). (Greenfield Dec. #1 Par.

15  14 Exh. A.) During that process, Dakota Parties discovered that Teymourian Parties had submitted

16  fraudulent appraisals in 2016 and 2018, based on fraudulent and forged lease amendments, and

17  also forged Mr. Greenfield's signature on forbearance agreements to fraudulently induce another

18  private lender to provide more loans. (Greenfield Dec. #1 Par. 22; Ohayon Dec. #1 Pars. 16-20

19

20  ---

[1] Teymourian Parties' real property at 2700 Middlefield Rd., San Mateo, CA ("Middlefield Property") was the first foreclosure. Teymourian Parties filed suit to enjoin the foreclosure, claiming the loans were usurious and the foreclosure notices were invalid. On January 17, 2023, in a scathing opinion Judge Fineman denied the injunction, finding no likelihood of success on the usury claim, or any prejudicial error in the notice calculations. On January 27, 2023 Dakota Parties foreclosed on the Middlefield Property and purchased it through an affiliated bidder for $15,400,000. (Sahae Dec. Par. 9 fn. 1.)

[2] Specifically, Dakota Parties incorporate the following by reference: (1) The *Opposition to Order to Show Cause Re: Preliminary Injunction*, filed January 6, 2023; (2) The *Declaration of Ravi D. Sahae* filed January 6, 2023; (3) The *Declaration of Paul Greenfield* filed January 6, 2023 ("Greenfield Dec. #1"); (4) The *Declaration of Michael Ohayon* filed January 6, 2023 ("Ohayon Dec. #1"); (5) The *Declaration of Mark M. Garay* filed January 6, 2023 ("Garay Dec."); (6) The *Opposition to Motion for Preliminary Injunction* filed February 6, 2023; (7) The *Declaration of Paul Greenfield* filed February 6, 2023 ("Greenfield Dec. #2"); and (8) The *Declaration of Michael Ohayon* filed February 6, 2023 ("Ohayon Dec. #2").

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1  Exhs. E-I; Garay Dec. Par. 2 Exhs. A-B.)

2  Faced with Teymourian Parties' fraud, Dakota Parties reluctantly instituted foreclosure

3  proceedings.

4  Teymourian Parties sued on November 22, 2022 with regard to the Middlefield Property.

5  On December 30, 2022, they filed a First Amended Complaint ("FAC"), repeating the allegations

6  of usury and erroneous notices in regard to the Barry Property. The sole real property relief sought

7  in the FAC was to invalidate the deed of trust and foreclosure notices on the Barry Property. (FAC

8  at pp. 23-24.) On February 2, 2023, they recorded the 2/2 *Lis Pendens*. (Sahae Dec. Par 2 Exh. A.)

9  On January 23, 2023, Teymourian Parties had filed a motion to enjoin foreclosure on the

10 Barry Property. On February 6, 2023, Dakota Parties filed their opposition. On February 10, 2023,

11 after seeing the opposition and knowing that they would lose the motion on the merits in another

12 scathing opinion by Judge Fineman, Teymourian Parties withdrew their injunction motion and

13 dismissed the Barry Property claims from the FAC without prejudice.

14 Teymourian Parties then used Dakota Parties' own cross-complaint as a vehicle to escape

15 Judge Fineman's courtroom. On March 15, 2023, Ferrando Diversified Capital, LLC (an affiliate

16 of Teymourian Parties, represented by their same counsel), which had been added to the action by

17 Dakota Parties' cross-complaint, filed a peremptory challenge of Judge Fineman as a "new" party.

18 Then on March 21, 2023, Gayle and Nariman Teymourian, as individuals, filed a "cross-

19 complaint" to Dakota Parties' cross-complaint, restating the FAC allegations against the Barry

20 Property, and likewise limiting the real property claims solely to invalidating the deed of trust and

21 foreclosure notices. (See cross-complaint filed March 21, 2023 ("Cross-Complaint") at pp. 12-13.)

22 They promptly, on March 23, 2023, went in *ex parte* to ask Judge Greenberg to enjoin foreclosure

23 of the Barry Property. This Department properly rejected that effort, after Dakota Parties opposed

24 pointing out the procedural games Teymourian Parties had played in withdrawing their earlier

25 injunction motion and delaying until after they could disqualify Judge Fineman to bring it again.

26 Next, on March 29, 2023, Plaintiff Gail Teymourian filed a voluntary Chapter 11

27 bankruptcy case, which achieved Teymourian Parties' goal of staying all foreclosures. The same

28

day, they recorded and filed the 3/29 *Lis Pendens*. (Sahae Dec. Par. 4 Exh. C.)[3]

In June 2023, the parties entered into a settlement agreement of all litigation. (Sahae Dec Exh. D.) In addition to requiring certain payments, the settlement agreement also required Gayle Teymourian to seek bankruptcy court approval of the settlement. (Id. at Secs. 3, 5.1.) Although she did file an approval motion on June 23, 2023, she then withdrew the motion on July 7, 2023 and never refiled it. (Sahae Dec. Par. 7 Exh. E.) Her Chapter 11 proceeding was subsequently dismissed, with prejudice, by Judge Hammond on July 20, 2023 for repeatedly refusing to provide verified accurate schedules to the court. (Sahae Dec. Par. 8 Exh. F.)

Teymourian Parties did not make any settlement payments, so on July 10, 2023, Dakota Parties foreclosed on the Barry Property. (Sahae Dec. Par. 9 Exh. G.) On August 22, 2023, on ex parte application, the court entered final judgment on all claims, per the settlement agreement. (Sahae Dec. Pars. 10-11 Exh. J.) On October 20, 2023, Teymourian Parties appealed the judgment.

On October 3, 2023, Nariman Teymourian had filed his own bankruptcy. On February 9, 2024, Judge Montali granted relief from the stay to file this motion. (Sahae Dec. Par. 12 Exh. K.)

## III. LEGAL ANALYSIS

### A. Legal Standard – Teymourian Parties Cannot Meet Their Burdens of Pleading or Proof

"At any time after notice of pendency of action has been recorded, any party . . . may apply to the court in which the action is pending to expunge the notice. . . . The claimant shall have the burden of proof under Sections 405.31 and 405.32." (CCP § 405.30.)

Under Section 405.31, "the court shall order the notice expunged if the court finds that the pleading on which the notice is based does not contain a real property claim." (CCP § 405.31.) Under Section 405.32, "the court shall order that the notice [of pendency] be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim." (CCP § 405.32.)

---

[3] Teymourian Parties got lost in their own procedural games when they recorded the 3/16 *Lis Pendens* on March 16, 2023. That notice purported to identify their cross-complaint filed on March 16th. (Sahae Dec. Par. 3 Exh. B.) However, they did not file their cross-complaint until March 23rd, which is why they had to record another *lis pendens*.

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

MPA ISO MOTION TO EXPUNGE *LIS PENDENS*

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1   This "legislation is designed to curb abuses of lis pendens procedures by requiring the

2  recording party to show by a preponderance of the evidence that the action is probably valid."

3  (*Hunting World Inc. v. Super. Ct.* (1994) 22 Cal.App.4th 67, 73 [claimant must affirmatively

4  prove with competent evidence that claim has merit].)

5   Thus, to maintain their *lis pendens*, Teymourian Parties must allege a real property claim

6  and prove by a preponderance of the evidence its probable validity. Here, the pleadings no longer

7  contain a real property claim post-foreclosure, and also judgment has been entered. The three

8  Teymourian *Lis Pendens* must be expunged.

9  **B.  The Court's August 22, 2023 Entry of Judgment Requires Expungement**

10   Where judgment has been entered against a *lis pendens* claimant, the statutory requirement

11  of "probable validity" takes on a different meaning. In order to show the real property claim has

12  probable validity, the claimant must show that an *appeal* of the judgment has probable validity.

13  This was explained in an extensive discussion in *Mix, supra.* The court stated:

14   In sum, we will conclude that the 1992 legislation requires nothing less than that
the trial court grant a motion for the expungement of lis pendens pending appeal
15   in the wake of the defeat of the claimant in the trial court. There is but one, very
unlikely, exception, inherent in the statutory language of *probable* validity: If the
16   trial judge himself or herself is willing to find, on the record, that the trial court's
ruling will "probably" be overturned on appeal, then the trial court should deny
17   the motion. Of course, it is going to be a rare case indeed where the trial court will
be willing to state on the record that its decision in a case will "probably" be
18   reversed. Ninety-nine-point-ninety-nine percent of the time expungement will be
required.
19

20  (*Mix, supra*, 124 Cal.App.4th at 989.)

21   *Mix* elaborated upon the reason for that rule as follows:

22   Las Vegas casinos can make money with only a 51 percent probability the house
will win. In comparison, the probabilities of success on appeal are low. Roughly
23   80 percent of civil appeals result in affirmances, and courts of appeal begin any
case with the *presumption* that the judgment is correct. [Citations.] In terms of
24   what is 'probable,' an appellant winning is the old journalistic definition of news:
Man bites dog. We may therefore conclude that if the claimant has lost at the trial
25   level, section 405.32 mandates that the lis pendens be expunged—mostly.
26

27   Why only 'mostly'? Because we must remember that the Legislature used the
phrase 'probable validity,' not 'certain validity,' in section 405.32, a distinction
28   reminiscent of Sherlock Holmes's famous dictum for solving cases—the solution

is the improbable that is left after the impossible has been eliminated. It appears that in drafting section 405.32 as it did, our Legislature joined Holmes in choosing to distinguish between improbability and impossibility, and thus decided not make section 405.32 a *per se* rule.

Thus it is improbable, but not impossible, that a trial court, having decided a case against a claimant, might nevertheless forecast the reversal of its own decision on appeal. Specifically, a trial court might feel bound by a particularly unpersuasive appellate decision, and believe the decision would not be followed, or disapproved when the case actually reached the appellate or Supreme Court level, where the court could reject the unpersuasive precedent. But that scenario is obviously not going to occur very often . . .

(*Id.* at 996).

The *Mix* court declined to apply this 0.01% exception, which it described as a "microscopic exception" (*id*. at 996), under the facts of that case.

The microscopic exception is inapplicable here as well. Teymourian Parties lost every effort to stop the foreclosure. Gail Teymourian had her baldly strategic bankruptcy proceeding dismissed, effectively as a sanction. Judgment was entered against Teymourian Parties as they agreed it would be on stipulation. The reviewing court will, as it rightly should, uphold the trial court's decision to finally hold the Teymourian Parties to their contract (See, e.g, *Osumi v. Sutton* 151 Cal.App.4th 1355, 1356 ["Consistent with the venerable substantial evidence standard of review, and with our policy favoring settlements, we resolve all evidentiary conflicts and draw all reasonable inferences to support the trial court's finding that these parties entered into an enforceable settlement agreement and its order enforcing that agreement"].)

## C. The Judgment Will Not Be Reversed, Because Teymourian Parties Prevented Their Own Performance

Teymourian Parties' appeal is limited to their trial court showing in opposition to Dakota Parties' application for judgment. (See, e.g., *Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632 ["As a general rule, documents not before the trial court . . . must be disregarded as beyond the scope of appellate review"]; *Hewlett-Packard Co. v. Oracle Corp.*

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1   (2021) 65 Cal.App.5th 506, 548 ["As a general rule, theories not raised in the trial court cannot be

2   asserted for the first time on appeal"].)

3       Teymourian Parties solely opposed entry of judgment on the grounds that bankruptcy court

4   approval of the settlement was not obtained; they therefore argued that the settlement agreement

5   did not take effect because bankruptcy approval was a condition to Gayle Teymourian's

6   settlement. (See Sahae Dec. Par. 10 Exhs. H-I.) Again, Ms. Teymourian had filed the motion for

7   approval on June 23, 2023, but then withdrew it on July 7, 2023. The bankruptcy was dismissed

8   on July 20, 2023, due to Ms. Teymourian's repeated refusal to provide adequate disclosures.

9       Dakota Parties argued that Ms. Teymourian prevented her own performance, breached the

10  contract, and paved the way for entry of judgment. This Court agreed. A party cannot rely on a

11  condition precedent when they prevented that condition from occurring. (*Parsons v. Bristol

12  Development Co.* (1965) 62 Cal.2d 861, 868–869 ["A party who prevents fulfillment of a

13  condition of his own obligation cannot rely on such condition to defeat his liability"].) Ms.

14  Teymourian's withdrawal of the motion was itself a breach of the settlement agreement entitling

15  Dakota Parties to obtain judgment against her. (*Morrison v. Jaksick* (1960) 187 Cal.App.2d 175,

16  179 ["if one voluntarily puts it out of his power to do what he has agreed, he breaks his contract,

17  and is immediately liable . . . though the time specified for performance has not expired"].)

18      The microscopic exception in *Mix* has no application here, and the Teymourian *Lis

19  Pendens* must be expunged.

20  **D.  Neither the FAC nor the Cross-Complaint Contains a Valid Real Property Claim**

21      Expungement is also warranted because the FAC and Cross-Complaint do not contain a

22  valid, existing real property claim. As discussed above, Teymourian Parties solely sought relief

23  against the Deed of Trust, Notice of Default, and Notice of Sale. None of those real property

24  interests exist anymore, because Dakota Parties completed foreclosure on July 10, 2023.

25      Therefore, Teymourian Parties haven't pled a claim as to any <u>existing</u> property interest; or,

26  they cannot establish probable validity of their claim, because it is moot. (See, e.g., *Allied Eastern

27  Financial v. Goheen Enterprises* (1968) 265 Cal.App.2d 131, 132 [no real property claim pled by

28  "an action whose outcome can in no way affect title to or possession of real property"].)

The Trustee's Deed Upon Sale recites that the property was sold to the foreclosing beneficiary. (Sahae Dec. Exh. G.) Where the beneficiary purchases the property, the lien of the Deed of Trust ceases to exist due to the "merger" doctrine. (See, e.g., *Strike v. Trans-West Discount Corp.* (1979) 92 Cal.App.3d 735, 742 ["A lien is extinguished by merger when a lienholder acquires ownership of the property"]; *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1235 ["[M]erger of the lien and ownership of the property in one person or entity extinguishes the lien, unless it is necessary for the protection of the buyer's rights that the lien be sustained. . . . The theory is that the mortgagee's lesser interest (the lien) has 'merged' into the greater interest (the fee)"].)

The title interest created by a Deed of Trust does not exist following a foreclosure. (See, e.g., *Hohn v. Riverside County Flood Control and Water Conservation Dist.* (1964) 228 Cal.App.2d 605, 609 ["[T]he trustee holds the legal title, and it would follow logically from this foundation that upon consummating one sale, the trustee would have no further title capable of being transferred at a later sale"].)

And because the Notice of Default and Notice of Sale are recorded subsequent to the Deed of Trust, they too are extinguished by the foreclosure sale. A foreclosure sale wipes out all property interests that attach subsequent to the security interest. (*U.S. v. Real Property at 2659 Roundhill Dr., Alamo, Cal.* (9th Cir. 1999) 194 F.3d 1020, 1026 ["Under California law, when a person purchases property from a trustee in a non-judicial foreclosure proceeding, the purchaser's interest 'relates back' to the time the original deed of trust was recorded. The sale thus serves to extinguish any liens or encumbrances that attached to the real property after the deed of trust"] [citing California cases, omitted].)

Therefore, the FAC and Cross-Complaint claims to extinguish these property interests are moot and irrelevant. The interests are already extinguished. The Teymourian *Lis Pendens* must be expunged.

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

**E. Dakota Parties Should Be Awarded $10,815 in Attorney Fees**

CCP § 405.38 states that the party prevailing on a motion to expunge shall be awarded reasonable attorneys' fees and costs of making the motion unless the court finds that the other party acted with substantial justification or that other circumstances make the award unjust.

There is no substantial justification or other such circumstances here. This action has been rife with Teymourian Parties' procedural gamesmanship, and recording three *lis pendens* was more of the same. Then they settled their real property claims in a settlement agreement, but still didn't withdraw the *lis pendens*, and then breached the settlement. There was never any basis for serial *lis pendens* and multiple grounds for expungement existed even prior to judgment.[4] The statutory requirement of attorney fees is particularly appropriate given Teymourian Parties' improper conduct:

> Courts have long recognized that because the recording of a lis pendens places a cloud upon the title of real property until the pending action is ultimately resolved . . . the lis pendens procedure is susceptible to serious abuse, providing unscrupulous plaintiffs with a powerful lever to force the settlement of groundless or malicious suits. . . . We cannot ignore as judges what we know as lawyers--that the recording of a lis pendens is sometimes made not to prevent conveyance of property that is the subject of the lawsuit, but to coerce an opponent to settle regardless of the merits. . . . The financial pressure exerted on the property owner may be considerable, forcing him to settle not due to the merits of the suit but to rid himself of the cloud upon his title. The potential for abuse is obvious. We have stated, "It must be borne in mind that the true purpose of the lis pendens statute is to provide notice of pending litigation and not to make plaintiffs secured creditors of defendants nor to provide plaintiffs with additional leverage for negotiating purposes."

---

[4] Namely, in addition to the lack of valid real property claims as described above, Teymourian Parties' theories to evade their loan obligations failed soundly on their own merits, as Judge Fineman had already found in regard to the Middlefield Property, and as Dakota Parties' February 6, 2023 opposition demonstrated in regard to the Barry Property.

Also, Teymourian Parties failed to file the 2/2 *Lis Pendens* or the 3/16 *Lis Pendens* and each was required to be expunged on that basis as well. (CCP Sec. 405.22 [must be filed "immediately following recordation"].) Where the claimant does not substantially comply with Section 405.22, an adverse party is entitled to expungement. (CCP Sec. 405.23 ["Any notice of pendency of action shall be void and invalid as to any adverse party . . . unless the requirements of Section 405.22 are met for that party"]; Code Civ. Proc., § 405.30, Code Cmt. ["Unless the court finds that the requirements of CCP 405.22 have been met, the lis pendens is void and invalid and must be expunged"].)

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1  (*BGJ Associates, LLC v. Superior Court* (1999) 75 Cal.App.4th 952, 968 [citations and markings

2  omitted].)

3       It is clear that Teymourian Parties have abused the *lis pendens* power with no substantial

4  justification. Furthermore, prior to filing this motion Dakota Parties requested that Teymourian

5  Parties voluntarily withdraw the *lis pendens* to avoid motion practice and attorney fee sanctions.

6  (Sahae Dec. Par. 13 Exh. L.) Teymourian Parties and their counsel did not do so. (Id.)

7  Accordingly, as stated in the accompanying declaration, Dakota Parties request an award of

8  $10,815 in attorney fees against Teymourian Parties and their counsel. (Sahae Dec. Par. 14)

9  **IV.**    **CONCLUSION**

10       For the foregoing reasons, Teymourian Parties' *Lis Pendens* should be expunged. Attorney

11  fees should be awarded to Dakota Parties pursuant to CCP Sec. 405.38.

12

13

14  DATED: February 13, 2024           LELAND, PARACHINI, STEINBERG,
                                  MATZGER & MELNICK, LLP

15

16

17                                 By: _____

18                                     David B. Tillotson
                                   Ravi D. Sahae

19                                     Attorneys for Defendants, Cross-Complainants,
                                   and Cross-Defendants DAKOTA NOTE, LLC et
                                   al.

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

<ins>*Nariman Teymourian, et al. v. Dakota Note, LLC, et al.*</ins>
**San Mateo County Superior Court Case No. 22-CIV-04679**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Francisco, State of California. My business address is 135 Main Street, 12th Floor, San Francisco, CA 94105.

On **February 13, 2024**, I served true copies of the following document(s) described as

1.    **Notice of Motion and Motion to Expunge *Lis Pendens*: Request for Attorney Fees;**

2.    **Memorandum of Points and Authorities in Support of Motion to Expunge *Lis Pendens*; and**

3.    **Declaration of Ravi D. Sahae in Support of Motion to Expunge *Lis Pendens***

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY FEDEX:** I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed in the Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized by FedEx to receive documents.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **February 13, 2024**, at Palo Alto, California.

*Kelly O'Brien*
_____
Kelly O'Brien

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SERVICE LIST

***Nariman Teymourian, et al. v. Dakota Note, LLC, et al.***
**San Mateo County Superior Court Case No. 22-CIV-04679**

**Attorney for Plaintiffs**
Kousha Berokim
240 North Canon Drive, Third Floor
Beverly Hills, CA 90210
Tel: (310) 846-8553|Fax: (310) 300-1233
berokim@berokim.com

{CRE:ESP.0032.POST.02695436.DOCX}

PROOF OF SERVICE

# EXHIBIT R

Electronically
**FILED**
by Superior Court of California, County of San Mateo
ON    2/13/2024
By    /s/ Priscilla Tovar
Deputy Clerk

1   DAVID B. TILLOTSON (State Bar # 148162)
    Dtillotson@lpslaw.com
2   RAVI D. SAHAE (State Bar # 276113)
    Rsahae@lpslaw.com
3   LELAND, PARACHINI, STEINBERG,
     MATZGER & MELNICK, LLP
4   135 Main Street, Suite 1200
    San Francisco, California 94105
5   Telephone: (415) 957-1800
    Facsimile: (415) 974-1520
6

7   Attorneys for Defendants, Cross-Complainants,
    and Cross-Defendants DAKOTA NOTE, LLC,
    JASON GREENFIELD, TANYA
8   WALTIMYER, 5 PALMS, LLC, and NATURAL
    SOFTWARE SYSTEMS, INC. MONEY
9   PURCHASE PENSION PLAN

10       **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11               **COUNTY OF SAN MATEO**

12

13   NARIMAN TEYMOURIAN, et al.,,      Case No. 22-CIV-04679

14       Plaintiffs,             **DECLARATION OF RAVI D. SAHAE IN SUPPORT OF MOTION TO EXPUNGE**
15       vs.                   *LIS PENDENS*

16   TANYA WALTIMYER, et al.,,       Date:     March 21, 2024
                                   Time:     2:00 p.m.
17       Defendants.           Dept.:     3

18   ──────────────────────────   *Assigned for All Purposes to:*
    AND RELATED CROSS-ACTIONS    *The Hon. Susan L. Greenberg, Dept. 3*
19

20                          Action Filed:          November 9, 2022

21

22   I, Ravi D. Sahae, declare:

23      1.   I am an attorney licensed to practice law in the State of California, and an associate of

24   Leland Parachini et al., attorneys of record for Defendants, Cross-Complainants, and Cross-

25   Defendants DAKOTA NOTE, LLC, JASON GREENFIELD, TANYA WALTIMYER, 5 PALMS,

26   LLC, and NATURAL SOFTWARE SYSTEMS, INC. MONEY PURCHASE PENSION PLAN

27   (collectively "Dakota Parties") in this action. The following facts and circumstances are known

28   personally to me, and if called upon to do so, I would and could testify competently thereto.

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

2.   Attached hereto as **Exhibit A** is a true and correct copy of the Notice of Pending Action recorded February 2, 2023 in the office of the San Mateo County Assessor-Recorder as Doc. No. 2023-004942 (the "2/2 *Lis Pendens*").

3.   Attached hereto as **Exhibit B** is a true and correct copy of the Notice of Pending Action recorded March 16, 2023 in the office of the San Mateo County Assessor-Recorder as Doc. No. 2023-011634 (the "3/16 *Lis Pendens*").

4.   Attached hereto as **Exhibit C** is a true and correct copy of the Notice of Pending Action recorded March 29, 2023 in the office of the San Mateo County Assessor-Recorder as Doc. No. 2023-014038 (the "3/29 *Lis Pendens*").

5.   Collectively, the 2/2 *Lis Pendens*, 3/16 *Lis Pendens*, and 3/29 *Lis Pendens* are referred to herein as the "Teymourian *Lis Pendens*." Each of the Teymourian Lis Pendens was recorded against the real property at 66 Barry Lane, Atherton CA (the "Barry Property") by Plaintiffs, Cross-Complainants, and Cross-Defendants NARIMAN TEYMOURIAN, GAIL SUZANNE MARIE TEYMOURIAN, and 2700 MIDDLEFIELD ROAD, LLC (collectively, "Teymourian Parties").

6.   On or about June 23, 2023, Dakota Parties and Teymourian Parties entered into the Settlement Agreement and Release ("Agreement") for settlement of all causes of action between them. Attached hereto as **Exhibit D** is a true and correct copy of the Agreement.

7.   Teymourian Parties failed to seek Bankruptcy Court approval of the Agreement as required thereby. Although they did file a motion for approval (one day late, on June 22, 2023), the Teymourian Parties thereafter filed a withdrawal of the motion on July 3, 2023. Attached hereto as **Exhibit E** is a true and correct copy of the July 3, 2023 Notice of Withdrawal of the motion, filed by the Debtor Gail Suzanne Marie Teymourian. Although the Notice of Withdrawal appears to contemplate re-filing the motion, she never did so.

8.   On the contrary, Gail Suzanne Marie Teymourian failed to comply with other orders of the Bankruptcy Court and as a result, on July 20, 2023, her Chapter 11 proceeding was dismissed with prejudice. Attached hereto as **Exhibit F** is a true and correct copy of the Bankruptcy Court's July 20, 2023 order of dismissal.

{RGE-ESP/00912.PLD/02005468.DOCX} 2 RDS DEC ISO MTN TO EXPUNGE *LIS PENDENS*

9. In addition to Ms. Teymourian's failure to see Bankruptcy Court approval, Teymourian Parties also failed to make any of the required settlement payments. Accordingly, as authorized by Section 4.4 of the Agreement, Dakota Parties foreclosed on the Barry Property on July 10, 2023. Attached hereto as **Exhibit G** is a true and correct copy of the Trustee's Deed Upon Sale from that foreclosure.[1]

10. Furthermore, as authorized by Section 6.1 of the Agreement, and the stipulation for entry of judgment attached as Exhibit C to the Agreement, Dakota Parties filed an application to enter judgment against Teymourian Parties. Teymourian Parties opposed the application. Attached hereto as **Exhibit H** and **Exhibit I** are true and correct copies of their opposition and supporting declaration, respectively.

11. Our application was granted and on August 22, 2023, this Court entered judgment in favor of Dakota Parties and against Teymourian Parties. Attached hereto as **Exhibit J** is a true and correct copy of the August 22, 2023 judgment.

12. On October 3, 2023, Nariman Teymourian filed his own bankruptcy proceeding. On February 9, 2024, Judge Dennis Montali of the U.S. Bankruptcy Court entered an order granting relief from the automatic stay for the purpose of taking all actions to defend and resolve Teymourian Parties' pleadings in this action, including filing this expungement motion. Attached hereto as **Exhibit K** is a true and correct copy of the order granting relief from stay.

13. Promptly after the February 7, 2024 hearing in Bankruptcy Court when Judge Montali orally granted the motion and directed preparation of the order to be entered, we emailed Teymourian Parties' counsel Kousha Berokim asking him to voluntarily withdraw the *lis pendens* otherwise we would file a motion to expunge and seek attorney fees. Mr. Berokim did not agree to withdraw the *lis pendens*. In fact, what he did do was file a notice of stay in Teymourian Parties' pending appeal stating that he had been made aware that his client was in bankruptcy. Attached

---

[1] Teymourian Parties' real property at 2700 Middlefield Rd., San Mateo, CA ("Middlefield Property") was the first foreclosure. Teymourian Parties filed suit to enjoin the foreclosure, claiming the loans were usurious and the foreclosure notices were invalid. On January 17, 2023, Judge Fineman denied the injunction, finding no likelihood of success on the usury claim, or any prejudicial error in the notice calculations. On January 27, 2023 Dakota Parties foreclosed on the Middlefield Property and purchased it through an affiliated bidder for $15,400,000.

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1  hereto as **Exhibit L** and **Exhibit M** are true and correct copies of our email correspondence, and

2  Mr. Berokim's notice of stay, respectively.

3      14. In preparing this motion and supporting papers, I incurred seven hours and my colleague

4  David Tillotson incurred six hours. My hourly rate is $525 and Mr. Tillotson's hourly rate is $595.

5  We further anticipate that Mr. Tillotson will incur up to six hours reviewing any opposition,

6  preparing any reply, and appearing at the hearing on this motion.[2] Accordingly, we request a total

7  of $10,815 in attorney fees.

8

9      I certify the foregoing is true and correct under penalty of perjury under the laws of the

10  State of California. Executed February 13, 2024 at San Francisco, California.

11

12

13  _____

14                     Ravi D. Sahae

15

16

17

18

19

20

21

22

23

24

25

_____

26  [2] Ordinarily it would be me preparing the reply and attending the hearing; however, the earliest
available motion date was March 28, 2024. My wife is due to give birth on March 13, 2024 and I

27  anticipate being on paternity leave and unable to perform those tasks. If the timing of my paternity
leave changes and I am able to do the reply and hearing, we will notify the Court and the fees can

28  be adjusted accordingly.

# EXHIBIT A

2023-004942
10:06 am 02/02/2023 NP Fee: $95.00
Count of Pages 2
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder



* $ R 0 0 0 3 3 2 8 9 5 9 $ *

1 | Kousha Berokim
BEROKIM LAW
2 | State Bar Number 242763
270 North Cañon Drive, Third Floor
3 | Beverly Hills, California 90210
berokim@berokim.com
4 | T (310) 846-8553 | F (310)300-1233

5 | ATTORNEY FOR PLAINTIFFS NARIMAN TEYMOURIAN, GAIL SUZANNE MARIE
TEYMOURIAN, AND 2700 MIDDLEFIELD ROAD, LLC
6

7 | **IN THE SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN MATEO**

8

9

10 | NARIMAN TEYMOURIAN; GAIL
SUZANNE MARIE TEYMOURIAN; AND
11 | 2700 MIDDLEFIELD ROAD, LLC

**CASE NUMBER 22-CIV-04679**

12 | PLAINTIFFS,
V.
13

**NOTICE OF PENDING ACTION**

14 | DAKOTA NOTE, LLC; TANYA
WALTIMYER; NATURAL SOFTWARE
15 | SYSTEMS, INC. MONEY PURCHASE
PENSION PLAN; JASON GREENFIELD; 5
16 | PALMS, LLC; & DOES 1-20, INCLUSIVE,

**Assessor's Parcel Number**
17 | DEFENDANTS.
~~070-2010070-3631~~

~~054-113-13006~~ R.B
18
010-201-070 R.B

19

20

21 | ///

22

23 | ///
24

25
26 | ///

27

28

NOTICE IS HEREBY GIVEN that on November 9, 2022 NARIMAN

TEYMOURIAN; GAIL SUZANNE MARIE TEYMOURIAN; AND 2700 MIDDLEFIELD

ROAD, LLC commenced this legal action, and on December 30, 2022, filed a First

Amended Complaint, in the Superior Court of the State of California for the County of San

Mateo against Defendants DAKOTA NOTE, LLC; TANYA WALTIMYER; NATURAL

SOFTWARE SYSTEMS, INC. MONEY PURCHASE PENSION PLAN; JASON

GREENFIELD; 5 PALMS, LLC, and DOES 1 to 20, which concerns and affects the title to

the real property commonly known as 66 Barry Lane, Atherton, California  94027, ("Barry

Property"), Assessor's Parcel Number 070-2010070-3631, and legal description of

070-201-070 KB

LOT 13, AS DESIGNATED ON THE MAP ENTITLED "ATHERTON WOODS UNIT NO. 2 ATHERTON SAN
MATEO COUNTY, CALIFORNIA", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE
COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON JUNE 2, 1955 IN BOOK 42 OF MAPS AT PAGE 37.
JPN: 070-020-201-07A

February 1, 2023

_____
Kousha Berokim
BEROKIM LAW
Attorney for Nariman Teymourian, Gail Suzanne
Marie Teymourian, and 2700 Middlefield Road,
LLC

Case: 23-51443    Doc# 33-4    Filed 03/08/24    Entered 03/08/24 15:08:49    Page 249
of 411

# EXHIBIT B

**RECORDING REQUESTED BY:**
Kousha Berokim
State Bar Number 242763.

**WHEN RECORDED MAIL TO:**
270 North Canon Drive
Third floor
Beverly Wills, Ca 90210
Berokim@ Berokim.com

**2023-011634**

1:00 pm 03/16/2023 NP Fee: $101.00
Count of Pages 4
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder



\* $ R 0 0 0 3 3 3 9 9 5 1 $ \*

**THIS SPACE FOR RECORDER'S USE ONLY**

## TITLE OF DOCUMENT

Notice of Pending Action

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Additional Recording Fee Applies)
(Govt. Code 27361.6)

cover sheet recorders.doc

1  Kousha Berokim
   BEROKIM LAW
2  State Bar Number 242763
   270 North Cañon Drive, Third Floor
3  Beverly Hills, California 90210
   berokim@berokim.com
4  T (310) 846-8553 | F (310)300-1233

5  ATTORNEY FOR NARIMAN TEYMOURIAN, GAIL SUZANNE MARIE TEYMOURIAN, 2700
6  MIDDLEFIELD ROAD, LLC, AND FERRANDO DIVERSIFIED CAPITAL, LLC

7          **IN THE SUPERIOR COURT OF CALIFORNIA**
                   **COUNTY OF SAN MATEO**
8

9                                          **Case Number: 22-CIV-04679**

10 NARIMAN TEYMOURIAN; GAIL
   SUZANNE MARIE TEYMOURIAN;           **NOTICE OF PENDING ACTION**
11 AND 2700 MIDDLEFIELD ROAD, LLC
                  PLAINTIFFS,
12 V.
13 DAKOTA NOTE, LLC; TANYA
   WALTIMYER; NATURAL SOFTWARE
14 SYSTEMS, INC. MONEY PURCHASE
   PENSION PLAN; JASON GREENFIELD;
15 5 PALMS, LLC; & DOES 1-20,            **Assessor's Parcel Number**
   INCLUSIVE,                           **070-201-070**
16            DEFENDANTS.

17 _____

18 DAKOTA NOTE, LLC and NATURAL
   SOFTWARE SYSTEMS, INC. MONEY
19 PURCHASE PENSION PLAN,
                  Cross-Complainants,
20 vs.
21 NARIMAN TEYMOURIAN, an
   individual, GAIL SUZANNE MARIE
22 TEYMOURIAN, an individual, 2700
   MIDDLEFIELD ROAD, LLC, a Delaware
23 limited liability company, ALVISO PARK,
   LLC, a Delaware limited liability company,
24 LLC, a Delaware limited liability company,
   FERRANDO DIVERSIFIED CAPITAL,
25 LLC, a California limited liability
   company, and ROES 1-150, inclusive,
26            Cross-Defendants

27

28 _____

1

2     NOTICE IS HEREBY GIVEN that on November 9, 2022 NARIMAN

3  TEYMOURIAN and GAIL SUZANNE MARIE TEYMOURIAN commenced this legal

4  action, and on March 16, 2023, filed a Cross Complaint, in the Superior Court of the State of

5  California for the County of San Mateo against Cross Defendants DAKOTA NOTE, LLC;

6  NATURAL SOFTWARE SYSTEMS, INC. MONEY PURCHASE PENSION PLAN; 5

7  PALMS, LLC; TECHNOLOGY CREDIT UNION; COMMUNITY BANK OF THE BAY,

8  and ROES 50 to 70, which concerns and affects the title to the real property commonly

9  known as 66 Barry Lane, Atherton, California 94027, ("Barry Property"), Assessor's Parcel

10  Number 070-201070-3631, and legal description of

11

12  LOT 13, AS DESIGNATED ON THE MAP ENTITLED "ATHERTON WOODS UNIT NO. 2 ATHERTON SAN
     MATEO COUNTY, CALIFORNIA", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE
     COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON JUNE 2, 1955 IN BOOK 42 OF MAPS AT PAGE 37.
13  JPN: 070-020-201-07A

14

15

16

17     March 16, 2023

18

19     ----------------------------------------------------------------

20                                          Kousha Berokim
                                            BEROKIM LAW
21                                          ATTORNEY FOR FERRANDO DIVERSIFIED
                                            CAPITAL, LLC
22

23

24

25

26

27

28

926098.1 5839.097

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 270 North Cañon Drive, Third Floor, Beverly Hills, California, 90210. On **March 16, 2023**, I served the herein described document(s) through the means indicated below.

**NOTICE OF PENDING ACTION**

☒    E-MAIL - by transmitting via electronic mail the document(s) listed above to the e-mail addresses set forth below.

David B. Tillotson
Leland, Parachini, Steinberg, Matzger & Melnick, LLP
Email: DTillotson@lpslaw.com

RAVI D. SAHAE
Leland, Parachini, Steinberg, Matzger & Melnick LLP
E-mail: RSahae@lpslaw.com

KOUSHA BEROKIM
BEROKIM LAW
Email: berokim@berokim.com

I am readily familiar with the firm's practice of collection and processing correspondence for faxing, mailing and e-mailing. With regard to mailing, under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on **March 16, 2023** at Beverly Hills, California.

---------------------------------------------------------
Kousha Berokim

3

# EXHIBIT C

2023-014038

11:15 am 03/29/2023 NP Fee: $98.00

Count of Pages 3

Recorded in Official Records

County of San Mateo

Mark Church

Assessor-County Clerk-Recorder



* $ R 0 0 0 3 3 4 3 6 8 1 $ *

1 | Kousha Berokim
BEROKIM LAW
2 | State Bar Number 242763
270 North Cañon Drive, Third Floor
3 | Beverly Hills, California 90210
berokim@berokim.com
4 | T (310) 846-8553| F (310)300-1233

5 | ATTORNEY FOR NARIMAN TEYMOURIAN, GAIL SUZANNE MARIE TEYMOURIAN, 2700
6 | MIDDLEFIELD ROAD, LLC, AND FERRANDO DIVERSIFIED CAPITAL, LLC

7 | **IN THE SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SAN MATEO**
8 |

9 | NARIMAN TEYMOURIAN; GAIL SUZANNE
MARIE TEYMOURIAN; AND 2700
10 | MIDDLEFIELD ROAD, LLC
11 | PLAINTIFFS,
V.
12 | DAKOTA NOTE, LLC; TANYA WALTIMYER;
NATURAL SOFTWARE SYSTEMS, INC.
13 | MONEY PURCHASE PENSION PLAN; JASON
GREENFIELD; 5 PALMS, LLC; & DOES 1-20,
14 | INCLUSIVE,
DEFENDANTS.
15 | DAKOTA NOTE, LLC and NATURAL
SOFTWARE SYSTEMS, INC. MONEY
PURCHASE PENSION PLAN,
16 | Cross-Complainants,
vs.
17 | NARIMAN TEYMOURIAN, an individual, GAIL
SUZANNE MARIE TEYMOURIAN, an individual,
18 | 2700 MIDDLEFIELD ROAD, LLC, a Delaware
limited liability company, ALVISO PARK, LLC, a
19 | Delaware limited liability company, FERRANDO
DIVERSIFIED CAPITAL, LLC, a California
20 | limited liability company, and ROES 1-150,
inclusive,
21 | Cross-Defendants
---------------------------------------------------
22 | **NARIMAN TEYMOURIAN; GAIL SUZANNE
MARIE TEYMOURIAN;**
23 | **CROSS COMPLAINANTS,**
V.
24 | **DAKOTA NOTE, LLC; NATURAL
SOFTWARE SYSTEMS, INC. MONEY
25 | PURCHASE PENSION PLAN; 5 PALMS, LLC;
TECHNOLOGY CREDIT UNION;
26 | COMMUNITY BANK OF THE BAY; & MOES
1-20, INCLUSIVE,**
**CROSS DEFENDANTS.**
27 |
28 |

**Case Number: 22-CIV-04679**

**NOTICE OF PENDING ACTION**

**Assessor's Parcel Number**
**070-201-070**

926098.1 5839.050

1

1      NOTICE IS HEREBY GIVEN that on November 9, 2022 NARIMAN

2 TEYMOURIAN and GAIL SUZANNE MARIE TEYMOURIAN commenced this legal

3 action, and on March 23, 2023, filed a Cross Complaint, in the Superior Court of the State of

4 California for the County of San Mateo against Cross Defendants DAKOTA NOTE, LLC;

5 NATURAL SOFTWARE SYSTEMS, INC. MONEY PURCHASE PENSION PLAN; 5

6 PALMS, LLC; TECHNOLOGY CREDIT UNION; COMMUNITY BANK OF THE BAY,

7 and ROES 50 to 70, which concerns and affects the title to the real property commonly

8 known as 66 Barry Lane, Atherton, California 94027, ("Barry Property"), Assessor's Parcel

9 Number 070-201070-3631, and legal description of

10

11 LOT 13, AS DESIGNATED ON THE MAP ENTITLED "ATHERTON WOODS UNIT NO. 2 ATHERTON SAN MATEO COUNTY, CALIFORNIA", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON JUNE 2, 1955 IN BOOK 42 OF MAPS AT PAGE 37.

12 JPN: 070-020-201-07A

13      March 28, 2023

14

15

16           Kousha Berokim

          BEROKIM LAW

17           ATTORNEY FOR FERRANDO DIVERSIFIED

          CAPITAL, LLC

18

19

20

21

22

23

24

25

26

27

28

926098.1 5839.097

2
**NOTICE OF PENDING ACTION**

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 270 North Cañon Drive, Third Floor, Beverly Hills, California, 90210. On **March 28, 2023,** I served the herein described document(s) through the means indicated below.

NOTICE OF PENDING ACTION

☒      E-MAIL - by transmitting via electronic mail the document(s) listed above to the e-mail addresses set forth below.

David B. Tillotson
Leland, Parachini, Steinberg, Matzger & Melnick, LLP
Email: DTillotson@lpslaw.com

RAVI D. SAHAE
Leland, Parachini, Steinberg, Matzger & Melnick LLP
E-mail: RSahae@lpslaw.com

KOUSHA BEROKIM
BEROKIM LAW
Email: berokim@berokim.com

I am readily familiar with the firm's practice of collection and processing correspondence for faxing, mailing and e-mailing. With regard to mailing, under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on **March 28, 2023** at Beverly Hills, California.

Kousha Berokim

926098.1 5839.097

3
NOTICE OF PENDING ACTION

# EXHIBIT D

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into as of June ___, 2023, which is the date of mutual execution of this Agreement by the Parties hereto (the "Execution Date"), by and between Nariman Teymourian ("Nariman"), Gail Suzanne Marie Teymourian ("Gail", and jointly with Nariman, "Teymourian"), 201 El Camino Real LLC, a California limited liability company ("ECR LLC"), 2700 Middlefield Road, LLC, a Delaware limited liability company ("Middlefield LLC"), Alviso Park LLC, a Delaware limited liability company ("Alviso"), and Ferrando Diversified Capital LLC, a California limited liability company ("Ferrando"), jointly and severally referred to herein as "Teymourian Parties", on the one hand; and Dakota Note, LLC, a South Dakota limited liability company ("Dakota"), Natural Software Systems, Inc. Money Purchase Pension Plan ("NSSMPPP"), Tanya Waltimyer ("Waltimyer"), Jason Greenfield ("Jason"), Paul Greenfield ("Greenfield"), and 5 Palms, LLC ("Palms"), collectively referred to herein as "Dakota Parties", on the other hand. The Teymourian Parties and the Dakota Parties are hereinafter sometimes referred to as the "Parties", or each respectively as a "Party".

### Recitals

A.    Between approximately November 2018 and April 2022, one or more of the Dakota Parties made a series of loans and advances to, or for the benefit of, one or more of the Teymourian Parties (the "Loans", and each a "Loan"), in the aggregate principal amount of Twenty-Eight Million Seven Hundred Twenty-Five Thousand Dollars ($28,725,000.00), each Loan being secured by, among other things, deeds of trust (the "Deeds of Trust") recorded against certain real property owned by the applicable Teymourian Party (the "Properties" and each a "Property"). A schedule of the Loans and the Notes, Deeds of Trust, and other agreements and instruments evidencing and securing the same (collectively, the "Loan Documents") is attached hereto as Exhibit A and is summarized for reference as follows:

| Date | Loan No. | Original Principal Amount | Lender | Borrower | Property Encumbered as of Commencement of Litigation |
|------|----------|---------------------------|--------|----------|--------------------------------------------------------|
| Nov 2018 | 9645 | $15,400,000 plus Apr 2022 advance of $325,000 + 3% advance fee | Dakota, NSSMPPP, Waltimyer, Jason | Middlefield LLC, Teymourian | Middlefield, Barry |
| Jul 2019 | 2019-0706 | $2,500,000 | Dakota | Middlefield LLC, Alviso, Teymourian | Middlefield, Baytech |

Case: 23-51443     Doc# 33-4     Filed: 03/08/24     Entered: 03/08/24 15:08:49     Page 260 of 411

| Oct 2019 | 2019-1005 | $2,000,000 | Dakota | Middlefield LLC, Alviso, Teymourian | Middlefield, Baytech |
|---|---|---|---|---|---|
| Dec 2019 | 2019-1201 | $6,000,000 | Dakota, NSSMPPP | Teymourian | Barry |
| Nov 2021 | Advance | $2,500,000 (plus $75,000 Advance Fee) | Dakota, NSSMPPP, Greenfield | Nariman (for benefit of ECR LLC) | Middlefield, Barry |

B.     The Dakota Parties allege that each of the Loans was cross-collateralized when made, with Deeds of Trust recorded against more than one of the Properties; subsequently from time to time certain Deeds of Trust on certain Properties have been released and reconveyed, and some thereafter re-recorded, for various purposes and consideration.  As of the time the Litigation (defined below) commenced, each of the Loans was secured by a Deed of Trust recorded in the Official Records of the applicable County as a second or third priority mortgage lien against each of the Properties identified for that Loan in the schedule set forth in Recital A and further described in Exhibit A.

C.     The Dakota Parties allege that as of November 1, 2022, the aggregate total outstanding principal balance of the Loans together with accrued and unpaid regular (*i.e.,* nondefault rate) interest thereon was Thirty Million Nine Hundred Forty Thousand Three Hundred Fifty Four Dollars and Seventy-Three Cents ($30,940,354.73), as shown in the schedule of amounts funded and repaid, with respect to each of the Loans, that is attached hereto as Exhibit B.  In addition, the Dakota Parties assert that late fees, default interest, and additional amounts including attorney fees, are chargeable to Teymourian Parties under the terms of the Loan Documents.

D.     As a result of, among other things, the borrowers' failure to make timely payments, the Dakota Parties declared a default under the Loan Documents (collectively, "Existing Default").  As a result of the Existing Default, in or about June 2022 the Loans were accelerated by the Dakota Parties and the Dakota parties asserted that the total outstanding principal balance of the Loans, together with all accrued and unpaid interest, became immediately due and owing.

E.     Dakota Parties commenced non-judicial foreclosure proceedings with respect to the Middlefield Property (defined in Exhibit A) on or about July 22, 2022, and with respect to the Barry Property (defined in Exhibit A) on or about November 21, 2022.[1]  On January 27, 2023, at a trustee's sale conducted in those non-judicial foreclosure proceedings (the "Trustee's Sale"), the Middlefield Property was sold to the successful bidder, 2710 Middlefield Holdings LLC, which is an affiliate of the Dakota Parties, for payment of the sum of $15,400,000.00.  The Barry Property has not been sold as of Execution Date.

---

[1] A notice of default was recorded on the Barry Property on 11/21/22, San Mateo recording no. 2022-080122 ("Barry NOD").  A notice of sale was recorded on the Barry Property on 3/6/23, San Mateo recording  no. 2023-009951 ("Barry NOS")

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 261 of 411

F.     Various disputes arose between the Parties related to the Loans, including without limitation as to the amounts due and owing under, and the enforceability of, the Loan Documents. On or about November 9, 2022, Teymourian and Middlefield LLC filed a Complaint (the "Complaint") against certain Dakota Parties in the Superior Court of California, County of San Mateo (the "Superior Court") commencing that certain action identified as *Nariman Teymourian et al. vs. Dakota Note, LLC et al.*, Case Number 22-CIV-04679; on or about March 3, 2023, Dakota and NSSMPPP filed a Cross-Complaint in said action against Teymourian Parties (the "Cross-Complaint"); and on or about March 21, 2023, Teymourian filed a Cross-Complaint against Dakota and certain other parties having interests in the Barry Property (the "Barry Cross-Complaint"). The foregoing litigation, including the Complaint, Cross-Complaint, and Barry Cross-Complaint, together with any and all amendments thereto, and together with and including all other claims, complaints, answers, affirmative defenses, and cross-complaints that have been or could be made in said action, including on appeal therefrom, are collectively hereinafter referred to as the "Litigation".

G.     On or about November 10, 2022, Teymourian Parties caused a Notice of Pending Action (the "Lis Pendens") to be recorded as Instrument No. 2022-078621 in the Official Records of the County of San Mateo with respect to the Middlefield Property.

H.     The Parties now desire to avoid further litigation between them, and have agreed to enter into this Agreement and the transactions described herein, including a forbearance and modification of the Loans, as a mutual compromise and settlement of disputes between Dakota Parties and Teymourian Parties with respect to the Loans, including without limitation the Litigation.

I.     Except as may be explicitly stated in this Agreement, each of the Parties has expressly denied any wrongdoing or other actionable conduct and disputes the allegations made against it by the other Party, and no consideration given in or pursuant to this Agreement shall be construed to be an admission of the validity of any of the allegations made in the Litigation nor of any liability or culpability of any Party for any claims or damages of the other Party or of any other person.

J.     On April 23, 2023, Gail Teymourian commenced a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Northern District of California ("Bankruptcy Court"), identified as *In re Gail Suzzane Marie Teymourian*, Chapter 11 Case No. 23-30259 (the "Chapter 11 Case"). As of the Execution Date, the Chapter 11 case is pending. As the Chapter 11 Case was Gail Teymourian's second bankruptcy pending within the previous twelve (12) months, with the prior case being dismissed, the Bankruptcy Court, on June 8, 2023, entered in the Chapter 11 Case an order confirming that the automatic stay terminated in its entirety by operation of law on May 23, 2023. The Parties acknowledge that due to the pendency of the Chapter 11 Case, the settlement embodied in this Agreement is conditioned upon approval of the Bankruptcy Court, insofar as it applies to Gail Teymourian, and any property of her bankruptcy estate.

K.     Each Party to this Agreement is fully informed of the facts set forth in these Recitals and the facts and contentions raised in the Litigation and in all other aspects of the disputes between the Parties, whether pled or not, and has been advised by its independent counsel as to the contentions, issues, and possibilities of each action and matter described herein, including the Litigation.

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 262 of 411

NOW THEREFORE, in consideration for the agreements, representations, promises and covenants herein contained and for other good and valuable consideration the delivery and receipt of which is hereby acknowledged, the Parties agree as set forth herein.

## Agreement

1.    <u>Recitals and Definitions</u>.  The Parties acknowledge and agree that the foregoing Recitals and all recitals of fact set forth in this Agreement and in the Exhibits hereto are true and correct, are incorporated herein, and that each Party is relying thereupon in entering into this Agreement.  Capitalized terms not otherwise defined in this Agreement shall have the meanings assigned to them in the existing Loan Documents identified in Exhibit A hereto.

2.    <u>Middlefield Settlement</u>.

2.1    <u>Middlefield Release</u>. As a part of the consideration to Dakota Parties for offering to Teymourian Parties the settlement described herein and for Dakota Parties' execution of this Agreement, and as a condition precedent to the forbearance and discount set forth in Section 4, Teymourian Parties, and each of them, hereby unconditionally, fully and finally (a) quitclaim and release any and all right, title or interest in and to the Middlefield Property, and (b) release and extinguish any and all claims against the Dakota Parties and/or 2710 Middlefield Holdings LLC as to the Middlefield Property (the "Middlefield Release"), including without limitation any and all past, present, and future claims, demands, liens, actions, contests, causes of action, obligations, damages, and liability of whatever kind or nature in law or equity or otherwise, whether now known or unknown, suspected or unsuspected, which arise out of, or relate in any way to, flow from or are in consequence of the Loans, the Loan Documents, the Trustee's Sale, or the matters that are alleged or could have been alleged in the Litigation to the extent relating or applicable to the Middlefield Property.

2.2    <u>Dismissal of Complaint</u>. Within five (5) business days following the Execution Date, Teymourian (with the exception of Gail Teymourian, whose dismissal will require approval of the Bankruptcy Court) and Middlefield LLC shall file the dismissal with prejudice of their Complaint (but not the Barry Cross-Complaint nor any other party's complaint or cross-complaint) in the Litigation.

2.3    <u>Lis Pendens</u>. Within five (5) business days following the Execution Date, Teymourian Parties shall cause a withdrawal and release of the Lis Pendens to be recorded in the Official Records of San Mateo County.

3.    <u>Settlement Payments</u>. As a part of the consideration to Dakota Parties for this Agreement, Teymourian Parties shall pay to Dakota Parties, in installments as set forth below, the principal sum of Six Million Dollars ($6,000,000.00) ("Settlement Sum") plus interest on the unpaid balance thereof at the rate of Seven Percent (7.0%) per annum from the Bankruptcy Court Approval Date (defined in Section 5.1 below) until the Settlement Sum is paid in full.  Installment payments shall be made as follows:

        (a)    THREE MILLION Dollars and Zero Cents ($3,000,000.00) (the "Initial Settlement Payment") shall be paid within thirty (30) calendar days following the Court Approval Date.

(b) Quarterly payments of ONE HUNDRED THOUSAND Dollars and Zero Cents ($100,000.00) each ("Quarterly Payments") shall be paid beginning on the first day of the calendar quarter (*i.e.*, January 1, April 1, August 1, or December 1) following the Court Approval Date, and continuing on the first day of every subsequent quarter until the entire balance of the Settlement Sum is paid. Each Quarterly Payment shall be applied by the Dakota Parties to reduce the outstanding balance of the Settlement Sum, and not to accrued and unpaid interest.

(c) The entire remaining balance of the Settlement Sum (equal to Three Million Dollars less the sum of all Quarterly Payments having then been made) plus all accrued interest shall be paid on or before the date that is twenty-four (24) months following the Court Approval Date.

Teymourian Parties may make any of the above installment payments in advance of the due dates specified above. Each payment shall be made in immediately available funds, via wire transfer in accordance with Dakota Parties' instructions.

4. <u>Consideration to Teymourian Parties; Forbearance and Modification of Loans</u>.

4.1 <u>Forbearance</u>. In consideration of, subject to and on the condition of the full and timely performance of each and every promise, covenant, and obligation of Teymourian Parties pursuant to this Agreement, Dakota Parties agree to forbear from exercising any of their remedies under the Loan Documents on account of the Existing Default for a period (the "Forbearance Period") commencing on the Execution Date and expiring twenty-four (24) months after the Court Approval Date. Further, provided Teymourian Parties are not in breach of or default under this Agreement, no late fees shall be charged, and no interest shall accrue on the outstanding indebtedness of Teymourian Parties (or any of them) to Dakota Parties (or any of them) during the Forbearance Period, except for the interest on the outstanding balance of the Settlement Sum specified by Section 3 above.

4.2 <u>Compromise Payoff</u>. In consideration of, subject to and on the condition of the full and timely performance of each and every promise, covenant, and obligation of Teymourian Parties pursuant to this Agreement, Dakota Parties agree to accept the Middlefield Release and the Settlement Sum plus interest specified by Section 3 above (collectively, the "Compromise Payoff") as payment in full and final satisfaction of the Loans. Upon timely receipt of the entire Settlement Sum plus all accrued interest as provided by Section 3 above, Dakota Parties agree to release and reconvey the Barry Deeds of Trust and the Baytech Deeds of Trust, at Teymourian Parties' expense.

4.3 <u>Barry and Baytech Obligations</u>. Any affirmative action by the holder of any mortgage or other lien secured by the Barry Property to declare a default of its loan or otherwise commence any foreclosure action affecting the Barry Property shall constitute a default by Teymourian Parties under this Agreement. Any breach or default of any of the obligations of Teymourian Parties under the Barry Deeds of Trust and/or the Baytech Deeds of Trust, other than the Existing Default and, with respect to the Baytech Deeds of Trust, the covenant and payment defaults to Bayech's senior lender, shall constitute a default by Teymourian Parties under this

Agreement. Teymourian Parties agree that, until their obligations under this Agreement have been fully satisfied, that they will bring, and keep, current on property taxes, property insurance (with the Dakota Parties listed as a loss payee), and any payments due on loans secured by deeds of trust senior to the Barry Deeds of Trust; during the Forbearance Period, Teymourian Parties will provide to Dakota Parties proof of the foregoing payments made on a monthly basis, on or before the fifteenth (15th) day of each calendar month, and any failure to timely comply with the foregoing payment and reporting requirements shall constitute a default by Teymourian Parties under this Agreement.

       4.4 Dakota Parties notice of default on the Barry Property shall remain valid and in place. Teymourian Parties agree that the Barry NOD and Barry NOS are valid and correct. Dakota Parties shall not complete the foreclosure sale of the Barry Property as long as Teymourian Parties remain in compliance under this Agreement. If the Teymourian Parties fail to comply with any of the terms and conditions of this Agreement, Dakota Parties may immediately proceed with the foreclosure sale of the Barry Property, judicially or nonjudicially, at their sole and absolute discretion, without further notice except as required by law, and may assert all rights allowed pursuant to the loan documents and applicable law. Acceptance of any payments shall not constitute a waiver of any of Dakota Parties' rights. NOS will be rescinded within 10 days of entry of court order approving the 9019 Motion.

       4.5    <u>Other Modifications; Effect of Default</u>.  Nothing contained herein, nor any action taken or omitted by the Parties, or any of them, pursuant to this Agreement, nor any payments made by the Teymourian Parties and/or accepted by Dakota Parties, shall be deemed to be a modification of or agreement to extend any of the Loans, nor a waiver of any of the Parties' rights or remedies, except as expressly stated herein. All of the Loan Documents shall be and hereby are amended to provide that each of the Loan Documents shall, as applicable, evidence, secure, and/or guaranty, in addition to all other obligations presently evidenced, secured and/or guaranteed thereby, the payment and performance of all obligations of Teymourian Parties, and each of them, under this Agreement. In the event of a default by Teymourian Parties, or any of them, under this Agreement, after notice and failure to cure any such default if applicable as provided herein, then without further notice, the Forbearance Period shall terminate, Dakota Parties shall be released from accepting the Compromise Payoff as full satisfaction of the indebtedness of Teymourian Parties under the Loans, Teymourian Parties shall be deemed in default under all of the Loan Documents, and Dakota Parties shall have the right to pursue, continue, institute, conduct and/or complete the exercising of any remedies Dakota Parties may have under this Agreement, any of the Loan Documents, or applicable law, including without limitation foreclosure on the Barry Deeds of Trust and/or the Baytech Deeds of Trust.

       4.6    <u>Co-Obligor Waivers</u>. Without limiting any other provision of this Agreement or of any of the Loan Documents, Teymourian Parties, and each of them, including each Teymourian Party who has guaranteed or is deemed to be a guarantor of any of the Loans made to another Teymourian Party, expressly waive to the extent permitted by law any and all rights and defenses which might otherwise be available to them under California Civil Code Sections 2787 to 2855, inclusive, 2899 and 3433, and under California Code of Civil Procedure Sections 580a, 580b, 580d and 726, or any of those sections, including without limitation the so-called "Gradsky" defense, or comparable provisions of the laws of any other jurisdiction and all other anti-deficiency and one form of action defenses under the laws of California and any other

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 265 of 411

jurisdiction. Dakota Parties may (a) apply security and direct the order or manner of sale thereof as Dakota Parties in their sole discretion may determine; (b) release, substitute or add any one or more endorsers of any Note or guarantors of any Party's obligations under the Loan Documents; and (c) apply payments received by Dakota Parties, or any of them, from any Party to any obligations of the Teymourian Parties to Dakota Parties, in the order Dakota Parties determine in their sole discretion. Each Teymourian Party acknowledges that: (i) the obligations under the Loan Documents and this Agreement are complex in nature, (ii) numerous possible defenses to the enforceability of these obligations may presently exist and/or may arise hereafter, and (iii) as part of the Dakota Parties' consideration for entering into this Agreement and the transactions contemplated hereby, Dakota Parties have specifically bargained for the waiver and relinquishment by Teymourian Parties of all such defenses, and each Teymourian Party has had the opportunity to seek and receive legal advice from skilled legal counsel in the area of financial transactions of the type contemplated herein. Given all of the above, each Teymourian Party does hereby represent and confirm to Dakota Parties that each Obligor is fully informed regarding, and thoroughly understands: (A) the nature of all such possible defenses, (B) the circumstances under which such defenses may arise, (C) the benefits which such defenses might confer upon Teymourian Parties, and (D) the legal consequences to Teymourian Parties of waiving those defenses. Each Teymourian Party acknowledges that all of the informed waivers herein shall be fully enforceable by Dakota Parties, and that Dakota Parties are induced to enter into this Agreement in material reliance upon the presumed full enforceability thereof.

5.     Chapter 11 Case.

5.1     Bankruptcy Court Approval. No later than June 21, 2023, Teymourian Parties shall cause to be filed in the Chapter 11 Case a motion seeking the approval of the Bankruptcy Court, pursuant to Federal Rule of Bankruptcy Procedure 9019, with a hearing no later than July 20, 2023, of the settlement embodied by this Agreement, insofar as it applies to Gail Teymourian and any property of her bankruptcy estate. The date on which the Bankruptcy Court issues an order or ruling substantially granting said motion is referred to in this Agreement as the "Court Approval Date".

5.2     Post-Petition Financing. The Parties acknowledge that Gail Teymourian is seeking post-petition debtor-in-possession financing (the "DIP Loan") in the Chapter 11 Case, and that the proceeds from the DIP Loan shall be used, in part, to fund payment of the Settlement Sum. The DIP Loan negotiated by Gail and her lender, Legalist, Inc. ("Legalist"), contemplates that Legalist shall provide the financing on a senior secured position as to the Barry Property, among other estate property, and will seek to prime junior secured creditors, including the Dakota Parties, as part of that financing. Dakota Parties agree to such senior secured financing, and agree to support Gail's motion for approval of the DIP Loan in the Bankruptcy Court to the extent that it comports with the terms of this Agreement. Teymourian Parties will directly receive no greater than FIVE HUNDRED THOUSAND Dollars and Zero Cents ($500,000.00) from the DIP Loan for personal expenses, apart from expenditures necessary for the maintenance of the Barry Property to be approved by Dakota Parties.

5.3     Adversary Proceeding Upon Default. In the event the Judgment Stipulation described in Section 6.1 is filed in the Superior Court, Dakota Parties will also commence an adversary proceeding against Teymourian Parties in the Chapter 11 Case, alleging the Teymourian

Parties' default hereunder.  Teymourian Parties agree to stipulate that entry of judgment pursuant to the Judgment Stipulation shall be deemed non-dischargeable pursuant to 11 U.S.C. § 523. Teymourian Parties agreed to stipulate to extend the last day to oppose discharge in the Chapter 11 Case for periods of six (6) months at a time until payments under this Agreement are completed or Teymourian Parties breach this Agreement[2].

      5.4    <u>Other Bankruptcy Actions</u>. In the event a voluntary or involuntary petition for relief is filed by or against any of the Teymourian Parties pursuant to the Bankruptcy Code, other than the Chapter 11 Case, Dakota Parties may, through counsel of Dakota Parties' choosing, make all appearances and take all action as Dakota Parties may deem to be necessary or desirable for purposes of enforcing, exercising, protecting, and/or preserving any and all rights, remedies, claims, or interests of Dakota Parties which arise under this Agreement or by operation of law, including, without limitation thereto, the filing and enforcement of any claim against the estate of the debtor thereunder, the filing of any motion for relief from stay, the enforcement or defense by Dakota Parties of its rights and interests in collateral (real or personal property), or the filing of any motion or opposition in any action or proceeding to assume or reject executory contracts or pertaining to any disclosure statement and any proposed or confirmed plan; and Dakota Parties shall be entitled to an award against the applicable Teymourian Party for and to recover any and all attorneys' fees and related costs incurred by Dakota Parties in connection with all such actions and proceedings and in the enforcement of any judgment or award therefor and upon prevailing in any appeal relating thereto.  Teymourian Parties agree to stipulate in the Chapter 11 Case to In Rem Relief pursuant to 11 U.S.C. § 362(d)(4) as it relates to both the Middlefield Property and Baytech Property.  In Rem Relief shall be binding and effective against the Middlefield Property and Baytech Property for a period of two years upon the recording of the In Rem Orders.

      6.    <u>Superior Court Actions; Dismissal of the Litigation</u>.

      6.1    <u>Stipulated Judgment; Conditional Dismissal</u>. Teymourian Parties and their counsel shall execute a Stipulation for Entry of Judgment in the form attached hereto as Exhibit C ("Judgment Stipulation"), providing for entry of judgment against Teymourian Parties in the Litigation in the event of an uncured default under this Agreement, and shall deliver the executed Judgment Stipulation to counsel for Dakota Parties no later than the Court Approval Date. Following dismissal of the Complaint in accordance with Section 2.2 and release of the Lis Pendens in accordance with Section 2.3, the Court Approval Date, and receipt of the executed Judgment Stipulation, Dakota Parties' counsel shall file a Notice of Conditional Settlement and Voluntary Dismissal with the Superior Court with respect to the Litigation, and shall thereafter

---

[2] The current last day to oppose discharge in the Chapter 11 Case is July 24, 2023.  The parties agree to stipulate to extend the last day to oppose discharge to January 24, 2023 immediateley upon execution of this Agreement. In the event that the Teymourian Parties are current under this Agreement on January 1, 2024, the Parties agreed to stipulate to extend the last dayt to oppose discharge to July 24, 2024.  In the event that the Teymourian Parties are current under this Agreement on July 1, 2024, the Parties agreed to stipulate to extend the last dayt to oppose discharge to January 24, 2025.  In the event that the Teymourian Parties are current under this Agreement on January 1, 2025, the Parties agreed to stipulate to extend the last dayt to oppose discharge to July 24, 2025.

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 267 of 411

hold the Judgment Stipulation in trust until the payment in full of the Compromise Payoff. Except as set forth in this Section 6.1, from and after the filing of Notice of Conditional Settlement and Voluntary Dismissal, the Parties shall take no further actions in the Litigation until the final dismissal in accordance with Section 6.2. In the event of any default by Teymourian Parties, or any of them, under this Agreement, before filing and entry of judgment, Dakota Parties shall provide Teymourian Parties fifteen (15) days (the "Cure Period") written notice, by electronic mail, of default. If, after expiration of the Cure Period, the asserted default has not been cured, then without further notice, Dakota Parties may file the Judgment Stipulation, together with a declaration by counsel for Dakota Parties setting forth under the penalty of perjury the nature of the default, that the default has not been cured despite notice and that the Cure Period has elapsed, and stating the amount of the payments made hereunder and the remaining unpaid and outstanding balance of the Settlement Sum together with accrued interest; and, upon ex parte application, obtain entry of judgment against the applicable Teymourian Parties, as well as an award of attorneys' fees and costs, as set forth in the Judgment Stipulation. A judgment so entered shall be non-dischargeable in any bankruptcy proceeding. Provided that no default by Teymourian Parties occurs, the signed Judgment Stipulation will be destroyed by Dakota Parties' counsel following Dakota Parties' receipt of the Compromise Payoff.

6.2     Final Dismissals. In consideration of, subject to and on the condition of the full and timely performance of each and every promise, covenant, and obligation of Teymourian Parties pursuant to this Agreement, promptly following full payment of the Compromise Payoff, Dakota Parties shall cause the dismissal with prejudice of the Litigation, including the Cross-Complaint, as to all parties and all causes of action.

7.     Mutual Release.

7.1     Release. For the consideration described in this Agreement, and all representations, promises and covenants of the Parties contained herein, effective as of the Court Approval Date, each of the Parties, for itself and on behalf of all of its successors, assigns, affiliates, and all those now or later acting on its behalf, shall and hereby does release and forever acquit, extinguish, and discharge the other Party, and its agents, servants, successors, heirs, executors, administrators and affiliates (specifically including, without limitation, Dakota Parties' affiliates 2710 Middlefield Holdings LLC, California Home Loans, Derald Kenoyer, and Keith Charles Knapp) (collectively, the "Released Parties"), from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations, controversies, costs, expenses, damages, orders and liability of whatever kind or nature in law or equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden which have existed or may have existed, or which do exist, or which hereafter can, shall, or may exist by reason of any matter, cause or thing done, omitted, or occurring at any time on or before the effective date of this Agreement, including without limitation all such claims and damages which arise out of, or relate in any way to, flow from or are in consequence of the Loans, the Loan Documents, or the matters that are alleged or could have been alleged in the Litigation.

7.2     Change of Circumstances; Waiver. The Parties agree that if any facts or circumstances with respect to which the release set forth in Section 7.1 (the "Release") and/or the Middlefield Release (defined in Section 2.1) is executed are at any time later found, suspected or claimed to be other than or different from the facts and circumstances now believed by any of the

Case: 23-51443     Doc# 33-4     Filed: 03/08/24     Entered: 03/08/24 15:08:49     Page 268 of 411

Parties to be true, the Parties expressly accept and assume the risk of such possible differences of facts and circumstances, and agree that this Release shall be and remain effective notwithstanding any such differences in any facts or circumstances. The Parties intend that this Release shall extend to all claims known or unknown. The Parties, after consultation with independent counsel, waive all rights under Section 1542 of the Civil Code of the State of California, which reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**The Parties agree and acknowledge that the released claims extend to and include unknown and unsuspected claims.** Each Party has made an investigation of the facts pertaining to this Agreement and to the released claims as it deems necessary. The Parties are aware that they may hereafter discover facts in addition to, contrary to, or different from those it now knows or believes to be true with respect to any or all of the matters set forth herein. Nevertheless, it is the intention of the Parties to fully, finally, and forever settle and release all claims of any kind and nature whatsoever that were in existence as of the date of this Agreement. In furtherance of the Parties' intent, the release in this Agreement shall remain in full and complete effect notwithstanding the discovery or existence of any additional, contrary, or different facts.

       7.3     <u>Conditions and Exceptions</u>. Notwithstanding anything to the contrary in this Agreement, the Release, as to each Party released, is conditioned upon the full performance of the covenants of that Party hereunder (including without limitation Teymourian Parties' payment of the entire Compromise Payoff), and is not intended to apply to the rights of any Party to commence and/or maintain any action arising out of any alleged breach of the terms of this Agreement, or to enforce any judgment based thereon in the event of a default hereunder. Furthermore, the Release and the Middlefield Release are not intended to apply and shall not be deemed effective as to, any claims or disputes among or between any of the persons and entities collectively referred to herein as "Teymourian Parties", nor to any claims or disputes among or between any of the persons and entities collectively referred to herein as "Dakota Parties", nor among or between a Party and its own affiliated Released Parties, if the same are unrelated to the disputes between Teymourian Parties and Dakota Parties.

       7.4     <u>Covenant Not to Sue; Release as a Defense</u>. The Parties, and each of them, agree that they will not bring, commence, maintain or prosecute, directly or indirectly, any action at law or proceeding in equity or any legal or administrative proceeding or any claim for damages or other relief against those parties released herein based in whole or in part on any claim, demand, cause of action, obligation, or liability based upon, arising out of, or connected with any act, cause, matter or thing which is released in this Agreement. The Release and/or the Middlefield Release may, and shall, be pled as a full and complete defense to, and may be used as a basis for an injunction against any action, suit or proceeding which may be instituted, prosecuted, or maintained in breach of the covenants contained in this Section 7.4.

       8.     <u>Enforcement</u>.

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 269 of 411

8.1    <u>Attorneys' Fees.</u>Dakota Parties assert that the fees and costs under the Loan Documents and this Agreement total approximately $500,000.00.  Such attorneys' fees and legal costs shall be waived in the event of the performance of the Teymourian Parties' obligations under this Agreement, such that they are not in default.  In the event of a default hereunder, however, the Teymourian Parties shall remain liable to the Dakota Parties for such fees and costs, and shall be included in the indebtedness of Teymourian Parties under the Loan Documents.  These fees and costs are subject to increase.  Teymourian Parties shall bear their own legal fees and costs, except as to any fees and costs incurred to enforce the terms of this Agreement.  In accordance with the Code of Civil Procedure Section 664.6, the Superior Court shall retain jurisdiction of the matters addressed in the Litigation for the purposes of enforcing this Agreement.  In the event of any dispute or enforcement proceeding arising out of this Agreement, including but not limited to any new any action or proceeding to enforce, set aside, or modify the terms of this Agreement, including an arbitration or reference pursuant to §638 of the Code of Civil Procedure, the prevailing party shall be entitled to recover all costs and expenses, including the actual fees of its attorneys incurred for prosecution, defense, consultation, or advice in that action or proceeding, in addition to all other appropriate relief.

8.2    <u>Revival</u>. If the payment of money or the conveyance and transfer of any property to or for the benefit of Dakota Parties, or any of them (including any transfer in whole or partial satisfaction of indebtedness), or any of the obligations of the Parties pursuant to this Agreement, or the exercise by any Lender of any of any rights or remedies under this Agreement or otherwise, should for any reason subsequently be alleged or found to be "fraudulent" or otherwise avoidable within the meaning of any state or federal law relating to fraudulent transfers or conveyances, or are alleged or found to be preferential or otherwise avoidable or recoverable, in whole or in part or for any reason, under Bankruptcy Code or any other federal or state law (individually and collectively herein referred to as a "Voidable Transfer"), and a Lender is required to pay or restore the amount of any such Voidable Transfer, or any portion thereof, then, and in any such case, the liability and indebtedness of Teymourian Parties, as applicable, to Dakota Parties (including, without limitation, all legal expenses, and all costs, expenses, and attorneys' fees of Lender related thereto, which may be incurred in connection with any action or response of Dakota Parties, including, but not limited to, any action for relief from stay or similar proceedings, and including any repayment by way of settlement of any claim of Voidable Transfer), and Lender's rights and security interests in all such collateral, shall automatically be revived, reinstated, and restored in such amount or amounts, and shall continue to exist as though such Voidable Transfer had not been made.  Nothing set forth herein is or shall constitute an admission that any such Voidable Transfer has occurred or may hereafter occur.  Teymourian Parties expressly acknowledge that Dakota Parties may rely upon advice of counsel in taking any action or otherwise responding to any such alleged Voidable Transfer, and if so advised by counsel, may settle, without defending, any action to avoid any alleged Voidable Transfer, and that upon that settlement Teymourian Parties, as applicable, shall again be liable for any deficiency resulting from that settlement as provided in this Agreement, and all security therefor shall be automatically revived and reinstated in the same lien priority as existed immediately prior to that alleged Voidable Transfer.  Notwithstanding any provision to the contrary contained in this Agreement, including, without limitation, any provision for the dismissal (with or without prejudice) of any litigation with respect to the obligations, liability, or indebtedness of any of the Teymourian Parties to Dakota Parties, including without limitation the Litigation, said obligation, liability, and indebtedness of Teymourian Parties, as applicable, revived pursuant to this Section shall be

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 270 of 411

deemed to be new obligations of Teymourian Parties to Lender, arising as of the date of revival hereunder, and shall be deemed to be created for and supported by good and valuable consideration then existing, and Dakota Parties shall be entitled to commence and prosecute any and all actions or proceedings to enforce and collect upon said obligations which Dakota Parties would otherwise be entitled to commence and prosecute without regard to the filing of any such dismissal and without regard to the running of any applicable statute of limitation relating to the original obligations of Teymourian Parties to Dakota Parties under the Loans.

       8.3    <u>Dakota Parties' Rights and Remedies</u>. All rights and remedies of Dakota Parties under this Agreement or applicable law, or otherwise afforded to Dakota Parties, shall be cumulative and not alternative.  Until the indebtedness under the Loans has been satisfied in full, pursuant to Section 4.2 or otherwise, all of the rights, privileges, powers, and remedies granted to Dakota Parties hereunder shall continue to exist and may be exercised by Dakota Parties at any time and from time to time irrespective of the expiration of any otherwise applicable statute of limitations.

       9.    <u>Notices</u>. Any notice, request, or demand required or permitted by this Agreement to be given by any Party to another, shall be deemed delivered (a) upon transmission, if sent between 8:00 a.m. and 5:00 p.m. Pacific Time on a business day, or on the next succeeding business day if sent at another time, by email to the address of the receiving Party specified below, with original copy thereof to be sent within twenty-four (24) hours after said transmission by first class mail or overnight courier with charges prepaid, addressed to the receiving Party at the address specified below; or (b) on the next succeeding business day if deposited with a reputable overnight private commercial delivery service (*e.g.*, FedEx) and addressed to the receiving Party at the address specified below; or (c) upon delivery, if given in writing by personal delivery, directly or through commercial messenger or courier service, at the receiving Party's address specified below. The Parties' respective address are  as follows, provided that any Party may change its address for purposes of notice hereunder upon delivery to the other Party of a notice of a change of address in the manner provided for notices hereunder.

| | |
|---|---|
| To Dakota Parties: | Attn: Paul Greenfield |
| | 2597 Flagstone Drive |
| | San Jose, CA 95132 |
| | ada@77westgroup.com and |
| | paulgnet@gmail.com |
| | |
| with copy to: | David Tillotson |
| | Leland, Parachini, Steinberg, Matzger & Melnick, LLP |
| | 135 Main Street, Suite 1200 |
| | San Francisco, CA 94105 |
| | dtillotson@lpslaw.com |
| | |
| To Teymourian Parties: | Attn: Nariman Teymourian |
| | 66 Barry Lane |
| | Atherton, CA 94027 |
| | narimantey@gmail.com |

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 271 of 411

with copy to:                James S. Monroe
Monroe Law Firm
One Sansome Street, Suite 3500
San Francisco, CA 94104
jim@monroe-law.com

10.      Representations and Warranties.

10.1    Authority and Consent. Each of the Parties represents and warrants to the other that: (a) it has entered into this Agreement after full opportunity for independent investigation and consultation with its individual counsel, and has fully inspected all books, records, and things which it has requested or desires to so inspect prior to executing this Agreement; (b) it freely and voluntarily executes this Agreement, and has the full and complete authority to enter into this Agreement on its own behalf and on behalf of any party or parties it purports to represent, and to perform all acts and incur all obligations created under this Agreement without the consent or approval of any other person; (c) it owns the claims it purports to release, no other person or entity has or had any interest in said claims, and has the sole right to execute this Agreement as the owner of said claims; (d) it has carefully read this Agreement and knows and understands the contents thereof, and has executed the same as its own free act; and (e) it has consulted, or had sufficient opportunity to consult with, its own attorney with respect to its rights under this Agreement. Each Party represents, warrants, and agrees that it has not heretofore assigned or transferred to any other person or entity any claim, demand, or cause of action based on, arising out of, or in connection with the transactions and events which are the subject of this Agreement, *provided, however*, that the Parties have received an unsigned Pledge Agreement from paladin Funding, Inc. ("Paladin"), purporting to pledge Ferrando Diversified Capital, LLC's membership voting rights with respect to 2700 Middlefield to Paladin. To the extent that Paladin assets that it retains such voting rights, the Teymourian Parties agree to indemnify and hold harmless the Dakota Parties for any claims made by Paladin against the Parties.

10.2    Assignment of Claims. Each of the Parties expressly represents and warrants that it has not heretofore assigned or transferred to any other person or entity any portion of any claim, demand, cause or causes of action that said Party has or might have based on, arising out of, connected with the Loans, the Litigation, the Chapter 11 Case, or any of the transactions and events which are the subject of this Agreement, and that no portion of any recovery or settlement to which that Party might be entitled has been assigned or transferred to any other person or entity in any manner, including by way of subrogation, or by operation of law or otherwise.

10.3    Disclaimer. It is understood that this Agreement is the result of a compromise settlement of disputed claims. Neither the compromise of the disputes between the Parties, the payment of any consideration hereunder, the Release, the Middlefield Release, nor anything contained in this Agreement, shall be construed to be an admission of liability or culpability by any Party, except to the extent that Teymourian Parties must acknowledge facts sufficient to substantiate a non-dischargeability finding as described in Section 5.3.

10.4    Taxes; Indemnification. Each Party shall be solely responsible for, and is legally bound to make payment of, any taxes determined to be due and owing (including penalties and interest related thereto) by it to any federal, state, local, or regional taxing authority as a result

of its receipt of any of the consideration described herein, including without limitation the cancellation of debt. Each Party acknowledges that the other has not made, and it does not rely upon, any representations regarding the tax treatment of the consideration paid or received pursuant to this Agreement; and each Party agrees to indemnify and hold the other harmless in the event that any governmental taxing authority asserts against it any claim for unpaid taxes, failure to withhold taxes, penalties, or interest based upon said consideration.

11.     Miscellaneous.

    11.1    Entire Agreement.  Each Party, individually and collectively, declares and represents that no promises, inducements, or other agreements not expressly referred to herein have been made, and that this Agreement, together with the Loan Documents identified herein, contains the entire agreement between them with respect to the subject matter hereof and supersedes all other agreements, oral or written, between the Parties with respect thereto. Any amendment or modification to this Agreement must be in writing and must be executed by all Parties. No claim of waiver, consent, or acquiescence with respect to any provision of this Agreement shall be made with respect to any Party, except upon the basis of a written instrument executed by that Party.

    11.2    Successors and Assigns. Teymourian Parties shall not assign or transfer this Agreement or any right or obligation hereunder without the prior written consent of Dakota Parties, which consent Dakota Parties may withhold in their sole and absolute opinion and judgment. Teymourian Parties agree and consent to any sale or transfer by Dakota Parties, or any of them, at any time, of Dakota Parties' rights and obligations hereunder to one or more assignees or transferees, whether related or unrelated to any Dakota Party. Teymourian Parties agree that any such assignee or transferee may enforce its rights and interests under this Agreement irrespective of any personal claims or defenses which Teymourian Parties may have against any of the Dakota Parties. Subject to the foregoing, the provisions of this Agreement shall be binding upon and inure to the benefit of each of the Parties, and their respective successors in interest, assigns, heirs, and personal representatives.

    11.3    No Third Parties Benefitted.  This Agreement is made for the sole benefit and protection of the Parties, the Released Parties, and the Parties' successors and assigns to the extent set forth in Section 11.2, and no other person or party shall have any right of action or right to rely thereon, and the Parties agree that nothing contained in this Agreement shall be construed to vest in any other person or entity, any interest in or claim upon the rights and interests of the Parties hereunder or in any proceeds thereof.

    11.4    Waivers. A waiver of any covenant or provision of this Agreement shall not be deemed a waiver of any other covenant or provision in this Agreement, and no waiver shall be valid unless in writing and executed by the waiving Party.  An extension of time for performance of any obligation or act shall not be deemed an extension of the time for performance of any other obligation or act.  No failure or delay in the exercise of any right, power, or privilege hereunder, or under any other agreement entered into in connection herewith, shall operate as a waiver thereof, and no single or partial exercise of any such right, power, or privilege shall preclude a further exercise thereof or of any other right, power or privilege.

11.5    Time. Time is of the essence of each and every provision of this Agreement. If the time period by which any right, option or election provided under this Agreement must be exercised, or by which any act required under this Agreement must be performed, expires on a Saturday, Sunday or a holiday, then that time period shall be automatically extended to the next business day. As used herein, a "business day" is any day other than a Saturday, Sunday, or a Federal or California state holiday.

11.6    Governing Law. All questions with respect to this Agreement and the rights and liabilities of the Parties shall be governed by the laws of the State of California.

11.7    Invalid Provisions. If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws of any jurisdiction, that provision shall be fully severable; this Agreement shall be construed and enforced as if that illegal, invalid or unenforceable provision had never composed a part of this Agreement, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by that provision or by its severance from this Agreement.

11.8    Interpretation. The Parties, and each of them, acknowledge that this Agreement is the result of negotiations among them, waive the provisions of California Civil Code Section 1654, and agree that the language of this Agreement shall neither be construed for nor against any Party.

11.9    Headings, Pronouns, and References. The section headings and captions of this Agreement are, and the arrangement of this instrument is, for the sole convenience of the Parties to this Agreement.  The section headings, captions and arrangement of this instrument do not in any way affect, limit, amplify or modify the terms and provisions of this Agreement.  All pronouns used herein shall be deemed to mean and include the masculine, feminine, neuter, singular and/or plural forms as may be applicable.  Unless otherwise indicated, all references to Section numbers are to this Agreement, and all references to a Section include all subsections and paragraphs thereof.  All exhibits referred to in this Agreement are attached to it and incorporated in it by this reference.

11.10    Further Assurances. Each of the Parties shall at all times fully cooperate with each other, and shall cause their respective agents and attorneys to cooperate, in a prompt and timely manner, in connection with the performance of all obligations of the Parties pursuant to this Agreement, and which may otherwise be necessary or appropriate to carry out and enforce the provisions of this Agreement. The Parties agree to take all actions and to execute and deliver all documents and instruments as may be reasonably required from time to time to carry out the terms and provisions of, and to ensure that the Parties and each of them receive the benefit of this Agreement.

11.11    Signatures. Each individual signing this Agreement on behalf of any Party represents and warrants that he or she has been duly authorized and has the requisite authority to execute and deliver this Agreement on behalf of the Party he or she purports to represent, and to bind that Party to the terms and conditions of this Agreement.  This Agreement may be executed simultaneously or in any number of counterparts, each of which shall be deemed an original, equally admissible in evidence, but all of which together shall constitute one and the same

Agreement. This Agreement may be executed with digital, electronic, or facsimile signatures and the same shall be effective and enforceable as originals.

IN WITNESS WHEREOF the Parties hereto have executed this Settlement Agreement as of the date first above written.

DAKOTA PARTIES

Dakota Note, LLC,
a South Dakota limited liability company

_____, Member
By: Arick D. Amspacker, Member


Natural Software Systems, Inc.
Money Purchase Pension Plan

_____
By: Paul Greenfield, Trustee


_____
Tanya Waltimyer


_____
Jason Greenfield


_____
Paul Greenfield


*[Signatures continue on following page(s)]*

16

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 275 of 411

Agreement. This Agreement may be executed with digital, electronic, or facsimile signatures and the same shall be effective and enforceable as originals.

IN WITNESS WHEREOF the Parties hereto have executed this Settlement Agreement as of the date first above written.

DAKOTA PARTIES

Dakota Note, LLC,
a South Dakota limited liability company

_____

By: Arick D. Amspacker, Member

Natural Software Systems, Inc.
Money Purchase Pension Plan

_____

By: Paul Greenfield, Trustee

*Tanya Waltimyer*
_____
Tanya Waltimyer

_____

Jason Greenfield

_____

Paul Greenfield

*[Signatures continue on following page(s)]*

Agreement. This Agreement may be executed with digital, electronic, or facsimile signatures and the same shall be effective and enforceable as originals.

IN WITNESS WHEREOF the Parties hereto have executed this Settlement Agreement as of the date first above written.

DAKOTA PARTIES

Dakota Note, LLC,
a South Dakota limited liability company

_____

By: Arick D. Amspacker, Member

Natural Software Systems, Inc.
Money Purchase Pension Plan

_____

By: Paul Greenfield, Trustee

_____

Tanya Waltimyer

_____

Jason Greenfield

_____

Paul Greenfield

*[Signatures continue on following page(s)]*

TEYMOURIAN PARTIES

_(signature)_

Nariman Teymourian

_(signature)_

Gail Suzanne Marie Teymourian


201 El Camino Real LLC,
a California limited liability company

_(signature)_

By: Nariman Teymourian, Manager


2700 Middlefield Road, LLC,
a Delaware limited liability company

_(signature)_

By: Nariman Teymourian, Manager


Alviso Park LLC,
a Delaware limited liability company

_(signature)_

By: Nariman Teymourian, Manager


Ferrando Diversified Capital LLC,
a California limited liability company

_(signature)_

By: Nariman Teymourian, Managing Member

APPROVED AS TO FORM:

                                  LELAND, PARACHINI, STEINBERG,
                                  MATZGER & MELNICK, LLP

Dated _____

                                  _____
                                  By: David B. Tillotson
                                  Attorneys for Dakota Parties

                                  BEROKIM LAW

Dated _June 19, 2023_

                                  _____
                                  By: Kousha Berokim
                                  Attorneys for Teymourian Parties

**Exhibit A**
**Schedule of Loan Documents and Properties**

*Loans and Loan Documents*

<u>Loan No. 9645 – Nov 2018 – Original Principal $15,400,000</u>

Consolidating refinance of previous loans made by Dakota, NSSMPPP, Waltimyer, and Jason to Middlefield LLC and Teymourian.  Additional advance of $325,000, plus a 3% advance fee, made in April 2022 as shown in Exhibit B.

1. Note Secured by a Deed of Trust dated 11/08/2018, by Borrower Middlefield LLC and Teymourian
2. Deed of Trust recorded 12/28/2018 as Document No. 2018-101122 encumbering Middlefield; this Deed of Trust was non-judicially foreclosed as described in Recital E
3. Deed of Trust recorded 12/28/2018 as Document No. 2018-101123 encumbering Barry

<u>Loan No. 2019-0706 – Jul 2019 – Original Principal $2,500,000</u>

New funding by Dakota to Middlefield LLC, Alviso, and Teymourian, with Guaranty by Teymourian; First American Title File No. 3809-5993020

All documents dated July 24, 2019 except as otherwise stated below.

1. Note Secured by Three Deeds of Trust
2. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 7/26/2019 in San Mateo County as Document No. 2019-059023, encumbering Middlefield
3. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 7/26/2019 in San Mateo County as Document No. 2019-059024, encumbering Barry; this Deed of Trust was subsequently reconveyed and is no longer in effect
4. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement originally recorded 10/2//2019 in Santa Clara County as Document No. 24295276, encumbering Baytech; re-recorded 6/8/2022 as Document No. 25316715
5. Guaranty
6. Environmental Indemnity Agreement
7. Spousal Consent and Waivers (by Gail)
8. Arbitration Agreement
9. Agreement to Correct Errors and Omissions
10. Loan Escrow Instructions (by Borrower)
11. Broker-Lender Escrow Instructions

12. Loan Disclosure Statement

13. Balloon Payment Disclosure

14. Forced-Placed Insurance Disclosure

15. Hazard Insurance Requirements

16. Conditional Loan Approval

17. Business Purpose Statement

18. Entity Certificate – Middlefield LLC

19. Entity Certificate – Alviso

20. Anti-Money Laundering Declaration

21. USA Patriot Act Important Information disclosures

22. Language Capacity Declaration

23. Declaration of Occupancy

24. Address/Phone Number Certification

Loan No. 2019-1005 – Oct 2019 – Original Principal $2,000,000

New funding by Dakota to Middlefield LLC, Alviso, and Teymourian, with Guaranty by Teymourian; First American Title File No. 3809-6056394

All documents dated October 8, 2019 except as otherwise stated below.

1. Note Secured by Three Deeds of Trust
2. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 10/11/2019 in San Mateo County as Document No. 2019-085099, encumbering Middlefield
3. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 10/11/2019 in San Mateo County as Document No. 2019-085098, encumbering Barry; this Deed of Trust was subsequently reconveyed and is no longer in effect
4. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement originally recorded 10/11/2019 in Santa Clara County as Document No. 24302783, encumbering Baytech; re-recorded 6/8/2022 as Document No. 25316714
5. Guaranty
6. Environmental Indemnity Agreement
7. Arbitration Agreement
8. Agreement to Correct Errors and Omissions
9. Loan Escrow Instructions (by Borrower)
10. Broker-Lender Escrow Instructions
11. Loan Disclosure Statement
12. Balloon Payment Disclosure

13. Forced-Placed Insurance Disclosure

14. Hazard Insurance Requirements

15. Conditional Loan Approval

16. Business Purpose Statement

17. Entity Certificate – Alviso

18. Entity Certificate – Middlefield LLC

19. Anti-Money Laundering Declaration

20. USA Patriot Act Important Information disclosures (Teymourian)

21. Language Capacity Declaration

22. Declaration of Occupancy

23. Address/Phone Number Certification

Loan No. 2019-1201 – Dec 2019 – Original Principal $6,000,000

New funding by Dakota and NSSMPPP to Middlefield LLC, Alviso, and Teymourian, with Guaranty by Teymourian; First American Title File Nos. 3809-6088736, 3809-6105355, 3809-6105365

All documents dated December 17, 2019 except as otherwise stated below.

1. Note Secured by Three Deeds of Trust

2. Addendum One to Note Secured by Three Deeds of Trust and Loan Documents of the Same Date (concerning future ECR collateral)

3. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 12/24/2019 in San Mateo County as Document No. 2019-109852, encumbering Middlefield; this Deed of Trust was subsequently reconveyed (Document No. 2022-024829) and is no longer in effect

4. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 12/24/2019 in San Mateo County as Document No. 2019-109853, encumbering Barry

5. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 12/24/2019 in Santa Clara County as Document No. 24364762, encumbering Baytech; this Deed of Trust was subsequently reconveyed and is no longer in effect

6. Broker-Lender Escrow Instructions

7. Business Purpose Statement

8. Subordination Agreement dated August 18, 2021 and recorded 09/22/2021 in San Mateo County as Document No. 2021-135496, with respect to the Deed of Trust identified in #4 above

<u>Advance – Nov 2021 – $2,500,000</u>

Additional funding by Dakota, NSSMPPP, and Greenfield to Nariman, for benefit of ECR LLC, as modification to all above-identified Loans

1. Agreement for $2,500,000 loan advance

*Properties Definitions*

<u>Middlefield / Middlefield Property</u>

That certain real property located at 2710 Middlefield Road, Redwood City, CA 94063, together with the approximately 36,000 square foot office building and other improvements thereon, which was previously owned by Middlefield LLC and encumbered by Deeds of Trust securing the Loans identified above as numbers 9645, 2019-0706, 2019-1005, and the Advance.

<u>Barry / Barry Property</u>

That certain real property located at 66 Barry Lane, Atherton, CA 94027, together with the approximately 9,938 square foot single-family residence and other improvements thereon, which as of the Execution Date is owned by Teymourian and encumbered by Deeds of Trust securing the Loans identified above as numbers 9645 and 2019-1201 and the Advance (the "Barry Deeds of Trust")

<u>Baytech / Baytech Property</u>

That certain real property located at 110 Baytech Drive, San Jose, CA 95134, together with the approximately 57,976 square foot office building and other improvements thereon, which as of the Effective Date is owned by Alviso and encumbered by Deeds of Trust securing the Loans identified above as numbers 2019-0706 and 2019-1005.  (the "Baytech Deeds of Trust").

**Exhibit B**
**Schedule of Loan Amounts**

| Teymourian Loans as of | 11/8/2022 | | | | | |
|---|---|---|---|---|---|---|
| Loan No. | Date | Loan Funded | Interest Accrued | Payment | Balance | |
| 9645 | 12/28/2018 | $ 15,400,000.00 | $ - | $ - | $ 15,400,000.00 | |
| | 1/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| | 2/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| | 3/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| | 4/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| | 5/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| | 6/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| 2019-0706 | 7/26/2019 | 2,500,000.00 | 147,416.69 | 147,416.69 | 17,900,000.00 | |
| | 8/1/2019 | - | 141,166.67 | 141,166.67 | 17,899,999.99 | |
| | 9/1/2019 | - | 172,416.67 | 141,166.67 | 17,931,249.99 | |
| 2019-1005 | 10/14/2019 | 2,000,000.00 | 192,416.65 | 161,166.65 | 19,962,499.99 | |
| | 11/1/2019 | - | 172,416.67 | - | 20,134,916.65 | |
| 2019-1201 | 12/23/2019 | 6,000,000.00 | 205,750.00 | - | 26,340,666.65 | |
| | 1/1/2020 | - | 219,083.36 | - | 26,559,750.01 | |
| | 2/1/2020 | - | 255,750.00 | - | 26,815,500.01 | |
| | 3/1/2020 | - | 255,750.00 | - | 27,071,250.01 | |
| | 4/1/2020 | - | 255,750.00 | - | 27,327,000.01 | |
| | 5/1/2020 | - | 255,750.00 | - | 27,582,750.01 | |
| | 6/1/2020 | - | 255,750.00 | 878,549.00 | 26,959,951.01 | |
| | 7/1/2020 | - | 255,750.00 | 124,508.78 | 27,091,192.23 | |
| | 8/1/2020 | - | 255,750.00 | 35,000.00 | 27,311,942.23 | |
| | 9/1/2020 | - | 263,562.50 | 35,000.00 | 27,540,504.73 | |
| | 10/1/2020 | - | 263,562.50 | 35,000.00 | 27,769,067.23 | |
| | 11/1/2020 | - | 263,562.50 | 35,000.00 | 27,997,629.73 | |
| | 12/1/2020 | - | 270,895.84 | 35,000.00 | 28,233,525.57 | |
| | 1/1/2021 | - | 270,895.84 | 35,000.00 | 28,469,421.41 | |
| | 2/1/2021 | - | 270,895.84 | 35,000.00 | 28,705,317.25 | |
| | 3/1/2021 | - | 270,895.84 | 35,000.00 | 28,941,213.09 | |
| | 4/1/2021 | - | 270,895.84 | 35,000.00 | 29,177,108.93 | |
| | 5/1/2021 | - | 270,895.84 | 35,000.00 | 29,413,004.77 | |
| | 6/1/2021 | - | 270,895.84 | 35,000.00 | 29,648,900.61 | |
| | 7/1/2021 | - | 270,895.84 | 35,000.00 | 29,884,796.45 | |
| | 8/1/2021 | - | 270,895.84 | | 30,155,692.29 | |
| | 9/22/2021 | - | 262,341.15 | 6,000,000.00 | 24,418,033.44 | |
| | 10/1/2021 | - | 256,699.66 | | 24,674,733.11 | |
| | 11/1/2021 | - | 256,699.66 | | 24,931,432.77 | |
| Advance, incl $75K advance fee | 11/12/2021 | 2,575,000.00 | - | - | 27,506,432.77 | |
| | 12/1/2021 | - | 258,884.39 | - | 27,765,317.16 | |
| | 1/1/2022 | - | 312,103.18 | - | 28,077,420.33 | |
| | 2/1/2022 | - | 312,103.18 | - | 28,389,523.51 | |
| | 3/1/2022 | - | 312,103.18 | - | 28,701,626.69 | |
| | 4/1/2022 | - | 312,103.18 | - | 29,013,729.86 | |
| 9645, add'l advance incl 3% advance fee | 4/7/2022 | 334,750.00 | - | - | 29,348,479.86 | |
| | 5/1/2022 | - | 340,947.86 | - | 29,689,427.72 | |
| | 6/1/2022 | - | 340,947.86 | 70,000.00 | 29,960,375.58 | |
| | 7/1/2022 | - | 345,517.09 | 50,000.00 | 30,255,892.66 | |
| | 8/1/2022 | - | 193,615.52 | | 30,449,508.18 | |
| | 9/1/2022 | - | 193,615.52 | 90,000.00 | 30,553,123.70 | |
| | 10/1/2022 | - | 193,615.52 | - | 30,746,739.21 | |
| | 11/1/2022 | - | 193,615.52 | | 30,940,354.73 | |
| | | | | Total Debt | $ 30,940,354.73 | |
| | | | | (Exclusive of Default Interest and Costs of Collection) | | |

**Exhibit C**
**Judgment Stipulation**

See Attached

# EXHIBIT E

1   Gregory A. Rougeau (194437)
    BRUNETTI ROUGEAU LLP
2   235 Montgomery Street, Suite 830
    San Francisco, California 94104
3   Telephone:    (415) 992-8940
    Facsimile:    (415) 291-8957
4   Email: grougeau@brlawsf.com

5   Attorneys for Debtor in Possession
    GAIL SUZZANNE MARIE TEYMOURIAN
6

7

8                  UNITED STATES BAKRUPTCY COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  In re:                                  Case No. 23-30259

    GAIL SUZZANNE MARIE                     Chapter 11
13  TEYMOURIAN,

14              Debtor In Possession.        **NOTICE OF WITHDRAWAL OF
                                             DEBTOR'S MOTION TO COMPROMISE
15                                           CONTROVERSY WITH DAKOTA NOTE,
                                             LLC AND RELATED PARTIES**
16

17

18

19

20  **TO:    ALL CREDITORS AND PARTIES IN INTEREST:**

21          **PLEASE TAKE NOTICE** that GAIL SUZZANNE MARIE TEYMOURIAN (the

22  "Debtor"), the debtor and debtor-in-possession herein, hereby withdraws her Motion to

23  Compromise Controversy With Dakota Note And Related Parties (the "Motion," Docket No.

24  34), filed on June 22, 2023, notice of hearing for which was scheduled to occur on July 20, 2023

25  at 10:00 a.m.

26          Such withdrawal of the Motion is premised upon certain objections to the proposed

27  compromise described in the Motion, and the related postpetition financing upon which the

28  Motion depends.  The Debtor anticipates that she will conduct further negotiations with her

                                            1

1  creditors, and file an alternative motion to compromise controversy under FRBP 9019 to resolve

2  the creditors' objections, in the very near future.

3

4  Dated:    July 1, 2023                    BRUNETTI ROUGEAU LLP

5

6                                            By:    */s/ Gregory A. Rougeau*
                                                    Gregory A. Rougeau
7                                                   Attorneys for Chapter
                                                    11 Debtor-In-Possession
8                                                   GAIL SUZZANNE MARIE
                                                    TEYMOURIAN
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT F

Signed and Filed: July 20, 2023

_____
**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

### UNITED STATES BANKRUPTCY COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Case No. 23-30259 HLB |
| | ) |
| GAIL SUZZANNE MARIE TEYMOURIAN, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| _____ | ) |

### ORDER DISMISSING CASE WITH PREJUDICE

This case came before the court on July 20, 2023 for a hearing on the court's Order to Show Cause.[1]  Timely responses to the OSC were filed by Debtor Gail Suzzanne Marie Teymourian;[2] Paladin Funding, Inc.;[3] and Dakota Note LLC and Natural Software Systems, Inc. Money Purchase Pension Plan.[4]  An untimely response was filed without leave of court by alleged creditor Hu-HanTwo LLC.[5]  Appearances were as noted on the record.

---

[1] Dkt. 53 (the "OSC").

[2] Dkt. 60.

[3] Dkt. 57.

[4] Dkt. 58.

[5] Dkt. 63, with supporting Declaration of Michael B. Lubic (Dkt. 64).

1    For the reasons stated in the OSC, as well as the findings

2  and conclusions stated on the record, the court **ORDERS** as

3  follows:

4         **1.**    This case is hereby ordered **DISMISSED WITH PREJUDICE.**

5         **2.**    For a period of two years from the date of entry of

6  this order, Debtor Gail Suzzanne Marie Teymourian is **BARRED** from

7  being a debtor in a case filed under Title 11 of the United

8  States Code (the "Bankruptcy Code").  This prohibition shall

9  apply in every bankruptcy court in the United States.

10        **3.**    Should a bankruptcy case be filed by Ms. Teymourian or

11 should a bankruptcy case be filed on Ms. Teymourian's behalf –

12 whether voluntary or involuntary – in contravention of this

13 order, no automatic stay shall take effect and the case may be

14 dismissed without notice or hearing.

15

16                    **\*\*END OF ORDER\*\***

17

18

19

20

21

22

23

24

25

26

27

28

<u>**Court Service List**</u>

Case: 23-30459   Doc# 88-4 Filed: 07/30/24 Entered: 07/30/24 16:08:49 Page 3 092
of 411

Form DOC

# UNITED STATES BANKRUPTCY COURT
## California Northern Bankruptcy Court

| In Re: Gail Suzzanne Marie Teymourian | Case No.: 23–30259 HLB 11 |
| | Chapter: 11 |
| Debtor(s) | |

### NOTICE OF DISMISSAL OF CASE

**Notice is given** that an order was filed on 7/20/23 dismissing the above–captioned case effective 7/20/23.

Dated: <u>7/20/23</u>                     For the Court:

                                         Edward J. Emmons
                                         Clerk of Court
                                         United States Bankruptcy Court

Doc # 66

# Notice Recipients

**Recipients submitted to the BNC (Bankruptcy Noticing Center) without an address:**
tr       Not Assigned – SF
intp     Sandra Ferrando
cr       Dakota Note, LLC, and Natural Software Systems, Inc. Money Purchase Pension Plan

                                                                                          TOTAL: 3

**Recipients of Notice of Electronic Filing:**
ust      Office of the U.S. Trustee / SF        USTPRegion17.SF.ECF@usdoj.gov
aty      David J. Rapson            rapsonlaw@gmail.com
aty      Gregory A. Rougeau         grougeau@brlawsf.com
aty      John H. Dresslar           John@Dresslar.com
aty      Michael B. Lubic           michael.lubic@klgates.com
aty      Nina Z. Javan     nina.javan@swmllp.com
aty      Patrick M. Costello        pcostello@vectislawgroup.com
aty      Reilly Wilkinson           rwilkinson@scheerlawgroup.com
aty      Trevor Ross Fehr           trevor.fehr@usdoj.gov

                                                                                          TOTAL: 9

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db       Gail Suzzanne Marie Teymourian        66 Barry Lane       Atherton, CA 94027
cr       Community Bank of the Bay       180 Grand Avenue       Suite 1550      Oakland, CA 94612
intp     Blue Shield of California       601 12th Street       Oakland, CA 94607
intp     State Farm General Insurance Company       P.O. Box 853907      Richardson, TX 75085
intp     2700 Middlefield Road LLC       66 Barry Lane       Atherton, CA 94027
intp     Nariman Teymourian       66 Barry Lane       Atherton, CA 94027
intp     Scheer Law Group, LLP       Scheer Law Group, LLP       155 N. Redwood Drive       Suite 100       San Rafael, CA 94903
cr       Technology Credit Union       2010 North First Street       San Jose, CA 95131
cr       PALADIN FUNDING, INC.       430 Ridge Road       Tiburon, CA 94920
intp     Hu–HanTwo LLC       86 Michaels Way       Atherton, CA 94027
smg      Chief Tax Collection Section       Employment Development Section       P.O. Box 826203       Sacramento, CA 94230
smg      IRS       P.O. Box 7346       Philadelphia, PA 19101–7346
smg      CA Employment Development Dept.       Bankruptcy Group MIC 92E       P.O. Box 826880       Sacramento, CA 94280–0001
smg      CA Franchise Tax Board       Special Procedures Bankruptcy Unit       P.O. Box 2952       Sacramento, CA 95812–2952
15495996  American Express       P.O. Box 981535       El Paso, TX 79998
15507155  American Express National Bank       c/o Becket and Lee LLP       PO Box 3001       Malvern PA 19355–0701
15495997  California State Board of Equalization       Account Information Group, MIC:29       P.O. Box 942879       Sacramento, CA 94279–0029
15501988  Capital One N.A.       by American InfoSource as agent       4515 N Santa Fe Ave       Oklahoma City, OK 73118
15495998  Community Bank of the Bay       180 Grand Ave.       Suite 120       Oakland, CA 94612
15495999  Dakota Note, LLC       400 N. Main Ave.       Suite 206       Sioux Falls, SD 57104
15496000  Employment Development Department       7677 Oakport St., Suite 400       Oakland, CA 94621
15496001  Employment Development Dept.       Bankruptcy Unit– MIC 92E       P.O. Box 826880       Sacramento, CA 94280
15496002  FARSAD LAW OFFICE, P.C       1625 The Alameda, Suite 525       San Jose, CA 95126
15496003  Franchise Tax Board       Bankruptcy Unit       P.O.Box 2952       Sacramento, CA 95812
15496004  Franchise Tax Board       P.O. Box 1673       Sacramento, CA 95812
15496005  Franchise Tax Board       P.O. Box 942867       Sacramento, CA 94267–0011
15496006  Internal Revenue Service       Ogden, UT 84201–0030
15496007  Internal Revenue Service       P.O. Box 105416       Atlanta, GA 30348–5416
15496008  Internal Revenue Service       P.O. Box 7346       Philadelphia, PA 19101–7346
15496009  Paladin Funding, Inc.       Attn: Mark Garay       430 Ridge Rd.       Belvedere Tiburon, CA 94920
15496010  Patrick M. Costello       VECTIS LAW       1900 S. Norfolk Street, Suite 350       San Mateo, CA 94403
15514419  San Mateo County Tax Collector       555 County Center, 1st Floor       Redwood City, CA 94063
15496011  San Mateo Tax Collector       1st Floor, 555 County Center       Redwood City, CA 94063
15496012  Sandra Ferrando       305 Shelby Lane       Rohnert Park, CA 94927
15496013  Secretary of State       State of California       1500 11th Street       Sacramento, CA 95814
15496014  Securities and Exchange Commission       Attn: Bankruptcy Counsel       5670 Wilshire Blvd., Floor 11       Los Angeles, CA 90036
15496015  Technology Credit Union       P.O. Box 1409       San Jose, CA 95109
15498588  UNITED STATES TRUSTEE       450 GOLDEN GATE AVE.       5TH FLOOR, STE #05–0153       SAN FRANCISCO, CA 94102

# Notice Recipients

District/Off: 0971–3          User: admin                Date Created: 7/20/2023
Case: 23–30259               Form ID: pdfeoc            Total: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db          Gail Suzzanne Marie Teymourian          66 Barry Lane          Atherton, CA 94027

TOTAL: 1

# EXHIBIT G

RECORDING REQUESTED BY

5 PALMS LLC

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS OTHERWISE
SHOWN BELOW, MAIL TAX STATEMENT TO:

Name      66 BARRY LANE LLC
Street    c/o David Tillotson
Address   LPSM&M Law LLP
City &    135 Main Street, Suite 1200
State     San Francisco, CA 94105
Zip

Title Order No.          Escrow No.

# 2023-032984 CONF

11:10 am 07/11/2023 TD Fee: $98.00
Count of Pages 3
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder



\* $ R 0 0 0 3 3 7 3 1 8 8 $ \*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Trustee's Deed Upon Sale

Trustee's Sale Number: __SMC001-07__          Assessor Parcel Number: __070-201-070-3631__

THE UNDERSIGNED GRANTOR DECLARES:

(1) The Grantee named herein [✓] was [ ] was not the foreclosing Beneficiary.

(2) The amount of the unpaid debt together with cost was $ _____

(3) The amount paid by the Grantee at the Trustee's Sale was $ _____

(4) The Document Transfer Tax is $ __0.00__

(5) Said property is in [ ] unincorporated area; [ ] City of __ATHERTON_____, and

__5 PALMS LLC_____, (herein called Trustee), as the duly appointed Trustee under the Deed of Trust hereinafter described or as duly appointed Trustee, does hereby grant and convey, but without covenant or warranty, express or implied, to

66 Barry Lane LLC, A California limited liability company

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the City of

__ATHERTON_____, County of __SAN MATEO_____, State of California, described as follows:

LEGAL DESCRIPTION ATTACHED AS EXHIBIT 'A'

TRUSTEE STATES THAT:

This conveyance is made pursuant to the powers conferred upon Trustee by the certain Deed of Trust dated __12/17/2019_____, and executed by __NARIMAN S TEYMOURIAN AND GAIL SUZANNE MARIE TEYMOURIAN__ as Trustor, and recorded as Instrument No. __2019-109853_____, Book _____ Page (s) _____ of Official Records of __SAN MATEO_____ County, State of California, or as the duly appointed Trustee, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance. Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the office of the Recorder of said County. All requirements of law regarding the mailing of copies of notices and the posting and publication of copies of the Notice of Sale which was recorded and has been complied with. Said property was sold by said Trustee at public auction on __7/10/2023_____ at the place named in the Notice of Sale, in the County of __SAN MATEO_____, California, in which the property is situated. Grantee being the highest bidder at such sale, became the purchaser of said property and paid therefore to said Trustee the amount Bid $ __3,000,000.00__ (N), in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE

66 BARRY LANE LLC          135 MAIN STREET, SUITE 1200          SAN FRANCISCO, CA 94105
Name                      Street Address                        City, State & Zip

# Trustee's Deed Upon Sale

Trustee' Sale No. _SMC001-07_

Order No. _____

In Witness Whereof, said _____ 5 PALMS LLC _____, as Trustee, has this day caused
its name to be hereunto affixed.

Dated: _07/10/2023_

5 PALMS LLC _____
as Trustee aforesaid

> A notary public or other officer completing this certificate
> verifies only the identity of the individual who signed the
> document to which this certificate is attached, and not
> the truthfulness, accuracy, or validity of that document.

MICHAEL OHAYON, FORECLOSURE OFFICER

STATE OF CALIFORNIA
COUNTY OF _San Mateo_

On _07/11/2023_ before me,

_Jesus Eladio Bustos JR, Notary Public_
(here insert name and title of the officer)

,notary public, personally appeared _Michael_

_Ohayon_,

who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the state of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____

JESUS ELADIO BUSTOS JR.
COMM. # 2433161
NOTARY PUBLIC ● CALIFORNIA
SAN MATEO COUNTY
Comm. Exp. JAN. 2, 2027

(This area for official notarial seal)

**Exhibit "A"**

**Legal Description**

A.P.N.: 070-201-070-3631

Real property in the Town of Atherton, County of San Mateo, State of California, described as follows:

LOT 13, AS DESIGNATED ON THE MAP ENTITLED "ATHERTON WOODS UNIT NO. 2 ATHERTON SAN MATEO COUNTY, CALIFORNIA", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON JUNE 2, 1955 IN BOOK 42 OF MAPS AT PAGE 37. JPN: 070-020-201-07A

# EXHIBIT H

1 Kousha Berokim
BEROKIM LAW
2 State Bar Number 242763
270 North Cañon Drive, Third Floor
3 Beverly Hills, California 90210
berokim@berokim.com
4 T (310) 846-8553 | F (310)300-1233

5 ATTORNEY FOR NARIMAN TEYMOURIAN, GAIL SUZANNE MARIE TEYMOURIAN, 2700
6 MIDDLEFIELD ROAD, LLC, AND FERRANDO DIVERSIFIED CAPITAL, LLC

7           IN THE SUPERIOR COURT OF CALIFORNIA
                    COUNTY OF SAN MATEO
8

9 | | Case Number: 22-CIV-04679 |
|---|---|
10 | NARIMAN TEYMOURIAN; GAIL SUZANNE MARIE TEYMOURIAN; | |
11 | AND 2700 MIDDLEFIELD ROAD, LLC PLAINTIFFS, | **CROSS DEFENDANTS NARIMAN TYEMOURIAN AND GAIL TEYMOURIAN'S OPPOSITION TO CROSS COMPLAINANT'S EX PARTE APPLICATION FOR JUDGMENT** |
12 | V. | |
13 | DAKOTA NOTE, LLC; TANYA WALTIMYER; NATURAL SOFTWARE | |
14 | SYSTEMS, INC. MONEY PURCHASE PENSION PLAN; JASON GREENFIELD; | |
15 | 5 PALMS, LLC; & DOES 1-20, INCLUSIVE, | 1:30 PM AUGUST 24, 2023 |
16 | DEFENDANTS. | DEPT 3 HON. SUSAN GREENBERG |
17 | | |
18 | DAKOTA NOTE, LLC and NATURAL SOFTWARE SYSTEMS, INC. MONEY | |
19 | PURCHASE PENSION PLAN, | |
20 | Cross-Complainants, | |
21 | vs. NARIMAN TEYMOURIAN, an | |
22 | individual, GAIL SUZANNE MARIE TEYMOURIAN, an individual, 2700 | |
23 | MIDDLEFIELD ROAD, LLC, a Delaware limited liability company, ALVISO PARK, | |
24 | LLC, a Delaware limited liability company, FERRANDO DIVERSIFIED CAPITAL, | |
25 | LLC, a California limited liability company, and ROES 1-150, inclusive, | |
26 | Cross-Defendants | |
27 | | |
28 | | |

**OPPOSITION MEMORANDUM**

On April 23, 2023 Cross Defendant Gail Teymourian filed for chapter 11 bankruptcy, *In r Gail Suzzane Marie Teymourian*, Case No. 23-30259.

The Chapter 11 Case was dismissed on July 20, 2023. A true and correct copy of the order dismissing the Chapter 11 Case is attached hereto as Exhibit "A" and included herein by such reference.

In the Chapter 11 Case, Ms. Teymourian, together with her husband, Nariman Teymourian, 201 El Camino Real LLC ("ECR LLC"), 2700 Middlefield Road, LLC ("Middlefield LLC"), Alviso Park LLC, ("Alviso"), and Ferrando Diversified Capital LLC ("Ferrando"), on the one hand, and Dakota Note, LLC ("Dakota"), Natural Software Systems, Inc. Money Purchase Pension Plan ("NSSMPPP"), Tanya Waltimyer ("Waltimyer"), Jason Greenfield ("Jason"), Paul Greenfield ("Greenfield"), and 5 Palms, LLC ("Palms"), entered into a settlement agreement (the "Settlement Agreement") on or about June 19, 2023 (the agreement itself is not dated by the parties in the agreement's preamble). A true and correct copy of the Settlement Agreement is attached hereto as Exhibit "B" and is incorporated herein by such reference.

In bankruptcy cases, any settlement between the debtor- here, Cross Defendant Gail Teymourian, and adverse parties is governed by Rule 9019 of the Federal Rules of Bankruptcy Procedure. That rule states, in pertinent part, as follows:

> (a) Compromise. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

(b) Authority To Compromise or Settle Controversies
Within Classes. After a hearing on such notice as the court
may direct, the court may fix a class or classes of
controversies and authorize the trustee to compromise or
settle controversies within such class or classes without
further hearing or notice.

Rule 9019 requires that parties in a bankruptcy case must obtain bankruptcy court approval for a settlement.

The underlying settlement agreement was expressly conditioned upon approval of Bankruptcy Court:

**The Parties acknowledge that due to the pendency of the Chapter 11 Case, the settlement embodied in this Agreement is conditioned upon approval of the Bankruptcy Court, insofar as it applies to Gail Teymourian, and any property of her bankruptcy estate.**
(Exhibit B, Recial J)

The Settlement Agreement was never approved by the bankruptcy court. While the settling parties moved to approve it, the motion to approve the settlement agreement was withdrawn by Ms. Teymourian. A copy of the relevant withdrawal notice filed in the bankruptcy case is attached hereto as Exhibit "C" is incorporated herein by such reference.

The Bankruptcy Court did not approve the agreement. As such, the settlement agreement is not enforceable.

The Application does not dispute these facts. It falsely argues that Debtor Gail Teymourian's withdrawal of the motion for approval entitles Cross Complainants' to relief. However, the settlement agreement was not conditioned on *seeking* approval; it conditioned on *obtaining* approval.

\*\*\*

///

1  Because the "approval of the Bankruptcy Court" condition has not been met, the
2  Application should be denied.

3      If the Court is otherwise inclined to further consider or grant the Application, and
4  because the underlying issues concern issues of bankruptcy and community property, it is
5  respectfully requested that the Court sets the Application as noticed motion on the Court's
6  regular calendar, so that Cross Defendants may file a complete and timely Opposition, and/
7  or, if necessary, obtain clearer ruling and adjudication of the *approval* issue from the
8  Bankruptcy Court.
9

10     *I, Kousha Berokim, declare under the penalty of perjury under the laws of the State*
11  *of California that the factual statements made above are true and correct to the best of my*
12  *knowledge.*
13
14
15     August 24, 2023
16
17     ---------------------------------------------------------
18     Kousha Berokim
       BEROKIM LAW
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**



**Signed and Filed: July 20, 2023**

_____

**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

### UNITED STATES BANKRUPTCY COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Case No. 23-30259 HLB |
| | ) |
| GAIL SUZZANNE MARIE TEYMOURIAN, | ) Chapter 11 |
| | ) |
| Debtor. | ) |

### ORDER DISMISSING CASE WITH PREJUDICE

This case came before the court on July 20, 2023 for a hearing on the court's Order to Show Cause.[1]  Timely responses to the OSC were filed by Debtor Gail Suzzanne Marie Teymourian;[2] Paladin Funding, Inc.;[3] and Dakota Note LLC and Natural Software Systems, Inc. Money Purchase Pension Plan.[4]  An untimely response was filed without leave of court by alleged creditor Hu-HanTwo LLC.[5]  Appearances were as noted on the record.

---

[1] Dkt. 53 (the "OSC").

[2] Dkt. 60.

[3] Dkt. 57.

[4] Dkt. 58.

[5] Dkt. 63, with supporting Declaration of Michael B. Lubic (Dkt. 64).

1      For the reasons stated in the OSC, as well as the findings
2  and conclusions stated on the record, the court **ORDERS** as
3  follows:

4      **1.**   This case is hereby ordered **DISMISSED WITH PREJUDICE.**

5      **2.**   For a period of two years from the date of entry of
6  this order, Debtor Gail Suzanne Marie Teymourian is **BARRED** from
7  being a debtor in a case filed under Title 11 of the United
8  States Code (the "Bankruptcy Code").  This prohibition shall
9  apply in every bankruptcy court in the United States.

10      **3.**   Should a bankruptcy case be filed by Ms. Teymourian or
11  should a bankruptcy case be filed on Ms. Teymourian's behalf –
12  whether voluntary or involuntary – in contravention of this
13  order, no automatic stay shall take effect and the case may be
14  dismissed without notice or hearing.

16                       **\*\*END OF ORDER\*\***

**Court Service List**

**EXHIBIT B**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into as of June ___, 2023, which is the date of mutual execution of this Agreement by the Parties hereto (the "Execution Date"), by and between Nariman Teymourian ("Nariman"), Gail Suzanne Marie Teymourian ("Gail", and jointly with Nariman, "Teymourian"), 201 El Camino Real LLC, a California limited liability company ("ECR LLC"), 2700 Middlefield Road, LLC, a Delaware limited liability company ("Middlefield LLC"), Alviso Park LLC, a Delaware limited liability company ("Alviso"), and Ferrando Diversified Capital LLC, a California limited liability company ("Ferrando"), jointly and severally referred to herein as "Teymourian Parties", on the one hand; and Dakota Note, LLC, a South Dakota limited liability company ("Dakota"), Natural Software Systems, Inc. Money Purchase Pension Plan ("NSSMPPP"), Tanya Waltimyer ("Waltimyer"), Jason Greenfield ("Jason"), Paul Greenfield ("Greenfield"), and 5 Palms, LLC ("Palms"), collectively referred to herein as "Dakota Parties", on the other hand. The Teymourian Parties and the Dakota Parties are hereinafter sometimes referred to as the "Parties", or each respectively as a "Party".

### Recitals

A.   Between approximately November 2018 and April 2022, one or more of the Dakota Parties made a series of loans and advances to, or for the benefit of, one or more of the Teymourian Parties (the "Loans", and each a "Loan"), in the aggregate principal amount of Twenty-Eight Million Seven Hundred Twenty-Five Thousand Dollars ($28,725,000.00), each Loan being secured by, among other things, deeds of trust (the "Deeds of Trust") recorded against certain real property owned by the applicable Teymourian Party (the "Properties" and each a "Property"). A schedule of the Loans and the Notes, Deeds of Trust, and other agreements and instruments evidencing and securing the same (collectively, the "Loan Documents") is attached hereto as Exhibit A and is summarized for reference as follows:

| Date | Loan No. | Original Principal Amount | Lender | Borrower | Property Encumbered as of Commencement of Litigation |
|------|----------|---------------------------|--------|----------|------------------------------------------------------|
| Nov 2018 | 9645 | $15,400,000 plus Apr 2022 advance of $325,000 + 3% advance fee | Dakota, NSSMPPP, Waltimyer, Jason | Middlefield LLC, Teymourian | Middlefield, Barry |
| Jul 2019 | 2019-0706 | $2,500,000 | Dakota | Middlefield LLC, Alviso, Teymourian | Middlefield, Baytech |

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 311 of 411

| Oct 2019 | 2019-1005 | $2,000,000 | Dakota | Middlefield LLC, Alviso, Teymourian | Middlefield, Baytech |
|---|---|---|---|---|---|
| Dec 2019 | 2019-1201 | $6,000,000 | Dakota, NSSMPPP | Teymourian | Barry |
| Nov 2021 | Advance | $2,500,000 (plus $75,000 Advance Fee) | Dakota, NSSMPPP, Greenfield | Nariman (for benefit of ECR LLC) | Middlefield, Barry |

B. The Dakota Parties allege that each of the Loans was cross-collateralized when made, with Deeds of Trust recorded against more than one of the Properties; subsequently from time to time certain Deeds of Trust on certain Properties have been released and reconveyed, and some thereafter re-recorded, for various purposes and consideration. As of the time the Litigation (defined below) commenced, each of the Loans was secured by a Deed of Trust recorded in the Official Records of the applicable County as a second or third priority mortgage lien against each of the Properties identified for that Loan in the schedule set forth in Recital A and further described in Exhibit A.

C. The Dakota Parties allege that as of November 1, 2022, the aggregate total outstanding principal balance of the Loans together with accrued and unpaid regular (*i.e.,* nondefault rate) interest thereon was Thirty Million Nine Hundred Forty Thousand Three Hundred Fifty Four Dollars and Seventy-Three Cents ($30,940,354.73), as shown in the schedule of amounts funded and repaid, and the regular interest accrued, with respect to each of the Loans, that is attached hereto as Exhibit B. In addition, the Dakota Parties assert that late fees, default interest, and additional amounts including attorney fees, are chargeable to Teymourian Parties under the terms of the Loan Documents.

D. As a result of, among other things, the borrowers' failure to make timely payments, the Dakota Parties declared a default under the Loan Documents (collectively, "Existing Default"). As a result of the Existing Default, in or about June 2022 the Loans were accelerated by the Dakota Parties and the Dakota parties asserted that the total outstanding principal balance of the Loans, together with all accrued and unpaid interest, became immediately due and owing.

E. Dakota Parties commenced non-judicial foreclosure proceedings with respect to the Middlefield Property (defined in Exhibit A) on or about July 22, 2022, and with respect to the Barry Property (defined in Exhibit A) on or about November 21, 2022.[1] On January 27, 2023, at a trustee's sale conducted in those non-judicial foreclosure proceedings (the "Trustee's Sale"), the Middlefield Property was sold to the successful bidder, 2710 Middlefield Holdings LLC, which is an affiliate of the Dakota Parties, for payment of the sum of $15,400,000.00. The Barry Property has not been sold as of Execution Date.

---

[1] A notice of default was recorded on the Barry Property on 11/21/22, San Mateo recording no. 2022-080122 ("Barry NOD"). A notice of sale was recorded on the Barry Property on 3/6/23, San Mateo recording no. 2023-009951 ("Barry NOS")

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 312 of 411

F. Various disputes arose between the Parties related to the Loans, including without limitation as to the amounts due and owing under, and the enforceability of, the Loan Documents. On or about November 9, 2022, Teymourian and Middlefield LLC filed a Complaint (the "Complaint") against certain Dakota Parties in the Superior Court of California, County of San Mateo (the "Superior Court") commencing that certain action identified as *Nariman Teymourian et al. vs. Dakota Note, LLC et al.*, Case Number 22-CIV-04679; on or about March 3, 2023, Dakota and NSSMPPP filed a Cross-Complaint in said action against Teymourian Parties (the "Cross-Complaint"); and on or about March 21, 2023, Teymourian filed a Cross-Complaint against Dakota and certain other parties having interests in the Barry Property (the "Barry Cross-Complaint"). The foregoing litigation, including the Complaint, Cross-Complaint, and Barry Cross-Complaint, together with any and all amendments thereto, and together with and including all other claims, complaints, answers, affirmative defenses, and cross-complaints that have been or could be made in said action, including on appeal therefrom, are collectively hereinafter referred to as the "Litigation".

G. On or about November 10, 2022, Teymourian Parties caused a Notice of Pending Action (the "Lis Pendens") to be recorded as Instrument No. 2022-078621 in the Official Records of the County of San Mateo with respect to the Middlefield Property.

H. The Parties now desire to avoid further litigation between them, and have agreed to enter into this Agreement and the transactions described herein, including a forbearance and modification of the Loans, as a mutual compromise and settlement of disputes between Dakota Parties and Teymourian Parties with respect to the Loans, including without limitation the Litigation.

I. Except as may be explicitly stated in this Agreement, each of the Parties has expressly denied any wrongdoing or other actionable conduct and disputes the allegations made against it by the other Party, and no consideration given in or pursuant to this Agreement shall be construed to be an admission of the validity of any of the allegations made in the Litigation nor of any liability or culpability of any Party for any claims or damages of the other Party or of any other person.

J. On April 23, 2023, Gail Teymourian commenced a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Northern District of California ("Bankruptcy Court"), identified as *In re Gail Suzzane Marie Teymourian*, Chapter 11 Case No. 23-30259 (the "Chapter 11 Case"). As of the Execution Date, the Chapter 11 case is pending. As the Chapter 11 Case was Gail Teymourian's second bankruptcy pending within the previous twelve (12) months, with the prior case being dismissed, the Bankruptcy Court, on June 8, 2023, entered in the Chapter 11 Case an order confirming that the automatic stay terminated in its entirety by operation of law on May 23, 2023. The Parties acknowledge that due to the pendency of the Chapter 11 Case, the settlement embodied in this Agreement is conditioned upon approval of the Bankruptcy Court, insofar as it applies to Gail Teymourian, and any property of her bankruptcy estate.

K. Each Party to this Agreement is fully informed of the facts set forth in these Recitals and the facts and contentions raised in the Litigation and in all other aspects of the disputes between the Parties, whether pled or not, and has been advised by its independent counsel as to the contentions, issues, and possibilities of each action and matter described herein, including the Litigation.

NOW THEREFORE, in consideration for the agreements, representations, promises and covenants herein contained and for other good and valuable consideration the delivery and receipt of which is hereby acknowledged, the Parties agree as set forth herein.

## Agreement

1. <u>Recitals and Definitions</u>. The Parties acknowledge and agree that the foregoing Recitals and all recitals of fact set forth in this Agreement and in the Exhibits hereto are true and correct, are incorporated herein, and that each Party is relying thereupon in entering into this Agreement. Capitalized terms not otherwise defined in this Agreement shall have the meanings assigned to them in the existing Loan Documents identified in Exhibit A hereto.

2. <u>Middlefield Settlement</u>.

2.1 <u>Middlefield Release</u>. As a part of the consideration to Dakota Parties for offering to Teymourian Parties the settlement described herein and for Dakota Parties' execution of this Agreement, and as a condition precedent to the forbearance and discount set forth in Section 4, Teymourian Parties, and each of them, hereby unconditionally, fully and finally (a) quitclaim and release any and all right, title or interest in and to the Middlefield Property, and (b) release and extinguish any and all claims against the Dakota Parties and/or 2710 Middlefield Holdings LLC as to the Middlefield Property (the "Middlefield Release"), including without limitation any and all past, present, and future claims, demands, liens, actions, contests, causes of action, obligations, damages, and liability of whatever kind or nature in law or equity or otherwise, whether now known or unknown, suspected or unsuspected, which arise out of, or relate in any way to, flow from or are in consequence of the Loans, the Loan Documents, the Trustee's Sale, or the matters that are alleged or could have been alleged in the Litigation to the extent relating or applicable to the Middlefield Property.

2.2 <u>Dismissal of Complaint</u>. Within five (5) business days following the Execution Date, Teymourian (with the exception of Gail Teymourian, whose dismissal will require approval of the Bankruptcy Court) and Middlefield LLC shall file the dismissal with prejudice of their Complaint (but not the Barry Cross-Complaint nor any other party's complaint or cross-complaint) in the Litigation.

2.3 <u>Lis Pendens</u>. Within five (5) business days following the Execution Date, Teymourian Parties shall cause a withdrawal and release of the Lis Pendens to be recorded in the Official Records of San Mateo County.

3. <u>Settlement Payments</u>. As a part of the consideration to Dakota Parties for this Agreement, Teymourian Parties shall pay to Dakota Parties, in installments as set forth below, the principal sum of Six Million Dollars ($6,000,000.00) ("Settlement Sum") plus interest on the unpaid balance thereof at the rate of Seven Percent (7.0%) per annum from the Bankruptcy Court Approval Date (defined in Section 5.1 below) until the Settlement Sum is paid in full. Installment payments shall be made as follows:

(a) THREE MILLION Dollars and Zero Cents ($3,000,000.00) (the "Initial Settlement Payment") shall be paid within thirty (30) calendar days following the Court Approval Date.

(b) Quarterly payments of ONE HUNDRED THOUSAND Dollars and Zero Cents ($100,000.00) each ("Quarterly Payments") shall be paid beginning on the first day of the calendar quarter (*i.e.*, January 1, April 1, August 1, or December 1) following the Court Approval Date, and continuing on the first day of every subsequent quarter until the entire balance of the Settlement Sum is paid. Each Quarterly Payment shall be applied by the Dakota Parties to reduce the outstanding balance of the Settlement Sum, and not to accrued and unpaid interest.

(c) The entire remaining balance of the Settlement Sum (equal to Three Million Dollars less the sum of all Quarterly Payments having then been made) plus all accrued interest shall be paid on or before the date that is twenty-four (24) months following the Court Approval Date.

Teymourian Parties may make any of the above installment payments in advance of the due dates specified above. Each payment shall be made in immediately available funds, via wire transfer in accordance with Dakota Parties' instructions.

4.    Consideration to Teymourian Parties; Forbearance and Modification of Loans.

4.1    Forbearance. In consideration of, subject to and on the condition of the full and timely performance of each and every promise, covenant, and obligation of Teymourian Parties pursuant to this Agreement, Dakota Parties agree to forbear from exercising any of their remedies under the Loan Documents on account of the Existing Default for a period (the "Forbearance Period") commencing on the Execution Date and expiring twenty-four (24) months after the Court Approval Date. Further, provided Teymourian Parties are not in breach of or default under this Agreement, no late fees shall be charged, and no interest shall accrue on the outstanding indebtedness of Teymourian Parties (or any of them) to Dakota Parties (or any of them) during the Forbearance Period, except for the interest on the outstanding balance of the Settlement Sum specified by Section 3 above.

4.2    Compromise Payoff. In consideration of, subject to and on the condition of the full and timely performance of each and every promise, covenant, and obligation of Teymourian Parties pursuant to this Agreement, Dakota Parties agree to accept the Middlefield Release and the Settlement Sum plus interest specified by Section 3 above (collectively, the "Compromise Payoff") as payment in full and final satisfaction of the Loans. Upon timely receipt of the entire Settlement Sum plus all accrued interest as provided by Section 3 above, Dakota Parties agree to release and reconvey the Barry Deeds of Trust and the Baytech Deeds of Trust, at Teymourian Parties' expense.

4.3    Barry and Baytech Obligations. Any affirmative action by the holder of any mortgage or other lien secured by the Barry Property to declare a default of its loan or otherwise commence any foreclosure action affecting the Barry Property shall constitute a default by Teymourian Parties under this Agreement. Any breach or default of any of the obligations of Teymourian Parties under the Barry Deeds of Trust and/or the Baytech Deeds of Trust, other than the Existing Default and, with respect to the Baytech Deeds of Trust, the covenant and payment defaults to Bayech's senior lender, shall constitute a default by Teymourian Parties under this

Agreement. Teymourian Parties agree that, until their obligations under this Agreement have been fully satisfied, that they will bring, and keep, current on property taxes, property insurance (with the Dakota Parties listed as a loss payee), and any payments due on loans secured by deeds of trust senior to the Barry Deeds of Trust; during the Forbearance Period, Teymourian Parties will provide to Dakota Parties proof of the foregoing payments made on a monthly basis, on or before the fifteenth (15th) day of each calendar month, and any failure to timely comply with the foregoing payment and reporting requirements shall constitute a default by Teymourian Parties under this Agreement.

4.4 Dakota Parties notice of default on the Barry Property shall remain valid and in place. Teymourian Parties agree that the Barry NOD and Barry NOS are valid and correct. Dakota Parties shall not complete the foreclosure sale of the Barry Property as long as Teymourian Parties remain in compliance under this Agreement. If the Teymourian Parties fail to comply with any of the terms and conditions of this Agreement, Dakota Parties may immediately proceed with the foreclosure sale of the Barry Property, judicially or nonjudicially, at their sole and absolute discretion, without further notice except as required by law, and may assert all rights allowed pursuant to the loan documents and applicable law. Acceptance of any payments shall not constitute a waiver of any of Dakota Parties' rights. NOS will be rescinded within 10 days of entry of court order approving the 9019 Motion.

4.5    Other Modifications; Effect of Default.    Nothing contained herein, nor any action taken or omitted by the Parties, or any of them, pursuant to this Agreement, nor any payments made by the Teymourian Parties and/or accepted by Dakota Parties, shall be deemed to be a modification of or agreement to extend any of the Loans, nor a waiver of any of the Parties' rights or remedies, except as expressly stated herein. All of the Loan Documents shall be and hereby are amended to provide that each of the Loan Documents shall, as applicable, evidence, secure, and/or guaranty, in addition to all other obligations presently evidenced, secured and/or guaranteed thereby, the payment and performance of all obligations of Teymourian Parties, and each of them, under this Agreement. In the event of a default by Teymourian Parties, or any of them, under this Agreement, after notice and failure to cure any such default if applicable as provided herein, then without further notice, the Forbearance Period shall terminate, Dakota Parties shall be released from accepting the Compromise Payoff as full satisfaction of the indebtedness of Teymourian Parties under the Loans, Teymourian Parties shall be deemed in default under all of the Loan Documents, and Dakota Parties shall have the right to pursue, continue, institute, conduct and/or complete the exercising of any remedies Dakota Parties may have under this Agreement, any of the Loan Documents, or applicable law, including without limitation foreclosure on the Barry Deeds of Trust and/or the Baytech Deeds of Trust.

4.6    Co-Obligor Waivers. Without limiting any other provision of this Agreement or of any of the Loan Documents, Teymourian Parties, and each of them, including each Teymourian Party who has guaranteed or is deemed to be a guarantor of any of the Loans made to another Teymourian Party, expressly waive to the extent permitted by law any and all rights and defenses which might otherwise be available to them under California Civil Code Sections 2787 to 2855, inclusive, 2899 and 3433, and under California Code of Civil Procedure Sections 580a, 580b, 580d and 726, or any of those sections, including without limitation the so-called "Gradsky" defense, or comparable provisions of the laws of any other jurisdiction and all other anti-deficiency and one form of action defenses under the laws of California and any other

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 316 of 411

jurisdiction. Dakota Parties may (a) apply security and direct the order or manner of sale thereof as Dakota Parties in their sole discretion may determine; (b) release, substitute or add any one or more endorsers of any Note or guarantors of any Party's obligations under the Loan Documents; and (c) apply payments received by Dakota Parties, or any of them, from any Party to any obligations of the Teymourian Parties to Dakota Parties, in the order Dakota Parties determine in their sole discretion. Each Teymourian Party acknowledges that: (i) the obligations under the Loan Documents and this Agreement are complex in nature, (ii) numerous possible defenses to the enforceability of these obligations may presently exist and/or may arise hereafter, and (iii) as part of the Dakota Parties' consideration for entering into this Agreement and the transactions contemplated hereby, Dakota Parties have specifically bargained for the waiver and relinquishment by Teymourian Parties of all such defenses, and each Teymourian Party has had the opportunity to seek and receive legal advice from skilled legal counsel in the area of financial transactions of the type contemplated herein. Given all of the above, each Teymourian Party does hereby represent and confirm to Dakota Parties that each Obligor is fully informed regarding, and thoroughly understands: (A) the nature of all such possible defenses, (B) the circumstances under which such defenses may arise, (C) the benefits which such defenses might confer upon Teymourian Parties, and (D) the legal consequences to Teymourian Parties of waiving those defenses. Each Teymourian Party acknowledges that all of the informed waivers herein shall be fully enforceable by Dakota Parties, and that Dakota Parties are induced to enter into this Agreement in material reliance upon the presumed full enforceability thereof.

5.      Chapter 11 Case.

5.1      Bankruptcy Court Approval. No later than June 21, 2023, Teymourian Parties shall cause to be filed in the Chapter 11 Case a motion seeking the approval of the Bankruptcy Court, pursuant to Federal Rule of Bankruptcy Procedure 9019, with a hearing no later than July 20, 2023, of the settlement embodied by this Agreement, insofar as it applies to Gail Teymourian and any property of her bankruptcy estate. The date on which the Bankruptcy Court issues an order or ruling substantially granting said motion is referred to in this Agreement as the "Court Approval Date".

5.2      Post-Petition Financing. The Parties acknowledge that Gail Teymourian is seeking post-petition debtor-in-possession financing (the "DIP Loan") in the Chapter 11 Case, and that the proceeds from the DIP Loan shall be used, in part, to fund payment of the Settlement Sum. The DIP Loan negotiated by Gail and her lender, Legalist, Inc. ("Legalist"), contemplates that Legalist shall provide the financing on a senior secured position as to the Barry Property, among other estate property, and will seek to prime junior secured creditors, including the Dakota Parties, as part of that financing. Dakota Parties agree to such senior secured financing, and agree to support Gail's motion for approval of the DIP Loan in the Bankruptcy Court to the extent that it comports with the terms of this Agreement. Teymourian Parties will directly receive no greater than FIVE HUNDRED THOUSAND Dollars and Zero Cents ($500,000.00) from the DIP Loan for personal expenses, apart from expenditures necessary for the maintenance of the Barry Property to be approved by Dakota Parties.

5.3      Adversary Proceeding Upon Default. In the event the Judgment Stipulation described in Section 6.1 is filed in the Superior Court, Dakota Parties will also commence an adversary proceeding against Teymourian Parties in the Chapter 11 Case, alleging the Teymourian

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 317
of 411

Parties' default hereunder. Teymourian Parties agree to stipulate that entry of judgment pursuant to the Judgment Stipulation shall be deemed non-dischargeable pursuant to 11 U.S.C. § 523. Teymourian Parties agreed to stipulate to extend the last day to oppose discharge in the Chapter 11 Case for periods of six (6) months at a time until payments under this Agreement are completed or Teymourian Parties breach this Agreement[2].

5.4     Other Bankruptcy Actions. In the event a voluntary or involuntary petition for relief is filed by or against any of the Teymourian Parties pursuant to the Bankruptcy Code, other than the Chapter 11 Case, Dakota Parties may, through counsel of Dakota Parties' choosing, make all appearances and take all action as Dakota Parties may deem to be necessary or desirable for purposes of enforcing, exercising, protecting, and/or preserving any and all rights, remedies, claims, or interests of Dakota Parties which arise under this Agreement or by operation of law, including, without limitation thereto, the filing and enforcement of any claim against the estate of the debtor thereunder, the filing of any motion for relief from stay, the enforcement or defense by Dakota Parties of its rights and interests in collateral (real or personal property), or the filing of any motion or opposition in any action or proceeding to assume or reject executory contracts or pertaining to any disclosure statement and any proposed or confirmed plan; and Dakota Parties shall be entitled to an award against the applicable Teymourian Party for and to recover any and all attorneys' fees and related costs incurred by Dakota Parties in connection with all such actions and proceedings and in the enforcement of any judgment or award therefor and upon prevailing in any appeal relating thereto. Teymourian Parties agree to stipulate in the Chapter 11 Case to In Rem Relief pursuant to 11 U.S.C. § 362(d)(4) as it relates to both the Middlefield Property and Baytech Property. In Rem Relief shall be binding and effective against the Middlefield Property and Baytech Property for a period of two years upon the recording of the In Rem Orders.

6.     Superior Court Actions; Dismissal of the Litigation.

6.1     Stipulated Judgment; Conditional Dismissal. Teymourian Parties and their counsel shall execute a Stipulation for Entry of Judgment in the form attached hereto as Exhibit C ("Judgment Stipulation"), providing for entry of judgment against Teymourian Parties in the Litigation in the event of an uncured default under this Agreement, and shall deliver the executed Judgment Stipulation to counsel for Dakota Parties no later than the Court Approval Date. Following dismissal of the Complaint in accordance with Section 2.2 and release of the Lis Pendens in accordance with Section 2.3, the Court Approval Date, and receipt of the executed Judgment Stipulation, Dakota Parties' counsel shall file a Notice of Conditional Settlement and Voluntary Dismissal with the Superior Court with respect to the Litigation, and shall thereafter

---

[2] The current last day to oppose discharge in the Chapter 11 Case is July 24, 2023. The parties agree to stipulate to extend the last day to oppose discharge to January 24, 2023 immediateley upon execution of this Agreement. In the event that the Teymourian Parties are current under this Agreement on January 1, 2024, the Parties agreed to stipulate to extend the last dayt to oppose discharge to July 24, 2024. In the event that the Teymourian Parties are current under this Agreement on July 1, 2024, the Parties agreed to stipulate to extend the last dayt to oppose discharge to January 24, 2025. In the event that the Teymourian Parties are current under this Agreement on January 1, 2025, the Parties agreed to stipulate to extend the last dayt to oppose discharge to July 24, 2025.

Case: 23-51443     Doc# 33-4     Filed: 03/08/24     Entered: 03/08/24 15:08:49     Page 318 of 411

hold the Judgment Stipulation in trust until the payment in full of the Compromise Payoff. Except as set forth in this Section 6.1, from and after the filing of Notice of Conditional Settlement and Voluntary Dismissal, the Parties shall take no further actions in the Litigation until the final dismissal in accordance with Section 6.2. In the event of any default by Teymourian Parties, or any of them, under this Agreement, before filing and entry of judgment, Dakota Parties shall provide Teymourian Parties fifteen (15) days (the "Cure Period") written notice, by electronic mail, of default. If, after expiration of the Cure Period, the asserted default has not been cured, then without further notice, Dakota Parties may file the Judgment Stipulation, together with a declaration by counsel for Dakota Parties setting forth under the penalty of perjury the nature of the default, that the default has not been cured despite notice and that the Cure Period has elapsed, and stating the amount of the payments made hereunder and the remaining unpaid and outstanding balance of the Settlement Sum together with accrued interest; and, upon ex parte application, obtain entry of judgment against the applicable Teymourian Parties, as well as an award of attorneys' fees and costs, as set forth in the Judgment Stipulation. A judgment so entered shall be non-dischargeable in any bankruptcy proceeding. Provided that no default by Teymourian Parties occurs, the signed Judgment Stipulation will be destroyed by Dakota Parties' counsel following Dakota Parties' receipt of the Compromise Payoff.

6.2     Final Dismissals. In consideration of, subject to and on the condition of the full and timely performance of each and every promise, covenant, and obligation of Teymourian Parties pursuant to this Agreement, promptly following full payment of the Compromise Payoff, Dakota Parties shall cause the dismissal with prejudice of the Litigation, including the Cross-Complaint, as to all parties and all causes of action.

7.     Mutual Release.

7.1     Release. For the consideration described in this Agreement, and all representations, promises and covenants of the Parties contained herein, effective as of the Court Approval Date, each of the Parties, for itself and on behalf of all of its successors, assigns, affiliates, and all those now or later acting on its behalf, shall and hereby does release and forever acquit, extinguish, and discharge the other Party, and its agents, servants, successors, heirs, executors, administrators and affiliates (specifically including, without limitation, Dakota Parties' affiliates 2710 Middlefield Holdings LLC, California Home Loans, Derald Kenoyer, and Keith Charles Knapp) (collectively, the "Released Parties"), from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations, controversies, costs, expenses, damages, orders and liability of whatever kind or nature in law or equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden which have existed or may have existed, or which do exist, or which hereafter can, shall, or may exist by reason of any matter, cause or thing done, omitted, or occurring at any time on or before the effective date of this Agreement, including without limitation all such claims and damages which arise out of, or relate in any way to, flow from or are in consequence of the Loans, the Loan Documents, or the matters that are alleged or could have been alleged in the Litigation.

7.2     Change of Circumstances; Waiver. The Parties agree that if any facts or circumstances with respect to which the release set forth in Section 7.1 (the "Release") and/or the Middlefield Release (defined in Section 2.1) is executed are at any time later found, suspected or claimed to be other than or different from the facts and circumstances now believed by any of the

Case: 23-51443     Doc# 33-4     Filed: 03/08/24     Entered: 03/08/24 15:08:49     Page 319
of 411

Parties to be true, the Parties expressly accept and assume the risk of such possible differences of facts and circumstances, and agree that this Release shall be and remain effective notwithstanding any such differences in any facts or circumstances. The Parties intend that this Release shall extend to all claims known or unknown. The Parties, after consultation with independent counsel, waive all rights under Section 1542 of the Civil Code of the State of California, which reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**The Parties agree and acknowledge that the released claims extend to and include unknown and unsuspected claims.** Each Party has made an investigation of the facts pertaining to this Agreement and to the released claims as it deems necessary. The Parties are aware that they may hereafter discover facts in addition to, contrary to, or different from those it now knows or believes to be true with respect to any or all of the matters set forth herein. Nevertheless, it is the intention of the Parties to fully, finally, and forever settle and release all claims of any kind or nature whatsoever that were in existence as of the date of this Agreement. In furtherance of the Parties' intent, the release in this Agreement shall remain in full and complete effect notwithstanding the discovery or existence of any additional, contrary, or different facts.

       7.3    <u>Conditions and Exceptions</u>. Notwithstanding anything to the contrary in this Agreement, the Release, as to each Party released, is conditioned upon the full performance of the covenants of that Party hereunder (including without limitation Teymourian Parties' payment of the entire Compromise Payoff), and is not intended to apply to the rights of any Party to commence and/or maintain any action arising out of any alleged breach of the terms of this Agreement, or to enforce any judgment based thereon in the event of a default hereunder. Furthermore, the Release and the Middlefield Release are not intended to apply and shall not be deemed effective as to, any claims or disputes among or between any of the persons and entities collectively referred to herein as "Teymourian Parties", nor to any claims or disputes among or between any of the persons and entities collectively referred to herein as "Dakota Parties", nor among or between a Party and its own affiliated Released Parties, if the same are unrelated to the disputes between Teymourian Parties and Dakota Parties.

       7.4    <u>Covenant Not to Sue; Release as a Defense</u>. The Parties, and each of them, agree that they will not bring, commence, maintain or prosecute, directly or indirectly, any action at law or proceeding in equity or any legal or administrative proceeding or any claim for damages or other relief against those parties released herein based in whole or in part on any claim, demand, cause of action, obligation, or liability based upon, arising out of, or connected with any act, cause, matter or thing which is released in this Agreement. The Release and/or the Middlefield Release may, and shall, be pled as a full and complete defense to, and may be used as a basis for an injunction against any action, suit or proceeding which may be instituted, prosecuted, or maintained in breach of the covenants contained in this Section 7.4.

       8.    <u>Enforcement</u>.

8.1 <u>Attorneys' Fees.</u>Dakota Parties assert that the fees and costs under the Loan Documents and this Agreement total approximately $500,000.00. Such attorneys' fees and legal costs shall be waived in the event of the performance of the Teymourian Parties' obligations under this Agreement, such that they are not in default. In the event of a default hereunder, however, the Teymourian Parties shall remain liable to the Dakota Parties for such fees and costs, and shall be included in the indebtedness of Teymourian Parties under the Loan Documents. These fees and costs are subject to increase. Teymourian Parties shall bear their own legal fees and costs, except as to any fees and costs incurred to enforce the terms of this Agreement. In accordance with the Code of Civil Procedure Section 664.6, the Superior Court shall retain jurisdiction of the matters addressed in the Litigation for the purposes of enforcing this Agreement. In the event of any dispute or enforcement proceeding arising out of this Agreement, including but not limited to any new any action or proceeding to enforce, set aside, or modify the terms of this Agreement, including an arbitration or reference pursuant to §638 of the Code of Civil Procedure, the prevailing party shall be entitled to recover all costs and expenses, including the actual fees of its attorneys incurred for prosecution, defense, consultation, or advice in that action or proceeding, in addition to all other appropriate relief.

8.2 <u>Revival</u>. If the payment of money or the conveyance and transfer of any property to or for the benefit of Dakota Parties, or any of them (including any transfer in whole or partial satisfaction of indebtedness), or any of the obligations of the Parties pursuant to this Agreement, or the exercise by any Lender of any of any rights or remedies under this Agreement or otherwise, should for any reason subsequently be alleged or found to be "fraudulent" or otherwise avoidable within the meaning of any state or federal law relating to fraudulent transfers or conveyances, or are alleged or found to be preferential or otherwise avoidable or recoverable, in whole or in part or for any reason, under Bankruptcy Code or any other federal or state law (individually and collectively herein referred to as a "Voidable Transfer"), and a Lender is required to pay or restore the amount of any such Voidable Transfer, or any portion thereof, then, and in any such case, the liability and indebtedness of Teymourian Parties, as applicable, to Dakota Parties (including, without limitation, all legal expenses, and all costs, expenses, and attorneys' fees of Lender related thereto, which may be incurred in connection with any action or response of Dakota Parties, including, but not limited to, any action for relief from stay or similar proceedings, and including any repayment by way of settlement of any claim of Voidable Transfer), and Lender's rights and security interests in all such collateral, shall automatically be revived, reinstated, and restored in such amount or amounts, and shall continue to exist as though such Voidable Transfer had not been made. Nothing set forth herein is or shall constitute an admission that any such Voidable Transfer has occurred or may hereafter occur. Teymourian Parties expressly acknowledge that Dakota Parties may rely upon advice of counsel in taking any action or otherwise responding to any such alleged Voidable Transfer, and if so advised by counsel, may settle, without defending, any action to avoid any alleged Voidable Transfer, and that upon that settlement Teymourian Parties, as applicable, shall again be liable for any deficiency resulting from that settlement as provided in this Agreement, and all security therefor shall be automatically revived and reinstated in the same lien priority as existed immediately prior to that alleged Voidable Transfer. Notwithstanding any provision to the contrary contained in this Agreement, including, without limitation, any provision for the dismissal (with or without prejudice) of any litigation with respect to the obligations, liability, or indebtedness of any of the Teymourian Parties to Dakota Parties, including without limitation the Litigation, said obligation, liability, and indebtedness of Teymourian Parties, as applicable, revived pursuant to this Section shall be

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 321 of 411

deemed to be new obligations of Teymourian Parties to Lender, arising as of the date of revival hereunder, and shall be deemed to be created for and supported by good and valuable consideration then existing, and Dakota Parties shall be entitled to commence and prosecute any and all actions or proceedings to enforce and collect upon said obligations which Dakota Parties would otherwise be entitled to commence and prosecute without regard to the filing of any such dismissal and without regard to the running of any applicable statute of limitation relating to the original obligations of Teymourian Parties to Dakota Parties under the Loans.

       8.3   <u>Dakota Parties' Rights and Remedies</u>. All rights and remedies of Dakota Parties under this Agreement or applicable law, or otherwise afforded to Dakota Parties, shall be cumulative and not alternative.  Until the indebtedness under the Loans has been satisfied in full, pursuant to Section 4.2 or otherwise, all of the rights, privileges, powers, and remedies granted to Dakota Parties hereunder shall continue to exist and may be exercised by Dakota Parties at any time and from time to time irrespective of the expiration of any otherwise applicable statute of limitations.

       9.   <u>Notices</u>. Any notice, request, or demand required or permitted by this Agreement to be given by any Party to another, shall be deemed delivered (a) upon transmission, if sent between 8:00 a.m. and 5:00 p.m. Pacific Time on a business day, or on the next succeeding business day if sent at another time, by email to the address of the receiving Party specified below, with original copy thereof to be sent within twenty-four (24) hours after said transmission by first class mail or overnight courier with charges prepaid, addressed to the receiving Party at the address specified below; or (b) on the next succeeding business day if deposited with a reputable overnight private commercial delivery service (*e.g.*, FedEx) and addressed to the receiving Party at the address specified below; or (c) upon delivery, if given in writing by personal delivery, directly or through commercial messenger or courier service, at the receiving Party's address specified below. The Parties' respective address are  as follows, provided that any Party may change its address for purposes of notice hereunder upon delivery to the other Party of a notice of a change of address in the manner provided for notices hereunder.

       To Dakota Parties:     Attn: Paul Greenfield
                                  2597 Flagstone Drive
                                  San Jose, CA 95132
                                  ada@77westgroup.com and
                                  paulgnet@gmail.com

       with copy to:         David Tillotson
                                  Leland, Parachini, Steinberg, Matzger & Melnick, LLP
                                  135 Main Street, Suite 1200
                                  San Francisco, CA 94105
                                  dtillotson@lpslaw.com

       To Teymourian Parties:  Attn: Nariman Teymourian
                                  66 Barry Lane
                                  Atherton, CA 94027
                                  narimantey@gmail.com

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 322 of 411

with copy to:        James S. Monroe
Monroe Law Firm
One Sansome Street, Suite 3500
San Francisco, CA 94104
jim@monroe-law.com

10.     <u>Representations and Warranties</u>.

10.1    <u>Authority and Consent</u>. Each of the Parties represents and warrants to the other that: (a) it has entered into this Agreement after full opportunity for independent investigation and consultation with its individual counsel, and has fully inspected all books, records, and things which it has requested or desires to so inspect prior to executing this Agreement; (b) it freely and voluntarily executes this Agreement, and has the full and complete authority to enter into this Agreement on its own behalf and on behalf of any party or parties it purports to represent, and to perform all acts and incur all obligations created under this Agreement without the consent or approval of any other person; (c) it owns the claims it purports to release, no other person or entity has or had any interest in said claims, and has the sole right to execute this Agreement as the owner of said claims; (d) it has carefully read this Agreement and knows and understands the contents thereof, and has executed the same as its own free act; and (e) it has consulted, or had sufficient opportunity to consult with, its own attorney with respect to its rights under this Agreement.  Each Party represents, warrants, and agrees that it has not heretofore assigned or transferred to any other person or entity any claim, demand, or cause of action based on, arising out of, or in connection with the transactions and events which are the subject of this Agreement, *provided, however*, that the Parties have received an unsigned Pledge Agreement from paladin Funding, Inc. ("Paladin"), purporting to pledge Ferrando Diversified Capital, LLC's membership voting rights with respect to 2700 Middlefield to Paladin.  To the extent that Paladin assets that it retains such voting rights, the Teymourian Parties agree to indemnify and hold harmless the Dakota Parties for any claims made by Paladin against the Parties.

10.2    <u>Assignment of Claims</u>. Each of the Parties expressly represents and warrants that it has not heretofore assigned or transferred to any other person or entity any portion of any claim, demand, cause or causes of action that said Party has or might have based on, arising out of, connected with the Loans, the Litigation, the Chapter 11 Case, or any of the transactions and events which are the subject of this Agreement, and that no portion of any recovery or settlement to which that Party might be entitled has been assigned or transferred to any other person or entity in any manner, including by way of subrogation, or by operation of law or otherwise.

10.3    <u>Disclaimer</u>. It is understood that this Agreement is the result of a compromise settlement of disputed claims.  Neither the compromise of the disputes between the Parties, the payment of any consideration hereunder, the Release, the Middlefield Release, nor anything contained in this Agreement, shall be construed to be an admission of liability or culpability by any Party, except to the extent that Teymourian Parties must acknowledge facts sufficient to substantiate a non-dischargeability finding as described in Section 5.3.

10.4    <u>Taxes; Indemnification</u>. Each Party shall be solely responsible for, and is legally bound to make payment of, any taxes determined to be due and owing (including penalties and interest related thereto) by it to any federal, state, local, or regional taxing authority as a result

of its receipt of any of the consideration described herein, including without limitation the cancellation of debt. Each Party acknowledges that the other has not made, and it does not rely upon, any representations regarding the tax treatment of the consideration paid or received pursuant to this Agreement; and each Party agrees to indemnify and hold the other harmless in the event that any governmental taxing authority asserts against it any claim for unpaid taxes, failure to withhold taxes, penalties, or interest based upon said consideration.

11. Miscellaneous.

11.1 Entire Agreement. Each Party, individually and collectively, declares and represents that no promises, inducements, or other agreements not expressly referred to herein have been made, and that this Agreement, together with the Loan Documents identified herein, contains the entire agreement between them with respect to the subject matter hereof and supersedes all other agreements, oral or written, between the Parties with respect thereto. Any amendment or modification to this Agreement must be in writing and must be executed by all Parties. No claim of waiver, consent, or acquiescence with respect to any provision of this Agreement shall be made with respect to any Party, except upon the basis of a written instrument executed by that Party.

11.2 Successors and Assigns. Teymourian Parties shall not assign or transfer this Agreement or any right or obligation hereunder without the prior written consent of Dakota Parties, which consent Dakota Parties may withhold in their sole and absolute opinion and judgment. Teymourian Parties agree and consent to any sale or transfer by Dakota Parties, or any of them, at any time, of Dakota Parties' rights and obligations hereunder to one or more assignees or transferees, whether related or unrelated to any Dakota Party. Teymourian Parties agree that any such assignee or transferee may enforce its rights and interests under this Agreement irrespective of any personal claims or defenses which Teymourian Parties may have against any of the Dakota Parties. Subject to the foregoing, the provisions of this Agreement shall be binding upon and inure to the benefit of each of the Parties, and their respective successors in interest, assigns, heirs, and personal representatives.

11.3 No Third Parties Benefitted. This Agreement is made for the sole benefit and protection of the Parties, the Released Parties, and the Parties' successors and assigns to the extent set forth in Section 11.2, and no other person or party shall have any right of action or right to rely thereon, and the Parties agree that nothing contained in this Agreement shall be construed to vest in any other person or entity, any interest in or claim upon the rights and interests of the Parties hereunder or in any proceeds thereof.

11.4 Waivers. A waiver of any covenant or provision of this Agreement shall not be deemed a waiver of any other covenant or provision in this Agreement, and no waiver shall be valid unless in writing and executed by the waiving Party. An extension of time for performance of any obligation or act shall not be deemed an extension of the time for performance of any other obligation or act. No failure or delay in the exercise of any right, power, or privilege hereunder, or under any other agreement entered into in connection herewith, shall operate as a waiver thereof, and no single or partial exercise of any such right, power, or privilege shall preclude a further exercise thereof or of any other right, power or privilege.

11.5    Time. Time is of the essence of each and every provision of this Agreement. If the time period by which any right, option or election provided under this Agreement must be exercised, or by which any act required under this Agreement must be performed, expires on a Saturday, Sunday or a holiday, then that time period shall be automatically extended to the next business day. As used herein, a "business day" is any day other than a Saturday, Sunday, or a Federal or California state holiday.

11.6    Governing Law. All questions with respect to this Agreement and the rights and liabilities of the Parties shall be governed by the laws of the State of California.

11.7    Invalid Provisions. If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws of any jurisdiction, that provision shall be fully severable; this Agreement shall be construed and enforced as if that illegal, invalid or unenforceable provision had never composed a part of this Agreement, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by that provision or by its severance from this Agreement.

11.8    Interpretation. The Parties, and each of them, acknowledge that this Agreement is the result of negotiations among them, waive the provisions of California Civil Code Section 1654, and agree that the language of this Agreement shall neither be construed for nor against any Party.

11.9    Headings, Pronouns, and References. The section headings and captions of this Agreement are, and the arrangement of this instrument is, for the sole convenience of the Parties to this Agreement. The section headings, captions and arrangement of this instrument do not in any way affect, limit, amplify or modify the terms and provisions of this Agreement. All pronouns used herein shall be deemed to mean and include the masculine, feminine, neuter, singular and/or plural forms as may be applicable. Unless otherwise indicated, all references to Section numbers are to this Agreement, and all references to a Section include all subsections and paragraphs thereof. All exhibits referred to in this Agreement are attached to it and incorporated in it by this reference.

11.10    Further Assurances. Each of the Parties shall at all times fully cooperate with each other, and shall cause their respective agents and attorneys to cooperate, in a prompt and timely manner, in connection with the performance of all obligations of the Parties pursuant to this Agreement, and which may otherwise be necessary or appropriate to carry out and enforce the provisions of this Agreement. The Parties agree to take all actions and to execute and deliver all documents and instruments as may be reasonably required from time to time to carry out the terms and provisions of, and to ensure that the Parties and each of them receive the benefit of this Agreement.

11.11    Signatures. Each individual signing this Agreement on behalf of any Party represents and warrants that he or she has been duly authorized and has the requisite authority to execute and deliver this Agreement on behalf of the Party he or she purports to represent, and to bind that Party to the terms and conditions of this Agreement. This Agreement may be executed simultaneously or in any number of counterparts, each of which shall be deemed an original, equally admissible in evidence, but all of which together shall constitute one and the same

Agreement. This Agreement may be executed with digital, electronic, or facsimile signatures and the same shall be effective and enforceable as originals.

IN WITNESS WHEREOF the Parties hereto have executed this Settlement Agreement as of the date first above written.

DAKOTA PARTIES

Dakota Note, LLC,
a South Dakota limited liability company

_____

By: Arick D. Amspacker, Member

Natural Software Systems, Inc.
Money Purchase Pension Plan

_____

By: Paul Greenfield, Trustee

_____

Tanya Waltimyer

_____

Jason Greenfield

_____

Paul Greenfield

*[Signatures continue on following page(s)]*

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 326
of 411

TEYMOURIAN PARTIES

_____

Nariman Teymourian

_____

Gail Suzanne Marie Teymourian


201 El Camino Real LLC,
a California limited liability company

_____

By: Nariman Teymourian, Manager


2700 Middlefield Road, LLC,
a Delaware limited liability company

_____

By: Nariman Teymourian, Manager


Alviso Park LLC,
a Delaware limited liability company

_____

By: Nariman Teymourian, Manager


Ferrando Diversified Capital LLC,
a California limited liability company

_____

By: Nariman Teymourian, Managing Member

APPROVED AS TO FORM:

LELAND, PARACHINI, STEINBERG,
MATZGER & MELNICK, LLP

Dated _____

By: David B. Tillotson
Attorneys for Dakota Parties

BEROKIM LAW

Dated _June 19, 2023_

By: Kousha Berokim
Attorneys for Teymourian Parties

Agreement. This Agreement may be executed with digital, electronic, or facsimile signatures and the same shall be effective and enforceable as originals.

IN WITNESS WHEREOF the Parties hereto have executed this Settlement Agreement as of the date first above written.

DAKOTA PARTIES

Dakota Note, LLC,
a South Dakota limited liability company

_____

By: Arick D. Amspacker, Member

Natural Software Systems, Inc.
Money Purchase Pension Plan

_____

By: Paul Greenfield, Trustee

_____

Tanya Waltimyer

_____

Jason Greenfield

_____

Paul Greenfield

*[Signatures continue on following page(s)]*

Agreement. This Agreement may be executed with digital, electronic, or facsimile signatures and the same shall be effective and enforceable as originals.

IN WITNESS WHEREOF the Parties hereto have executed this Settlement Agreement as of the date first above written.

DAKOTA PARTIES

Dakota Note, LLC,
a South Dakota limited liability company

_____, Member
By: Arick D. Amspacker, Member

Natural Software Systems, Inc.
Money Purchase Pension Plan

_____
By: Paul Greenfield, Trustee

_____
Tanya Waltimyer

_____
Jason Greenfield

_____
Paul Greenfield

*[Signatures continue on following page(s)]*

16

Agreement. This Agreement may be executed with digital, electronic, or facsimile signatures and the same shall be effective and enforceable as originals.

IN WITNESS WHEREOF the Parties hereto have executed this Settlement Agreement as of the date first above written.

DAKOTA PARTIES

Dakota Note, LLC,
a South Dakota limited liability company

_____

By: Arick D. Amspacker, Member


Natural Software Systems, Inc.
Money Purchase Pension Plan

_____

By: Paul Greenfield, Trustee


*Tanya Waltimyer*
_____
Tanya Waltimyer


_____

Jason Greenfield


_____

Paul Greenfield

*[Signatures continue on following page(s)]*

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 331 of 411

**Exhibit A**
**Schedule of Loan Documents and Properties**

*Loans and Loan Documents*

Loan No. 9645 – Nov 2018 – Original Principal $15,400,000

Consolidating refinance of previous loans made by Dakota, NSSMPPP, Waltimyer, and Jason to Middlefield LLC and Teymourian.  Additional advance of $325,000, plus a 3% advance fee, made in April 2022 as shown in Exhibit B.

1. Note Secured by a Deed of Trust dated 11/08/2018, by Borrower Middlefield LLC and Teymourian

2. Deed of Trust recorded 12/28/2018 as Document No. 2018-101122 encumbering Middlefield; this Deed of Trust was non-judicially foreclosed as described in Recital E

3. Deed of Trust recorded 12/28/2018 as Document No. 2018-101123 encumbering Barry

Loan No. 2019-0706 – Jul 2019 – Original Principal $2,500,000

New funding by Dakota to Middlefield LLC, Alviso, and Teymourian, with Guaranty by Teymourian; First American Title File No. 3809-5993020

All documents dated July 24, 2019 except as otherwise stated below.

1. Note Secured by Three Deeds of Trust

2. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 7/26/2019 in San Mateo County as Document No. 2019-059023, encumbering Middlefield

3. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 7/26/2019 in San Mateo County as Document No. 2019-059024, encumbering Barry; this Deed of Trust was subsequently reconveyed and is no longer in effect

4. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement originally recorded 10/2//2019 in Santa Clara County as Document No. 24295276, encumbering Baytech; re-recorded 6/8/2022 as Document No. 25316715

5. Guaranty

6. Environmental Indemnity Agreement

7. Spousal Consent and Waivers (by Gail)

8. Arbitration Agreement

9. Agreement to Correct Errors and Omissions

10. Loan Escrow Instructions (by Borrower)

11. Broker-Lender Escrow Instructions

12. Loan Disclosure Statement

13. Balloon Payment Disclosure

14. Forced-Placed Insurance Disclosure

15. Hazard Insurance Requirements

16. Conditional Loan Approval

17. Business Purpose Statement

18. Entity Certificate – Middlefield LLC

19. Entity Certificate – Alviso

20. Anti-Money Laundering Declaration

21. USA Patriot Act Important Information disclosures

22. Language Capacity Declaration

23. Declaration of Occupancy

24. Address/Phone Number Certification


<u>Loan No. 2019-1005 – Oct 2019 – Original Principal $2,000,000</u>

New funding by Dakota to Middlefield LLC, Alviso, and Teymourian, with Guaranty by Teymourian; First American Title File No. 3809-6056394

All documents dated October 8, 2019 except as otherwise stated below.

1. Note Secured by Three Deeds of Trust
2. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 10/11/2019 in San Mateo County as Document No. 2019-085099, encumbering Middlefield
3. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 10/11/2019 in San Mateo County as Document No. 2019-085098, encumbering Barry; this Deed of Trust was subsequently reconveyed and is no longer in effect
4. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement originally recorded 10/11/2019 in Santa Clara County as Document No. 24302783, encumbering Baytech; re-recorded 6/8/2022 as Document No. 25316714
5. Guaranty
6. Environmental Indemnity Agreement
7. Arbitration Agreement
8. Agreement to Correct Errors and Omissions
9. Loan Escrow Instructions (by Borrower)
10. Broker-Lender Escrow Instructions
11. Loan Disclosure Statement
12. Balloon Payment Disclosure

13. Forced-Placed Insurance Disclosure

14. Hazard Insurance Requirements

15. Conditional Loan Approval

16. Business Purpose Statement

17. Entity Certificate – Alviso

18. Entity Certificate – Middlefield LLC

19. Anti-Money Laundering Declaration

20. USA Patriot Act Important Information disclosures (Teymourian)

21. Language Capacity Declaration

22. Declaration of Occupancy

23. Address/Phone Number Certification

Loan No. 2019-1201 – Dec 2019 – Original Principal $6,000,000

New funding by Dakota and NSSMPPP to Middlefield LLC, Alviso, and Teymourian, with Guaranty by Teymourian; First American Title File Nos. 3809-6088736, 3809-6105355, 3809-6105365

All documents dated December 17, 2019 except as otherwise stated below.

1.  Note Secured by Three Deeds of Trust

2.  Addendum One to Note Secured by Three Deeds of Trust and Loan Documents of the Same Date (concerning future ECR collateral)

3.  Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 12/24/2019 in San Mateo County as Document No. 2019-109852, encumbering Middlefield; this Deed of Trust was subsequently reconveyed (Document No. 2022-024829) and is no longer in effect

4.  Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 12/24/2019 in San Mateo County as Document No. 2019-109853, encumbering Barry

5.  Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 12/24/2019 in Santa Clara County as Document No. 24364762, encumbering Baytech; this Deed of Trust was subsequently reconveyed and is no longer in effect

6.  Broker-Lender Escrow Instructions

7.  Business Purpose Statement

8.  Subordination Agreement dated August 18, 2021 and recorded 09/22/2021 in San Mateo County as Document No. 2021-135496, with respect to the Deed of Trust identified in #4 above

<u>Advance – Nov 2021 – $2,500,000</u>

Additional funding by Dakota, NSSMPPP, and Greenfield to Nariman, for benefit of ECR LLC, as modification to all above-identified Loans

1. Agreement for $2,500,000 loan advance

*Properties Definitions*

<u>Middlefield / Middlefield Property</u>

That certain real property located at 2710 Middlefield Road, Redwood City, CA 94063, together with the approximately 36,000 square foot office building and other improvements thereon, which was previously owned by Middlefield LLC and encumbered by Deeds of Trust securing the Loans identified above as numbers 9645, 2019-0706, 2019-1005, and the Advance.

<u>Barry / Barry Property</u>

That certain real property located at 66 Barry Lane, Atherton, CA 94027, together with the approximately 9,938 square foot single-family residence and other improvements thereon, which as of the Execution Date is owned by Teymourian and encumbered by Deeds of Trust securing the Loans identified above as numbers 9645 and 2019-1201 and the Advance (the "Barry Deeds of Trust")

<u>Baytech / Baytech Property</u>

That certain real property located at 110 Baytech Drive, San Jose, CA 95134, together with the approximately 57,976 square foot office building and other improvements thereon, which as of the Effective Date is owned by Alviso and encumbered by Deeds of Trust securing the Loans identified above as numbers 2019-0706 and 2019-1005.  (the "Baytech Deeds of Trust").

**Exhibit B**
**Schedule of Loan Amounts**

| Teymourian Loans as of | 11/8/2022 | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| Loan No. | Date | Loan Funded | Interest Accrued | Payment | Balance | |
| 9645 | 12/28/2018 | $ 15,400,000.00 | $ - | $ - | $ 15,400,000.00 | |
| | 1/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| | 2/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| | 3/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| | 4/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| | 5/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| | 6/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| 2019-0706 | 7/26/2019 | 2,500,000.00 | 147,416.69 | 147,416.69 | 17,900,000.00 | |
| | 8/1/2019 | - | 141,166.67 | 141,166.67 | 17,899,999.99 | |
| | 9/1/2019 | - | 172,416.67 | 141,166.67 | 17,931,249.99 | |
| 2019-1005 | 10/14/2019 | 2,000,000.00 | 192,416.65 | 161,166.65 | 19,962,499.99 | |
| | 11/1/2019 | - | 172,416.67 | - | 20,134,916.65 | |
| 2019-1201 | 12/23/2019 | 6,000,000.00 | 205,750.00 | - | 26,340,666.65 | |
| | 1/1/2020 | - | 219,083.36 | - | 26,559,750.01 | |
| | 2/1/2020 | - | 255,750.00 | - | 26,815,500.01 | |
| | 3/1/2020 | - | 255,750.00 | - | 27,071,250.01 | |
| | 4/1/2020 | - | 255,750.00 | - | 27,327,000.01 | |
| | 5/1/2020 | - | 255,750.00 | - | 27,582,750.01 | |
| | 6/1/2020 | - | 255,750.00 | 878,549.00 | 26,959,951.01 | |
| | 7/1/2020 | - | 255,750.00 | 124,508.78 | 27,091,192.23 | |
| | 8/1/2020 | - | 255,750.00 | 35,000.00 | 27,311,942.23 | |
| | 9/1/2020 | - | 263,562.50 | 35,000.00 | 27,540,504.73 | |
| | 10/1/2020 | - | 263,562.50 | 35,000.00 | 27,769,067.23 | |
| | 11/1/2020 | - | 263,562.50 | 35,000.00 | 27,997,629.73 | |
| | 12/1/2020 | - | 270,895.84 | 35,000.00 | 28,233,525.57 | |
| | 1/1/2021 | - | 270,895.84 | 35,000.00 | 28,469,421.41 | |
| | 2/1/2021 | - | 270,895.84 | 35,000.00 | 28,705,317.25 | |
| | 3/1/2021 | - | 270,895.84 | 35,000.00 | 28,941,213.09 | |
| | 4/1/2021 | - | 270,895.84 | 35,000.00 | 29,177,108.93 | |
| | 5/1/2021 | - | 270,895.84 | 35,000.00 | 29,413,004.77 | |
| | 6/1/2021 | - | 270,895.84 | 35,000.00 | 29,648,900.61 | |
| | 7/1/2021 | - | 270,895.84 | 35,000.00 | 29,884,796.45 | |
| | 8/1/2021 | - | 270,895.84 | | 30,155,692.29 | |
| | 9/22/2021 | - | 262,341.15 | 6,000,000.00 | 24,418,033.44 | |
| | 10/1/2021 | - | 256,699.66 | | 24,674,733.11 | |
| | 11/1/2021 | - | 256,699.66 | | 24,931,432.77 | |
| Advance, incl $75K advance fee | 11/12/2021 | 2,575,000.00 | - | - | 27,506,432.77 | |
| | 12/1/2021 | - | 258,884.39 | - | 27,765,317.16 | |
| | 1/1/2022 | - | 312,103.18 | - | 28,077,420.33 | |
| | 2/1/2022 | - | 312,103.18 | - | 28,389,523.51 | |
| | 3/1/2022 | - | 312,103.18 | - | 28,701,626.69 | |
| | 4/1/2022 | - | 312,103.18 | - | 29,013,729.86 | |
| 9645, add'l advance incl 3% advance fee | 4/7/2022 | 334,750.00 | - | - | 29,348,479.86 | |
| | 5/1/2022 | - | 340,947.86 | - | 29,689,427.72 | |
| | 6/1/2022 | - | 340,947.86 | 70,000.00 | 29,960,375.58 | |
| | 7/1/2022 | - | 345,517.09 | 50,000.00 | 30,255,892.66 | |
| | 8/1/2022 | - | 193,615.52 | - | 30,449,508.18 | |
| | 9/1/2022 | - | 193,615.52 | 90,000.00 | 30,553,123.70 | |
| | 10/1/2022 | - | 193,615.52 | - | 30,746,739.21 | |
| | 11/1/2022 | - | 193,615.52 | | 30,940,354.73 | |
| | | | | Total Debt | $ 30,940,354.73 | |
| | | | | (Exclusive of Default Interest and Costs of Collection) | | |

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 336 of 411

**Exhibit C**
**Judgment Stipulation**

See Attached

DAVID B. TILLOTSON (State Bar # 148162)
Dtillotson@lpslaw.com
RAVI D. SAHAE (State Bar # 276113)
Rsahae@lpslaw.com
LELAND, PARACHINI, STEINBERG,
   MATZGER & MELNICK, LLP
135 Main Street, Suite 1200
San Francisco, California 94105
Telephone: (415) 957-1800
Facsimile: (415) 974-1520

Attorneys for Defendants and Cross-Complainants
DAKOTA NOTE, LLC, TANYA WALTIMYER,
NATURAL SOFTWARE SYSTEMS, INC.
MONEY PURCHASE PENSION PLAN, JASON
GREENFIELD, and 5 PALMS, LLC

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN MATEO

| | |
|---|---|
| NARIMAN TEYMOURIAN, et al., | Case No. 22-CIV-04679 |
| Plaintiffs, | **STIPULATION FOR ENTRY OF JUDGMENT** |
| vs. | |
| DAKOTA NOTE, LLC, et al., | |
| Defendants. | |
| | Action Filed: November 9, 2022 |
| DAKOTA NOTE, LLC, et al., | Trial Date: None Set |
| Cross-Complainants, | |
| vs. | |
| NARIMAN TEYMOURIAN, et al., | |
| Cross-Defendants. | |
| AND RELATED CROSS-ACTIONS | |

This Stipulation for Entry of Judgment ("Stipulation") is entered into by Cross-Defendants and Cross-Complainants Nariman Teymourian, Gail Suzanne Marie Teymourian, 2700 Middlefield Road, LLC, a Delaware limited liability company, Alviso Park LLC, a Delaware

STIPULATION FOR ENTRY OF JUDGMENT

limited liability company, and Ferrando Diversified Capital LLC, a California limited liability company (collectively, "Teymourian Parties"); and by Cross-Complainants and Cross-Defendants Dakota Note, LLC, a South Dakota limited liability company, Natural Software Systems, Inc. Money Purchase Pension Plan, Tanya Waltimyer, Jason Greenfield, and 5 Palms, LLC (collectively, "Dakota Parties") in this action.

## **RECITALS**

A.      Between approximately November 2018 and April 2022, one or more of the Dakota Parties made a series of secured loans and advances to, or for the benefit of, one or more of the Teymourian Parties (the "Loans", and each a "Loan"), in the aggregate principal amount of Twenty-Eight Million Seven Hundred Twenty-Five Thousand Dollars ($28,725,000.00). Teymourian Parties defaulted in their payment obligations under the Notes, Deeds of Trust, and other agreements and instruments evidencing and securing the Loans (collectively, the "Loan Documents"), and Dakota Parties commenced non-judicial foreclosure proceedings with respect to certain of the Deeds of Trust securing the Loans.  Various disputes arose between the Teymourian Parties and the Dakota Parties related to the Loans, including without limitation as to the amounts due and owing under, and the enforceability of, the Loan Documents.  On or about November 9, 2022, Teymourian Parties filed the Complaint commencing this action, which, together with the Cross-Complaints subsequently filed by Dakota Parties and by Teymourian Parties and including all claims, complaints, answers, affirmative defenses, and cross-complaints that have been or could be made in said action, is referred to herein as the "Litigation".

B.      In or about June 2023, the Dakota Parties and Teymourian Parties, together with certain other affiliates of each, reached a settlement, the terms of which have been memorialized by a written Settlement Agreement and Release ("Settlement Agreement").

C.      Dakota Parties and Teymourian Parties enter into this Stipulation pursuant to the Settlement Agreement.

**NOW, THEREFORE, IT IS HEREBY STIPULATED** by and between Dakota Parties and Teymourian Parties as follows:

{CRE-ESP/002/STL/00010035.DOCX 4}                                                                2
STIPULATION FOR ENTRY OF JUDGMENT

1     1.       The foregoing recitals are agreed to by Dakota Parties and Teymourian Parties, and

2    are incorporated into the following stipulations as if fully set forth herein.

3     2.       The Settlement Agreement requires, *inter alia*, payment by Teymourian Parties to

4    Dakota Parties of the sum of Six Million Dollars ($6,000,000.00) ("Settlement Sum") plus interest

5    accrued on the outstanding balance thereof at the rate of Seven Percent (7.0%) per annum, in

6    installments due in the amounts and at the times set forth in the Settlement Agreement (each, a

7    "Payment"), as follows: (a) the sum of $3,000,000.00 to be paid within thirty (30) calendar days

8    following the Approval Date (hereinafter defined), (b) quarterly payments of $100,000.00 each to

9    be made beginning on the first day of the calendar quarter (*i.e.*, January 1, April 1, August 1, or

10    December 1) following the Approval Date, and continuing on the first day of every subsequent

11    quarter until the entire balance of the Settlement Sum is paid, with each such payment being

12    applied to reduce the outstanding principal balance of the Settlement Sum, and (c) the entire

13    remaining balance of the Settlement Sum (equal to $3,000,000.00 less the sum of all Quarterly

14    Payments having then been made) plus all accrued interest to be paid on or before the date that is

15    twenty-four (24) months following the Approval Date.  As used herein, the "Approval Date" is the

16    date on which the United States Bankruptcy Court for the Northern District of California issues an

17    order or ruling substantially granting a motion made, pursuant to the terms and conditions of the

18    Settlement Agreement, in that certain proceeding identified as *In re Gail Suzanne Marie*

19    *Teymourian*, Chapter 11 Case No. 23-30259, for approval of the Settlement Agreement pursuant

20    to Federal Rule of Bankruptcy Procedure 9019.

21     3.       In the event of any default by the Teymourian Parties under the Settlement

22    Agreement, including without limitation the failure to make any Payment when due, and if said

23    default remains uncured following notice and a cure period as set forth in the Settlement

24    Agreement, then upon *ex parte* application as described below, judgment shall be entered on

25    behalf of Dakota Parties and against Teymourian Parties for the amount of the outstanding unpaid

26    balance of the Settlement Sum of Six Million Dollars ($6,000,000.00), plus interest accrued

27    thereof at the rate of Seven Percent (7.0%) per annum from the Approval Date until the Settlement

28

{GRE-ESP.0002/STL.00010.035.DOCX 4}            3

STIPULATION FOR ENTRY OF JUDGMENT

1  Sum is paid in full, together with attorneys' fees and costs of collection incurred by Dakota Parties

2  according to proof, in the form attached to this Stipulation as Exhibit A (the "Judgment").  A

3  declaration by counsel for Dakota Parties setting forth under the penalty of perjury the nature of

4  the default, that the default has not been cured despite notice and that the cure period has elapsed,

5  and stating the Approval Date, the amount and date of the Payments (if any) made, and the amount

6  of the remaining unpaid and outstanding balance of the Settlement Sum together with accrued

7  interest under the terms of the Settlement Agreement, is deemed to be sufficient proof of the cause

8  for and amount of the stipulated judgment to be entered hereunder.

9          4.      The Parties to this Stipulation agree that Dakota Parties may apply ex parte for an

10  Order entering this Stipulated Judgment as an Order and Judgment of this Court.

11          5.      Teymourian Parties confirm that they have reviewed this Stipulation with their

12  legal counsel, and that they understand the legal significance and consequences of executing this

13  Stipulation, and sign this Stipulation with full cognizance and understanding of its legal effect, and

14  that it is binding upon each of them, jointly and severally.

15          6.      This Stipulation will be held by counsel for Dakota Parties until the payment in full

16  of the sums due to Dakota Parties under the Settlement Agreement.  The Stipulation will not be

17  filed with the Court and the Judgment will not be entered as long as no default under the

18  Settlement Agreement by Teymourian Parties occurs.

19          7.      It is understood, agreed, and stipulated that in the event of an uncured default as

20  described in Paragraph 3 above, Dakota Parties are entitled to immediate entry of the Judgment

21  upon *ex parte* application, in the sums affirmed by Dakota Parties to be due, and Teymourian

22  Parties expressly and knowingly waive any right to notice or hearing prior thereto.

23          8.      This Stipulation may be executed in counterparts, one or more of which may

24  contain electronic or facsimile signatures, all of which together shall constitute one and the same

25  Stipulation. An executed facsimile of this Stipulation may be used for all purposes in place of the

26  original and will be binding on the signing party as if the original.

27

28

**SO STIPULATED**

DATED: _____     _____
                          Nariman Teymourian

DATED: _____     _____
                          Gail Suzanne Marie Teymourian


                          2700 Middlefield Road, LLC,
                          a Delaware limited liability company

DATED: _____     _____
                          By: Nariman Teymourian, Manager


                          Alviso Park LLC,
                          a Delaware limited liability company

DATED: _____     _____
                          By: Nariman Teymourian, Manager


                          Ferrando Diversified Capital LLC,
                          a California limited liability company

DATED: _____     _____
                          By: Nariman Teymourian, Manager


DATED: _____, 2023     BEROKIM LAW


                    By: _____
                          Kousha Berokim
                          Attorneys for Plaintiffs and Cross-Defendants
                          NARIMAN TEYMOURIAN, et al.

{GGE-ESP-0023-STL-006-003-8.DOCX 4}                    5
                                   STIPULATION FOR ENTRY OF JUDGMENT

DATED: _____             LELAND, PARACHINI, STEINBERG,
                              MATZGER & MELNICK, LLP


                              By: _____
                                  David B. Tillotson
                                  Ravi D. Sahae
                                  Attorneys for Defendants


                                    **ORDER**

    IT IS ORDERED that judgment be entered pursuant to the terms of the aforesaid stipulated

settlement between the parties, as follows:

    1.  Payment by Nariman Teymourian, Gail Suzanne Marie Teymourian, 2700 Middlefield

        Road, LLC, a Delaware limited liability company, Alviso Park LLC, a Delaware

        limited liability company, and Ferrando Diversified Capital LLC, a California limited

        liability company of the sum of $_____, and for costs of suit and

        attorney's fees in the amount of $_____

    2.  The judgment entered pursuant to this Stipulation and Order shall accrue interest at the

        rate of ten percent per annum.

    3.  The Clerk of the Court is instructed to enter judgment as set forth in this Order.


Dated:_____      _____
                            HONORABLE JUDGE OF THE SUPERIOR COURT

{CRE.ESP.0002.STL.0041033.DOCX 4}                                    6
                                                    STIPULATION FOR ENTRY OF JUDGMENT

**EXHIBIT C**

1  Gregory A. Rougeau (194437)
   BRUNETTI ROUGEAU LLP
2  235 Montgomery Street, Suite 830
   San Francisco, California 94104
3  Telephone:    (415) 992-8940
   Facsimile:    (415) 291-8957
4  Email: grougeau@brlawsf.com

5  Attorneys for Debtor in Possession
   GAIL SUZZANNE MARIE TEYMOURIAN
6

7

8              UNITED STATES BAKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12  In re:                              Case No. 23-30259

    GAIL SUZZANNE MARIE                 Chapter 11
13  TEYMOURIAN,

14           Debtor In Possession.      **NOTICE OF WITHDRAWAL OF
                                        DEBTOR'S MOTION TO COMPROMISE
15                                      CONTROVERSY WITH DAKOTA NOTE,
                                        LLC AND RELATED PARTIES**
16

17

18

19

20  **TO:    ALL CREDITORS AND PARTIES IN INTEREST:**

21           **PLEASE TAKE NOTICE** that GAIL SUZZANNE MARIE TEYMOURIAN (the

22  "Debtor"), the debtor and debtor-in-possession herein, hereby withdraws her Motion to

23  Compromise Controversy With Dakota Note And Related Parties (the "Motion," Docket No.

24  34), filed on June 22, 2023, notice of hearing for which was scheduled to occur on July 20, 2023

25  at 10:00 a.m.

26           Such withdrawal of the Motion is premised upon certain objections to the proposed

27  compromise described in the Motion, and the related postpetition financing upon which the

28  Motion depends.  The Debtor anticipates that she will conduct further negotiations with her

                                        1
              WITHDRAWAL OF NOTICE OF MOTION TO COMPROMISE CONTROVERSY

creditors, and file an alternative motion to compromise controversy under FRBP 9019 to resolve

the creditors' objections, in the very near future.


Dated:   July 1, 2023                              BRUNETTI ROUGEAU LLP


                                                   By:      */s/ Gregory A. Rougeau*
                                                            Gregory A. Rougeau
                                                            Attorneys for Chapter
                                                            11 Debtor-In-Possession
                                                            GAIL SUZZANNE MARIE
                                                            TEYMOURIAN

# EXHIBIT I

1  Kousha Berokim
   BEROKIM LAW
2  State Bar Number 242763
   270 North Cañon Drive, Third Floor
3  Beverly Hills, California 90210
   berokim@berokim.com
4  T (310) 846-8553 | F (310)300-1233

5  ATTORNEY FOR NARIMAN TEYMOURIAN, GAIL SUZANNE MARIE TEYMOURIAN, 2700
6  MIDDLEFIELD ROAD, LLC, AND FERRANDO DIVERSIFIED CAPITAL, LLC

7              IN THE SUPERIOR COURT OF CALIFORNIA
                  COUNTY OF SAN MATEO
8

9                                        | **Case Number: 22-CIV-04679**

10 NARIMAN TEYMOURIAN; GAIL
   SUZANNE MARIE TEYMOURIAN;
11 AND 2700 MIDDLEFIELD ROAD, LLC       | **DECLARATION OF GREGORY A.**
                  PLAINTIFFS,           | **ROUGEAU**
12 V.
13 DAKOTA NOTE, LLC; TANYA
   WALTIMYER; NATURAL SOFTWARE
14 SYSTEMS, INC. MONEY PURCHASE
   PENSION PLAN; JASON GREENFIELD;
15 5 PALMS, LLC; & DOES 1-20,
   INCLUSIVE,
16                  DEFENDANTS.
17 _____

18 DAKOTA NOTE, LLC and NATURAL
   SOFTWARE SYSTEMS, INC. MONEY
19 PURCHASE PENSION PLAN,
                  Cross-Complainants,
20 vs.
21 NARIMAN TEYMOURIAN, an
   individual, GAIL SUZANNE MARIE
22 TEYMOURIAN, an individual, 2700
   MIDDLEFIELD ROAD, LLC, a Delaware
23 limited liability company, ALVISO PARK,
   LLC, a Delaware limited liability company,
24 FERRANDO DIVERSIFIED CAPITAL,
   LLC, a California limited liability
25 company, and ROES 1-150, inclusive,
                  Cross-Defendants
26
27
28 _____

926098.1 5839.036

I, Gregory A. Rougeau, hereby declare:

1.     I am an attorney, duly licensed in California, an am a partner of the law firm of Brunetti Rougeau LLP ("Brunetti Rougeau"). Brunetti Rougeau served as Chapter 11 bankruptcy counsel to Gail Teymourian in her Chapter 11 case, *In re Gail Suzzane Marie Teymourian*, Case No. 23-30259, commenced on April 23, 2023 the "Chapter 11 Case").

2.     The facts set forth in this Declaration are true and correct, except as to those matters stated on information and belief, and, as to those facts, I believe them to be true. If called herein as a witness, I could and would competently testify as to the facts set forth in this Declaration.

3.     The Chapter 11 Case was dismissed on July 20, 2023. A true and correct copy of the order dismissing the Chapter 11 Case is attached hereto as Exhibit "A" and included herein by such reference.

4.     In the Chapter 11 Case, Ms. Teymourian, together with her husband, Nariman Teymourian, 201 El Camino Real LLC ("ECR LLC"), 2700 Middlefield Road, LLC ("Middlefield LLC"), Alviso Park LLC, ("Alviso"), and Ferrando Diversified Capital LLC ("Ferrando"), on the one hand, and Dakota Note, LLC ("Dakota"), Natural Software Systems, Inc. Money Purchase Pension Plan ("NSSMPPP"), Tanya Waltimyer ("Waltimyer"), Jason Greenfield ("Jason"), Paul Greenfield ("Greenfield"), and 5 Palms, LLC ("Palms"), entered into a settlement agreement (the "Settlement Agreement") on or about June 19, 2023 (the agreement itself is not dated by the parties in the agreement's preamble). A true and correct copy of the Settlement Agreement is attached hereto as Exhibit "B" and is incorporated herein by such reference.

5. In bankruptcy cases, any settlement between the debtor- here, Ms. Teymourian- and adverse parties is governed by Rule 9019 of the Federal Rules of Bankruptcy Procedure. That rule states, in pertinent part, as follows:

(a) Compromise. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

(b) Authority To Compromise or Settle Controversies Within Classes. After a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice.

Rule 9019 requires that parties in a bankruptcy case must obtain bankruptcy court approval for a settlement.

6. For that reason, the Settlement Agreement, insofar as it applies to Ms. Teymourian, required bankruptcy court approval to be binding. Recital J of the Settlement Agreement explicitly states, in pertinent part, as follows:

The Parties acknowledge that due to the pendency of the Chapter 11 Case, the settlement embodied in this Agreement is conditioned upon approval of the Bankruptcy Court, insofar as it applies to Gail Teymourian, and any property of her bankruptcy estate.

7. The Settlement Agreement was never approved by the bankruptcy court. While the settling parties moved to approve it, the motion to approve the settlement agreement was withdrawn by Ms. Teymourian. A copy of the relevant withdrawal notice filed in the bankruptcy case is attached hereto as Exhibit "C" is incorporated herein by such reference.

8. With the settlement between Ms. Teymourian and the various "Dakota parties" conditioned on court approval that was never obtained, it simply is not enforceable as to Ms. Teymourian, to include the underlying Stipulated Judgment as to her.

1  I declare under penalty of perjury under the laws of the State of California that the

2  foregoing is true and correct.  This Declaration was executed on August 23, 2023 in San

3  Francisco, San Francisco County, California.

4

5

6                                           _____

7                                           Gregory A. Rougeau

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**



**Signed and Filed: July 20, 2023**

_____
**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

### UNITED STATES BANKRUPTCY COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re:                              ) Case No. 23-30259 HLB
                                    )
GAIL SUZZANNE MARIE TEYMOURIAN,     ) Chapter 11
                                    )
                Debtor.             )
_____)

### ORDER DISMISSING CASE WITH PREJUDICE

This case came before the court on July 20, 2023 for a hearing on the court's Order to Show Cause.[1] Timely responses to the OSC were filed by Debtor Gail Suzzanne Marie Teymourian;[2] Paladin Funding, Inc.;[3] and Dakota Note LLC and Natural Software Systems, Inc. Money Purchase Pension Plan.[4] An untimely response was filed without leave of court by alleged creditor Hu-HanTwo LLC.[5] Appearances were as noted on the record.

_____

[1] Dkt. 53 (the "OSC").

[2] Dkt. 60.

[3] Dkt. 57.

[4] Dkt. 58.

[5] Dkt. 63, with supporting Declaration of Michael B. Lubic (Dkt. 64).

1    For the reasons stated in the OSC, as well as the findings

2   and conclusions stated on the record, the court **ORDERS** as

3   follows:

4        **1.**   This case is hereby ordered **DISMISSED WITH PREJUDICE.**

5        **2.**   For a period of two years from the date of entry of

6   this order, Debtor Gail Suzzanne Marie Teymourian is **BARRED** from

7   being a debtor in a case filed under Title 11 of the United

8   States Code (the "Bankruptcy Code").  This prohibition shall

9   apply in every bankruptcy court in the United States.

10       **3.**   Should a bankruptcy case be filed by Ms. Teymourian or

11  should a bankruptcy case be filed on Ms. Teymourian's behalf –

12  whether voluntary or involuntary – in contravention of this

13  order, no automatic stay shall take effect and the case may be

14  dismissed without notice or hearing.

15

16                      **\*\*END OF ORDER\*\***

17

18

19

20

21

22

23

24

25

26

27

28

**Court Service List**

**EXHIBIT B**

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into as of June ___, 2023, which is the date of mutual execution of this Agreement by the Parties hereto (the "Execution Date"), by and between Nariman Teymourian ("Nariman"), Gail Suzanne Marie Teymourian ("Gail", and jointly with Nariman, "Teymourian"), 201 El Camino Real LLC, a California limited liability company ("ECR LLC"), 2700 Middlefield Road, LLC, a Delaware limited liability company ("Middlefield LLC"), Alviso Park LLC, a Delaware limited liability company ("Alviso"), and Ferrando Diversified Capital LLC, a California limited liability company ("Ferrando"), jointly and severally referred to herein as "Teymourian Parties", on the one hand; and Dakota Note, LLC, a South Dakota limited liability company ("Dakota"), Natural Software Systems, Inc. Money Purchase Pension Plan ("NSSMPPP"), Tanya Waltimyer ("Waltimyer"), Jason Greenfield ("Jason"), Paul Greenfield ("Greenfield"), and 5 Palms, LLC ("Palms"), collectively referred to herein as "Dakota Parties", on the other hand.  The Teymourian Parties and the Dakota Parties are hereinafter sometimes referred to as the "Parties", or each respectively as a "Party".

## Recitals

A.   Between approximately November 2018 and April 2022, one or more of the Dakota Parties made a series of loans and advances to, or for the benefit of, one or more of the Teymourian Parties (the "Loans", and each a "Loan"), in the aggregate principal amount of Twenty-Eight Million Seven Hundred Twenty-Five Thousand Dollars ($28,725,000.00), each Loan being secured by, among other things, deeds of trust (the "Deeds of Trust") recorded against certain real property owned by the applicable Teymourian Party (the "Properties" and each a "Property").  A schedule of the Loans and the Notes, Deeds of Trust, and other agreements and instruments evidencing and securing the same (collectively, the "Loan Documents") is attached hereto as Exhibit A and is summarized for reference as follows:

| Date | Loan No. | Original Principal Amount | Lender | Borrower | Property Encumbered as of Commencement of Litigation |
|------|----------|---------------------------|--------|----------|------------------------------------------------------|
| Nov 2018 | 9645 | $15,400,000 plus Apr 2022 advance of $325,000 + 3% advance fee | Dakota, NSSMPPP, Waltimyer, Jason | Middlefield LLC, Teymourian | Middlefield, Barry |
| Jul 2019 | 2019-0706 | $2,500,000 | Dakota | Middlefield LLC, Alviso, Teymourian | Middlefield, Baytech |

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 357 of 411

| Oct 2019 | 2019-1005 | $2,000,000 | Dakota | Middlefield LLC, Alviso, Teymourian | Middlefield, Baytech |
|---|---|---|---|---|---|
| Dec 2019 | 2019-1201 | $6,000,000 | Dakota, NSSMPPP | Teymourian | Barry |
| Nov 2021 | Advance | $2,500,000 (plus $75,000 Advance Fee) | Dakota, NSSMPPP, Greenfield | Nariman (for benefit of ECR LLC) | Middlefield, Barry |

B.    The Dakota Parties allege that each of the Loans was cross-collateralized when made, with Deeds of Trust recorded against more than one of the Properties; subsequently from time to time certain Deeds of Trust on certain Properties have been released and reconveyed, and some thereafter re-recorded, for various purposes and consideration.  As of the time the Litigation (defined below) commenced, each of the Loans was secured by a Deed of Trust recorded in the Official Records of the applicable County as a second or third priority mortgage lien against each of the Properties identified for that Loan in the schedule set forth in Recital A and further described in Exhibit A.

C.    The Dakota Parties allege that as of November 1, 2022, the aggregate total outstanding principal balance of the Loans together with accrued and unpaid regular (*i.e.,* nondefault rate) interest thereon was Thirty Million Nine Hundred Forty Thousand Three Hundred Fifty Four Dollars and Seventy-Three Cents ($30,940,354.73), as shown in the schedule of amounts funded and repaid, and the regular interest accrued, with respect to each of the Loans, that is attached hereto as Exhibit B.  In addition, the Dakota Parties assert that late fees, default interest, and additional amounts including attorney fees, are chargeable to Teymourian Parties under the terms of the Loan Documents.

D.    As a result of, among other things, the borrowers' failure to make timely payments, the Dakota Parties declared a default under the Loan Documents (collectively, "Existing Default").  As a result of the Existing Default, in or about June 2022 the Loans were accelerated by the Dakota Parties and the Dakota parties asserted that the total outstanding principal balance of the Loans, together with all accrued and unpaid interest, became immediately due and owing.

E.    Dakota Parties commenced non-judicial foreclosure proceedings with respect to the Middlefield Property (defined in Exhibit A) on or about July 22, 2022, and with respect to the Barry Property (defined in Exhibit A) on or about November 21, 2022.[1]  On January 27, 2023, at a trustee's sale conducted in those non-judicial foreclosure proceedings (the "Trustee's Sale"), the Middlefield Property was sold to the successful bidder, 2710 Middlefield Holdings LLC, which is an affiliate of the Dakota Parties, for payment of the sum of $15,400,000.00.  The Barry Property has not been sold as of Execution Date.

---

[1] A notice of default was recorded on the Barry Property on 11/21/22, San Mateo recording no. 2022-080122 ("Barry NOD").  A notice of sale was recorded on the Barry Property on 3/6/23, San Mateo recording  no. 2023-009951 ("Barry NOS")

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 358 of 411

F.    Various disputes arose between the Parties related to the Loans, including without limitation as to the amounts due and owing under, and the enforceability of, the Loan Documents. On or about November 9, 2022, Teymourian and Middlefield LLC filed a Complaint (the "Complaint") against certain Dakota Parties in the Superior Court of California, County of San Mateo (the "Superior Court") commencing that certain action identified as *Nariman Teymourian et al. vs. Dakota Note, LLC et al.*, Case Number 22-CIV-04679; on or about March 3, 2023, Dakota and NSSMPPP filed a Cross-Complaint in said action against Teymourian Parties (the "Cross-Complaint"); and on or about March 21, 2023, Teymourian filed a Cross-Complaint against Dakota and certain other parties having interests in the Barry Property (the "Barry Cross-Complaint"). The foregoing litigation, including the Complaint, Cross-Complaint, and Barry Cross-Complaint, together with any and all amendments thereto, and together with and including all other claims, complaints, answers, affirmative defenses, and cross-complaints that have been or could be made in said action, including on appeal therefrom, are collectively hereinafter referred to as the "Litigation".

G.    On or about November 10, 2022, Teymourian Parties caused a Notice of Pending Action (the "Lis Pendens") to be recorded as Instrument No. 2022-078621 in the Official Records of the County of San Mateo with respect to the Middlefield Property.

H.    The Parties now desire to avoid further litigation between them, and have agreed to enter into this Agreement and the transactions described herein, including a forbearance and modification of the Loans, as a mutual compromise and settlement of disputes between Dakota Parties and Teymourian Parties with respect to the Loans, including without limitation the Litigation.

I.    Except as may be explicitly stated in this Agreement, each of the Parties has expressly denied any wrongdoing or other actionable conduct and disputes the allegations made against it by the other Party, and no consideration given in or pursuant to this Agreement shall be construed to be an admission of the validity of any of the allegations made in the Litigation nor of any liability or culpability of any Party for any claims or damages of the other Party or of any other person.

J.    On April 23, 2023, Gail Teymourian commenced a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Northern District of California ("Bankruptcy Court"), identified as *In re Gail Suzzane Marie Teymourian*, Chapter 11 Case No. 23-30259 (the "Chapter 11 Case"). As of the Execution Date, the Chapter 11 case is pending. As the Chapter 11 Case was Gail Teymourian's second bankruptcy pending within the previous twelve (12) months, with the prior case being dismissed, the Bankruptcy Court, on June 8, 2023, entered in the Chapter 11 Case an order confirming that the automatic stay terminated in its entirety by operation of law on May 23, 2023. The Parties acknowledge that due to the pendency of the Chapter 11 Case, the settlement embodied in this Agreement is conditioned upon approval of the Bankruptcy Court, insofar as it applies to Gail Teymourian, and any property of her bankruptcy estate.

K.    Each Party to this Agreement is fully informed of the facts set forth in these Recitals and the facts and contentions raised in the Litigation and in all other aspects of the disputes between the Parties, whether pled or not, and has been advised by its independent counsel as to the contentions, issues, and possibilities of each action and matter described herein, including the Litigation.

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 359 of 411

NOW THEREFORE, in consideration for the agreements, representations, promises and covenants herein contained and for other good and valuable consideration the delivery and receipt of which is hereby acknowledged, the Parties agree as set forth herein.

**Agreement**

1.    <u>Recitals and Definitions</u>.  The Parties acknowledge and agree that the foregoing Recitals and all recitals of fact set forth in this Agreement and in the Exhibits hereto are true and correct, are incorporated herein, and that each Party is relying thereupon in entering into this Agreement.  Capitalized terms not otherwise defined in this Agreement shall have the meanings assigned to them in the existing Loan Documents identified in Exhibit A hereto.

2.    <u>Middlefield Settlement</u>.

2.1    <u>Middlefield Release</u>. As a part of the consideration to Dakota Parties for offering to Teymourian Parties the settlement described herein and for Dakota Parties' execution of this Agreement, and as a condition precedent to the forbearance and discount set forth in Section 4, Teymourian Parties, and each of them, hereby unconditionally, fully and finally (a) quitclaim and release any and all right, title or interest in and to the Middlefield Property, and (b) release and extinguish any and all claims against the Dakota Parties and/or 2710 Middlefield Holdings LLC as to the Middlefield Property (the "Middlefield Release"), including without limitation any and all past, present, and future claims, demands, liens, actions, contests, causes of action, obligations, damages, and liability of whatever kind or nature in law or equity or otherwise, whether now known or unknown, suspected or unsuspected, which arise out of, or relate in any way to, flow from or are in consequence of the Loans, the Loan Documents, the Trustee's Sale, or the matters that are alleged or could have been alleged in the Litigation to the extent relating or applicable to the Middlefield Property.

2.2    <u>Dismissal of Complaint</u>. Within five (5) business days following the Execution Date, Teymourian (with the exception of Gail Teymourian, whose dismissal will require approval of the Bankruptcy Court) and Middlefield LLC shall file the dismissal with prejudice of their Complaint (but not the Barry Cross-Complaint nor any other party's complaint or cross-complaint) in the Litigation.

2.3    <u>Lis Pendens</u>. Within five (5) business days following the Execution Date, Teymourian Parties shall cause a withdrawal and release of the Lis Pendens to be recorded in the Official Records of San Mateo County.

3.    <u>Settlement Payments</u>. As a part of the consideration to Dakota Parties for this Agreement, Teymourian Parties shall pay to Dakota Parties, in installments as set forth below, the principal sum of Six Million Dollars ($6,000,000.00) ("Settlement Sum") plus interest on the unpaid balance thereof at the rate of Seven Percent (7.0%) per annum from the Bankruptcy Court Approval Date (defined in Section 5.1 below) until the Settlement Sum is paid in full.  Installment payments shall be made as follows:

    (a)    THREE MILLION Dollars and Zero Cents ($3,000,000.00) (the "Initial Settlement Payment") shall be paid within thirty (30) calendar days following the Court Approval Date.

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 360 of 411

(b) Quarterly payments of ONE HUNDRED THOUSAND Dollars and Zero Cents ($100,000.00) each ("Quarterly Payments") shall be paid beginning on the first day of the calendar quarter (*i.e.*, January 1, April 1, August 1, or December 1) following the Court Approval Date, and continuing on the first day of every subsequent quarter until the entire balance of the Settlement Sum is paid. Each Quarterly Payment shall be applied by the Dakota Parties to reduce the outstanding balance of the Settlement Sum, and not to accrued and unpaid interest.

(c) The entire remaining balance of the Settlement Sum (equal to Three Million Dollars less the sum of all Quarterly Payments having then been made) plus all accrued interest shall be paid on or before the date that is twenty-four (24) months following the Court Approval Date.

Teymourian Parties may make any of the above installment payments in advance of the due dates specified above. Each payment shall be made in immediately available funds, via wire transfer in accordance with Dakota Parties' instructions.

4. <u>Consideration to Teymourian Parties; Forbearance and Modification of Loans</u>.

4.1 <u>Forbearance</u>. In consideration of, subject to and on the condition of the full and timely performance of each and every promise, covenant, and obligation of Teymourian Parties pursuant to this Agreement, Dakota Parties agree to forbear from exercising any of their remedies under the Loan Documents on account of the Existing Default for a period (the "Forbearance Period") commencing on the Execution Date and expiring twenty-four (24) months after the Court Approval Date. Further, provided Teymourian Parties are not in breach of or default under this Agreement, no late fees shall be charged, and no interest shall accrue on the outstanding indebtedness of Teymourian Parties (or any of them) to Dakota Parties (or any of them) during the Forbearance Period, except for the interest on the outstanding balance of the Settlement Sum specified by Section 3 above.

4.2 <u>Compromise Payoff</u>. In consideration of, subject to and on the condition of the full and timely performance of each and every promise, covenant, and obligation of Teymourian Parties pursuant to this Agreement, Dakota Parties agree to accept the Middlefield Release and the Settlement Sum plus interest specified by Section 3 above (collectively, the "Compromise Payoff") as payment in full and final satisfaction of the Loans. Upon timely receipt of the entire Settlement Sum plus all accrued interest as provided by Section 3 above, Dakota Parties agree to release and reconvey the Barry Deeds of Trust and the Baytech Deeds of Trust, at Teymourian Parties' expense.

4.3 <u>Barry and Baytech Obligations</u>. Any affirmative action by the holder of any mortgage or other lien secured by the Barry Property to declare a default of its loan or otherwise commence any foreclosure action affecting the Barry Property shall constitute a default by Teymourian Parties under this Agreement. Any breach or default of any of the obligations of Teymourian Parties under the Barry Deeds of Trust and/or the Baytech Deeds of Trust, other than the Existing Default and, with respect to the Baytech Deeds of Trust, the covenant and payment defaults to Bayech's senior lender, shall constitute a default by Teymourian Parties under this

Agreement. Teymourian Parties agree that, until their obligations under this Agreement have been fully satisfied, that they will bring, and keep, current on property taxes, property insurance (with the Dakota Parties listed as a loss payee), and any payments due on loans secured by deeds of trust senior to the Barry Deeds of Trust; during the Forbearance Period, Teymourian Parties will provide to Dakota Parties proof of the foregoing payments made on a monthly basis, on or before the fifteenth (15th) day of each calendar month, and any failure to timely comply with the foregoing payment and reporting requirements shall constitute a default by Teymourian Parties under this Agreement.

4.4 Dakota Parties notice of default on the Barry Property shall remain valid and in place. Teymourian Parties agree that the Barry NOD and Barry NOS are valid and correct. Dakota Parties shall not complete the foreclosure sale of the Barry Property as long as Teymourian Parties remain in compliance under this Agreement. If the Teymourian Parties fail to comply with any of the terms and conditions of this Agreement, Dakota Parties may immediately proceed with the foreclosure sale of the Barry Property, judicially or nonjudicially, at their sole and absolute discretion, without further notice except as required by law, and may assert all rights allowed pursuant to the loan documents and applicable law. Acceptance of any payments shall not constitute a waiver of any of Dakota Parties' rights. NOS will be rescinded within 10 days of entry of court order approving the 9019 Motion.

4.5    Other Modifications; Effect of Default.   Nothing contained herein, nor any action taken or omitted by the Parties, or any of them, pursuant to this Agreement, nor any payments made by the Teymourian Parties and/or accepted by Dakota Parties, shall be deemed to be a modification of or agreement to extend any of the Loans, nor a waiver of any of the Parties' rights or remedies, except as expressly stated herein. All of the Loan Documents shall be and hereby are amended to provide that each of the Loan Documents shall, as applicable, evidence, secure, and/or guaranty, in addition to all other obligations presently evidenced, secured and/or guaranteed thereby, the payment and performance of all obligations of Teymourian Parties, and each of them, under this Agreement. In the event of a default by Teymourian Parties, or any of them, under this Agreement, after notice and failure to cure any such default if applicable as provided herein, then without further notice, the Forbearance Period shall terminate, Dakota Parties shall be released from accepting the Compromise Payoff as full satisfaction of the indebtedness of Teymourian Parties under the Loans, Teymourian Parties shall be deemed in default under all of the Loan Documents, and Dakota Parties shall have the right to pursue, continue, institute, conduct and/or complete the exercising of any remedies Dakota Parties may have under this Agreement, any of the Loan Documents, or applicable law, including without limitation foreclosure on the Barry Deeds of Trust and/or the Baytech Deeds of Trust.

4.6    Co-Obligor Waivers. Without limiting any other provision of this Agreement or of any of the Loan Documents, Teymourian Parties, and each of them, including each Teymourian Party who has guaranteed or is deemed to be a guarantor of any of the Loans made to another Teymourian Party, expressly waive to the extent permitted by law any and all rights and defenses which might otherwise be available to them under California Civil Code Sections 2787 to 2855, inclusive, 2899 and 3433, and under California Code of Civil Procedure Sections 580a, 580b, 580d and 726, or any of those sections, including without limitation the so-called "Gradsky" defense, or comparable provisions of the laws of any other jurisdiction and all other anti-deficiency and one form of action defenses under the laws of California and any other

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 362 of 411

jurisdiction. Dakota Parties may (a) apply security and direct the order or manner of sale thereof as Dakota Parties in their sole discretion may determine; (b) release, substitute or add any one or more endorsers of any Note or guarantors of any Party's obligations under the Loan Documents; and (c) apply payments received by Dakota Parties, or any of them, from any Party to any obligations of the Teymourian Parties to Dakota Parties, in the order Dakota Parties determine in their sole discretion. Each Teymourian Party acknowledges that: (i) the obligations under the Loan Documents and this Agreement are complex in nature, (ii) numerous possible defenses to the enforceability of these obligations may presently exist and/or may arise hereafter, and (iii) as part of the Dakota Parties' consideration for entering into this Agreement and the transactions contemplated hereby, Dakota Parties have specifically bargained for the waiver and relinquishment by Teymourian Parties of all such defenses, and each Teymourian Party has had the opportunity to seek and receive legal advice from skilled legal counsel in the area of financial transactions of the type contemplated herein. Given all of the above, each Teymourian Party does hereby represent and confirm to Dakota Parties that each Obligor is fully informed regarding, and thoroughly understands: (A) the nature of all such possible defenses, (B) the circumstances under which such defenses may arise, (C) the benefits which such defenses might confer upon Teymourian Parties, and (D) the legal consequences to Teymourian Parties of waiving those defenses. Each Teymourian Party acknowledges that all of the informed waivers herein shall be fully enforceable by Dakota Parties, and that Dakota Parties are induced to enter into this Agreement in material reliance upon the presumed full enforceability thereof.

5.     Chapter 11 Case.

5.1     Bankruptcy Court Approval. No later than June 21, 2023, Teymourian Parties shall cause to be filed in the Chapter 11 Case a motion seeking the approval of the Bankruptcy Court, pursuant to Federal Rule of Bankruptcy Procedure 9019, with a hearing no later than July 20, 2023, of the settlement embodied by this Agreement, insofar as it applies to Gail Teymourian and any property of her bankruptcy estate. The date on which the Bankruptcy Court issues an order or ruling substantially granting said motion is referred to in this Agreement as the "Court Approval Date".

5.2     Post-Petition Financing. The Parties acknowledge that Gail Teymourian is seeking post-petition debtor-in-possession financing (the "DIP Loan") in the Chapter 11 Case, and that the proceeds from the DIP Loan shall be used, in part, to fund payment of the Settlement Sum. The DIP Loan negotiated by Gail and her lender, Legalist, Inc. ("Legalist"), contemplates that Legalist shall provide the financing on a senior secured position as to the Barry Property, among other estate property, and will seek to prime junior secured creditors, including the Dakota Parties, as part of that financing. Dakota Parties agree to such senior secured financing, and agree to support Gail's motion for approval of the DIP Loan in the Bankruptcy Court to the extent that it comports with the terms of this Agreement. Teymourian Parties will directly receive no greater than FIVE HUNDRED THOUSAND Dollars and Zero Cents ($500,000.00) from the DIP Loan for personal expenses, apart from expenditures necessary for the maintenance of the Barry Property to be approved by Dakota Parties.

5.3     Adversary Proceeding Upon Default. In the event the Judgment Stipulation described in Section 6.1 is filed in the Superior Court, Dakota Parties will also commence an adversary proceeding against Teymourian Parties in the Chapter 11 Case, alleging the Teymourian

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 363 of 411

Parties' default hereunder. Teymourian Parties agree to stipulate that entry of judgment pursuant to the Judgment Stipulation shall be deemed non-dischargeable pursuant to 11 U.S.C. § 523. Teymourian Parties agreed to stipulate to extend the last day to oppose discharge in the Chapter 11 Case for periods of six (6) months at a time until payments under this Agreement are completed or Teymourian Parties breach this Agreement[2].

      5.4    <u>Other Bankruptcy Actions</u>. In the event a voluntary or involuntary petition for relief is filed by or against any of the Teymourian Parties pursuant to the Bankruptcy Code, other than the Chapter 11 Case, Dakota Parties may, through counsel of Dakota Parties' choosing, make all appearances and take all action as Dakota Parties may deem to be necessary or desirable for purposes of enforcing, exercising, protecting, and/or preserving any and all rights, remedies, claims, or interests of Dakota Parties which arise under this Agreement or by operation of law, including, without limitation thereto, the filing and enforcement of any claim against the estate of the debtor thereunder, the filing of any motion for relief from stay, the enforcement or defense by Dakota Parties of its rights and interests in collateral (real or personal property), or the filing of any motion or opposition in any action or proceeding to assume or reject executory contracts or pertaining to any disclosure statement and any proposed or confirmed plan; and Dakota Parties shall be entitled to an award against the applicable Teymourian Party for and to recover any and all attorneys' fees and related costs incurred by Dakota Parties in connection with all such actions and proceedings and in the enforcement of any judgment or award therefor and upon prevailing in any appeal relating thereto. Teymourian Parties agree to stipulate in the Chapter 11 Case to In Rem Relief pursuant to 11 U.S.C. § 362(d)(4) as it relates to both the Middlefield Property and Baytech Property. In Rem Relief shall be binding and effective against the Middlefield Property and Baytech Property for a period of two years upon the recording of the In Rem Orders.

      6.    <u>Superior Court Actions; Dismissal of the Litigation</u>.

      6.1    <u>Stipulated Judgment; Conditional Dismissal</u>. Teymourian Parties and their counsel shall execute a Stipulation for Entry of Judgment in the form attached hereto as Exhibit C ("Judgment Stipulation"), providing for entry of judgment against Teymourian Parties in the Litigation in the event of an uncured default under this Agreement, and shall deliver the executed Judgment Stipulation to counsel for Dakota Parties no later than the Court Approval Date. Following dismissal of the Complaint in accordance with Section 2.2 and release of the Lis Pendens in accordance with Section 2.3, the Court Approval Date, and receipt of the executed Judgment Stipulation, Dakota Parties' counsel shall file a Notice of Conditional Settlement and Voluntary Dismissal with the Superior Court with respect to the Litigation, and shall thereafter

---

[2] The current last day to oppose discharge in the Chapter 11 Case is July 24, 2023. The parties agree to stipulate to extend the last day to oppose discharge to January 24, 2023 immediateley upon execution of this Agreement. In the event that the Teymourian Parties are current under this Agreement on January 1, 2024, the Parties agreed to stipulate to extend the last dayt to oppose discharge to July 24, 2024. In the event that the Teymourian Parties are current under this Agreement on July 1, 2024, the Parties agreed to stipulate to extend the last dayt to oppose discharge to January 24, 2025. In the event that the Teymourian Parties are current under this Agreement on January 1, 2025, the Parties agreed to stipulate to extend the last dayt to oppose discharge to July 24, 2025.

hold the Judgment Stipulation in trust until the payment in full of the Compromise Payoff. Except as set forth in this Section 6.1, from and after the filing of Notice of Conditional Settlement and Voluntary Dismissal, the Parties shall take no further actions in the Litigation until the final dismissal in accordance with Section 6.2. In the event of any default by Teymourian Parties, or any of them, under this Agreement, before filing and entry of judgment, Dakota Parties shall provide Teymourian Parties fifteen (15) days (the "Cure Period") written notice, by electronic mail, of default. If, after expiration of the Cure Period, the asserted default has not been cured, then without further notice, Dakota Parties may file the Judgment Stipulation, together with a declaration by counsel for Dakota Parties setting forth under the penalty of perjury the nature of the default, that the default has not been cured despite notice and that the Cure Period has elapsed, and stating the amount of the payments made hereunder and the remaining unpaid and outstanding balance of the Settlement Sum together with accrued interest; and, upon ex parte application, obtain entry of judgment against the applicable Teymourian Parties, as well as an award of attorneys' fees and costs, as set forth in the Judgment Stipulation. A judgment so entered shall be non-dischargeable in any bankruptcy proceeding. Provided that no default by Teymourian Parties occurs, the signed Judgment Stipulation will be destroyed by Dakota Parties' counsel following Dakota Parties' receipt of the Compromise Payoff.

6.2     Final Dismissals. In consideration of, subject to and on the condition of the full and timely performance of each and every promise, covenant, and obligation of Teymourian Parties pursuant to this Agreement, promptly following full payment of the Compromise Payoff, Dakota Parties shall cause the dismissal with prejudice of the Litigation, including the Cross-Complaint, as to all parties and all causes of action.

7.     Mutual Release.

7.1     Release. For the consideration described in this Agreement, and all representations, promises and covenants of the Parties contained herein, effective as of the Court Approval Date, each of the Parties, for itself and on behalf of all of its successors, assigns, affiliates, and all those now or later acting on its behalf, shall and hereby does release and forever acquit, extinguish, and discharge the other Party, and its agents, servants, successors, heirs, executors, administrators and affiliates (specifically including, without limitation, Dakota Parties' affiliates 2710 Middlefield Holdings LLC, California Home Loans, Derald Kenoyer, and Keith Charles Knapp) (collectively, the "Released Parties"), from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations, controversies, costs, expenses, damages, orders and liability of whatever kind or nature in law or equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden which have existed or may have existed, or which do exist, or which hereafter can, shall, or may exist by reason of any matter, cause or thing done, omitted, or occurring at any time on or before the effective date of this Agreement, including without limitation all such claims and damages which arise out of, or relate in any way to, flow from or are in consequence of the Loans, the Loan Documents, or the matters that are alleged or could have been alleged in the Litigation.

7.2     Change of Circumstances; Waiver. The Parties agree that if any facts or circumstances with respect to which the release set forth in Section 7.1 (the "Release") and/or the Middlefield Release (defined in Section 2.1) is executed are at any time later found, suspected or claimed to be other than or different from the facts and circumstances now believed by any of the

Case: 23-51443     Doc# 33-4     Filed: 03/08/24     Entered: 03/08/24 15:08:49     Page 365 of 411

Parties to be true, the Parties expressly accept and assume the risk of such possible differences of facts and circumstances, and agree that this Release shall be and remain effective notwithstanding any such differences in any facts or circumstances. The Parties intend that this Release shall extend to all claims known or unknown. The Parties, after consultation with independent counsel, waive all rights under Section 1542 of the Civil Code of the State of California, which reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**The Parties agree and acknowledge that the released claims extend to and include unknown and unsuspected claims.** Each Party has made an investigation of the facts pertaining to this Agreement and to the released claims as it deems necessary. The Parties are aware that they may hereafter discover facts in addition to, contrary to, or different from those it now knows or believes to be true with respect to any or all of the matters set forth herein. Nevertheless, it is the intention of the Parties to fully, finally, and forever settle and release all claims of any kind and nature whatsoever that were in existence as of the date of this Agreement. In furtherance of the Parties' intent, the release in this Agreement shall remain in full and complete effect notwithstanding the discovery or existence of any additional, contrary, or different facts.

   7.3 <u>Conditions and Exceptions</u>. Notwithstanding anything to the contrary in this Agreement, the Release, as to each Party released, is conditioned upon the full performance of the covenants of that Party hereunder (including without limitation Teymourian Parties' payment of the entire Compromise Payoff), and is not intended to apply to the rights of any Party to commence and/or maintain any action arising out of any alleged breach of the terms of this Agreement, or to enforce any judgment based thereon in the event of a default hereunder. Furthermore, the Release and the Middlefield Release are not intended to apply and shall not be deemed effective as to, any claims or disputes among or between any of the persons and entities collectively referred to herein as "Teymourian Parties", nor to any claims or disputes among or between any of the persons and entities collectively referred to herein as "Dakota Parties", nor among or between a Party and its own affiliated Released Parties, if the same are unrelated to the disputes between Teymourian Parties and Dakota Parties.

   7.4 <u>Covenant Not to Sue; Release as a Defense</u>. The Parties, and each of them, agree that they will not bring, commence, maintain or prosecute, directly or indirectly, any action at law or proceeding in equity or any legal or administrative proceeding or any claim for damages or other relief against those parties released herein based in whole or in part on any claim, demand, cause of action, obligation, or liability based upon, arising out of, or connected with any act, cause, matter or thing which is released in this Agreement. The Release and/or the Middlefield Release may, and shall, be pled as a full and complete defense to, and may be used as a basis for an injunction against any action, suit or proceeding which may be instituted, prosecuted, or maintained in breach of the covenants contained in this Section 7.4.

   8. <u>Enforcement</u>.

{GREENP/0002/STL/02010234.DOCX 4}   10

Case: 23-51443  Doc# 33-4  Filed: 03/08/24  Entered: 03/08/24 15:08:49  Page 366 of 411

8.1 <u>Attorneys' Fees</u>. Dakota Parties assert that the fees and costs under the Loan Documents and this Agreement total approximately $500,000.00. Such attorneys' fees and legal costs shall be waived in the event of the performance of the Teymourian Parties' obligations under this Agreement, such that they are not in default. In the event of a default hereunder, however, the Teymourian Parties shall remain liable to the Dakota Parties for such fees and costs, and shall be included in the indebtedness of Teymourian Parties under the Loan Documents. These fees and costs are subject to increase. Teymourian Parties shall bear their own legal fees and costs, except as to any fees and costs incurred to enforce the terms of this Agreement. In accordance with the Code of Civil Procedure Section 664.6, the Superior Court shall retain jurisdiction of the matters addressed in the Litigation for the purposes of enforcing this Agreement. In the event of any dispute or enforcement proceeding arising out of this Agreement, including but not limited to any new any action or proceeding to enforce, set aside, or modify the terms of this Agreement, including an arbitration or reference pursuant to §638 of the Code of Civil Procedure, the prevailing party shall be entitled to recover all costs and expenses, including the actual fees of its attorneys incurred for prosecution, defense, consultation, or advice in that action or proceeding, in addition to all other appropriate relief.

8.2 <u>Revival</u>. If the payment of money or the conveyance and transfer of any property to or for the benefit of Dakota Parties, or any of them (including any transfer in whole or partial satisfaction of indebtedness), or any of the obligations of the Parties pursuant to this Agreement, or the exercise by any Lender of any of any rights or remedies under this Agreement or otherwise, should for any reason subsequently be alleged or found to be "fraudulent" or otherwise avoidable within the meaning of any state or federal law relating to fraudulent transfers or conveyances, or are alleged or found to be preferential or otherwise avoidable or recoverable, in whole or in part or for any reason, under Bankruptcy Code or any other federal or state law (individually and collectively herein referred to as a "Voidable Transfer"), and a Lender is required to pay or restore the amount of any such Voidable Transfer, or any portion thereof, then, and in any such case, the liability and indebtedness of Teymourian Parties, as applicable, to Dakota Parties (including, without limitation, all legal expenses, and all costs, expenses, and attorneys' fees of Lender related thereto, which may be incurred in connection with any action or response of Dakota Parties, including, but not limited to, any action for relief from stay or similar proceedings, and including any repayment by way of settlement of any claim of Voidable Transfer), and Lender's rights and security interests in all such collateral, shall automatically be revived, reinstated, and restored in such amount or amounts, and shall continue to exist as though such Voidable Transfer had not been made. Nothing set forth herein is or shall constitute an admission that any such Voidable Transfer has occurred or may hereafter occur. Teymourian Parties expressly acknowledge that Dakota Parties may rely upon advice of counsel in taking any action or otherwise responding to any such alleged Voidable Transfer, and if so advised by counsel, may settle, without defending, any action to avoid any alleged Voidable Transfer, and that upon that settlement Teymourian Parties, as applicable, shall again be liable for any deficiency resulting from that settlement as provided in this Agreement, and all security therefor shall be automatically revived and reinstated in the same lien priority as existed immediately prior to that alleged Voidable Transfer. Notwithstanding any provision to the contrary contained in this Agreement, including, without limitation, any provision for the dismissal (with or without prejudice) of any litigation with respect to the obligations, liability, or indebtedness of any of the Teymourian Parties to Dakota Parties, including without limitation the Litigation, said obligation, liability, and indebtedness of Teymourian Parties, as applicable, revived pursuant to this Section shall be

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 367 of 411

deemed to be new obligations of Teymourian Parties to Lender, arising as of the date of revival hereunder, and shall be deemed to be created for and supported by good and valuable consideration then existing, and Dakota Parties shall be entitled to commence and prosecute any and all actions or proceedings to enforce and collect upon said obligations which Dakota Parties would otherwise be entitled to commence and prosecute without regard to the filing of any such dismissal and without regard to the running of any applicable statute of limitation relating to the original obligations of Teymourian Parties to Dakota Parties under the Loans.

8.3     Dakota Parties' Rights and Remedies. All rights and remedies of Dakota Parties under this Agreement or applicable law, or otherwise afforded to Dakota Parties, shall be cumulative and not alternative.  Until the indebtedness under the Loans has been satisfied in full, pursuant to Section 4.2 or otherwise, all of the rights, privileges, powers, and remedies granted to Dakota Parties hereunder shall continue to exist and may be exercised by Dakota Parties at any time and from time to time irrespective of the expiration of any otherwise applicable statute of limitations.

9.     Notices. Any notice, request, or demand required or permitted by this Agreement to be given by any Party to another, shall be deemed delivered (a) upon transmission, if sent between 8:00 a.m. and 5:00 p.m. Pacific Time on a business day, or on the next succeeding business day if sent at another time, by email to the address of the receiving Party specified below, with original copy thereof to be sent within twenty-four (24) hours after said transmission by first class mail or overnight courier with charges prepaid, addressed to the receiving Party at the address specified below; or (b) on the next succeeding business day if deposited with a reputable overnight private commercial delivery service (*e.g.*, FedEx) and addressed to the receiving Party at the address specified below; or (c) upon delivery, if given in writing by personal delivery, directly or through commercial messenger or courier service, at the receiving Party's address specified below. The Parties' respective address are  as follows, provided that any Party may change its address for purposes of notice hereunder upon delivery to the other Party of a notice of a change of address in the manner provided for notices hereunder.

| | |
|---|---|
| To Dakota Parties: | Attn: Paul Greenfield |
| | 2597 Flagstone Drive |
| | San Jose, CA 95132 |
| | ada@77westgroup.com and |
| | paulgnet@gmail.com |
| | |
| with copy to: | David Tillotson |
| | Leland, Parachini, Steinberg, Matzger & Melnick, LLP |
| | 135 Main Street, Suite 1200 |
| | San Francisco, CA 94105 |
| | dtillotson@lpslaw.com |
| | |
| To Teymourian Parties: | Attn: Nariman Teymourian |
| | 66 Barry Lane |
| | Atherton, CA 94027 |
| | narimantey@gmail.com |

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 368 of 411

with copy to:    James S. Monroe
Monroe Law Firm
One Sansome Street, Suite 3500
San Francisco, CA 94104
jim@monroe-law.com

10.    Representations and Warranties.

10.1    Authority and Consent. Each of the Parties represents and warrants to the other that: (a) it has entered into this Agreement after full opportunity for independent investigation and consultation with its individual counsel, and has fully inspected all books, records, and things which it has requested or desires to so inspect prior to executing this Agreement; (b) it freely and voluntarily executes this Agreement, and has the full and complete authority to enter into this Agreement on its own behalf and on behalf of any party or parties it purports to represent, and to perform all acts and incur all obligations created under this Agreement without the consent or approval of any other person; (c) it owns the claims it purports to release, no other person or entity has or had any interest in said claims, and has the sole right to execute this Agreement as the owner of said claims; (d) it has carefully read this Agreement and knows and understands the contents thereof, and has executed the same as its own free act; and (e) it has consulted, or had sufficient opportunity to consult with, its own attorney with respect to its rights under this Agreement.  Each Party represents, warrants, and agrees that it has not heretofore assigned or transferred to any other person or entity any claim, demand, or cause of action based on, arising out of, or in connection with the transactions and events which are the subject of this Agreement, *provided, however*, that the Parties have received an unsigned Pledge Agreement from paladin Funding, Inc. ("Paladin"), purporting to pledge Ferrando Diversified Capital, LLC's membership voting rights with respect to 2700 Middlefield to Paladin.  To the extent that Paladin assets that it retains such voting rights, the Teymourian Parties agree to indemnify and hold harmless the Dakota Parties for any claims made by Paladin against the Parties.

10.2    Assignment of Claims. Each of the Parties expressly represents and warrants that it has not heretofore assigned or transferred to any other person or entity any portion of any claim, demand, cause or causes of action that said Party has or might have based on, arising out of, connected with the Loans, the Litigation, the Chapter 11 Case, or any of the transactions and events which are the subject of this Agreement, and that no portion of any recovery or settlement to which that Party might be entitled has been assigned or transferred to any other person or entity in any manner, including by way of subrogation, or by operation of law or otherwise.

10.3    Disclaimer. It is understood that this Agreement is the result of a compromise settlement of disputed claims.  Neither the compromise of the disputes between the Parties, the payment of any consideration hereunder, the Release, the Middlefield Release, nor anything contained in this Agreement, shall be construed to be an admission of liability or culpability by any Party, except to the extent that Teymourian Parties must acknowledge facts sufficient to substantiate a non-dischargeability finding as described in Section 5.3.

10.4    Taxes; Indemnification. Each Party shall be solely responsible for, and is legally bound to make payment of, any taxes determined to be due and owing (including penalties and interest related thereto) by it to any federal, state, local, or regional taxing authority as a result

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 369 of 411

of its receipt of any of the consideration described herein, including without limitation the cancellation of debt. Each Party acknowledges that the other has not made, and it does not rely upon, any representations regarding the tax treatment of the consideration paid or received pursuant to this Agreement; and each Party agrees to indemnify and hold the other harmless in the event that any governmental taxing authority asserts against it any claim for unpaid taxes, failure to withhold taxes, penalties, or interest based upon said consideration.

11. <u>Miscellaneous</u>.

11.1 <u>Entire Agreement</u>. Each Party, individually and collectively, declares and represents that no promises, inducements, or other agreements not expressly referred to herein have been made, and that this Agreement, together with the Loan Documents identified herein, contains the entire agreement between them with respect to the subject matter hereof and supersedes all other agreements, oral or written, between the Parties with respect thereto. Any amendment or modification to this Agreement must be in writing and must be executed by all Parties. No claim of waiver, consent, or acquiescence with respect to any provision of this Agreement shall be made with respect to any Party, except upon the basis of a written instrument executed by that Party.

11.2 <u>Successors and Assigns</u>. Teymourian Parties shall not assign or transfer this Agreement or any right or obligation hereunder without the prior written consent of Dakota Parties, which consent Dakota Parties may withhold in their sole and absolute opinion and judgment. Teymourian Parties agree and consent to any sale or transfer by Dakota Parties, or any of them, at any time, of Dakota Parties' rights and obligations hereunder to one or more assignees or transferees, whether related or unrelated to any Dakota Party. Teymourian Parties agree that any such assignee or transferee may enforce its rights and interests under this Agreement irrespective of any personal claims or defenses which Teymourian Parties may have against any of the Dakota Parties. Subject to the foregoing, the provisions of this Agreement shall be binding upon and inure to the benefit of each of the Parties, and their respective successors in interest, assigns, heirs, and personal representatives.

11.3 <u>No Third Parties Benefitted</u>. This Agreement is made for the sole benefit and protection of the Parties, the Released Parties, and the Parties' successors and assigns to the extent set forth in Section 11.2, and no other person or party shall have any right of action or right to rely thereon, and the Parties agree that nothing contained in this Agreement shall be construed to vest in any other person or entity, any interest in or claim upon the rights and interests of the Parties hereunder or in any proceeds thereof.

11.4 <u>Waivers</u>. A waiver of any covenant or provision of this Agreement shall not be deemed a waiver of any other covenant or provision in this Agreement, and no waiver shall be valid unless in writing and executed by the waiving Party. An extension of time for performance of any obligation or act shall not be deemed an extension of the time for performance of any other obligation or act. No failure or delay in the exercise of any right, power, or privilege hereunder, or under any other agreement entered into in connection herewith, shall operate as a waiver thereof, and no single or partial exercise of any such right, power, or privilege shall preclude a further exercise thereof or of any other right, power or privilege.

11.5    <u>Time</u>. Time is of the essence of each and every provision of this Agreement. If the time period by which any right, option or election provided under this Agreement must be exercised, or by which any act required under this Agreement must be performed, expires on a Saturday, Sunday or a holiday, then that time period shall be automatically extended to the next business day. As used herein, a "business day" is any day other than a Saturday, Sunday, or a Federal or California state holiday.

11.6    <u>Governing Law</u>. All questions with respect to this Agreement and the rights and liabilities of the Parties shall be governed by the laws of the State of California.

11.7    <u>Invalid Provisions</u>. If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws of any jurisdiction, that provision shall be fully severable; this Agreement shall be construed and enforced as if that illegal, invalid or unenforceable provision had never composed a part of this Agreement, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by that provision or by its severance from this Agreement.

11.8    <u>Interpretation</u>. The Parties, and each of them, acknowledge that this Agreement is the result of negotiations among them, waive the provisions of California Civil Code Section 1654, and agree that the language of this Agreement shall neither be construed for nor against any Party.

11.9    <u>Headings, Pronouns, and References</u>. The section headings and captions of this Agreement are, and the arrangement of this instrument is, for the sole convenience of the Parties to this Agreement.  The section headings, captions and arrangement of this instrument do not in any way affect, limit, amplify or modify the terms and provisions of this Agreement.  All pronouns used herein shall be deemed to mean and include the masculine, feminine, neuter, singular and/or plural forms as may be applicable.  Unless otherwise indicated, all references to Section numbers are to this Agreement, and all references to a Section include all subsections and paragraphs thereof.  All exhibits referred to in this Agreement are attached to it and incorporated in it by this reference.

11.10    <u>Further Assurances</u>. Each of the Parties shall at all times fully cooperate with each other, and shall cause their respective agents and attorneys to cooperate, in a prompt and timely manner, in connection with the performance of all obligations of the Parties pursuant to this Agreement, and which may otherwise be necessary or appropriate to carry out and enforce the provisions of this Agreement. The Parties agree to take all actions and to execute and deliver all documents and instruments as may be reasonably required from time to time to carry out the terms and provisions of, and to ensure that the Parties and each of them receive the benefit of this Agreement.

11.11    <u>Signatures</u>. Each individual signing this Agreement on behalf of any Party represents and warrants that he or she has been duly authorized and has the requisite authority to execute and deliver this Agreement on behalf of the Party he or she purports to represent, and to bind that Party to the terms and conditions of this Agreement.  This Agreement may be executed simultaneously or in any number of counterparts, each of which shall be deemed an original, equally admissible in evidence, but all of which together shall constitute one and the same

Case: 23-51443   Doc# 33-4   Filed: 03/08/24   Entered: 03/08/24 15:08:49   Page 371 of 411

Agreement. This Agreement may be executed with digital, electronic, or facsimile signatures and the same shall be effective and enforceable as originals.

IN WITNESS WHEREOF the Parties hereto have executed this Settlement Agreement as of the date first above written.

DAKOTA PARTIES

Dakota Note, LLC,
a South Dakota limited liability company

_____

By: Arick D. Amspacker, Member

Natural Software Systems, Inc.
Money Purchase Pension Plan

_____

By: Paul Greenfield, Trustee

_____

Tanya Waltimyer

_____

Jason Greenfield

_____

Paul Greenfield

*[Signatures continue on following page(s)]*

TEYMOURIAN PARTIES

_____
Nariman Teymourian

_____
Gail Suzanne Marie Teymourian


201 El Camino Real LLC,
a California limited liability company

_____
By: Nariman Teymourian, Manager


2700 Middlefield Road, LLC,
a Delaware limited liability company

_____
By: Nariman Teymourian, Manager


Alviso Park LLC,
a Delaware limited liability company

_____
By: Nariman Teymourian, Manager


Ferrando Diversified Capital LLC,
a California limited liability company

_____
By: Nariman Teymourian, Managing Member

APPROVED AS TO FORM:

LELAND, PARACHINI, STEINBERG,
MATZGER & MELNICK, LLP

Dated _____

By: David B. Tillotson
Attorneys for Dakota Parties

BEROKIM LAW

Dated _June 19, 2023_

By: Kousha Berokim
Attorneys for Teymourian Parties

Agreement. This Agreement may be executed with digital, electronic, or facsimile signatures and the same shall be effective and enforceable as originals.

IN WITNESS WHEREOF the Parties hereto have executed this Settlement Agreement as of the date first above written.

DAKOTA PARTIES

Dakota Note, LLC,
a South Dakota limited liability company

_____

By: Arick D. Amspacker, Member

Natural Software Systems, Inc.
Money Purchase Pension Plan

_____

By: Paul Greenfield, Trustee

_____

Tanya Waltimyer

_____

Jason Greenfield

_____

Paul Greenfield

*[Signatures continue on following page(s)]*

Agreement. This Agreement may be executed with digital, electronic, or facsimile signatures and the same shall be effective and enforceable as originals.

IN WITNESS WHEREOF the Parties hereto have executed this Settlement Agreement as of the date first above written.

DAKOTA PARTIES

Dakota Note, LLC,
a South Dakota limited liability company

_____, Member
By: Arick D. Amspacker, Member

Natural Software Systems, Inc.
Money Purchase Pension Plan

_____
By: Paul Greenfield, Trustee

_____
Tanya Waltimyer

_____
Jason Greenfield

_____
Paul Greenfield

*[Signatures continue on following page(s)]*

16

Agreement. This Agreement may be executed with digital, electronic, or facsimile signatures and the same shall be effective and enforceable as originals.

IN WITNESS WHEREOF the Parties hereto have executed this Settlement Agreement as of the date first above written.

DAKOTA PARTIES

Dakota Note, LLC,
a South Dakota limited liability company

_____

By: Arick D. Amspacker, Member

Natural Software Systems, Inc.
Money Purchase Pension Plan

_____

By: Paul Greenfield, Trustee

*Tanya Waltimyer*
_____
Tanya Waltimyer

_____

Jason Greenfield

_____

Paul Greenfield

*[Signatures continue on following page(s)]*

Case: 23-51443    Doc# 33-4    Filed: 03/08/24    Entered: 03/08/24 15:08:49    Page 377 of 411

**Exhibit A**
**Schedule of Loan Documents and Properties**

*Loans and Loan Documents*

Loan No. 9645 – Nov 2018 – Original Principal $15,400,000

Consolidating refinance of previous loans made by Dakota, NSSMPPP, Waltimyer, and Jason to Middlefield LLC and Teymourian.  Additional advance of $325,000, plus a 3% advance fee, made in April 2022 as shown in Exhibit B.

1. Note Secured by a Deed of Trust dated 11/08/2018, by Borrower Middlefield LLC and Teymourian
2. Deed of Trust recorded 12/28/2018 as Document No. 2018-101122 encumbering Middlefield; this Deed of Trust was non-judicially foreclosed as described in Recital E
3. Deed of Trust recorded 12/28/2018 as Document No. 2018-101123 encumbering Barry

Loan No. 2019-0706 – Jul 2019 – Original Principal $2,500,000

New funding by Dakota to Middlefield LLC, Alviso, and Teymourian, with Guaranty by Teymourian; First American Title File No. 3809-5993020

All documents dated July 24, 2019 except as otherwise stated below.

1. Note Secured by Three Deeds of Trust
2. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 7/26/2019 in San Mateo County as Document No. 2019-059023, encumbering Middlefield
3. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 7/26/2019 in San Mateo County as Document No. 2019-059024, encumbering Barry; this Deed of Trust was subsequently reconveyed and is no longer in effect
4. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement originally recorded 10/2//2019 in Santa Clara County as Document No. 24295276, encumbering Baytech; re-recorded 6/8/2022 as Document No. 25316715
5. Guaranty
6. Environmental Indemnity Agreement
7. Spousal Consent and Waivers (by Gail)
8. Arbitration Agreement
9. Agreement to Correct Errors and Omissions
10. Loan Escrow Instructions (by Borrower)
11. Broker-Lender Escrow Instructions

12. Loan Disclosure Statement

13. Balloon Payment Disclosure

14. Forced-Placed Insurance Disclosure

15. Hazard Insurance Requirements

16. Conditional Loan Approval

17. Business Purpose Statement

18. Entity Certificate – Middlefield LLC

19. Entity Certificate – Alviso

20. Anti-Money Laundering Declaration

21. USA Patriot Act Important Information disclosures

22. Language Capacity Declaration

23. Declaration of Occupancy

24. Address/Phone Number Certification

Loan No. 2019-1005 – Oct 2019 – Original Principal $2,000,000

New funding by Dakota to Middlefield LLC, Alviso, and Teymourian, with Guaranty by Teymourian; First American Title File No. 3809-6056394

All documents dated October 8, 2019 except as otherwise stated below.

1. Note Secured by Three Deeds of Trust
2. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 10/11/2019 in San Mateo County as Document No. 2019-085099, encumbering Middlefield
3. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 10/11/2019 in San Mateo County as Document No. 2019-085098, encumbering Barry; this Deed of Trust was subsequently reconveyed and is no longer in effect
4. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement originally recorded 10/11/2019 in Santa Clara County as Document No. 24302783, encumbering Baytech; re-recorded 6/8/2022 as Document No. 25316714
5. Guaranty
6. Environmental Indemnity Agreement
7. Arbitration Agreement
8. Agreement to Correct Errors and Omissions
9. Loan Escrow Instructions (by Borrower)
10. Broker-Lender Escrow Instructions
11. Loan Disclosure Statement
12. Balloon Payment Disclosure

13. Forced-Placed Insurance Disclosure

14. Hazard Insurance Requirements

15. Conditional Loan Approval

16. Business Purpose Statement

17. Entity Certificate – Alviso

18. Entity Certificate – Middlefield LLC

19. Anti-Money Laundering Declaration

20. USA Patriot Act Important Information disclosures (Teymourian)

21. Language Capacity Declaration

22. Declaration of Occupancy

23. Address/Phone Number Certification

Loan No. 2019-1201 – Dec 2019 – Original Principal $6,000,000

New funding by Dakota and NSSMPPP to Middlefield LLC, Alviso, and Teymourian, with Guaranty by Teymourian; First American Title File Nos. 3809-6088736, 3809-6105355, 3809-6105365

All documents dated December 17, 2019 except as otherwise stated below.

1. Note Secured by Three Deeds of Trust

2. Addendum One to Note Secured by Three Deeds of Trust and Loan Documents of the Same Date (concerning future ECR collateral)

3. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 12/24/2019 in San Mateo County as Document No. 2019-109852, encumbering Middlefield; this Deed of Trust was subsequently reconveyed (Document No. 2022-024829) and is no longer in effect

4. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 12/24/2019 in San Mateo County as Document No. 2019-109853, encumbering Barry

5. Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement recorded 12/24/2019 in Santa Clara County as Document No. 24364762, encumbering Baytech; this Deed of Trust was subsequently reconveyed and is no longer in effect

6. Broker-Lender Escrow Instructions

7. Business Purpose Statement

8. Subordination Agreement dated August 18, 2021 and recorded 09/22/2021 in San Mateo County as Document No. 2021-135496, with respect to the Deed of Trust identified in #4 above

<u>Advance – Nov 2021 – $2,500,000</u>

Additional funding by Dakota, NSSMPPP, and Greenfield to Nariman, for benefit of ECR LLC, as modification to all above-identified Loans

1. Agreement for $2,500,000 loan advance

*Properties Definitions*

<u>Middlefield / Middlefield Property</u>

That certain real property located at 2710 Middlefield Road, Redwood City, CA 94063, together with the approximately 36,000 square foot office building and other improvements thereon, which was previously owned by Middlefield LLC and encumbered by Deeds of Trust securing the Loans identified above as numbers 9645, 2019-0706, 2019-1005, and the Advance.

<u>Barry / Barry Property</u>

That certain real property located at 66 Barry Lane, Atherton, CA 94027, together with the approximately 9,938 square foot single-family residence and other improvements thereon, which as of the Execution Date is owned by Teymourian and encumbered by Deeds of Trust securing the Loans identified above as numbers 9645 and 2019-1201 and the Advance (the "Barry Deeds of Trust")

<u>Baytech / Baytech Property</u>

That certain real property located at 110 Baytech Drive, San Jose, CA 95134, together with the approximately 57,976 square foot office building and other improvements thereon, which as of the Effective Date is owned by Alviso and encumbered by Deeds of Trust securing the Loans identified above as numbers 2019-0706 and 2019-1005.  (the "Baytech Deeds of Trust").

**Exhibit B**
**Schedule of Loan Amounts**

| Teymourian Loans as of | 11/8/2022 | | | | | |
|---|---|---|---|---|---|---|
| Loan No. | Date | Loan Funded | Interest Accrued | Payment | Balance | |
| 9645 | 12/28/2018 | $ 15,400,000.00 | $ - | $ - | $ 15,400,000.00 | |
| | 1/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| | 2/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| | 3/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| | 4/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| | 5/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| | 6/1/2019 | - | 141,166.67 | 141,166.67 | 15,400,000.00 | |
| 2019-0706 | 7/26/2019 | 2,500,000.00 | 147,416.69 | 147,416.69 | 17,900,000.00 | |
| | 8/1/2019 | - | 141,166.67 | 141,166.67 | 17,899,999.99 | |
| | 9/1/2019 | - | 172,416.67 | 141,166.67 | 17,931,249.99 | |
| 2019-1005 | 10/14/2019 | 2,000,000.00 | 192,416.65 | 161,166.65 | 19,962,499.99 | |
| | 11/1/2019 | - | 172,416.67 | - | 20,134,916.65 | |
| 2019-1201 | 12/23/2019 | 6,000,000.00 | 205,750.00 | - | 26,340,666.65 | |
| | 1/1/2020 | - | 219,083.36 | - | 26,559,750.01 | |
| | 2/1/2020 | - | 255,750.00 | - | 26,815,500.01 | |
| | 3/1/2020 | - | 255,750.00 | - | 27,071,250.01 | |
| | 4/1/2020 | - | 255,750.00 | - | 27,327,000.01 | |
| | 5/1/2020 | - | 255,750.00 | - | 27,582,750.01 | |
| | 6/1/2020 | - | 255,750.00 | 878,549.00 | 26,959,951.01 | |
| | 7/1/2020 | - | 255,750.00 | 124,508.78 | 27,091,192.23 | |
| | 8/1/2020 | - | 255,750.00 | 35,000.00 | 27,311,942.23 | |
| | 9/1/2020 | - | 263,562.50 | 35,000.00 | 27,540,504.73 | |
| | 10/1/2020 | - | 263,562.50 | 35,000.00 | 27,769,067.23 | |
| | 11/1/2020 | - | 263,562.50 | 35,000.00 | 27,997,629.73 | |
| | 12/1/2020 | - | 270,895.84 | 35,000.00 | 28,233,525.57 | |
| | 1/1/2021 | - | 270,895.84 | 35,000.00 | 28,469,421.41 | |
| | 2/1/2021 | - | 270,895.84 | 35,000.00 | 28,705,317.25 | |
| | 3/1/2021 | - | 270,895.84 | 35,000.00 | 28,941,213.09 | |
| | 4/1/2021 | - | 270,895.84 | 35,000.00 | 29,177,108.93 | |
| | 5/1/2021 | - | 270,895.84 | 35,000.00 | 29,413,004.77 | |
| | 6/1/2021 | - | 270,895.84 | 35,000.00 | 29,648,900.61 | |
| | 7/1/2021 | - | 270,895.84 | 35,000.00 | 29,884,796.45 | |
| | 8/1/2021 | - | 270,895.84 | | 30,155,692.29 | |
| | 9/22/2021 | - | 262,341.15 | 6,000,000.00 | 24,418,033.44 | |
| | 10/1/2021 | - | 256,699.66 | | 24,674,733.11 | |
| | 11/1/2021 | - | 256,699.66 | | 24,931,432.77 | |
| Advance, incl $75K advance fee | 11/12/2021 | 2,575,000.00 | - | - | 27,506,432.77 | |
| | 12/1/2021 | - | 258,884.39 | - | 27,765,317.16 | |
| | 1/1/2022 | - | 312,103.18 | - | 28,077,420.33 | |
| | 2/1/2022 | - | 312,103.18 | - | 28,389,523.51 | |
| | 3/1/2022 | - | 312,103.18 | - | 28,701,626.69 | |
| | 4/1/2022 | - | 312,103.18 | - | 29,013,729.86 | |
| 9645, add'l advance incl 3% advance fee | 4/7/2022 | 334,750.00 | - | - | 29,348,479.86 | |
| | 5/1/2022 | - | 340,947.86 | - | 29,689,427.72 | |
| | 6/1/2022 | - | 340,947.86 | 70,000.00 | 29,960,375.58 | |
| | 7/1/2022 | - | 345,517.09 | 50,000.00 | 30,255,892.66 | |
| | 8/1/2022 | - | 193,615.52 | | 30,449,508.18 | |
| | 9/1/2022 | - | 193,615.52 | 90,000.00 | 30,553,123.70 | |
| | 10/1/2022 | - | 193,615.52 | - | 30,746,739.21 | |
| | 11/1/2022 | - | 193,615.52 | | 30,940,354.73 | |
| | | | | Total Debt | $ 30,940,354.73 | |
| | | | | (Exclusive of Default Interest and Costs of Collection) | | |

**Exhibit C**
**Judgment Stipulation**

See Attached

DAVID B. TILLOTSON (State Bar # 148162)
Dtillotson@lpslaw.com
RAVI D. SAHAE (State Bar # 276113)
Rsahae@lpslaw.com
LELAND, PARACHINI, STEINBERG,
  MATZGER & MELNICK, LLP
135 Main Street, Suite 1200
San Francisco, California 94105
Telephone: (415) 957-1800
Facsimile: (415) 974-1520

Attorneys for Defendants and Cross-Complainants
DAKOTA NOTE, LLC, TANYA WALTIMYER,
NATURAL SOFTWARE SYSTEMS, INC.
MONEY PURCHASE PENSION PLAN, JASON
GREENFIELD, and 5 PALMS, LLC

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN MATEO

| | |
|---|---|
| NARIMAN TEYMOURIAN, et al., | Case No. 22-CIV-04679 |
| Plaintiffs, | **STIPULATION FOR ENTRY OF JUDGMENT** |
| vs. | |
| DAKOTA NOTE, LLC, et al., | |
| Defendants. | |
| | Action Filed: November 9, 2022 |
| DAKOTA NOTE, LLC, et al., | Trial Date: None Set |
| Cross-Complainants, | |
| vs. | |
| NARIMAN TEYMOURIAN, et al., | |
| Cross-Defendants. | |
| AND RELATED CROSS-ACTIONS | |

This Stipulation for Entry of Judgment ("Stipulation") is entered into by Cross-Defendants and Cross-Complainants Nariman Teymourian, Gail Suzanne Marie Teymourian, 2700 Middlefield Road, LLC, a Delaware limited liability company, Alviso Park LLC, a Delaware

limited liability company, and Ferrando Diversified Capital LLC, a California limited liability company (collectively, "Teymourian Parties"); and by Cross-Complainants and Cross-Defendants Dakota Note, LLC, a South Dakota limited liability company, Natural Software Systems, Inc. Money Purchase Pension Plan, Tanya Waltimyer, Jason Greenfield, and 5 Palms, LLC (collectively, "Dakota Parties") in this action.

## **RECITALS**

A.      Between approximately November 2018 and April 2022, one or more of the Dakota Parties made a series of secured loans and advances to, or for the benefit of, one or more of the Teymourian Parties (the "Loans", and each a "Loan"), in the aggregate principal amount of Twenty-Eight Million Seven Hundred Twenty-Five Thousand Dollars ($28,725,000.00). Teymourian Parties defaulted in their payment obligations under the Notes, Deeds of Trust, and other agreements and instruments evidencing and securing the Loans (collectively, the "Loan Documents"), and Dakota Parties commenced non-judicial foreclosure proceedings with respect to certain of the Deeds of Trust securing the Loans.  Various disputes arose between the Teymourian Parties and the Dakota Parties related to the Loans, including without limitation as to the amounts due and owing under, and the enforceability of, the Loan Documents.  On or about November 9, 2022, Teymourian Parties filed the Complaint commencing this action, which, together with the Cross-Complaints subsequently filed by Dakota Parties and by Teymourian Parties and including all claims, complaints, answers, affirmative defenses, and cross-complaints that have been or could be made in said action, is referred to herein as the "Litigation".

B.      In or about June 2023, the Dakota Parties and Teymourian Parties, together with certain other affiliates of each, reached a settlement, the terms of which have been memorialized by a written Settlement Agreement and Release ("Settlement Agreement").

C.      Dakota Parties and Teymourian Parties enter into this Stipulation pursuant to the Settlement Agreement.

**NOW, THEREFORE, IT IS HEREBY STIPULATED** by and between Dakota Parties and Teymourian Parties as follows:

{00638870.DOCX / 4}    2    STIPULATION FOR ENTRY OF JUDGMENT

1    1.    The foregoing recitals are agreed to by Dakota Parties and Teymourian Parties, and

2    are incorporated into the following stipulations as if fully set forth herein.

3    2.    The Settlement Agreement requires, *inter alia*, payment by Teymourian Parties to

4    Dakota Parties of the sum of Six Million Dollars ($6,000,000.00) ("Settlement Sum") plus interest

5    accrued on the outstanding balance thereof at the rate of Seven Percent (7.0%) per annum, in

6    installments due in the amounts and at the times set forth in the Settlement Agreement (each, a

7    "Payment"), as follows: (a) the sum of $3,000,000.00 to be paid within thirty (30) calendar days

8    following the Approval Date (hereinafter defined), (b) quarterly payments of $100,000.00 each to

9    be made beginning on the first day of the calendar quarter (*i.e.*, January 1, April 1, August 1, or

10   December 1) following the Approval Date, and continuing on the first day of every subsequent

11   quarter until the entire balance of the Settlement Sum is paid, with each such payment being

12   applied to reduce the outstanding principal balance of the Settlement Sum, and (c) the entire

13   remaining balance of the Settlement Sum (equal to $3,000,000.00 less the sum of all Quarterly

14   Payments having then been made) plus all accrued interest to be paid on or before the date that is

15   twenty-four (24) months following the Approval Date.  As used herein, the "Approval Date" is the

16   date on which the United States Bankruptcy Court for the Northern District of California issues an

17   order or ruling substantially granting a motion made, pursuant to the terms and conditions of the

18   Settlement Agreement, in that certain proceeding identified as *In re Gail Suzanne Marie*

19   *Teymourian*, Chapter 11 Case No. 23-30259, for approval of the Settlement Agreement pursuant

20   to Federal Rule of Bankruptcy Procedure 9019.

21   3.    In the event of any default by the Teymourian Parties under the Settlement

22   Agreement, including without limitation the failure to make any Payment when due, and if said

23   default remains uncured following notice and a cure period as set forth in the Settlement

24   Agreement, then upon *ex parte* application as described below, judgment shall be entered on

25   behalf of Dakota Parties and against Teymourian Parties for the amount of the outstanding unpaid

26   balance of the Settlement Sum of Six Million Dollars ($6,000,000.00), plus interest accrued

27   thereof at the rate of Seven Percent (7.0%) per annum from the Approval Date until the Settlement

28

{GREENSPOON/00731/STL/02610/033-DOC X 4}    3    STIPULATION FOR ENTRY OF JUDGMENT

Sum is paid in full, together with attorneys' fees and costs of collection incurred by Dakota Parties according to proof, in the form attached to this Stipulation as Exhibit A (the "Judgment"). A declaration by counsel for Dakota Parties setting forth under the penalty of perjury the nature of the default, that the default has not been cured despite notice and that the cure period has elapsed, and stating the Approval Date, the amount and date of the Payments (if any) made, and the amount of the remaining unpaid and outstanding balance of the Settlement Sum together with accrued interest under the terms of the Settlement Agreement, is deemed to be sufficient proof of the cause for and amount of the stipulated judgment to be entered hereunder.

4.    The Parties to this Stipulation agree that Dakota Parties may apply ex parte for an Order entering this Stipulated Judgment as an Order and Judgment of this Court.

5.    Teymourian Parties confirm that they have reviewed this Stipulation with their legal counsel, and that they understand the legal significance and consequences of executing this Stipulation, and sign this Stipulation with full cognizance and understanding of its legal effect, and that it is binding upon each of them, jointly and severally.

6.    This Stipulation will be held by counsel for Dakota Parties until the payment in full of the sums due to Dakota Parties under the Settlement Agreement. The Stipulation will not be filed with the Court and the Judgment will not be entered as long as no default under the Settlement Agreement by Teymourian Parties occurs.

7.    It is understood, agreed, and stipulated that in the event of an uncured default as described in Paragraph 3 above, Dakota Parties are entitled to immediate entry of the Judgment upon *ex parte* application, in the sums affirmed by Dakota Parties to be due, and Teymourian Parties expressly and knowingly waive any right to notice or hearing prior thereto.

8.    This Stipulation may be executed in counterparts, one or more of which may contain electronic or facsimile signatures, all of which together shall constitute one and the same Stipulation. An executed facsimile of this Stipulation may be used for all purposes in place of the original and will be binding on the signing party as if the original.

{GREENSPOON2923STL1D1033.DOCX 4}                     4

STIPULATION FOR ENTRY OF JUDGMENT

**SO STIPULATED**

DATED: _____

_____
Nariman Teymourian

DATED: _____

_____
Gail Suzanne Marie Teymourian

2700 Middlefield Road, LLC,
a Delaware limited liability company

DATED: _____

_____
By: Nariman Teymourian, Manager

Alviso Park LLC,
a Delaware limited liability company

DATED: _____

_____
By: Nariman Teymourian, Manager

Ferrando Diversified Capital LLC,
a California limited liability company

DATED: _____

_____
By: Nariman Teymourian, Manager

DATED: _____, 2023        BEROKIM LAW

By: _____
Kousha Berokim
Attorneys for Plaintiffs and Cross-Defendants
NARIMAN TEYMOURIAN, et al.

{CRE-ESP/0002/STL/00040343.DOCX 4}            5
                                      STIPULATION FOR ENTRY OF JUDGMENT

DATED: _____          LELAND, PARACHINI, STEINBERG,
                           MATZGER & MELNICK, LLP


                           By: _____
                               David B. Tillotson
                               Ravi D. Sahae
                               Attorneys for Defendants


**ORDER**

   IT IS ORDERED that judgment be entered pursuant to the terms of the aforesaid stipulated
settlement between the parties, as follows:

   1.  Payment by Nariman Teymourian, Gail Suzanne Marie Teymourian, 2700 Middlefield
       Road, LLC, a Delaware limited liability company, Alviso Park LLC, a Delaware
       limited liability company, and Ferrando Diversified Capital LLC, a California limited
       liability company of the sum of $_____, and for costs of suit and
       attorney's fees in the amount of $_____

   2.  The judgment entered pursuant to this Stipulation and Order shall accrue interest at the
       rate of ten percent per annum.

   3.  The Clerk of the Court is instructed to enter judgment as set forth in this Order.


Dated:_____   _____
                         HONORABLE JUDGE OF THE SUPERIOR COURT

STIPULATION FOR ENTRY OF JUDGMENT

**EXHIBIT C**

Gregory A. Rougeau (194437)
BRUNETTI ROUGEAU LLP
235 Montgomery Street, Suite 830
San Francisco, California 94104
Telephone:    (415) 992-8940
Facsimile:    (415) 291-8957
Email: grougeau@brlawsf.com

Attorneys for Debtor in Possession
GAIL SUZZANNE MARIE TEYMOURIAN

## UNITED STATES BAKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

In re:

GAIL SUZZANNE MARIE
TEYMOURIAN,

              Debtor In Possession.

Case No. 23-30259

Chapter 11

**NOTICE OF WITHDRAWAL OF
DEBTOR'S MOTION TO COMPROMISE
CONTROVERSY WITH DAKOTA NOTE,
LLC AND RELATED PARTIES**

**TO:    ALL CREDITORS AND PARTIES IN INTEREST:**

      **PLEASE TAKE NOTICE** that GAIL SUZZANNE MARIE TEYMOURIAN (the

"Debtor"), the debtor and debtor-in-possession herein, hereby withdraws her Motion to

Compromise Controversy With Dakota Note And Related Parties (the "Motion," Docket No.

34), filed on June 22, 2023, notice of hearing for which was scheduled to occur on July 20, 2023

at 10:00 a.m.

      Such withdrawal of the Motion is premised upon certain objections to the proposed

compromise described in the Motion, and the related postpetition financing upon which the

Motion depends.  The Debtor anticipates that she will conduct further negotiations with her

creditors, and file an alternative motion to compromise controversy under FRBP 9019 to resolve

the creditors' objections, in the very near future.


Dated:   July 1, 2023                    BRUNETTI ROUGEAU LLP


                                         By:    */s/ Gregory A. Rougeau*
                                                Gregory A. Rougeau
                                                Attorneys for Chapter
                                                11 Debtor-In-Possession
                                                GAIL SUZZANNE MARIE
                                                TEYMOURIAN

# EXHIBIT J

1  DAVID B. TILLOTSON (State Bar # 148162)
   Dtillotson@lpslaw.com
2  RAVI D. SAHAE (State Bar # 276113)
   Rsahae@lpslaw.com
3  LELAND, PARACHINI, STEINBERG,
     MATZGER & MELNICK, LLP
4  199 Fremont Street - 21st Floor
   San Francisco, California 94105
5  Telephone: (415) 957-1800
   Facsimile: (415) 974-1520
6

7  Attorneys for Defendants and Cross-
   Complainants DAKOTA NOTE, LLC, and
   NATURAL SOFTWARE SYSTEMS, INC.
8  MONEY PURCHASE PENSION PLAN, and
   Defendants TANYA WALTIMYER, JASON
9  GREENFIELD, and 5 PALMS, LLC

**FILED**
SAN MATEO COUNTY

AUG 2 4 2023

Clerk of the Superior Court
By _____
        DEPUTY CLERK

10            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                        **COUNTY OF SAN MATEO**

12

13  NARIMAN TEYMOURIAN, et al.,          Case No. 22-CIV-04679

14            Plaintiffs,                [PROPOSED] JUDGMENT AGAINST
                                         NARIMAN TEYMOURIAN, GAIL
15       vs.                             SUZANNE MARIE TEYMOURIAN, 2700
                                         MIDDLEFIELD ROAD, LLC, ALVISO
16  DAKOTA NOTE, LLC, et al.,            PARK, LLC, AND FERRANDO
                                         DIVERSIFIED CAPITAL LLC
17            Defendants.

18  _____     *Assigned for all purposes to Hon. Susan
                                         Greenberg*
19  AND RELATED CROSS-ACTIONS
                                         Action Filed:      November 9, 2022
20                                       Trial Date:        None Set

21

22       Pursuant to the Orders of the Court, IT IS HEREBY ORDERED, ADJUDGED, AND

23  DECREED:

24       Judgment shall be and hereby is entered in favor of Cross-

25  Complainants/Defendants/Cross-Defendants Dakota Note, LLC, Natural Software Systems, Inc.

26  Money Purchase Pension Plan, Tanya Waltimyer, Jason Greenfield, and 5 Palms, LLC

27  (collectively "Dakota Parties"), and against Plaintiffs/Cross-Defendants/Cross-Complainants

28  Nariman Teymourian, Gail Suzanne Marie Teymourian, 2700 Middlefield Road, LLC, Alviso

[PROPOSED] JUDGMENT

1 | Park, LLC, and Ferrando Diversified Capital LLC, and each of them, jointly and severally,

2 | (collectively "Teymourian Parties") in the amount of **$6,502,375.**

3 |       Teymourian Parties, and each of them, jointly and severally, are hereby ordered to and

4 | shall pay the sum of **$6,502,375** to Dakota Parties forthwith. This amount includes an award of

5 | attorney fees pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Code of Civil

6 | Procedure Section 1033.5.

7 |       IT IS SO ORDERED.

8 |

9 | DATE: _8-24-23_

10 |       JUDGE OF THE SUPERIOR COURT

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

2

[PROPOSED] JUDGMENT

# EXHIBIT K



1   Joshua L. Scheer #242722
    Reilly D. Wilkinson #250086

2   Scheer Law Group, LLP
    155 N. Redwood Dr., Suite 100
3   San Rafael, CA  94903
    Telephone:  (415) 491-8900
4   Facsimile:  (415) 491-8910
    rwilkinson@scheerlawgroup.com
5   DN.100-002S-B

6

7

**Signed and Filed: February 9, 2024**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

8   Attorneys for Movant
    Dakota Note, LLC, and Natural Software Systems, Inc. Money Purchase Pension Plan, its
9   successors and/or assignees

10              UNITED STATES BANKRUPTCY COURT FOR

11                 THE NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13  In re:                                    Bk. No. 23-30668-DM

14  NARIMAN SEYED TEYMOURIAN,                 Chapter 7

15          Debtor.                           **ORDER VACATING AUTOMATIC STAY**

16
                                              Hearing-
17                                            Date:  February 8, 2024
                                              Time: 9:30 AM
18                                            Place: U.S. Bankruptcy Court
                                                      450 Golden Gate Ave.
19                                                    16th Floor, Courtroom 17
                                                      San Francisco, CA 94102
20                                            **VIA TELE/VIDEOCONFERENCE**

21

22

23          The hearing on Dakota Note, LLC, and Natural Software Systems, Inc. Money Purchase

24  Pension Plan, its successors and/or assignees ("**Movant**") Motion for Relief from the Automatic

25  Stay was scheduled for hearing on February 8, 2024 at 9:30am before the Honorable Dennis

26  Montali, United States Bankruptcy Judge.  Movant appeared through counsel, Reilly D.

27  Wilkinson of Scheer Law Group, LLP.  All other appearances were read into the record and for

28  GOOD CAUSE appearing, the Court makes its order as follows:

1      IT IS HEREBY ORDERED that the Automatic Stay in the above entitled proceeding is

2 immediately vacated and extinguished to allow Movant to take all actions to defend and resolve

3 the complaint against Movant in the Superior Court of California, County of San Mateo, Case

4 No. 22-CIV-04679, including filing motions to expunge the three lis pendens against the

5 property at 66 Barry Lane, Atherton, CA 94027**.**

6      IT IS FURTHER ORDERED that the 14 day stay contained in Federal Rule of

7 Bankruptcy Procedure 4001(a)(3) is waived.

8                      **\*\*END OF ORDER\*\***

## **COURT SERVICE LIST**

Nariman Seyed Teymourian
66 Barry Lane
Atherton, CA 90247

# EXHIBIT L

| | |
|---|---|
| **From:** | Ravi D. Sahae |
| **Sent:** | Thursday, February 8, 2024 1:52 PM |
| **To:** | Kousha Berokim; David B. Tillotson |
| **Subject:** | RE: Lis Pendens on Barru |



Kousha, it was filed by bk counsel. The filing and the text-only ruling are available on the court docket at https://ecf.canb.uscourts.gov/

Case number 23-30668

Ravi D. Sahae
Leland, Parachini, Steinberg, Matzger & Melnick LLP
135 Main Street, Suite 1200
San Francisco, CA 94105
Telephone: (415)-957-1800
Direct: (415)-243-2242
Facsimile: (415)-974-1520
Email: RSahae@lpslaw.com
Web: www.lpslaw.com

Map & Directions

CONFIDENTIALITY:
The e-mail is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law. If the reader of this e-mail is not the intended recipient or the employee or agent of the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by replying to the original sender of this note or by telephone at (415) 957-1800 and delete all copies of this e-mail. It is the recipient's responsibility to scan this e-mail and any attachments for viruses. Thank you.

---

**From:** Kousha Berokim <berokim@berokim.com>
**Sent:** Thursday, February 8, 2024 11:55 AM
**To:** David B. Tillotson <DTillotson@lpslaw.com>
**Cc:** Kousha Berokim <berokim@berokim.com>; Ravi D. Sahae <RSahae@lpslaw.com>
**Subject:** Re: Lis Pendens on Barru

Am i understanding correctly that you obtained leave in bk to proceed to expunge LP in state court?
Can you forward me your bk motion, any opposing/reply papers, and ruling?

--
Kousha Berokim

BEROKIM LAW

Attorneys at law

270 NORTH CAÑON DRIVE, THIRD FLOOR, BEVERLY HILLS, CA 90210
PHONE 310.846.8553 FAX 310.300.1233
BEROKIM@BEROKIM.COM

On Thu, Feb 8, 2024 at 11:48 AM David B. Tillotson <DTillotson@lpslaw.com> wrote:

The motion will be filed in the state court action.



**David B. Tillotson**

Leland, Parachini, Steinberg, Matzger & Melnick, LLP
135 Main Street, Suite 1200
San Francisco, CA 94105
Telephone: (415) 957-1800
Facsimile: (415) 974-1520
Email: DTillotson@lpslaw.com
Website: www.lpslaw.com

CONFIDENTIALITY:
The e-mail is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law. If the reader of this e-mail is not the intended recipient or the employee or agent of the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by replying to the original sender of this note or by telephone at (415) 957-1800 and delete all copies of this e-mail. It is the recipient's responsibility to scan this e-mail and any attachments for viruses. Thank you.

**From:** Kousha Berokim <berokim@berokim.com>
**Date:** Thursday, February 8, 2024 at 11:47 AM
**To:** David B. Tillotson <DTillotson@lpslaw.com>
**Cc:** Kousha Berokim <berokim@berokim.com>, Ravi D. Sahae <RSahae@lpslaw.com>
**Subject:** Re: Lis Pendens on Barru

David

I am not the attorney in bk case

Please forward me the bk papers you reference which you think I should consider/comply with

Thank you

--

Kousha Berokim
**BEROKIM LAW**
*Attorneys at law*

270 NORTH CAÑON DRIVE, THIRD FLOOR, BEVERLY HILLS, CA 90210
PHONE 310.846.8553 FAX 310.300.1233

BEROKIM@BEROKIM.COM

On Thu, Feb 8, 2024 at 11:38 AM David B. Tillotson <DTillotson@lpslaw.com> wrote:

Kousha:

Today Montali granted leave to file a motion to expunge the three lis pendens that you recorded (but did not file on Barry.)

Please indicate by 5:00 pm today that you will voluntarily release the lis pendens. If we do not receive that indication by 5:00 today, we will seek fees in connection with the motion to expunge.



**David B. Tillotson**

Leland, Parachini, Steinberg, Matzger & Melnick, LLP
135 Main Street, Suite 1200
San Francisco, CA 94105
Telephone: (415) 957-1800
Facsimile: (415) 974-1520
Email: DTillotson@lpslaw.com
Website: www.lpslaw.com

CONFIDENTIALITY:
The e-mail is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law. If the reader of this e-mail is not the intended recipient or the employee or agent of the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by replying to the original sender of this note or by telephone at (415) 957-1800 and delete all copies of this e-mail. It is the recipient's responsibility to scan this e-mail and any attachments for viruses. Thank you.

# EXHIBIT M

Court of Appeal Case Number A169034
San Mateo Superior Court Case Number 22-CIV-04679

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**
**FIRST APPELLATE DISTRICT**
**DIVISION 5**

NARIMAN TEYMOURIAN, GAIL SUZANNE MARIE TEYMOURIAN

*Plaintiffs and Appellants,*

vs.

DAKOTA NOTE, LLC,

*Defendant and Respondent*

---

**APPELLANT NARIMAN TEYMOURIAN'S NOTICE OF STAY OF PROCEEDINGS**

---

**Appeal from the Superior Court of San Mateo**
**Department 3**
**Honorable Susan L. Greenberg**

**KOUSHA BEROKIM**
Attorney at Law
State Bar Number 242763
270 North Canon Drive, Third Floor
Beverly Hills, California 90210
Telephone (310) 993-3703 Fax (310) 300-1233
Berokim@berokim.com

Attorney for Plaintiffs and Appellants
NARIMAN TEYMOURIAN, GAIL SUZANNE MARIE TEYMOURIAN

**NOTICE OF STAY OF PROCEEDINGS**

I, KOUSHA BEROKIM, declare as follows:

1. I am the attorney for Plaintiff and Appellant NARIMAN TEYMOURIAN and GAIL SUZANNE MARIE TEYMOURIAN. The matters herein stated are from my own personal knowledge or are based on information and belief and which I believe to be true.

2. I have been made aware that Plaintiff and Appellant NARIMAN TEYMOURIAN has filed for bankruptcy in the United States Bankruptcy Court in the Northern District of California, and that on January 26, 2024, the bankruptcy proceedings were converted to chapter 7. The case no. is 23-30668-DM.

3. The 'Order Converting Case to Chapter 7' from the bankruptcy court is attached to this notice of stay of proceedings as **Exhibit 1.**

4. I am hereby notifying and requesting a stay of proceedings in this court pending the Bankruptcy determination on behalf of Plaintiff and Appellant Nariman Teymourian.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in Beverly Hills, California.

_____
Dated February 9, 2024                                    Kousha Berokim

**Entered on Docket
January 26, 2024**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Signed and Filed: January 26, 2024

_Dennis Montali_

_____

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 23-30668-DM |
| NARIMAN SEYED TEYMOURIAN, | ) |
| | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |

**ORDER CONVERTING CASE TO CHAPTER 7**

Debtor has filed a *Consent to Conversion* (Dkt. 118) in response to the court's January 12, 2024 *Order to Show Cause Re Conversion* ("OSC") (Dkt. 97).  Accordingly, it is hereby ORDERED that

   1)   The OSC is DICHARGED.  The show cause hearing scheduled on January 29, 2024 is DROPPED from the calendar.

   2)   This case is CONVERTED to Chapter 7.

**\*\*END OF ORDER\*\***

-1-

<u>COURT SERVICE LIST</u>

Nariman Seyed Teymourian
66 Barry Lane
Atherton, CA 90247

-2-

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 270 North Cañon Drive, Third Floor, Beverly Hills, California, 90210. On **February 9, 2024**, I served the herein described document(s) through the means indicated below.

**APPELLANT NARIMAN TEYMOURIAN'S NOTICE OF STAY OF PROCEEDINGS**

☒    E-MAIL - by transmitting via electronic mail the document(s) listed above to the e-mail addresses set forth below.

David B. Tillotson
Leland, Parachini, Steinberg, Matzger & Melnick, LLP
Email: DTillotson@lpslaw.com

RAVI D. SAHAE
Leland, Parachini, Steinberg, Matzger & Melnick LLP
E-mail: RSahae@lpslaw.com

I am readily familiar with the firm's practice of collection and processing correspondence for faxing, mailing and e-mailing. With regard to mailing, under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on **February 9, 2024** at Beverly Hills, California.

----------------------------------------------------------
Kousha Berokim

**PROOF OF SERVICE**

<u>*Nariman Teymourian, et al. v. Dakota Note, LLC, et al.*</u>
**San Mateo County Superior Court Case No. 22-CIV-04679**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of San Francisco, State of California.  My business address is 135 Main Street, 12th Floor, San Francisco, CA 94105.

On **February 13, 2024**, I served true copies of the following document(s) described as

1.      Notice of Motion and Motion to Expunge *Lis Pendens*: Request for Attorney Fees;

2.      Memorandum of Points and Authorities in Support of Motion to Expunge *Lis Pendens*; and

3.      Declaration of Ravi D. Sahae in Support of Motion to Expunge *Lis Pendens*

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY FEDEX:**  I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed in the Service List.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized by FedEx to receive documents.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **February 13, 2024**, at Palo Alto, California.

_Kelly O'Brien_
_____
Kelly O'Brien

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

PROOF OF SERVICE

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
135 MAIN STREET, SUITE 1200
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

## SERVICE LIST

### *Nariman Teymourian, et al. v. Dakota Note, LLC, et al.*
**San Mateo County Superior Court Case No. 22-CIV-04679**

**Attorney for Plaintiffs**
Kousha Berokim
240 North Canon Drive, Third Floor
Beverly Hills, CA 90210
Tel: (310) 846-8553|Fax: (310) 300-1233
berokim@berokim.com

PROOF OF SERVICE